# United States District Court
## for the Western District of Oklahoma

Charles F. Warner,
James A. Coddington,
Benjamin R. Cole by and
     through his next friend
     Robert S. Jackson,
Carlos Cuesta-Rodriguez,
Nicholas A. Davis,
Richard S. Fairchild,
John M. Grant,
Wendell A. Grissom,
Marlon D. Harmon,
Raymond E. Johnson,
Emmanuel A. Littlejohn,
James D. Pavatt,
Kendrick A. Simpson,
Kevin R. Underwood,
Brenda E. Andrew,
Richard E. Glossip,
Shelton D. Jackson,
Phillip D. Hancock,
Julius D. Jones,
Alfred B. Mitchell, and
Tremane Wood,

        Plaintiffs,

v.

`CIV-14-665-C`

1

Kevin J. Gross,
Michael W. Roach,
Steve Burrage,
Gene Haynes,
Frazier Henke
Linda K. Neal
Earnest D. Ware
Robert C. Patton,
Anita K. Trammell,
Doctor X,
Paramedic Y,
Executioner #1,
Executioner #2 and
Executioner #3,

Defendants.

## Complaint

1.  Each of the Plaintiffs is under a sentence of death imposed by the judgment of an Oklahoma court before November 1, 2011.

2.  The Plaintiff Brenda E. Andrew resides within this District in Pottawatomie County, Oklahoma. Each of the remaining Plaintiffs resides within Pittsburg County, Oklahoma.

3.  The Plaintiff Benjamin R. Cole is an incompetent person. He sues by and through his next friend, Robert S. Jackson.

4.  Defendants, Kevin J. Gross, Michael W. Roach, Steve Burrage, Gene Haynes, Frazier Henke, Linda K. Neal, and Earnest D. Ware are current members of the Oklahoma Board of Corrections and have an official residence within this District.

5.  Defendants Gross, Roach, Burrage, Haynes, Henke, Neal, and Ware

establish policies for the Oklahoma Department of Corrections. Each acts under color of Oklahoma law, and is sued in official capacity only.

6.   The Defendant Robert C. Patton is Director of the Department of Corrections of Oklahoma and has an official residence within this District. He acts under color of Oklahoma law, and is sued in his official capacity only.

7.   The Defendant Anita K. Trammell is the warden of the Oklahoma State Penitentiary and an employee of the Department of Corrections of Oklahoma. She has an official residence within Pittsburg County, Oklahoma, acts under color of Oklahoma law, and is sued in her official capacity only.

8.   The Defendant Trammell is assigned by Oklahoma law with the responsibility to carry out death warrants issued by Oklahoma courts, including those issued in the Plaintiffs' cases.

9.   The Defendant Patton is assigned by Oklahoma law with authority over execution of all death sentences, and with responsibility to supervise all activities of the Department of Corrections, including the official activities of the Defendant Trammell.

10.   The Defendants Patton and Trammell plan to execute Plaintiffs using written procedures set out in Oklahoma State Penitentiary Field Memorandum No. OSP-040301-01. This Field Memorandum has been revised and altered repeatedly, most recently on March 21, April 14, and April 25, 2014.

11.   The Field Memorandum mandates participation in each execution by a

3

licensed physician. The functions of this official include insertion of intravenous lines into the condemned person, and performance of cut-down procedures to gain intravenous access to the condemned person.

12.   The Defendant Doctor X is the official who has performed and will perform the functions described in paragraph 11. Doctor X acts under color of Oklahoma law, and is sued in an official capacity only.

13.   The Field Memorandum mandates participation in each execution by an emergency medical technician/paramedic or person with similar qualifications and experience in intravenous line (IV) insertion. The functions of this official include insertion of intravenous lines into the condemned person.

14.   The Defendant Paramedic Y is the official who has performed and will perform the functions described in paragraph 13. Paramedic Y acts under color of Oklahoma law, and is sued in an official capacity only.

15.   The Field Memorandum mandates participation in each execution by three persons whose function is to administer lethal drugs to the condemned person through the intravenous lines established by the officials identified in paragraphs 11 and 13.

16.   The Defendants Executioners #1, #2, and #3 are the officials who have performed and will perform the functions described in paragraph 15. Each acts under color of Oklahoma law, and is sued in an official capacity only.

17.   The Plaintiffs are not challenging their convictions or sentences of death in this action. They are challenging only the way in which their

4

sentences of death will be carried out by the Defendants.

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1343(a).

19. Exhaustion of administrative remedies is not necessary because this action does not challenge prison conditions, and because there are no available administrative remedies capable of addressing the violations of federal law challenged in this pleading.

20. The Field Memorandum vests the Defendant Trammell with sole discretion to select the lethal drugs to be used in the Plaintiffs' executions. The Field Memorandum includes an open-ended list of authorized lethal drugs and procedures.

21. One of the authorized procedures, set out in section IX.C.7.a of the Field Memorandum, involves use of sodium thiopental, vecuronium bromide (or a comparable substitute), and potassium chloride.

22. Sodium thiopental is an ultrashort-acting barbiturate.

23. It would be feasible to use sodium thiopental, either alone or in combination with the remaining agents specified in section IX.C.7.a of the Field Memorandum, to execute the Plaintiffs. With sound procedures and properly trained personnel, use of sodium thiopental to execute the Plaintiffs would be lawful, and would significantly reduce a substantial risk of severe pain posed by the other drugs identified in this pleading.

24. Aside from the procedure identified in paragraph 21, the remaining authorized execution procedures set out in the Field Memorandum do not make use of sodium thiopental, or any other ultrashort-acting

barbiturate.

25. Between 1990 and 2010, the combination of drugs set out in section IX.C.7.a of the Field Memorandum was used in at least 93 Oklahoma executions.

26. Starting in 2010, the Defendants began to use pentobarbital in lieu of sodium thiopental to execute condemned persons, as currently authorized by section IX.C.7.b of the Field Memorandum. The pentobarbital first used in several executions was in its originally manufactured form.  In more recent executions, however, pentobarbital was produced by compounding.

27. In the version adopted March 21, 2014, the Field Memorandum authorized the use of at least three procedures that had never before been used in Oklahoma.

28. Two of the newly authorized procedures identified in paragraph 27 involved use of midazolam, a drug never before used in any Oklahoma execution. The midazolam procedures are set out in sections IX.C.7.d and IX.C.7.e of the Field Memorandum.

29. The Defendants Patton and Trammell have admitted that no experts were directly consulted in connection with their development of the procedures set out in the March 21, 2014 version of the Field Memorandum.

30. On April 1, 2014, the Defendants Patton and Trammell, through their counsel, notified the now-deceased Clayton D. Lockett and the Plaintiff Warner that they would be executed by administration of midazolam,

6

pancuronium bromide, and potassium chloride, in accordance with section IX.C.7.e of the Field Memorandum.

31.   In the April 1 notice identified in paragraph 30, the Defendants Patton and Trammell stated that the pancuronium bromide and midazolam would be compounded by a compounding pharmacy.

32.   On April 4, 2014, the Defendants Patton and Trammell countermanded the April 1 notice with regard to the source of midazolam. According to the Defendants, the midazolam would now be obtained from "[a] source of manufactured midazolam," while the pancuronium bromide would remain compounded.

33.   On April 11, 2014, the Defendants Patton and Trammell countermanded the April 1 and April 4 notices with regard to pancuronium bromide. According to these Defendants, pancuronium bromide would no longer be used to execute the Plaintiffs. Instead, vecuronium bromide would be used, and would be obtained from a "manufactured source."

34.   On April 14, 2014, the Defendants Patton and Trammell changed the written procedures in section IX.C.7.e of the Field Memorandum, which had previously been noticed as those that would be used in the executions of Charles Lockett and the Plaintiff Warner. In the new procedures, the prescribed concentration of midazolam in each lethal injection syringe was raised tenfold, from 50mg/100 ml to 50mg/10 ml.

35.   On April 25, 2014, the Defendants Patton and Trammell once again changed the written procedures set out in the Field Memorandum, this time with an addendum.

36. On April 29, 2014, the Defendants purportedly used the drugs and procedures identified in paragraphs 30-35 in an attempt to execute Clayton Lockett.

37. About 13 minutes after the attempt began, Clayton Lockett began to speak and roll his head from side to side. Soon, Clayton Lockett's body began to buck and writhe, as if he was trying to raise himself from the gurney to which the Defendants had bound him. Clayton Lockett next tried to raise his head and shoulders away from this gurney. As he did so, he clenched his teeth and grimaced in pain. After enduring 43 minutes of agony, Clayton Lockett was declared dead.

38. The attempted execution identified in paragraphs 36 and 37 inflicted severe pain, unnecessary suffering, and a lingering death on Clayton Lockett, and violated the Eighth and Fourteenth Amendments to the United States Constitution.

39. The attempted execution of Clayton Lockett was the latest in a series of executions by the Defendants that have violated the Eighth and Fourteenth Amendments to the United States Constitution by inflicting severe pain and needless suffering. Other such violations have occurred during the executions of Robyn L. Parks, Scott D. Carpenter, Loyd W. LaFevers, and Michael L. Wilson.

**Count 1 - Eighth Amendment - Lockett Drugs and Procedures.**

40. There is a real and immediate threat that the Defendants will attempt to execute the Plaintiffs using the same drugs and procedures used in the attempted execution of Clayton Lockett, or with similarly untried,

untested, and unsound drugs and procedures.

41.   There is a substantial risk that use of the drugs and procedures identified in paragraph 36 will produce severe pain, needless suffering, and a lingering death for the Plaintiffs. This risk is illustrated by the severe pain, needless suffering, and lingering death inflicted by the Defendants during their attempted execution of Clayton Lockett.

42.   The Defendants have acted, and will act, with deliberate indifference to the risk described in paragraph 41.

43.   If attempted executions of the Plaintiffs are allowed to proceed in the manner described in paragraph 36, the Plaintiffs will be subjected to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

**Count 2 - Eighth Amendment - Midazolam.**

44.   There is a real and immediate threat that the Defendants will attempt to execute the Plaintiffs using midazolam.

45.   The procedure identified in paragraph 30 requires sequential intravenous injection of 100 milligrams of midazolam, 40 milligrams of vecuronium bromide or a comparable non-depolarizing neuromuscular blocking drug of comparable strength, and 200 milliequivalents of potassium chloride.

46.   When administered to an aware individual, 40 milligrams of vecuronium bromide, or a comparable non-depolarizing neuromuscular blocking drug of comparable strength, will produce paralysis and a slow and painful death by asphyxiation. After this agent takes full effect, a person under

9

its influence will be unable to communicate the severe pain and needless suffering being experienced.

47. When administered to an aware individual, 200 milliequivalents of potassium chloride will produce burning and intense pain as it circulates through the body, eventually causing death by cardiac arrest.

48. Either of the modes of death described in paragraphs 46 and 47 violates the Eighth and Fourteenth Amendments to the United States Constitution, by inflicting severe pain, needless suffering, and a lingering death.

49. As used in the procedure identified in paragraph 30, midazolam is incapable of producing a state of unawareness that will be maintained after either of the other two pain-producing drugs, vecuronium bromide (or its substitute) and potassium chloride, is injected.

50. One of the characteristics of midazolam is that it cannot relieve pain. A person who is rendered unaware by midazolam and then subjected to severe pain will return to awareness and experience that pain. For that reason, midazolam is not suitable as a stand-alone anesthetic.

51. The domestic suppliers of midazolam have not labeled it for use as a stand-alone anesthetic.

52. The federal Food and Drug Administration has not approved midazolam for use as a stand-alone anesthetic.

53. A person subjected to lethal injection with midazolam can suffer severe pain and be aware of that pain — even if that person is unable to demonstrate the awareness of that pain, owing to paralysis by

10

vecuronium bromide, or its substitute.

54. As used in the procedure identified in paragraph 30, the high dosage of midazolam carries a substantial risk of producing tonic-clonic seizures and convulsions. Such conditions can result in severe pain and needless suffering.

55. Use of midazolam to execute the Plaintiffs also carries a substantial risk of paradoxical reaction, which occurs when a drug does not work as intended. A paradoxical reaction to midazolam would cause an individual to remain aware as the execution proceeds. As a result of remaining aware, such an individual would experience severe pain and needless suffering as the other injected lethal drugs do their work.

56. There is a substantial risk of paradoxical reaction when midazolam is administered in high doses to individuals with a history of aggression or impulsivity, a history of alcohol abuse, or other psychiatric disorders. These conditions are endemic in Oklahoma's death- row population.

57. There is a substantial risk that use of midazolam to execute the Plaintiffs will produce severe pain, needless suffering, and a lingering death. This risk is illustrated by the severe pain, needless suffering, and lingering death inflicted by the Defendants as they attempted to execute Clayton Lockett using midazolam.

58. By specifying the use of midazolam in executions, and in carrying out executions with that drug, the Defendants have acted and will act with deliberate indifference to the risk identified in paragraph 57.

59. If the attempted executions of the Plaintiffs are allowed to proceed with

11

the use of midazolam, the Plaintiffs will be subjected to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

**Count 3 - Eighth Amendment - Compounded Drugs.**

60.   There is a real and immediate threat that the Defendants will attempt to execute the Plaintiffs using one or more drugs that have been compounded by a compounding pharmacy.

61.   American healthcare providers and patients have long relied on the regulation of pharmaceutical manufacturers by the Food & Drug Administration in order to set the standard for identity, purity, potency, and efficacy of prescription medications.

62.   Pharmacy compounding is a practice by which a pharmacist combines, mixes, or alters ingredients in response to a prescription to create a medication tailored to the medical needs of an individual patient.

63.   Compounded drugs are not FDA-approved. This means that the FDA does not verify the identity, purity, potency, quality, safety, or effectiveness of compounded drugs. This also means that compounded drugs lack any FDA finding of manufacturing quality.

64.   Drugs that have not have been manufactured in a FDA-registered facility under current Good Manufacturing Practices, have no assurance of consistent quality from lot to lot or from container to container.

65.   Without FDA approval of a drug and its manufacturing process, there is no reasonable assurance that the drug has the identity, purity, potency, and efficacy that it is represented to have.

12

66. With compounded drugs, there is a substantial risk that excepient ingredients and active pharmaceutical ingredients, will be obtained from non-FDA-approved sources.

67. There is a substantial risk that any compounded drug to be used in the Plaintiffs' executions will lack the identity, purity, potency, and/or efficacy of its FDA-approved counterpart.

68. There is a substantial risk that use of compounded drugs having the characteristics identified in paragraph 67 will produce severe pain, needless suffering, and a lingering death for the Plaintiffs. Specific harms that can result from use of compounded drugs include lack of efficacy of the anesthetic drug, due to an ingredient of different identity than its FDA-approved counterpart. Even if the anesthetic drug is fully or partially effective, compounded drugs can cause serious harm and severe pain before loss of awareness. Such harms include painful pulmonary embolisms resulting from deviations in potency or formation of precipitates within the body; nausea and vomiting resulting from deviations in potency; suffocation and gasping for breath; immediate anaphylactic reactions or other excruciating effects resulting from contamination with dangerous allergens, bacteria, fungus. or other impurities; and serious burning pain on injection, as a result of incorrect pH.

69. The risks identified in paragraphs 67 and 68 were illustrated by the Defendants' execution of Michael L. Wilson on January 9, 2014, using one or more compounded drugs. Michael Wilson's last words and dying

13

declaration, uttered shortly after he was injected with a compounded drug, were "I feel my whole body burning."

70. In procuring drugs that have been compounded, and in carrying out executions with those drugs, the Defendants have acted and will act with deliberate indifference to the risks identified in paragraphs 67 and 68.

71. If the attempted executions of the Plaintiffs are allowed to proceed with the use of compounded drugs, the Plaintiffs will be subjected to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

## Count 4 - Eighth Amendment - Unsound Procedures and Inadequate Training.

72. There is a real and immediate threat that the Defendants will attempt to execute the Plaintiffs using the procedures set out in the Field Memorandum.

73. The Defendants Patton and Trammell lack the expertise needed to develop procedures that will ensure against severe pain, needless suffering, and a lingering death in the execution process. Moreover, the Defendants Patton and Trammell have admitted that experts were not directly consulted in connection with their development of the procedures set out in the Field Memorandum. The deliberate failure of the Defendants Patton and Trammell to seek out expert assistance has resulted in execution procedures that create a substantial risk of severe pain, needless suffering, and a lingering death.

14

74. Placement of a central-line is an invasive surgical procedure that is difficult to perform, even by a physician, without specific training and experience. Central line placement can cause great pain, as it requires inserting a catheter into a vein that is not externally visible, and that is situated below layers of skin, tissue, and muscle.

75. The procedures set out in the Field Memorandum authorize the physician to establish a central line, but do not require that physician to first attempt to gain peripheral intravenous access in the arms, hands, ankles or feet. This defect was illustrated in the attempted execution of Clayton Lockett, where a purported central line was established in Clayton Lockett's groin, despite the ample availability of sites that could have provided peripheral venous-access.

76. The procedures set out in the Field Memorandum do not require that any backup intravenous line be established in the condemned person. If necessary, such a backup line can serve as a means of delivering an anesthetic drug in the event of a misplaced or faulty primary line. No backup intravenous line was established prior to the attempted execution of Clayton Lockett.

77. The procedures set out in the Field Memorandum do not require that the intravenous catheter and venous-access site remain visible and uncovered, nor do they require that any person on the execution team observe the venous-access site. Without visual observation, those on the execution team cannot monitor for swelling, fluid leakage, or catheter dislodgement. These conditions can indicate intravenous line

15

infiltration, extravasation, migration, or failure, all of which require immediate corrective action. This defect was illustrated in the attempted execution of Clayton Lockett, when the central-line catheter and venous-access site were kept covered and unobserved during the portions of the execution viewed by outside witnesses.

78.  The procedures set out in the Field Memorandum do not require preparation or administration of backup dosages of any of intravenous drugs in case any of the primary dosages prove ineffective. This defect was illustrated in the attempted execution of Clayton Lockett, where no backup dosages were available after depletion of the primary dosages.

79.  The procedures set out in the Field Memorandum fail to require any particular level of experience for the physician, paramedic, executioners, and other personnel, nor do they require any particular training or proficiency level for these personnel. As a result, there is a substantial risk that the procedures will not be administered as written. Such deviations create a substantial risk of severe pain and needless suffering due to, for example, improper placement of intravenous catheters and/or inadequately administered anesthesia.

80.  The procedures set out in the Field Memorandum grant broad discretion to the Defendant Trammell to deviate from any or all of those procedures. The Defendant Trammell has unlimited discretion to modify execution procedures, including modifications to the drugs used, their dosages, the number of intravenous lines used to deliver the drugs, and the personnel involved in carrying out executions.

16

81. When problems arise, as they did during the attempted execution of Clayton Lockett, the procedures set out in the Field Memorandum vest ultimate supervisory and decision-making authority in the Defendant Trammell. Yet her position requires no medical training nor even training in the written procedures set out in the Field Memorandum. The Defendant Trammell is not subject to oversight in making changes or modifications to her lethal-injection procedures, nor are there appropriate checks and balances to ensure against severe pain, needless suffering, and a lingering death during the execution process.

82. Feasible, readily implemented alternative procedures exist that would significantly reduce the substantial risk that the procedures set out in the Field Memorandum will produce severe pain, needless suffering, and a lingering death. These alternative procedures include, but are not limited to, procedures that remedy the deficiencies described above.

83. There is a substantial risk that use of the procedures set out in the Field Memorandum to execute the Plaintiffs will produce severe pain, needless suffering, and a lingering death. This risk is illustrated by the severe pain, needless suffering, and lingering death inflicted by the Defendants as they purportedly used those procedures in an attempt to execute Clayton Lockett.

84. In adopting and implementing the procedures set out in the Field Memorandum, and in carrying out executions with those procedures, the Defendants Patton and Trammell have acted and will act with deliberate indifference to the risk set out in paragraph 83.

85. If the attempted executions of the Plaintiffs are allowed to proceed in accordance with the deficient procedures identified above, the Plaintiffs will be subjected to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

**Count 5 - Notice and Opportunity to Be Heard.**

86. There is a real and immediate threat that the Defendants Patton and Trammell will attempt to execute the Plaintiffs without providing them with timely and meaningful notice as to how they will be executed, including identification of the drugs to be used, the source and characteristics of those drugs, and the method of their administration, including the way that venous access will be obtained.

87. The written procedures set out in the Field Memorandum fail to require any notice to a condemned person as to how that person will be executed, much less identification of the drugs to be used, the source and characteristics of those drugs, and the method of their administration, including the way that venous access will be obtained.

88. The written procedures set out in the Field Memorandum do not themselves provide sufficient notice to the Plaintiffs of how they will be executed. These procedures list multiple options, do not exclude unlisted and unwritten options, and allow the Defendant Trammell to deviate from any of those procedures at will and without notice, thereby making those writings virtually meaningless as a form of notice.

89. In practice, any additional notice that the Defendants Patton and Trammell have undertaken to provide to a condemned person about how

they will be executed has been incomplete, untimely, and insufficient. Any such notice has always come in the context of near-constant revision to the drugs, their sources, and the procedures to be used in any attempted execution.

90. Without timely and meaningful notice, the Plaintiffs will be unable to make a timely and effective legal challenge to unlawful aspects of their proposed execution. The risk of unlawful action by the Defendants is substantial, as evidenced by the severe pain, needless suffering, and lingering death that the Defendants inflicted during their attempt to execute Clayton Lockett, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

91. The Defendants Patton and Trammell are aware that the Plaintiffs need and desire timely and meaningful notice as to how they will be executed, and have acted and will act with deliberate indifference to that need.

92. By failing to require and provide meaningful and effective notice of how the Plaintiffs will be executed, the Defendants Patton and Trammell are depriving Plaintiffs of their right to notice and an opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment, and are subjecting the Plaintiffs to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

## Count 6 - *Ex Post Facto* Punishment and Failure to Protect State-Created Rights.

93. There is a real and immediate threat that the Defendants will attempt

to execute the Plaintiffs without using an ultrashort-acting barbiturate.

94. Prior to November 1, 2011, an Oklahoma statute, 22 O.S. § 1014(A), required that the sentence of death be carried out by continuous, intravenous administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic drug. This method has never, on its face, been held unconstitutional by any appellate court of competent jurisdiction. Each of the Plaintiffs was sentenced while this statute was in effect.

95. In conformity with the statute cited in paragraph 94, each of the Plaintiffs is subject to a judicial death warrant directing that they be executed by continuous, intravenous administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic drug.

96. The statute identified in paragraph 94 was amended, effective November 1, 2011, to require that the punishment of death be carried out by administration of a lethal quantity of a drug or drugs. The amended statute imposes no requirement that any of the drugs be an ultrashort-acting barbiturate.

97. An ultrashort-acting barbiturate can induce and maintain anesthesia more quickly and effectively than other chemical agents, such as those used by the Defendants in their attempted execution of Clayton Lockett. These characteristics assure that an individual will swiftly lose awareness and remain unaware as other agents that produce severe pain are administered to produce death.

98.  As applied to the Plaintiffs, the amended statute increases the punishment for the offense, and makes that punishment less humane and more painful. If the Defendants are permitted to execute the Plaintiffs pursuant to that amended statute, then the Defendants will violate the Ex Post Facto clause of article I, § 10 of the United States Constitution.

99.  The statute described in paragraph 94 and the death warrants described in paragraph 95 give each Plaintiff the protected right to be executed by administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic drug. This right represents an interest in life and liberty protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

100.  The Oklahoma state courts have refused to protect the right identified in paragraph 99.

101.  The Defendants are aware of the right identified in paragraph 99, yet seek to execute the Plaintiffs without using an ultrashort-acting barbiturate, in disregard of that right.

102.  If the attempted executions of the Plaintiffs are allowed to proceed without the use of an ultrashort-acting barbiturate, the right described in paragraph 99 will be unlawfully extinguished and thereby deprive each Plaintiff of life and liberty in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## Count 7 - Eighth Amendment - Experimentation on Captive Human Subjects.

103. By attempting to conduct executions with an ever-changing array of untried drugs of unknown provenance, using untested procedures, the Defendants are engaging in a program of biological experimentation on captive and unwilling human subjects. The Defendants' most recent experiment, on Clayton Lockett, was a failure that produced severe pain, needless suffering, and a lingering death.

104. There is a real and immediate threat that the Defendants will continue their program of human experimentation as they attempt to execute the Plaintiffs.

105. The Defendants are conducting the experiments identified in paragraph 103 without any scientifically sound expectation that these experiments will succeed in producing an execution that does not inflict severe pain, needless suffering, or a lingering death.

106. The Defendants lack the scientific skills needed to design an execution procedure using lethal drugs that does not inflict severe pain, needless suffering, or a lingering death. Moreover, the Defendants have willfully refused to consult directly with any experts having those skills. Human experiments designed without the benefit of these skills have no reasonable prospect of success.

107. The Defendants have failed to test their lethal drugs and execution procedures on non-human animals before using them on captive and unwilling human subjects. Without the benefit of non-human animal-

22

testing results, the Defendants have no reasonable justification for conducting high-risk experiments with lethal drugs on human subjects.

108. There is a substantial risk that the Defendants will continue their unsound and defective experimentation as they attempt to execute the Plaintiffs, and that this experimentation will cause the Plaintiffs to experience severe pain, needless suffering, and a lingering death. This risk is illustrated by the severe pain, needless suffering, and lingering death that the Defendants inflicted on Clayton Lockett.

109. In conducting the experimentation on captive and unwilling human subjects identified in paragraph 103, the Defendants have acted and will act with deliberate indifference to the risk identified in paragraph 108.

110. If the attempted executions of the Plaintiffs are allowed to proceed, the Plaintiffs, who do not consent to being subjects for Defendants' experiments, will be subjected to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

## Count 8 - Interference with Access to Counsel, Government and the Courts.

111. Each Plaintiff has a right to petition the government and the courts, guaranteed by the First and Fourteenth Amendments to the United States Constitution. This right continues to exist during every stage of any attempt to execute that Plaintiff.

112. Each Plaintiff is represented by counsel, and will remain represented by counsel during every stage of any attempt to execute that Plaintiff.

23

113. Each Plaintiff has a right to consult with and be represented by his counsel before the government and the courts, guaranteed by 18 U.S.C. § 3599 and the Fourteenth Amendment to the United States Constitution. This right continues to exist during every stage of any attempt to execute that Plaintiff.

114. The right to counsel and the right to petition the government and courts afford the only mechanism whereby a Plaintiff can challenge violations of the Eighth and Fourteenth Amendment that may occur as any attempted execution proceeds. These rights also afford the sole mechanism for remedying deviations from the procedures set out in the Field Memorandum as an execution takes place.

115. The risk of violations and deviations of the type described in paragraph 114 is substantial, as evidenced by the severe pain, needless suffering, and lingering death inflicted on Clayton Lockett.

116. There is a real and immediate threat that the Defendants Patton and Trammell will attempt to execute the Plaintiffs while interfering with and denying to the Plaintiffs the rights identified in paragraphs 111 and 113.

117. The denial and interference described in paragraph 116 will be effected in part by the Field Memorandum, which prohibits a condemned individual from communicating with his counsel, either in person or by telephone, at any time after 4:30 p.m. on the day set for his execution. The steps of any attempted execution, including insertion and maintenance of intravenous catheters, begin only after communication

24

with counsel is cut off.

118. In order to effectively represent their clients before the government and the courts, counsel must be able to communicate confidentially with their clients during the steps of any attempted execution.

119. The denial and interference described in paragraph 116 will be further effected by denying counsel the ability to observe critical stages of the execution process as an outside witness. An Oklahoma statute, 22 O.S. § 1015 (b), directs the Defendants Patton and Trammell to allow each execution be observed by outside witnesses. These witnesses may include counsel for the condemned person.

120. Notwithstanding the statute identified in paragraph 119, the Defendants Patton and Trammell have used and will use blinds and soundproof barriers to block outside witnesses from seeing and hearing critical stages of the execution process. Outside witnesses will be blocked from seeing and hearing such critical stages as insertion and maintenance of intravenous catheters, proceedings after an attempted execution is called off, and death.

121. In order to effectively represent their clients before government and the courts, counsel must be able to observe all steps of any attempted execution.

122. During the attempted execution of Clayton Lockett, the Defendants Patton and Trammell intentionally denied outside witnesses, including counsel for Clayton Lockett, audiovisual access to such critical stages as insertion and maintenance of intravenous catheters, proceedings after

25

his attempted execution was called off by Director Patton under authority granted by the governor, and the death of Clayton Lockett.

123. The Defendants Patton and Trammell know that the Plaintiffs are represented by counsel, and know that the Plaintiffs want to maintain access to their counsel during each step of the execution process. The Defendants Patton and Trammell also know that the Plaintiffs want their counsel to petition the government and the courts, should violations or deviations of the type described in paragraph 114 take place.

124. If the attempted executions of the Plaintiffs are allowed to proceed while their access to counsel is subject to interference and denial, the Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and under 18 U.S.C. § 3599 will be violated by the Defendants Patton and Trammell.

**Relief Requested.**

The Plaintiffs request:

A. That the Defendants be enjoined from attempting to execute the Plaintiffs, or allowing any attempt to execute the Plaintiffs:

    1. using the drugs and procedures employed in the attempt to execute Clayton Lockett, or similarly untried, untested and unsound drugs and procedures;

    2. using midazolam;

    3. using compounded drugs;

    4. using any of the types of unsound procedures and inadequately

trained personnel identified above;

5.  without providing timely and meaningful notice to the Plaintiffs of how they will be executed, including identification of the drugs to be used, the source and characteristics of those drugs and the method of their administration, including the way that venous access will be obtained;

6.  using drugs that do not include an ultrashort-acting barbiturate;

7.  in the course of human experimentation with drugs and procedures of scientifically unproven efficacy in avoiding severe pain, needless suffering and a lingering death;

8.  while the Plaintiffs' access to counsel is subject to interference or denial.

B.  That a declaratory judgment be awarded declaring that the Plaintiffs have the legal right not to be executed:

1.  using the drugs and procedures employed in the attempt to execute Clayton Lockett, or similarly untried, untested and unsound drugs and procedures;

2.  using midazolam;

3.  using compounded drugs;

4.  using any of the types of unsound procedures and inadequately trained personnel identified above;

5.  without providing timely and meaningful notice to the Plaintiffs of how they will be executed, including identification of the drugs to be used, the source and characteristics of those drugs and the

method of their administration, including the way that venous access will be obtained;

6. using drugs that do not include an ultrashort-acting barbiturate;

7. in the course of human experimentation with drugs and procedures of scientifically unproven efficacy in avoiding severe pain, needless suffering and a lingering death;

8. while the Plaintiffs' access to counsel is subject to interference or denial.

C. An award of attorney fees and costs.[1]

D. Such other relief to which the Plaintiffs may be entitled.

s/ Patti Palmer Ghezzi

Patti Palmer Ghezzi

| | |
|---|---|
| OBA #: | 6875 |
| office: | Federal Public Defender |
| address: | 215 Dean A. McGee Ave. · Suite 109 |
| | Oklahoma City, 73102 |
| telephone: | 405 609 5975 |
| fax: | 405 609 5976 |
| email: | patti_ghezzi@fd.org |

Attorney for Plaintiffs Cole, Cuesta-Rodriguez, Davis, Fairchild, Grant, Grissom, Harmon, Johnson, Littlejohn, Pavatt, Simpson, and Underwood

---

[1] Counsel for Plaintiffs represented by Federal Public Defender offices do not request attorney fees and costs.

28

s/ Randy A. Bauman*

Randy A. Bauman

| | |
|---|---|
| OBA #: | 610 |
| office: | Federal Public Defender |
| address: | 215 Dean A. McGee Ave · Suite 109 |
| | Oklahoma City, OK  73102 |
| telephone: | 405 609 5975 |
| fax: | 405 609 5976 |
| email: | randy_bauman@fd.org |

Attorney for Plaintiffs Cole, Cuesta-Rodriguez, Davis, Fairchild, Grant, Grissom, Harmon, Johnson, Littlejohn, Pavatt, Simpson, and Underwood

s/ Seth A. Day*

Seth A. Day

| | |
|---|---|
| OBA #: | 20670 |
| firm: | Hall, Estill, Hardwick, Gable, Golden, & Nelson, P.C. |
| address: | 100 N. Broadway · Suite 2900 |
| | Chase Tower |
| | Oklahoma City, OK  73102 |
| telephone: | 405 553 2828 |
| fax: | 405 553 2855 |
| email: | sday@hallestill.com |

Attorney for Plaintiffs Warner and Coddington

*Signed by filing attorney with permission.

29

s/ Susanna M. Gattoni*

|  | Susanna M. Gattoni |
|---|---|
| OBA #: | 16922 |
| firm: | Hall, Estill, Hardwick, Gable, Golden, & Nelson, P.C. |
| address: | 100 N. Broadway · Suite 2900 |
|  | Chase Tower |
|  | Oklahoma City, OK  73102 |
| telephone: | 405 553 2828 |
| fax: | 405 553 2855 |
| email: | sgattoni@hallestill.com |

Attorney for Plaintiffs Warner and Coddington


s/ Mark Henricksen*

|  | Mark Henricksen |
|---|---|
| OBA #: | 4102 |
| firm: | Henricksen & Henricksen, Lawyers, Inc. |
| address: | 600 N. Walker Ave. · Suite 220 |
|  | Oklahoma City, OK  73102 |
| telephone: | 405 609 1970 |
| fax: | 405 609 1973 |
| email: | mark@henricksenlaw.com |

Attorney for Plaintiffs Andrew, Glossip and Jackson


*Signed by filing attorney with permission.

s/ David B. Autry*


David B. Autry

OBA #:     11600

address:    1021 N.W. 16th St.

Oklahoma City, OK  73106

telephone:   405 521 9600

fax:    405 521 9669

email:    dbautry44@hotmail.com


Attorney for Plaintiff Hancock


s/ Mark H. Barrett*


Mark H. Barrett

OBA #:     557

address:    111 N. Peters Ave. · Suite 200

Norman, OK  73069

telephone:   405 364 8367

fax:    405 364 8329

email:    barrettlawoffice@gmail.com


Attorney for Plaintiff Jones


s/ Fred L. Staggs*


Fred L. Staggs

OBA #:     8534

address:    510 N.W. 17th St.

Oklahoma City, OK  73103

telephone:   405 990 5523

email:    staggslaw@aol.com


Attorney for Plaintiff Mitchell

*Signed by filing attorney with permission.

31

s/ Gary Peterson*

|  | Gary Peterson |
|---|---|
| OBA #: | 7068 |
| address: | 211 N. Robinson Ave. · Suite 450 South |
|  | Two Leadership Square |
|  | Oklahoma City, OK  73102 |
| telephone: | 405 606 3367 |
| fax: | 866 628 0506 |
| email: | gp@garypeterson.com |

Attorney for Plaintiff Warner

s/ Dale A. Baich*

|  | Dale A. Baich |
|---|---|
| office: | Federal Public Defender |
| address: | 850 W. Adams St. · Suite 201 |
|  | Phoenix, AZ  85007 |
| telephone: | 602 382 2816 |
| fax: | 602 889 3960 |
| email: | dale_baich@fd.org |

Attorney for Plaintiff Wood

*Signed by filing attorney with permission.

32

s/ Kelly Culshaw*

Kelly Culshaw
office:      Federal Public Defender
address:    850 W. Adams St. · Suite 201
            Phoenix, AZ  85007
telephone:  602 382 2816
fax:        602 889 3960
email:      kelly_culshaw@fd.org

Attorney for Plaintiff Wood


s/ Robin C. Konrad*

Robin C. Konrad
office:      Federal Public Defender
address:    850 W. Adams St. · Suite 201
            Phoenix, AZ  85007
telephone:  602 382 2816
fax:        602 889 3960
email:      robin_konrad@fd.org

Attorney for Plaintiff Wood


*Signed by filing attorney with permission.