## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

CHARLES F. WARNER, *et al.*,

                 Plaintiffs,

v.

                                   **Case No: CIV-14-665-F**

KEVIN J. GROSS, *et al.*,

                 Defendants.

## DEFENDANTS' MOTION FOR PROTECTIVE
## ORDER AND BRIEF IN SUPPORT

Defendants respectfully move, pursuant to Fed. R. Civ. P. 26(c), for entry of a protective order which prohibits:

(1) dissemination of information or testimony generated or produced during discovery in this case and designated by any party as "CONFIDENTIAL;"

(2) Plaintiffs' Counsel from providing Plaintiffs (and any other inmate who joins this case) direct access to any of the documents or testimony produced or procured during the course of this litigation by or from any state entity;

(3) Plaintiffs' inquiry into the identities of the members of the execution team and into facts that are reasonably calculated to lead to discovery of the identities of these individuals; and

(4) Plaintiffs' inquiry into matters arising from executions occurring before the series of changes to the lethal injection protocol finalized on September 30, 2014.

(5)   Plaintiffs' Counsel from disseminating any identities of persons, companies, or medical providers purported to be involved in the execution process, regardless of how such information was discovered or determined.

Defendants will provide the Court with a proposed protective order which sets forth the specific relief they are requesting.

Pursuant to LCvR 37.1, I certify that I have met in person with Plaintiffs' counsel, and after conferring in good faith in a sincere effort to resolve our differences, the parties have been unable to reach an accord. Plaintiffs do object to this Motion and Defendants anticipate that they will file a written objection.

## BRIEF IN SUPPORT

## ARGUMENT

Rule 26(c) provides great flexibility to the court to control and limit discovery.

Specifically,

> [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;

2

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

*Id*. Entry of a protective order is within this Court's discretion. *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008). "The 'good cause' standard of Rule 26(c) is 'highly flexible, having been designed to accommodate all relevant interests as they arise.'" *Id*. (quoting *U.S. v. Microsoft Corp*., 165 F.3d 952, 959 (D.C.Cir.1999)).

## I.    DEFENDANTS REQUEST A PROTECTIVE ORDER TO PROHIBIT DISSEMINATION OF INFORMATION AND TESTIMONY DESIGNATED BY EITHER PARTY AS CONFIDENTIAL

Defendants desire a protective order to prevent disclosure of any testimony, policies, procedures, records, and information that have been designated confidential.   This protective order would apply to all state entities with information relevant to these issues. This Court has previously recognized

the confidential nature of some of the documents and information that  may be sought in discovery. *See Hamilton v. Jones*, CIV-06-1193-F (W.D. Okla. filed Oct. 27, 2006) ([Doc. 38], Protective Order filed Dec. 22, 2006); *Anderson v. Jones*, No. CIV-05-825-F (W.D. Okla. filed July 20, 2005) ([Doc. 61], Protective Order filed Feb. 22, 2006). Defendants request that the Court issue a similar protective order in this case.

Much of the information sought in discovery may be rather sensitive in nature and/or may carry unique security implications. For example, in previous lethal injection challenges, Defendants have produced confidential files pertaining to executed inmates. These files contained detailed information about the inmates, their crimes, their next of kin, their dates of birth and social security numbers, and up-to-the-minute security logs detailing the movements and actions during the last 24 hours before the execution. The files also contained contact numbers, home phone numbers, and cell-phone numbers for high ranking officials within the Office of Attorney General and Judges of the Court of Criminal Appeals. The files also contained contact information and license plate numbers for members of the victims' families.  ODOC believes this information to be very sensitive and worthy of a mechanism to protect the confidentiality of the information and records.

4

Courts traditionally afford great deference to the opinions of prison administrators regarding the maintenance of internal security. As the Supreme Court has recognized, "'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.'" *Turner v. Safley*, 482 U.S. 78, 84 (1987) (quoting *Procunier v. Martinez*, 416 U.S. 396, 405-406 (1974)).

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have, as we indicated in *Martinez*, additional reason to accord deference to the appropriate prison authorities.

*Id*. at 84-85.   Here, Defendants request that the Court show deference to their request for a protective order.

Much of the information that will be sought and exchanged has the potential to generate security problems if that information is disseminated. By policy, ODOC provides detailed criteria to determine who has access to inmate records and what level of access is appropriate.   OP-060212 – *Maintenance and Access of Offender Records*, attached as Exhibit 1.   ODOC prohibits unauthorized persons from gaining access to inmate records. Such records

5

contain information about those inmates who pose a threat to the inmate in question, criminal history, gang affiliations, inmate misconduct, visitors and family ties including contact information, and personal property. Policy provides that offender records must be maintained in a restricted area to prevent access by offenders, members of the public, and ODOC employees whose duties do not require access. Employees may even be required to demonstrate their need for the information and provide written authorization from a supervisor prior to accessing the records.   ODOC provides specific criteria to judge when, how, and to whom offender information may be released.

Of course, ODOC also has a policy which limits access to inmate health records.   OP-140108 – *Privacy of Protected Health Information*, attached as Exhibit 2.   Whatever the case, inmates certainly are not authorized to receive information about other inmates. Such information can lead to violence, extortion and the like.   ODOC takes the privacy and security of offender records very seriously.

Defendants request a mechanism to designate information as confidential. Without such a mechanism, Defendants will have no measure of control over what happens to the information once it is released and no assurance that the information will not be made available to the public and

other inmates. Defendants have attached a proposed Protective Order as Exhibit 3 to this Motion that more fully sets forth the nature of the protections they seek.

## II.   DISCOVERY SHOULD NOT INVOLVE MATTERS RELATED TO CLAYTON LOCKETT'S EXECUTION, OR OTHER PREVIOUS EXECUTIONS THAT WERE CONDUCTED UNDER DIFFERENT PROTOCOLS

Defendants further request that discovery be limited in scope to only encompass the issues of the executions moving forward under the new protocol.   Of the protocol-specific complaints raised by Plaintiffs, only one still remains an issue under the new protocol.   Defendants still intend to include the drug Midazolam in the possible drug combinations, although in a dosage much greater than what was previously used.   ODOC now uses the same dosage as is utilized by the State of Florida, which has conducted many executions without incident.   However, this is the only portion of the protocol that remains substantially unaltered.   All other protocol-specific complaints are essentially irrelevant to this suit, as the new protocol makes clear that Plaintiffs will not be executed under the same protocols as Clayton Lockett.   Therefore, backward-looking discovery is both counterproductive and overly burdensome.

The backwards-looking discovery is counterproductive because it does not raise any relevant information as to whether Plaintiffs will be executed in

accordance with the Eighth Amendment.   It has been a constant refrain of the federal courts that past problems with executions do not create a substantial likelihood of future problems.   In fact, this Court has previously approved a protective order that limited to scope of discovery to only include executions performed under the relevant protocol.   Protective Order at 6, *Pavatt v. Jones*, No. 10-141-F (W.D. Okla., Aug. 30, 2010), [Doc. 50].

In *Nooner v. Norris*, the Eight Circuit dealt with a situation similar to this case.   594 F.3d 592, 601-02 (8th Cir. 2010).   The inmates in that case alleged that the Arkansas Department of Corrections had experienced a "series of abortive execution attempts," which the plurality in *Baze v. Rees* indicated could present a substantial likelihood of harm.   *Id*. at 602.   Specifically, the inmates referred to four executions in which the condemned inmates "exhibited signs of consciousness within three minutes of the injection of sodium pentothal."   *Id*. at 601.   The Eighth Circuit pointed out that those four executions had been performed under a previous protocol, and stated that "even if the [Arkansas Department of Corrections] engaged in a 'series of abortive' execution attempts under *previous protocols*, the record does not establish a genuine issue of material facts about whether the Inmates will remained conscious during the injection of the pancuronium bromide and potassium chloride under the *current protocol*.   *Id*. at 602 (emphasis added).

8

This approach has been mirrored in numerous federal and state courts.  *See Lopez v. Brewer*, 680 F.3d 1068, 1074 (9th Cir. 2012) (single, isolated incident of increased pain involved when officials had trouble inserting an IV into an inmate did not give rise to a substantial risk of serious harm); *Dickens v. Brewer*, 631 F.3d 1139, 1149 (9th Cir. 2011) ("Even if the evidence suggested that Arizona's past execution procedures created a substantial risk of harm, that evidence, alone, would not establish an issue of fact as to whether such a risk exists under the [current] Protocol"); *Clemons v. Crawford*, 585 F.3d 1119, 1128 (8th Cir. 2009) ("mere allegation Missouri employed an 'incompetent' and 'unqualified' individual in the past simply does not support the prisoners' allegations Missouri will employ 'incompetent' and 'unqualified' personnel in the future"); *Cooper v. Rimmer*, 379 F.3d 1029, 1033 (9th Cir. 2004) (perceived problems with previous executions do not raise the raise the possibility of unnecessary pain and suffering above a purely speculative level); *Valle v. State of Florida*, 70 So.3d 530, 545 (Fla. 2011) (even assuming problems in previous executions, isolated mishaps do not give rise to an Eighth Amendment claim); *Malicoat v. State of Oklahoma*, 137 P.3d 1234, 1238-39 (Okla. Cr. App. 2006) (concern with accounts of problems with executions do not undermine the conclusion that Oklahoma's procedures are constitutional).

In this case, Plaintiffs have requested a large amount of information regarding the execution of Clayton Lockett.   In addition, Plaintiffs have requested other forms of backwards-looking discovery, including EKG strips dating back to 1980. Plaintiffs have also requested health records from Michael Wilson, who was executed in January of 2014.[1]   Mr. Wilson was executed under a different protocol and with different drugs than Clayton Lockett.   These materials clearly have no relevance to any claims of risk of serious harm stemming the current protocol.   The executions of Clayton Lockett or past inmates were conducted under a completely different protocol.   Therefore, as observed in numerous cases, materials relating to those executions have no relevance to this litigation.   Conducting an exhaustive discovery process on what did or did not occur during that execution is irrelevant, since it provides no guidance on what is or is not substantially likely to occur going forward.

---

[1] Due to the investigation of this matter by the Oklahoma Department of Public Safety Plaintiffs already have access to a significant amount of documentation regarding the execution of Clayton Lockett.   The documents relating to Department of Public Safety's investigation are publically available to the Plaintiffs.   Those documents include information from ODOC and the Dallas County Medical Examiner's office which conducted Mr. Lockett's autopsy.

III.     **AS THE COURT DID IN *HAMILTON V. JONES*, DEFENDANTS REQUEST THAT THE COURT PROHIBIT PLAINTIFFS' COUNSEL FROM PROVIDING PLAINTIFFS DIRECT ACCESS TO ANY OF THE DOCUMENTS OR TESTIMONY PRODUCED OR PROCURED DURING THE COURSE OF THIS LITIGATION**

In *Hamilton v. Jones*, CIV-06-1193-F (W.D. Okla. filed Oct. 27, 2006) [Doc. 38], Protective Order filed Dec. 22, 2006), the Court's protective order prohibited Mr. Hamilton's Counsel from providing Mr. Hamilton access to the documents produced in that litigation. There,

> the Court f[ound] that the prison's unique security interests concerning the execution process outweigh[ed] Plaintiffs' interest in allowing Mr. Hamilton direct access to any of the documents produced during the course of this litigation. This is particularly so in light of the fact that Mr. Hamilton's lack of access to this information will have no bearing on the outcome of the litigation.

*Id*. The Court ordered that Mr. Hamilton was not to be permitted to view photos, videos, or depictions of the execution chamber, or any of the documents produced by Defendants or any of the transcripts generated during discovery.  *Id*.  For similar reasons, Defendants here request an order prohibiting Plaintiffs' Counsel from providing Plaintiffs (and any other inmate who joins this case) access to the documents and testimony produced or procured during the course of this litigation. Much of the information that Plaintiffs' Counsel may acquire has the potential to be sensitive in nature and/or has the potential to create security problems if it falls into the hands of an inmate. Moreover, much of the information that Plaintiffs' Counsel

11

may acquire will likely pertain to other inmates. ODOC goes to great lengths to prevent one inmate from obtaining information about other inmates because of security risks. Given that the constitutionality of ODOC's policy will be judged according to existing case law, there is nothing to be gained from Plaintiffs obtaining direct access to any of the information exchanged or procured during the course of this litigation.

For these reasons, Defendants request an Order preventing Plaintiffs' Counsel from providing Plaintiffs (and any other inmate who joins this case) direct access to any of the documents or testimony produced or procured during the course of this litigation. However, Defendants are not asking for Plaintiffs to be precluded from having access to any non-confidential document that is filed with the Court in a manner making it publicly available through the Court's ECF system.

## IV.     DEFENDANTS REQUEST THAT THE PLAINTIFFS BE PROHIBITED FROM INQUIRING INTO THE IDENTITIES OF MEMBERS OF THE EXECUTION TEAM AND INTO FACTS THAT ARE REASONABLY CALCULATED TO LEAD TO DISCOVERY OF THEIR IDENTITIES

Being involved in executions has become a decidedly dangerous and precarious activity.  In the recent past, a pharmacy that was identified as being involved in supplying execution drugs received a bomb threat, and was sued in federal court for their involvement.  (*Email Threat*, attached as Exhibit 4; *Complaint* in the United States District Court for the Northern District of Oklahoma,

attached as Exhibit 5).    Also, an out-of-state pharmacist declined to continue supply

drugs due to threats and harassment.   (*Letter*, attached as Exhibit 6).   These

incidents underscore the importance of preventing those identities from being

released.

Recognizing the importance of anonymity of participants in the execution

process, the State of Oklahoma enacted OKLA. STAT. ANN. tit. 22, § 1015.   That

statute provides that

> The identity of all persons who participate in or administer the
> execution process and persons who supply the drugs, medical supplies
> or medical equipment for the execution shall be confidential and shall
> not be subject to discovery in any civil or criminal proceedings. The
> purchase of drugs, medical supplies or medical equipment necessary to
> carry out the execution shall not be subject to the provisions of the
> Oklahoma Central Purchasing Act.

*Id*.

Parties are statutorily barred from disclosing the identities of participants in

the execution process.   The State of Oklahoma took this step because the

participants have a privacy interest in not being subjected to public scrutiny based on

their involvement in an event that engenders so much controversy.   Also, the State

seeks to protect the safety of those participants from threats, harassment, and

possible violence.

Plaintiffs have submitted discovery requests that seek to obtain the identities of those involved in the execution process.   In addition, Plaintiffs have already listed the names of individuals that they anticipate were members of the execution team in Rule 26 disclosures.   Further, in a new lawsuit filed by attorney Mark Henrickson, who is also a named counsel of record in this suit, the plaintiff names a doctor that the plaintiff alleges was a member of the execution team, in blatant disregard for OKLA. STAT. tit. 22, § 1015(B).   Defendants therefore request that this Court prohibit Plaintiffs' from inquiring into the identities of the members of the execution, or into facts that are reasonably calculated to lead to discovery of their identities.   Also, Defendants request that Plaintiffs make no more disclosures, claims, or allegations regarding identities of execution team members, regardless of how they discover said information or even if they are merely alleging someone is a member of the execution team.   Otherwise, the privacy and safety of these individuals could be compromised, and ODOC will face the untenable choice of complying with discovery rules or complying with state law.   For that reason, Defendants seek a protective order.

## CONCLUSION

This Court should enter the proposed protective order in this case.   First, due to the sensitive nature of the information that will be exchanged during discovery, it

is imperative that such information is kept confidential by Plaintiffs' Counsel, and is not disseminated to any individual or entity, including the Plaintiffs.  Also, this Court should prohibit Plaintiffs from seeking discovery of the identities of execution participants, and from seeking facts that could reasonably be calculated to lead to discovery of those identities.   Further, Plaintiffs' counsel should be prohibited from disclosing the identities of individuals or corporations which they allege are or were members of the execution team.   Finally, this Court should restrict discovery to facts and circumstances that are relevant to the executions under the new protocol, not executions under past protocols.   This protective order should apply to all state entities that have relevant information regarding executions in this state.

Respectfully submitted,

/s/Aaron J. Stewart

**JOHN D. HADDEN, OBA#18716**
**JEB E. JOSEPH, OBA#19137**
**AARON J. STEWART, OBA#31721**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK   73105
Telephone:   (405) 521-3921
Facsimile:   (405) 521-4518
Email: john.hadden@oag.ok.gov
Email: jeb.jospeh@oag.ok.gov
Email: aaron.stewart@oag.ok.gov
*Attorney for Defendants Burrage, Gross, Haynes, Henke, Neal, Patton, Roach and Trammell*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of October2014, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Patti Palmer Ghezzi
Randy A. Bauman
FEDERAL PUBLIC DEFENDER
215 Dean A. McGee Ave., Ste. 109
Oklahoma City, OK 73102
Email: patti_ghezzi@fd.org
Email: randy_bauman@fd.org
*Attorneys for Plaintiffs, Cole, Cueste-Rodriguez, Davis, Fairchild, Grant, Grissom, Harmon, Johnson, Littlejohn, Pavatt, Simpson and Underwood*

Mark Henricksen
Lanita Henricksen

Seth A. Day
Susanna M. Gattoni
HALL ESTILL HARDWICK GABLE
   GOLDEN & NELSON, P.C.
100 N. Broadway, Ste. 2900
Oklahoma City, OK 73012
Email: sday@hallestill.com
Email: sgattoni@hallestill.com
*Attorneys for Plaintiffs Warner and Coddington*

David B. Autry
1021 NW 16th Street

16

HENRICKSEN & HENRICKSEN,
    LAWYERS, INC.
600 N. Walker Ave., Ste. 200
Oklahoma City, OK 73102
Email: mark@henricksenlaw.com
*Attorney for Plaintiffs Andrew, Glossip, Jackson and Hancock*

Mark H. Barrett
111 N. Peters Ave., Ste. 200
Norman, OK 73069
Email: barrettlawoffice@gmail.com
*Attorney for Plaintiff Jones*

Gary Peterson
211 N. Robinson Ave., Ste. 450 South
Two Leadership Square
Oklahoma City, OK 73102
Email: gp@garypeterson.com
*Attorney for Plaintiff Warner*

Oklahoma City, OK 73106
Email: dbautry44@hotmail.com
*Attorney for Plaintiff Hancock*

Fred L. Staggs
510 NW 17th St.
Oklahoma City, OK 73013
Email: staggslaw@aol.com
*Attorney for Plaintiff Mitchell*

Dale A. Baich
Kelly Culshaw
Robin C. Konrad
FEDERAL PUBLIC DEFENDER
850 W. Adams St., Ste. 201
Phoenix, AZ 85007
Email: dale_baich@fd.org
Email: kelly_culshaw@fd.org
Email: robin_konrad@fd.org
*Attorney for Plaintiff Wood*

/s/Aaron J. Stewart

17