## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| **CHARLES WARNER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-665-F** |
| | ) | |
| **KEVIN GROSS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION FOR PRELIMINARY INJUNCTION
## ON BEHALF OF PLAINTIFFS
## WARNER, GLOSSIP, GRANT, AND COLE

PATTI PALMER GHEZZI, OBA # 6875
Assistant Federal Public Defender
Federal Public Defender's Office
Western District of Oklahoma
215 Dean A. McGee, Suite 707
Oklahoma City, OK  73102
Telephone:  (405) 609-5975
Facsimile:   (405) 609-5976
Patti_Ghezzi@fd.org

COUNSEL FOR PLAINTIFFS

November 10, 2014

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

    I.  Procedural Background of Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.  Preliminary Injunction Standard.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    III.  Claims upon Which P/I Plaintiffs Can, at this Time, Demonstrate
        a Likelihood of Success on the Merits. . . . . . . . . . . . . . . . . . . . . . . 7

        Count 5 - Notice and Opportunity to Be Heard; Right to Counsel
        and to Petition the Courts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        Count 2 - Eighth Amendment - Midazolam . . . . . . . . . . . . . . . . . 10

        Count 4 - Eighth Amendment - Unsound Procedures and
        Inadequate Training . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        Count 7 - Eighth Amendment - Experimentation on Captive
        Human Subjects . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        Count 8 - Right of Access to Information, to Counsel, and to the
        Courts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    IV.  The Other Factors Warrant Preliminary Relief.. . . . . . . . . . . . . . . 16

    V.  Conclusion .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## <u>TABLE OF AUTHORITIES</u>

### <u>SUPREME COURT CASES</u>

*Baze v. Rees,* 553 U.S. 35 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brewer v. Landrigan,* 131 S.Ct. 445 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nelson v. Campbell,* 541 U.S. 637 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

*Univ of Tex. V. Camenisch,* 451 U.S. 390 (1981) . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7 (2008) . . . . . . . . . . . . . . 5

### <u>FEDERAL COURT CASES</u>

*Attorney General of Oklahoma v. Tyson Foods, Inc.,*
    565 F.3d 769 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

*Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.,*
    966 F.2d 460 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hobby Lobby Stores, Inc., v. Sebelius,*
    723 F.3d 1114 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Kikumura v. Hurley,*
    242 F.3d 950 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Ohio Execution Protocol Litig.,*
    840 F.Supp.2d 1044 (S.D. Ohio 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*RoDa Drilling Co. v. Siegal,*
    552 F.3d 1203 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

### <u>FEDERAL STATUTES</u>

Fed. R. Civ. P. 65(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## Motion for Preliminary Injunction on behalf of Plaintiffs Warner, Glossip, Grant, and Cole

Plaintiffs Charles F. Warner, Richard E. Glossip, John M. Grant, and Benjamin R. Cole (referred to collectively as "P/I Plaintiffs") move for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(a), and in accordance with this Court's order (Doc. 79). P/I Plaintiffs currently have execution dates scheduled as follows: Warner on January 15, 2015; Glossip on January 29, 2015; Grant on February 19, 2015; and Cole on March 5, 2015).  Plaintiffs filed an Amended Complaint on October 31, 2014 (Doc. 75), and P/I Plaintiffs now seek a preliminary injunction that would maintain the status quo by barring Defendants from implementing the September 30, 2014 Field Memorandum and its execution procedures until this litigation is complete and this Court has had a chance to rule on the merits.

## I.     Procedural Background of Case.

On June 25, 2014, less than two months after the botched execution of Clayton Lockett, Plaintiffs filed their Complaint alleging eight counts of constitutional violations that Defendants have committed or will commit. (Doc. 1). On July 16, Defendants filed a motion to dismiss certain parties—including some but not all

Defendants and some but not all Plaintiffs. (Doc. 40).  Also on July 16,

Defendants Patton and Trammell filed both an Answer (Doc. 41), and a

motion to stay the case pending the governor-ordered investigation by

the Oklahoma Department of Public Safety (DPS) into the

circumstances of Mr. Lockett's death (Doc. 42).

The Court set a hearing for September 18, on the motion to stay.

(Doc. 46). Before the scheduled hearing, on September 4, DPS released

an Executive Summary of its investigation. (Doc. 49). Defendants, at

the Court's behest, filed a copy of the Executive Summary on September

16, and represented that DPS would be providing the final report in the

coming weeks. (Doc. 49 at 1 n.1). To date, Plaintiffs have not received a

final report, or any additional documents regarding DPS's investigation,

as promised.[1]

At the hearing on September 18, the Court denied Defendants'

motion to stay the case and ordered the parties to proceed with

discovery. (Doc. 50). Plaintiffs promptly began serving Defendants and

non-parties with discovery requests. On September 30, 2014, the

---

[1] Plaintiffs subpoenaed Lockett records from DPS on September 23, 2014. DPS recently reported it expects to release these records on its website no later than November 12, 2014. (Doc. 86).

Oklahoma Department of Corrections (ODOC) released a new version of its Field Memorandum, OP-040301, titled Execution of Offenders Sentenced to Death. (Doc. 55).

On October 8, the parties met in attempt to reach an agreement on the temporal scope of discovery, as well as on the terms related to confidentiality for a protective order. During that meeting, it became clear to counsel for both parties that the Court's intervention was necessary. Accordingly, the parties requested and the Court scheduled a status conference for October 15. (Doc. 56). The day before the conference, Defendants moved for a protective order that would 1) limit the scope of discovery to information after September 30, 2014, when the new Field Memorandum was released, and 2) prevent Plaintiffs from discovering information regarding individuals involved in executions. (Doc. 64).

At the time of the October 15th status conference, Plaintiff Warner had an execution date set for November 13; Plaintiff Glossip had an execution date set for November 20; and Plaintiff Grant had an execution date set for December 4. Prior to the status conference, the Oklahoma Attorney General asked the Oklahoma Court of Criminal

Appeals (OCCA) to postpone these dates, but only for sixty days. (Doc.
61-1). The Attorney General also asked the OCCA to set an execution
date for Plaintiff Cole. (Doc. 62-1). Pointedly, the State of Oklahoma did
not move to vacate the existing dates in light of the need to resolve this
litigation. Rather, the State asked to briefly postpone the dates for
Messrs. Warner, Glossip, and Grant because ODOC did not have the
necessary drugs, had not secured commitments from required medical
personnel, and had not completed training in the new procedures.

    During the October 15th status conference, the Court indicated
that it would not decide the scope of discovery or the confidentiality
matters without full briefing on the issues. (Tr. Oct. 15, 2014 at 6:5-17).
On October 24, 2014, the OCCA granted the State's motion as requested
and reset execution dates for Plaintiffs Warner, Glossip, and Grant and
set an execution date for Plaintiff Cole. (Doc. 71-1). The OCCA did so
despite objection by P/I Plaintiffs and notice to the state court this
litigation was in the early stages and could not, as this Court stated at
the status conference, "be fairly determined in an unduly short period of
time." (Tr. Oct. 15, 2014 at 17:18).

Plaintiffs filed their amended complaint on October 31, which incorporated claims based on the new Field Memorandum. (Doc. 75). Both parties filed supplemental briefing on the scope of discovery and confidentiality issues. (Docs. 74 & 82).

On November 3, 2014, the Court set a hearing on Defendants' motion for a protective order. (Doc. 77). On November 4, the Court ordered any motion for preliminary injunction be filed by November 10, 2014. (Doc. 79). On November 6, the Court entered a scheduling order for the preliminary injunction, including setting dates for witness lists to be provided, discovery to be completed, trial briefs to be submitted, and dates for an evidentiary hearing. (Doc. 88). P/I Plaintiffs now timely file their motion for preliminary injunction.

## II.  Preliminary Injunction Standard.

To be entitled to a preliminary injunction, plaintiffs must demonstrate (1) that they will likely succeed on the merits of their claim(s); (2) that without preliminary relief, they will likely suffer irreparable harm; (3) that "the balance of equities tips in [their] favor"; and (4) that "an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In balancing these four factors, the Tenth Circuit has also considered whether there are serious

questions regarding the merits of the claims at issue. *See generally Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).

"[T]he primary goal of a preliminary injunction is to preserve the pre-trial status quo. . . ." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1202 (10th Cir. 2009). As the Tenth Circuit has explained, three types of preliminary injunctions are "disfavored." *Id.* at 1208 n.3. One that alters the status quo by forcing non-moving party to take affirmative action; one that is mandatory; and one that gives the movant all the relief it would be entitled to if it prevailed during trial. *Id.* Where the moving party is *not* seeking a disfavored injunction, then the "modified likelihood-of-success-on-the-merits" test—the serious-questions test—is appropriate. *Id.* The showing required by the movant is less stringent when the injunction is not one of the disfavored types. P/I Plaintiffs here are not seeking a disfavored preliminary injunction.

"[P]reliminary injunctions are 'customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *Attorney General of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769 (10th Cir. 2009) (quoting *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981)). For that reason, the moving

6

party is not required to "prove his case in full at a preliminary-injunction hearing." *Id.* (quoting *Camenisch,* 451 U.S. at 395).

Where the plaintiff is also seeking an injunction that would result in a stay of execution, the Court must "consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson v. Campbell*, 541 U.S. 637, 649 (2004).

## III.   Claims upon Which P/I Plaintiffs Can, at this Time, Demonstrate a Likelihood of Success on the Merits.

Plaintiffs' Amended Complaint has alleged eight counts for relief. (Doc. 75). In this motion, P/I Plaintiffs seek a preliminary injunction on only five of those counts. This is due, in part, to the fact that discovery has not yet been afforded to Plaintiffs. Also, this preliminary injunction is unique in that evidence relating to count one is necessarily connected factually with counts two, four, five, and six. And, Defendants have not given PI/Plaintiffs notice of whether midazolam (count two) or compounded drugs (count three) will be used during their executions.[2]

───────────────

[2] Plaintiffs are at a disadvantage at this stage of the litigation in being able to show a likelihood of success on the merits regarding Count 3, which challenges the use of compounded drugs. Unlike midazolam—which, at least currently, is provided by an FDA-approved

Moreover, P/I Plaintiffs are cognizant of the fact that a preliminary injunction motion cannot be based on speculation, but rather must be based on facts. *See Brewer v. Landrigan*, 131 S.Ct. 445 (2010) (Mem.) (reversing grant of preliminary injunction where plaintiff could only speculate as to the risk of harm).[3] Based on the limited facts Plaintiffs currently know, the P/I Plaintiffs can demonstrate a likelihood of success on the merits on the following counts:

### Count 5 - Notice and Opportunity to Be Heard; Right to Counsel and to Petition the Courts.

P/I Plaintiffs have a real and immediate concern that Defendants will attempt to execute them without timely and meaningful notice as to how they will be executed. Under the September 30, 2014 Field Memorandum, Defendants are only required to inform the condemned prisoner ten days before his scheduled execution of the drug formula and procedures to be used and whether the drugs used will be

---

manufacturing source—the use of compounded drugs requires discovery into the compounding source. Upon knowing the source, Plaintiffs will be able to prove risks involved in using a compounder.

[3] In *Landrigan*, the State refused to provide information to the plaintiff regarding the source of its lethal-injection drugs, which plaintiff learned only days before his execution were illegally imported from a foreign source.

compounded. At the time of this filing, P/I Plaintiffs have no knowledge

if Defendants will carry out their executions using midazolam in

combination with one or two other drugs; if they will use sodium

thiopental; or if they will use pentobarbital. P/I Plaintiffs also have no

knowledge if Defendants will carry out their executions using

compounded drugs. As of October 10, 2014, Defendants did not even

have the drugs that they intended to use in executions. (Doc. 61-1 at 3).

Under the September 30, 2014 Field Memorandum, Defendant

Patton has the sole discretion to determine what chemicals shall be

used in an execution. He also may deviate or adjust any procedures

based upon his sole determination that such deviation or adjustment is

required. Therefore, there is no assurance that the condemned prisoner

will receive even ten-day notice of what drugs and procedures will be

used to carry out the scheduled execution if Defendant Patton

determines a deviation from the notice provisions is required. Because

Defendants need not provide sufficient advance notice to condemned

prisoners of the method of execution they intend to use in executions,

Plaintiffs are being deprived of their due process rights to fairly litigate

any claims that would arise from the selection of drugs or protocol

deviations that occur. P/I Plaintiffs can show a likelihood of success on the merits of Count 5.

## Count 2 - Eighth Amendment - Midazolam.

P/I Plaintiffs have a real and immediate concern that Defendants will attempt to execute them using midazolam as part of either a three-drug formula or a two-drug formula. Either drug formula using midazolam has resulted in the agonizing and aware suffering of prisoners. If Defendants use midazolam as part of a drug protocol, there is a substantial and objectively intolerable risk of harm that P/I Plaintiffs will suffer unnecessary pain. *Baze v. Rees*, 553 U.S. 35, 50 (2008). This objectively intolerable risk is heightened in this case where Defendants are not subjectively blameless for their actions. *See id.*

The second and third drugs that are injected after midazolam are known to cause severe and excruciating pain and suffering in violation of the Eighth Amendment. *Id.* at 53. Defendants are aware that midazolam is not sufficient to anesthetize a prisoner, as evidenced by Mr. Lockett's execution. As a result, Defendants' decision to use midazolam as the first drug in a three-drug formula creates an

objectively intolerable risk for which Defendants cannot be subjectively blameless.

Defendants are also aware that the midazolam used in combination with hydromorphone will result in a prolonged, agonizing death. In the only executions using this combination of drugs, the prisoners gasped for breath continuously until death. One execution lasted 26 minutes; the other 117 minutes. Despite knowing of these other botched executions where it is undisputed that the prisoners each gasped for air for an extended period of time, Defendants have selected this drug formula as part of their protocol. The use of midazolam combined with hydromorphone is also an objectively intolerable risk for which Defendants cannot be subjectively blameless. P/I Plaintiffs can show a likelihood of success on the merits of Count 2.

### Count 4 - Eighth Amendment - Unsound Procedures and Inadequate Training.

P/I Plaintiffs have a real and immediate concern that Defendants will attempt to execute them using procedures under the September 30, 2014 Field Memorandum, which do not adequately protect against the harms that occurred during the execution of Clayton Lockett. The Field Memorandum provides Defendant Patton with unfettered discretion to

11

make any alterations as he sees fit. Thus, any protections that appear on the face of the Field Memorandum can be removed at any given time. The September 30, 2014 Field Memorandum creates unnecessary and objectively intolerable risks in violation of P/I Plaintiffs' constitutional rights.

The terms of the Field Memorandum do not prevent Defendants from retaining unqualified IV Team members, who could make the same mistakes as the medical personnel who participated in Mr. Lockett's execution. Although the Executive Summary recommended that an individual who is medically trained be present to view the IV line during an execution, the September 30, 2014 Field Memorandum has no such requirement. Likewise, the Field Memorandum has no contingency procedures, including ensuring necessary drugs are readily available, in the event similar circumstances to what happened during Mr. Lockett's execution reoccur during another execution.

Training for the H-unit Section teams (Restraint and Special Operations teams) under the September 30, 2014 Field Memorandum includes periodic on-site practice of ten training scenarios within twelve months of an execution, which cannot be accomplished by the dates of

P/I Plaintiffs' executions. As of October 10, 2014, Defendants indicated that they were not able to complete all necessary training for then-scheduled executions nor had they obtained participants for the IV Team. (Doc. 61-1 at 3).

Training of the IV team remains minimal, with a single training session required within a day of a scheduled execution. The IV team, the only team with medical participants, receives no training in issues with offender IV access, consciousness checks, or unanticipated medical issues. It is unlikely that Defendants will be able to cobble together the necessary personnel and conduct the proper training in preparation for executions in two months.

If Defendants are to be faithful to the September 30, 2014 Field Memorandum, they must conform to it. Instead, out of the gate, Defendants violate one of the promises they made in the wake of Mr. Lockett's execution – to fully and properly train those who carry out executions. Because the new written lethal-injection procedures do not protect P/I Plaintiffs from an objectively intolerable risk of harm and suffering, they do not withstand constitutional muster. P/I Plaintiffs can show a likelihood of success on the merits of Count 4.

**Count 7 - Eighth Amendment - Experimentation on Captive Human Subjects.**

P/I Plaintiffs have a real and immediate concern that Defendants will attempt to execute them using experimental and untested procedures. Defendants have admitted that no experts were consulted in the development of the three-drug protocol using midazolam that was used in Mr. Lockett's execution. Defendants' September 30, 2014 Field Memorandum includes a new drug formula consisting of midazolam and hydromorphone. That combination of drugs has only been used in two executions—one in Ohio and one in Arizona—both of which resulted in the prisoner gasping for air for an extended period of time. Moreover, the administration of that two-drug formula as set forth in the September 30, 2014 Field Memorandum has not been tested on non-human animals. Defendants continue to experiment on captive subjects by using untested procedures that produce unknown results. As such, P/I Plaintiffs can show a likelihood of success on the merits of Count 7.

**Count 8 – Right of Access to Information, to Counsel, and to the Courts.**

P/I Plaintiffs have a real and immediate concern that Defendants will prevent them from being able to access information, access their counsel, and in turn access the courts on the day of their executions. P/I Plaintiffs have a constitutional right to access information about historically open governmental proceedings. Because an execution has historically been open to the public, P/I Plaintiffs are being deprived of their right of access to information—such as the execution drug source, the rationale for selecting the drugs, or the training and qualifications of executioners—that Defendants refuse to provide. P/I Plaintiffs are entitled to this information under the First Amendment.

Moreover, P/I Plaintiffs have a real and immediate concern that they will be deprived of their right of access to counsel on the day of their execution. On the day that Mr. Lockett was executed, Mr. Lockett was denied his right to counsel and the courts when Defendants prevented counsel from seeing Mr. Lockett after he allegedly attempted suicide. Mr. Lockett also was denied his right to counsel and the courts during the numerous attempts to set an IV line because counsel could not see what was happening and was not provided any information

concerning what was taking place during the execution process. Mr. Lockett was also denied his right to counsel and the courts after the blinds were closed and the execution was allegedly ordered stopped on the authority of the Governor. The September 30, 2014 Field Memorandum has no provisions to remedy the denial of right to counsel and the courts that occurred during Mr. Lockett's last day of life. Further, the September 30, 2014 Field Memorandum imposes gag orders that restrict information that might otherwise be available to identify flaws in the execution process, all in derogation of the P/I Plaintiffs' constitutional rights. On these facts, P/I Plaintiffs can show a likelihood of success on the merits of Count 8.

## IV.   The Other Factors Warrant Preliminary Relief.

By showing a likelihood of success on the merits of their claims, P/I Plaintiffs can also show that they will suffer irreparable harm. If Defendants are permitted to carry out their executions prematurely and before the opportunity for complete discovery and a trial on the merits, they will violate P/I Plaintiffs' constitutional rights. There is nothing more final and irreversible than death. If P/I Plaintiffs are unconstitutionally executed, the injury is irreparable.

The issuance of a preliminary injunction is also in the public interest. *Tyson Foods, Inc.*, 565 F.3d at 788. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013). Indeed, "the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights." *In re Ohio Execution Protocol Litig.*, 840 F.Supp.2d 1044, 1059 (S.D. Ohio 2012) (citation omitted).

The balance of equities tips in P/I Plaintiffs favor. This lawsuit was brought as soon as practicable after Mr. Lockett's execution and contained serious allegations of constitutional violations. Moreover, Plaintiffs have been attempting to discover what occurred during Mr. Lockett's execution to ensure that protections are in place to avoid it happening again. Defendants initially moved to stay the litigation, and have continued to battle Plaintiffs and slow-walked what discovery would be provided. As of this filing, Plaintiffs have been provided only very limited information from Defendants.

This Court should keep in mind that P/I Plaintiffs are not, at this time, seeking an injunction to forever prevent the State from carrying out their sentences. Rather, P/I Plaintiffs are only seeking to enjoin Defendants from attempting to execute them unconstitutionally and before a trial on the merits can be held. This Court should not permit executions to proceed before it has the opportunity to review Plaintiffs' fully developed claims. The delay resulting from granting the relief sought here will have little adverse effect on the State's interest and will ensure that it does not perform an unconstitutional execution. *See Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 966 F.2d 460, 462 (9th Cir. 1992) (Noonan, J. dissenting from grant of writ of mandate) ("The state will get its man in the end.  In contrast, if persons are put to death in a manner that is determined to be cruel, they suffer injury that can never be undone, and the Constitution suffers an injury that can never be repaired."). Here, equity favors the issuance of the preliminary injunction.

Moreover, in addition to satisfying the standard for preliminary injunction, P/I Plaintiffs have not been dilatory in seeking relief in this case. Plaintiffs amended their complaint thirty days after Defendants

amended their lethal-injection procedures. This motion is being filed one week after the Court accepted the amended complaint, and over two months before the first of the four scheduled executions. Given the terms of the September 30, 2014 Field Memorandum, including the fact that Defendants only need to provide prisoners with ten days' notice of which drug formula will be used in an execution, P/I Plaintiffs were cautious of the appropriate time to bring this motion. Consistent with this Court's order (Doc. 79), P/I Plaintiffs are timely filing this motion. For these reasons, P/I Plaintiffs have not "delayed unnecessarily" in bringing their claims, and the Supreme Court's concern in *Nelson* has been satisfied.

## V.   Conclusion.

Because P/I Plaintiffs can demonstrate a likelihood of success on the merits of their claims set forth in this motion, and because the other factors tip in favor of P/I Plaintiffs, this Court should grant a preliminary injunction to prevent Defendants from implementing unsound procedures and practices, preserve the status quo and allow P/I Plaintiffs to fully litigate all their claims in the normal course.

P/I Plaintiffs specifically move for an order granting a preliminary injunction that restrains each Defendant, each of their officers, agents,

servants, employees and attorneys, and each other person acting in concert or participating with them, from executing or attempting to execute any of the P/I Plaintiffs:

    a.  using any drugs or procedures, for which Defendants have not provided adequate notice;

    b.  using any of the drugs and procedures employed, in whole or in part in the attempt to execute Clayton Lockett, or any colorable variations thereof;

    c.  using midazolam;

    d.  using any drug or combination of drugs that is experimental and being used on captive human subjects;

    e.  using unsound execution procedures with unqualified and inadequately trained individuals performing the execution; and

    f.  without providing access to necessary and relevant information about the execution and while interfering with P/I Plaintiffs' access to counsel and the courts.

Respectfully submitted,


*s/ Patti P. Ghezzi*

Patti P. Ghezzi, OBA #6875
Office of the Federal Public Defender
215 Dean A. McGee Ave.
 Suite 109
Oklahoma City, 73102
Telephone:  405 609 5975
Facsimile:  405 609 5976
Email:  patti_ghezzi@fd.org

*Attorney for Plaintiffs Cole, Cuesta-Rodriguez, Davis, Fairchild, Grant, Grissom, Harmon, Johnson, Littlejohn, Pavatt, Simpson, and Underwood*

_s/ Randy A. Bauman_*

Randy A. Bauman, OBA #610
Office of the Federal Public Defender
215 Dean A. McGee Ave
  Suite 109
Oklahoma City, OK  73102
Telephone:  405 609 5975
Fascimile:  405 609 5976
Email:  randy_bauman@fd.org

_Attorney for Plaintiffs Cole, Cuesta-Rodriguez, Davis, Fairchild, Grant, Grissom, Harmon, Johnson, Littlejohn, Pavatt, Simpson, and Underwood_

_s/ Mark Henricksen_*

Mark Henricksen, OBA #4102
Henricksen & Henricksen, Lawyers, Inc.
600 N. Walker Ave.
  Suite 220
Oklahoma City, OK  73102
Telephone:  405 609 1970
Facsimile:  405 609 1973
Email:  mark@henricksenlaw.com

_Attorney for Plaintiffs Andrew, Glossip and Jackson_

_s/ David B. Autry_*

David B. Autry, OBA #11600
1021 N.W. 16th St.
Oklahoma City, OK  73106
Telephone:  405 521 9600
Facsimile:  405 521 9669
Email:  dbautry44@hotmail.com

_Attorney for Plaintiff Hancock_


_s/ Mark H. Barrett_*

Mark H. Barrett, OBA #557
111 N. Peters Ave.
  Suite 200
Norman, OK  73069
Telephone:  405 364 8367
Facsimile:  405 364 8329
Email:  barrettlawoffice@gmail.com

_Attorney for Plaintiff Jones_


_s/ Fred L. Staggs_*

Fred L. Staggs, OBA #8534
510 N.W. 17th St.
Oklahoma City, OK  73103
Telephone:  405 990 5523
Email:  staggslaw@aol.com

_Attorney for Plaintiff Mitchell_

23

<u>s/ Gary Peterson</u>*

Gary Peterson, OBA #7068
211 N. Robinson Ave.
  Suite 450 South
Two Leadership Square
Oklahoma City, OK  73102
Telephone:  405 606 3367
Facsimile:  866 628 0506
Email:  gp@garypeterson.com

*Attorney for Plaintiff Warner*


<u>s/ Dale A. Baich</u>*

Dale A. Baich
Office of the Federal Public Defender
850 W. Adams St.
  Suite 201
Phoenix, AZ  85007
Telephone:  602 382 2816
Facsimile:  602 889 3960
Email:  dale_baich@fd.org

*Attorney for Plaintiff Wood*

24

*s/ Kelly Culshaw*\*

Kelly Culshaw
Office of the Federal Public Defender
850 W. Adams St.
  Suite 201
Phoenix, AZ  85007
Telephone:  602 382 2816
Facsimile:  602 889 3960
Email:  kelly_culshaw@fd.org

*Attorney for Plaintiff Wood*


*s/ Robin C. Konrad*\*

Robin C. Konrad
Office of the Federal Public Defender
850 W. Adams St.
  Suite 201
Phoenix, AZ  85007
Telephone:  602 382 2816
Facsimile:  602 889 3960
Email:  robin_konrad@fd.org

*Attorney for Plaintiff Wood*


*Signed by filing attorney with permission.


25

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of November, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

**JOHN D. HADDEN, OBA#18716**
**AARON J. STEWART, OBA#31721**
**JEB E. JOSEPH, OBA#19137**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: john.hadden@oag.ok.gov
Email: aaron.stewart@oag.ok.gov
Email: jeb.joseph@oag.ok.gov
*Attorney for Defendants Burrage, Gross, Haynes, Henke, Neal, Patton, Roach and Trammell*

*s/ Patti Palmer Ghezzi*
PATTI PALMER GHEZZI