IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES WARNER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-14-665-F |
| ) | |
| KEVIN GROSS, *et al*, ) | |
| ) | |
| Defendants. ) | |

**Plaintiffs' Preliminary Hearing Brief**[1]

Come now Plaintiffs Warner, Glossip, Grant, and Cole (hereinafter "Plaintiffs") and present their Preliminary Hearing Brief as ordered by this Court. (Doc. 88) Plaintiffs have set forth detailed facts in their proposed findings and will not repeat that exercise here. Plaintiffs adopt those facts but summarize central ones here.

A.   **Preliminary Injunction Standard**

Plaintiffs are entitled to a preliminary injunction because they can demonstrate (1) that they will likely succeed on the merits of their claim(s); (2) that without preliminary relief, they will likely suffer irreparable harm;

---

[1] In its scheduling order, this Court ordered "trial briefs" to be filed on December 12, 2014. (Doc. 88 at 2.) The preliminary-hearing, however, is not a trial on the merits. As such, Plaintiffs are labeling this a hearing brief, but it is submitted in accordance with the Court's order, and Plaintiffs have followed the Court's guidelines for trial briefs.

1

(3) that "the balance of equities tips in [their] favor"; and (4) that "an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013).

The primary goal of a preliminary injunction is to preserve the pre-trial status quo. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1202 (10th Cir. 2009). As the Tenth Circuit has explained, three types of preliminary injunctions are "disfavored[,]" *id.* at 1208 n.3, none of which is applicable to Plaintiffs' case. Where the moving party is not seeking one of the disfavored injunctions, the Court may consider the less stringent, modified likelihood-of-success-on-the-merits" test—the serious-questions test.[2] *Id.* This is the test that should be considered for the Plaintiffs here.

B.  **Eighth Amendment Issues**

(1)  **Brief summary of facts**

Defendants intend to execute Plaintiffs Warner, Glossip, Grant, and Cole using a three-drug formula consisting of midazolam, rocuronium

---

[2] In balancing the four preliminary-injunction factors, the Tenth Circuit has also considered whether there are serious questions regarding the merits of the claims at issue. *See generally Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).

bromide and potassium chloride, as specified in Chart D, Attachment D, to Oklahoma Department of Corrections (ODOC) Execution Procedures.

Midazolam, which is a drug used primarily to treat anxiety, is not intended for use as a stand-alone anesthetic because it has no pain-relieving qualities and has a ceiling effect. A ceiling effect means that the drug will reach its desired effect and will have no further effect simply by giving more. Midazolam is not used to produce a coma. Midazolam also has a significant risk of causing a paradoxical reaction to Plaintiffs.

Defendants' decision to use midazolam as the first drug in a three-drug lethal-injection protocol was not made to switch to a more humane method nor was it scientifically researched.

Perhaps most importantly, the Lockett execution demonstrates midazolam cannot be relied upon to do the job of maintaining the condemned in a plane of anesthesia when the next two drugs are delivered. Not only did Defendants torture Clayton Lockett to death, they opened a window into what will happen going forward if they continue to use the same method, even with an arbitrary increase in dosage.

Mr. Lockett was rendered unconscious by the midazolam that was administered. Yet when potassium chloride, a noxious stimulus, was administered, Mr. Lockett woke up writhing in pain. The paralytic agent,

vecuronium bromide, was not effectively delivered because of the Defendants' incompetence obtaining IV access.

First, Defendants failed to obtain peripheral IV access in a prisoner who had good veins by accounts of the Department of Corrections' medical staff and the pathologists who performed Mr. Lockett's autopsies. Second, Defendants failed to obtain IV access despite puncturing Mr. Lockett several times in each arm, several times in the subclavian, and in the jugular. Third, Defendants attempted to obtain femoral IV access with a catheter that was designed for peripheral access, and that was far too short to secure and maintain femoral access. Fourth, Defendants recognized that the femoral IV was "positional," which means it would only work if maintained in a certain position, yet they nevertheless covered Mr. Lockett with a sheet, therefore hiding the IV site.  At some point during the administration of the chemicals, the catheter failed and at least some of the chemicals were delivered into tissue rather than the vein.

Despite Defendant Doctor X declaring that Mr. Lockett was unconscious, Mr. Lockett woke up upon the administration of potassium chloride.  Those who witnessed Mr. Lockett's execution saw what happens when potassium chloride is injected into a person who has been given midazolam, but who has not been paralyzed.  Witnesses stated that Mr. Lockett tried to get off the table but could not because he was tightly

strapped. He spoke words, and had to be held down after the curtains closed. Defendants took no steps to reverse the painful effect of the potassium chloride. Instead, Defendants continued to inject him with potassium chloride despite observing he was not unconscious.

Mr. Lockett's execution demonstrates that midazolam is an ineffective drug to be used in a three-drug lethal-injection protocol.

**(2)    Brief summary of law**

Under the Eighth Amendment, to demonstrate a punishment is cruel and unusual, a prisoner must show that there is a "'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Baze v. Rees*, 553 U.S. 35, 50 (2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Moreover, in measuring what methods of punishment are acceptable under the Eighth Amendment, the Supreme Court looks to "'evolving standards of decency that mark the progress of a maturing society.'" *Hall v. Florida*, 134 S.Ct. 1986, 1992 (2014) (quoting *Trop v. Dulles*, 356 U.S. 36, 101 (1958) (plurality)). In doing so, the Court "enforce[s] the Constitution's protection of human dignity." *Id.* In determining evolving standards of decency, the Court considers "objective factors" including how other states are proceedings. *See Atkins v. Virginia*, 536 U.S. 304, 312 (2020).

Indeed, the plurality in *Baze* noted that using a three-drug protocol with the first drug being sodium thiopental was "difficult to regard" as an "objectively intolerable" practice because thirty states and the federal government used that formula in executions. *Id.* at 53.

Unlike the petitioners in *Baze* who conceded that Kentucky's protocol, "if applied as intended, will result in a humane death," 553 U.S. at 41, Plaintiffs will show that the use of midazolam in a three-drug protocol can never comport with the constitutional protection against cruel-and-unusual punishment. Moreover, Plaintiffs will also show that using midazolam is an objectively intolerable risk, as only one other state has used this drug in a three-drug protocol to carry out a sentence of death. Plaintiffs will also show that the Defendants Trammell and Patton cannot be said to be "'subjectively blameless for purposes of the Eighth Amendment,'" *Baze*, 553 U.S. at 50, when they blindly selected this drug without even consulting an expert.

C. **Fourteenth Amendment Issues: Notice and Opportunity to be Heard**

**(1) Brief Summary of the Facts**

Defendants' current execution procedures provide the Director with sole discretion to choose which chemicals to be used for an execution. A written notice of the drugs to be used and whether they are compounded is to be provided in writing to the offender ten (10) days before his scheduled

6

execution. Even this notice can be deviated from with the Director's consent. This offers no opportunity for Plaintiffs to bring an effective legal challenge to unlawful aspects of their proposed executions.

**(2) Brief Summary of the Law**

This potentially illusory 10-day notice does nothing to protect Plaintiffs from the arbitrary actions of government. *Wolff v. McDonald*, 418 U.S. 539, 558 (1974). Plaintiffs have no opportunity to be heard – a fundamental requisite of due process. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

**D. Fourteenth Amendment Issues: Access to Counsel and Courts**

**(1) Brief Summary of Facts**

Under current execution procedures Plaintiffs' visitation with their attorneys will terminate at least two hours prior to an execution – and longer if Defendant Patton so determines. During Clayton Lockett's execution his attorneys were not allowed to have access to their client during the nearly one-hour period in which IV access was repeatedly attempted and repeatedly failed. Plaintiffs' attorneys will not be allowed access to view the IV teams efforts to obtain IV access. Plaintiffs' attorneys will have no way of knowing whether IV access was obtained at two sites or whether the setting of IV lines was fraught with difficulties.

Once the curtains are opened, counsel will be unable to hear Plaintiffs in the event they, like Mr. Lockett, become conscious during the administration of the lethal chemicals.

Indeed, counsel is unlikely to be able to view what witnesses viewed briefly during the Lockett execution because Director Patton can close the blinds at any time on his sole discretion. Plaintiffs, like Mr. Lockett, will be unable to have access to counsel if, and when, the blinds are lowered.

Moreover, Defendants provide no mechanism for Plaintiffs' counsel to communicate with the courts if such is necessary during an execution.

**(2) Brief Summary of the Law**

Plaintiffs are represented by appointed counsel. This right continues throughout challenges to execution procedures and applications for stays of execution. *See* 18 U.S.C §3599(e). Plaintiffs' right to counsel is the mechanism that assures them the right to access to the courts. *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974). These rights do not disappear during an execution. If circumstances arise that present a constitutional injury, there must be a mechanism for Plaintiffs, through counsel, to petition the courts for appropriate relief. Preventing Plaintiffs from communicating with counsel on the day of an execution, preventing access to view the setting of IV lines, and closing the blinds and restricting access beyond the chamber viewing area, prevents effective and meaningful access to the courts." *See Bounds v. Smith*,

430 U.S. 817, 821 (1977) and *Cooey v. Strickland*, No. 2:04-CV-1156, 2011 WL 320166, at *10 (S.D. Ohio Jan. 28, 2011).

### E. Fourteenth Amendment Issues – Right of Access to Information

#### (1) Brief Summary of the Facts

Defendants have only provided information that a three-drug protocol will be used on the Plaintiffs in their executions, with midazolam, rocuronium bromide, and potassium chloride. However, Defendants also advised that they are looking for sodium thiopental and pentobarbital for use in a one-drug protocol and reserve the right to change their minds. Under the current protocol Defendants, through the Director, can change the drug to be used at any time for any reason.

Defendants will not provide limited information about the training and qualifications of the participants in Plaintiffs' executions beyond that listed in the protocol. Defendants will not provide information regarding the drugs to be used in Plaintiffs' execution.

#### (2) Brief Summary of the Law

The First Amendment provides the public with the right of access to historically open government proceedings. *See Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 8-14 (1986) (*Press-Enterprise II*); *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 510–11 (1984) (*Press-Enterprise I*); *Globe Newspaper Co. v.*

*Super. Ct.*, 457 U.S. 596, 603–11 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579 (1980).

Executions are historically open proceedings. *See Cal. First Amendment Coal. v. Woodford*, 299 F.3d 868, 875, 876 (2002) (observing that "an informed public debate is critical in determining whether execution by lethal injection comports with 'the evolving standards of decency which mark the progress of a maturing society.'"(quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

**F.    Anticipated evidentiary issues**

Plaintiffs expect to challenge the qualifications of Defendants' expert, Lee Evans, Ph.D, to offer specific opinions set forth in his expert report under Fed. Rule 702, *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumno Tire Co., Ltd. V. Carmichael*, 526 U.S. 137 (1999).

Plaintiffs expect many of the other potential evidentiary issues will be resolved by agreement and stipulations. Failing that, they will seek the Court's guidance.

Respectfully submitted,

*s/ Patti Palmer Ghezzi*
Patti Palmer Ghezzi
OBA # 6875
Assistant Federal Public Defender
215 Dean A. McGee Ave., Suite 707
Oklahoma City, OK 73102
phone: 405-609-5975
fax:  405-609-5976
email: patti_ghezzi@fd.org
*Attorney for Plaintiffs Cole, Cuesta-Rodriguez, Davis, Fairchild, Grant, Grissom, Harmon, Johnson, Littlejohn, Pavatt, Simpson, and Underwood*

*s/ Gary Peterson*
Gary Peterson
OBA # 7068
211 N. Robinson Ave., Ste. 450 South
Two Leadership Square
Oklahoma City, OK 73102
phone: 405-606-3367
fax: 866-628-0506
email: gp@garypeterson.com
*Attorney for Plaintiff Warner*

*s/ Randy A. Bauman*
Randy A. Bauman
OBA # 610
Assistant Federal Public Defender
215 Dean A. McGee Ave., Suite 707
Oklahoma City, OK 73102
phone: 405-609-5975
fax:  405-609-5976
email: randy_bauman@fd.org
*Attorney for Plaintiffs Cole, Cuesta-Rodriguez, Davis, Fairchild, Grant, Grissom, Harmon, Johnson, Littlejohn, Pavatt, Simpson, and Underwood*

*s/ Mark Henricksen*
Mark Henricksen
OBA # 4102
Henricksen & Henricksen
600 N. Walker Ave., Ste. 200
Oklahoma City, OK 73102
phone: 405-609-1970
fax: 405-609-1973
email: mark@henricksenlaw.com
*Attorney for Plaintiffs Andrew, Glossip, and Jackson*

*s/ Lanita Henricksen*
Lanita Henricksen
OBA # 15016
Henricksen & Henricksen
600 N. Walker Ave., Ste. 200
Oklahoma City, OK 73102
phone: 405-609-1970
fax: 405-609-1973
email: lanita.henricksen@coxinet.net
*Attorney for Plaintiffs Hancock and Warner*

*s/ David Autry*
David B. Autry
OBA # 11600
1021 NW 16th Street
Oklahoma City, OK 73106
phone: 405-521-9600
fax: 405-521-9669
Email: dbautry44@hotmail.com
*Attorney for Plaintiff Coddington*

*s/ Mark Barrett*
Mark H. Barrett
OBA # 557
P.O. Box 896
Norman, OK 73070
phone: 405-364-8367
fax: 405-364-8329
Email: barrettlawoffice@gmail.com
*Attorney for Plaintiff Jones*

*s/ Fred Staggs*
Fred L. Staggs
OBA # 8534
510 NW 17th St.
Oklahoma City, OK 73013
phone: 405-990-5523
Email: staggslaw@aol.com
*Attorney for Plaintiff Mitchell*

*s/ Dale Baich*
*s/ Robin Konrad*
Dale A. Baich
Ohio Bar # 0025070
Robin C. Konrad
Ala. Bar # 2194-N76K
Assistant Federal Public Defenders
850 West Adams St., Ste. 201
Phoenix, AZ 85007
phone: 602-382-2816
fax: 602-889-3960
email: dale_baich@fd.org
email: robin_konrad@fd.org
*Attorneys for Plaintiff Wood*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of December, 2014, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

JOHN D. HADDEN, OBA # 18716
JEB E. JOSEPH, OBA # 19137
AARON J. STEWART, OBA # 31721
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 N.E. 21st Street
Oklahoma City, OK   73105
phone:   (405) 521-3921
fax:   (405) 521-4518
email: john.hadden@oag.ok.gov
email: jeb.joseph@oag.ok.gov
email: aaron.stewart@oag.ok.gov
*Attorneys for Defendants Burrage, Gross, Haynes, Henke, Neal, Patton, Roach,*
*Trammell and Ware*


                                          *s/ Patti Palmer Ghezzi*
                                          Patti Palmer Ghezzi
                                          Assistant Federal Public Defender
                                          Western District of Oklahoma