**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| RICHARD GLOSSIP, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-14-665-F |
| | ) | |
| KEVIN J. GROSS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO ENFORCE THE TERMS
OF THE COURT'S ORDER GRANTING JOINT STIPULATION**

Plaintiffs respectfully move this Court to enforce the terms of the Court's previous Order Granting Joint Stipulation, Oct. 16, 2015 (hereinafter, the "2015 Stipulated Order") (Doc. 260) thus preventing the running of the 150-day clock for the setting of execution dates for Plaintiffs or any condemned Oklahoma prisoners on the ground that Defendants have not yet complied with the provisions of that Order.

1.      This action was brought by Plaintiffs under 42 U.S.C. § 1983 for violations and threatened violations of Plaintiffs' rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution, arising from the application or planned application of the then-existing Oklahoma Department of Corrections ("ODOC") Policy No. OP-040301, Execution of Inmates Sentenced to Death (hereinafter the "Protocol," Ex. 1).

2.      While this action was pending, Richard Glossip was granted a stay of execution on September 30, 2015, by then-Governor Fallin because ODOC was prepared

to execute him with a drug that was not allowed by the execution protocol. *See* Okla. Exec. Order No. 2015-42 (Sept. 30, 2015), https://www.sos.ok.gov/documents/Executive/1004.pdf (last visited March 11, 2020).

      3.      It was soon after the Court stayed Glossip's execution that the parties learned Charles Warner had been executed on January 15, 2015, with a drug not allowed by the Protocol. *See* footnote 3, *infra*. It was in this context the parties entered into a Joint Stipulation to administratively close this action for an indefinite period of time.  This Court granted the parties' joint request and issued the 2015 Stipulated Order. Pursuant to paragraph 2 of that Order, Defendants agreed and the Court ordered that the Oklahoma Attorney General not seek an execution date from the Oklahoma Court of Criminal Appeals for any of the Plaintiffs or any other condemned prisoners "until at least 150 days after Plaintiffs are provided" the following:

     (a)     Notice that investigations related to the execution procedures of the Oklahoma Department of Corrections have been conducted;

     (b)     Results of such investigations to the extent such results are public;

     (c)     Notice and copies of amendments, if any, to the "execution of Offenders Sentenced to Death," OP-040301, effective date June 30, 2015 ("Protocol") (hereinafter the "New Protocol") and;

     (d)     Notice that the Oklahoma Department of Corrections will be able to comply with the express terms of the [New] Protocol.

(2015 Stipulated Order, ¶¶ 2(a)-(d), 3).

      4.      The 2015 Stipulated Order further directed that, upon being provided the information and deliverables required by paragraphs 2(a)-(d), "Plaintiffs will have fourteen days to move to reopen the present action" (2015 Stipulated Order, ¶ 4), and that "Plaintiffs

will have thirty days after moving to reopen this action to amend the Second Amended Complaint." (2015 Stipulated Order, ¶ 5).

5.     On February 13, 2020, Defendants provided Plaintiffs with  documents setting forth some, but not all, of the information required by paragraphs 2(a)-(d) of the 2015 Stipulated Order, including a copy of the New Protocol (Ex. 2); the Interim Report Number 14 issued *In the Matter of the Multicounty Grand Jury, State of Oklahoma*, Case No. SCAD-2014-70; D.C. Case No. GJ 2014-1 (the "Interim Grand Jury Report," Ex.  3); and a February 13, 2020, letter to P. Ghezzi from Mithun Mansinghani stating, among other things, that the Oklahoma Department of Corrections will be able to comply with the express terms of the New Protocol (Ex. 4).

6.     Plaintiffs timely moved to reopen this case, while reserving the right to seek a ruling from this Court that the 150-day period set forth in ¶ 3 of the 2015 Stipulated Order will not start to run until Defendants provide the complete information and missing parts of the New Protocol required by the 2015 Stipulated Order.

I.     **The New Protocol is incomplete and cannot satisfy the requirements of the Order on its face.**

7.     The New Protocol, as provided to Plaintiffs on February 13, 2020, is incomplete due to multiple material omissions.  It is not feasible to re-start the litigation challenging the New Protocol until a materially complete New Protocol is provided to Plaintiffs.  The 2015 Stipulated Order requires and contemplates no less, and for this reason the 150-day clock should not start to run until Defendants provide the required information and missing parts of the New Protocol so that it may then be evaluated, and if appropriate,

challenged. This relief should ensure that this Court has all issues arising from the New Protocol presented for decision in an orderly and efficient manner.

### a. The New Protocol references material protocols and training that have not yet been established or provided to Plaintiffs.

8.      Section V of the New Protocol states that the "agency *will establish* protocols and training to enable staff to function in a safe, effective and professional manner before, during and after an execution." *See* Ex. 2 at 8 (emphasis added).

9.      Defendants have not provided notice of the amended protocols and training referenced in Section V because they apparently do not presently exist.  Defendants should advise Plaintiffs and the Court as to when the training protocols will be completed so that a proper litigation schedule may be set in accordance with the necessary supplementation of the New Protocol.

10.      The absence of training protocols is serious and is a material omission from the New Protocol.  As the Supreme Court has noted in the context of lethal injection execution protocols, thorough training is crucial to ensure executions are carried out properly and without threat to an inmate's protected rights. Indeed, inadequate training contributed to the botched and mismanaged executions of Clayton Lockett in April 2014 and Charles Warner in 2015. As the Interim Grand Jury Report explicitly found, "[t]he Execution Protocol requires the completion of many trainings in preparation for an

execution, but training lacked key components." Ex. 3 at 13.[1] As this case challenges the New Protocol, and as the training component is integral to any lethal injection protocol – and certainly this one – the omission of the training component here renders the New Protocol in its current state materially incomplete.

> **b. The New Protocol provides for undefined alternative methods of execution by expressly "reserving" an entire section – Chart C – of the Preparation and Administration of Chemicals, Attachment D.**

11.     The New Protocol provides that when proceeding with the execution, the "agency director or designee shall instruct the disbursement of chemicals to begin in accordance with Attachment D entitled 'Preparation and Administration of Chemicals'" *See* Ex. 2 at 27.

12.     Attachment D provides protocols associated with the preparation and administration of the chemicals to be used for execution. *See id.* at 5, 27. Section C of Attachment D expressly identifies the drugs to be used in carrying out an execution. Sections G-H provide the procedure for administering those chemicals identified in Section

---

[1] In addition, the Oklahoma Death Penalty Review Commission recommended: "All government personnel involved in carrying out an execution, as well as those individuals contracted with the government to provide services related thereto, should be thoroughly trained and evaluated on all relevant aspects of the Oklahoma Department of Corrections' execution protocol." Okla. Death Penalty Review Comm'n, The Report of the Okla. Death Penalty Review Comm'n, The Constitution Project, 197 (Apr. 25, 2017).
The Commission noted that "This recommendation tracks the Grand Jury Report recommendation related to training: 'Individuals involved in the execution process must be thoroughly trained on the Execution Protocol.' As that investigation detailed, "most Department employees profoundly misunderstood the [ODOC Execution] Protocol.' This recommendation includes the appointment of an independent ombudsman, who would be onsite during executions." *Id*. at 197.

C. Section C expressly provides three distinct groupings of chemicals that may be used to carry out an execution under Charts A, B, and D.

13.     Charts A-D of Section C purport to set forth the chemicals to be administered by lethal injection but—unlike Charts A, B and D—Chart C sets forth no specific chemical(s) or procedure(s).  Instead, it "reserves" the section for unstated new execution chemicals and related methods.  Specifically, "CHART C" of section C simply includes the text "Reserved." *See id.* at 39. There is no identification of the chemicals that may be added under the reserved Chart C, how they should be labeled or ordered, or the amount of each chemical to be prepared and administered. Notably absent is any section or reference to any procedure to be observed when carrying out an execution utilizing any chemicals that may be used under the "reserved" Chart C. Defendants have not provided any information or materials concerning the intended future contents or use of the "Reserved" section of section C to Attachment D.

14.     The use of "reserved" and the absence of substantive text under Chart C creates undefined alternative methods of execution using undefined chemicals or methods, such as nitrogen hypoxia, in an undefined protocol. In light of this "reserved" sub-section, Plaintiffs are concerned the Defendants could insert an undisclosed and unchallenged method of execution at any time, without regard to any agreement, challenges, and

decisions that may result from this action.[2] Until such "reserved" methods are disclosed, or the "reserved" Chart C is removed, the New Protocol is materially incomplete.

15.    These omissions to the New Protocol strike at the core of this lethal injection protocol; the missing sections and information must be provided before an orderly evaluation and thorough challenge to the New Protocol may be presented to this Court for decision.  These omissions are material on their face. Indeed, these omissions are even more alarming here given the history in Oklahoma and elsewhere of botched lethal injection executions involving the preparation and administration of the chemicals used to induce death, as well as the inadequacy of the training of those individuals responsible for these tasks.

16.    This history of problematic executions and the importance of the training component in executions by lethal injection constituted a substantial part of the grand jury's investigation and the Interim Grand Jury Report. Indeed, that report explicitly noted that it was the mismanagement of the execution chemicals and poor training of personnel that led to the errors during the executions of Charles Warner and Clayton Lockett. *See e.g*., Ex. 3 at 13 ("The Execution Protocol requires the completion of many trainings in preparation

---

[2]  In announcing the release of the New Protocol on February 13, 2020, Attorney General Mike Hunter announced Defendants are still working on protocols for nitrogen hypoxia. https://www.usatoday.com/story/news/nation/2020/02/13/oklahoma-lethal-injection-executions-state-resume-practice/4750372002/  (last visited March 11, 2020). This was the same method for which a protocol was expected after the announcement of Attorney General Hunter on March 14, 2018, in which he identified nitrogen hypoxia as "the safest, the best and the most effective method and we are moving forward". https://oklahoman.com/article/5587039/oklahoma-ag-corrections-chief-to-discuss-executions. (last visited March 10, 2020)

for an execution, but training lacked key components, and the IV Team was largely absent."). For example, in the Warner execution, the IV Team Leader, among other things, failed to recognize that the incorrect chemicals were being used. *See id.* at 36; *see also id.* at 38 (finding the "Special Operations Team did not compare the syringe labels to vial labels," which would have identified the chemicals as incorrect.); *id.* at 4 (discussing inadequate revision to the Protocol following the problematic execution of Clayton Lockett and the need for the resulting investigation).[3]

## II. Defendants have failed to provide Plaintiffs with the complete and final results of the grand jury investigation and all other investigations undertaken.

17.     The Interim Grand Jury Report indicates that the investigation has not been completed. Rather, it states the "time allotted this session did not permit the grand jury to complete its investigation," and the grand jury would "resume the investigations" at the next scheduled session in June 2016 "to permit the summoning of additional witnesses, and the gathering of additional physical evidence by the investigators assisting the grand jury." Ex. 3 at 106.

---

[3] Defendants failed to disclose the wrong drug was used in executing Charles Warner. *See Glossip v. Gross*, 135 S.Ct.. 2726, 2735 (2015) ("In January of this year, Oklahoma executed Charles Warner using these revised procedures and the combination of midazolam, a paralytic agent, ***and potassium chloride***." (emphasis added). *See also* Doc. 223, Ex. 3 (Defendants' August 18, 2015 Motion for Summary Judgment attaching timeline of Charles Warner's execution stating the "drug protocol" was completed with potassium chloride). Defendants did not concede potassium ***acetate***, a chemical not permitted in the then-existing protocol, was "mistakenly" used in the Warner execution until after Defendants almost made the same "mistake" with the near-execution of Richard Glossip. *See* Doc. 252 (Defendants' October 2, 2015 Notice of withdrawal of Motion for Summary Judgment "[b]ased on recent events, including the indefinite stays of executions"); Doc. 253 (Defendants' October 2, 2015 Motion for Leave to Amend Answer "to accurately reflect facts as currently known").

18.     Further, the Interim Grand Jury Report states that "the grand jury . . . returned one (1) Indictment . . . for review and further action pursuant to law." *Id*. at 1.  To date, Defendants have not provided notice of the resumption of these proceedings before the grand jury.

19.     The record available to Plaintiffs is that the grand jury's report is interim, that the grand jury remains impaneled, or that its work is intended to be continued if it is not impaneled, and that the investigations contemplated by paragraph 2(a) of the 2015 Stipulated Order may not be complete. Plaintiffs have not received notice of the completion of such work beyond the Interim Grand Jury Report as required by 2(b) of the Order, or notice that there are no such other investigations or work ongoing or contemplated and known to Defendants.  Plaintiffs also have not been provided the status or final "results" of the grand jury investigation.

20.     Additionally, then-Governor Fallin appears to have undertaken an investigation after the attempted execution of Glossip. *See* Nolan Clay and Rick Green, *Oklahoma governor hires outside attorney amid Glossip execution drug inquiry*, The Oklahoman, Oct. 6, 2015, available at https://oklahoman.com/article/5451783/oklahoma-governor-hires-outside-attorney-amid-glossip-execution-drug-inquiry?page=2 (last visited March 11, 2020). Plaintiffs have not received results from or information about that investigation.

21.     Accordingly, the 150-day clock should not start running until Defendants provide notice of any investigations other than or subsequent to those reflected in the Interim Grand Jury Report and the results thereof – as required by paragraphs 2(a)-(b) of

the 2015 Stipulated Order – or provide notice to Plaintiffs that there are no such other or subsequent investigations conducted or contemplated and known to Defendants.

## ARGUMENT AND AUTHORITIES

22.     Defendants have not complied with paragraphs 2(a)-(d) of the 2015 Stipulated Order.  As the agreed prohibition from seeking execution dates effected by the 2015 Stipulated Order continues by its terms "until at least 150 days after counsel for Plaintiffs are provided" the information and deliverables required by paragraphs 2(a)-(d), the agreed prohibition should be deemed to continue "until" Defendants provide the required but missing deliverables and information.  These express conditions to allowing the State to seek execution dates were agreed to by the parties and ordered by this Court and should be enforced.  Such an order is necessary to ensure that there is a complete record with regard to the referenced investigations, as well as a materially complete New Protocol that Plaintiffs can evaluate in its entirety, in order to allow Plaintiffs to raise any challenge in an orderly manner before this Court. This is particularly important given the timetable for this litigation once it commences.  It is not reasonable or feasible for Plaintiffs to commence a challenge while they lack critical information about the New Protocol, or the investigation(s) relating to prior botched executions and the results thereof.

23.     The 2015 Stipulated Order expressly requires, and the interests of judicial efficiency demand, that an order be issued clarifying that the agreed prohibition entered by the 2015 Stipulated Order shall continue until Plaintiffs are provided:  (i) the missing training portions of the New Protocol, (ii) the alternative protocol drugs or procedures of reserved Chart C of Attachment D of the New Protocol (or until such alternatives are

deleted), and (iii) information on the status of any investigations known to Defendants, and their results, or notice that Defendants are not aware of any investigations other than or subsequent to those set forth in the Interim Grand Jury Report.

24.     The relief sought here falls squarely within the discretion of this Court in managing cases before it.  Indeed, this Court "has broad discretion … to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003) (recognizing "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").

25.     The conditions precedent to lifting the agreed prohibition in paragraphs 2(a)-(b) concerning investigations and their results also are not yet satisfied.  Notably, the Interim Grand Jury report indicates the grand jury would "resume the investigations" at the next scheduled session. No notice of the resumption of proceedings was provided to Plaintiffs. Further, the complete absence of any notice regarding the Governor's 2015 review of the execution protocols, as well as any "results" of that review, also constitutes a failure by Defendants to comply with requirements of paragraphs 2(a)-(b) of the 2015 Stipulated Order.  The notice provided by Defendants' February 13, 2020 letter, enclosure of the Interim Grand Jury Report, and absence of any notice in connection with the Governor's review do not satisfy the notice and deliverable requirements of paragraphs 2(a)-(b) of the 2015 Stipulated Order.

26.     Plaintiffs commenced this action in connection to violations and threatened violations of Plaintiffs' rights under the First, Eighth, and Fourteenth Amendments to the

United States Constitution, arising from the application or planned application of an execution protocol that has since been superseded by the New Protocol. Neither equity nor judicial economy would be served should Plaintiffs be forced to evaluate and raise challenges to the New Protocol before it is materially complete.  Additionally, the record on the status and results of related investigations should be amended to be complete or a certification should be made by Defendants that it is complete in its current form before Plaintiffs are forced to mount any challenge to the New Protocol.   The parties and the Court will greatly benefit if this case does not proceed until the New Protocol is materially complete and until the record is clear that the investigations covered by paragraphs 2(a)-(b) are complete and any public results of such investigation are available for the record in this case.

27.     If Defendants are permitted to proceed in this action while having failed to provide Plaintiffs with complete materials, Plaintiffs will be forced to litigate this dispute based on an incomplete record, and unaware of when in the proceedings (or how) Defendants will change the materials on which a substantial portion of this dispute rests. Permitting deadlines imposed by the 2015 Stipulated Order to commence and the action to proceed will hinder Plaintiffs' ability to fully assess and litigate all the issues before the Court in an orderly manner in the time frame contemplated by and agreed to by all parties under the 2015 Stipulated Order.

28.     As agreed and ordered, Plaintiffs should receive a complete Protocol and the results of all related investigations (or a certification no others are known to Defendants) before the time period for the evaluation and challenge to the New Protocol begins to run.

29.     For the reasons set forth above, Defendants have not satisfied the conditions precedent to lifting the stay effected by the 2015 Stipulated Order, specifically those provided under paragraphs 2(a)-(d). By failing to provide complete information and seeking to resume proceedings, Defendants are attempting to force Plaintiffs and the Court to proceed on an incomplete record and a racing clock not contemplated by, agreed to, or ordered by this Court.

WHEREFORE, for the above-stated reasons, Plaintiffs respectfully request that this Court enter an order clarifying that the 2015 Stipulated Order remains in effect until (i) the training protocols omitted from the New Protocol are provided, (ii) the reserved Chart C alternative protocols are either provided, or the unfilled "reserved" section is deleted from the New Protocol, and (iii) Defendants supplement their February 13, 2020 notice to advise Plaintiffs of any other investigations covered by paragraph 2(a) of the 2015 Stipulated Order and provide the results of such investigations as required by paragraph 2(b) of the 2015 Stipulated Order, or alternatively advise that there are no such other investigations, or results, and the investigation that resulted in the Interim Grand Jury Report has concluded with no other reports or results.  Plaintiffs also respectfully request that the Court set a status conference within 14 days of entry of any order granting the relief sought herein for Defendants to provide a timetable for the provision of the missing materials and information required by paragraphs 2(a)-(d) of the 2015 Stipulated Order to allow a case schedule to be entered (or if entered then amended) to reflect the production of such materials and information.

Respectfully submitted this 12th day of March, 2020.


_s/ Michael W. Lieberman_
Michael W. Lieberman, OBA # 32694
Emma V. Rolls, OBA # 18820
Patti P. Ghezzi, OBA #6875
Office of the Federal Public Defender
215 Dean A. McGee Ave., Suite 707
Oklahoma City, OK 73102
Telephone: (405) 609-5975
Michael_Lieberman@fd.org
Emma_Rolls@fd.org
Patti_Ghezzi@fd.org


Harry P. Cohen (admitted _pro hac vice_)
Michael K. Robles (admitted _pro hac vice_)
James K. Stronski (admitted _pro hac vice_)
CROWELL & MORING LLP
590 Madison Avenue
New York, NY 10022
Telephone: (212) 223-4000
hcohen@crowell.com
mrobles@crowell.com
jstronski@crowell.com


Jon M. Sands
Federal Public Defender District of Arizona
Dale A. Baich (OH Bar No. 0025070)
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
Telephone: (602) 382-2816
Facsimile: (602) 889-3960
dale_baich@fd.org

COUNSEL FOR PLAINTIFFS

Alex Kursman
Shawn Nolan
Assistant Federal Defenders
Capital Habeas Unit
Federal Community Defender Office for
the Eastern District of Pennsylvania
601 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 928-0520

COUNSEL FOR PHILLIP HANCOCK

## Certificate of Service

I hereby certify that on March 12, 2020, I electronically filed the foregoing document with the Clerk's Office by using the CM/ECF system for filing and transmittal of Notice of Electronic Filing to all counsel of record.

_s/Michael W. Lieberman_
Michael W. Lieberman