```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE WESTERN DISTRICT OF OKLAHOMA

 3

 4   RICHARD E. GLOSSIP, et al,

 5           Plaintiff,

 6   vs.                            Case No. CIV-14-665-F

 7   KEVIN, J.GROSS, et al.,

 8           Defendants.

 9   ----------------------------

10

11

12

13

14               TRANSCRIPT OF MOTION HEARING

15           BEFORE THE HONORABLE STEPHEN P. FRIOT

16               UNITED STATES DISTRICT JUDGE

17                     MAY 5, 2020

18                     1:30 P.M.

19

20

21

22

23

24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer-aided transcription.
```

```
 1                          APPEARANCES

 2   FOR THE PLAINTIFFS:  Mr. Michael W. Lieberman, Ms. Patti
     Ghezzi, Federal Public Defender's Office - OKC, 215 Dean A.
 3   McGee Ave., Suite 109, Oklahoma City, OK 73102

 4   Mr. Harry P. Cohen, Mr. Michael K. Robles, Mr. James K.
     Stronski, Crowell & Moring, LLP - New York, 590 Madison Ave.,
 5   New York, NY 10022

 6   Mr. Dale A. Baich, Ms. Jennifer Moreno, Federal Public
     Defender's Office - Phoenix, 850 W. Adams St., Suite 201,
 7   Phoenix, AZ 85007

 8   FOR PLAINTIFF PHILLIP HANCOCK:  Mr. Alexander L. Kursman,
     Federal Community Defender - Philadelphia, 601 Walnut St.,
 9   Suite 545, West, Philadelphia, PA 19106

10   FOR THE DEFENDANTS:  Mr. Bryan G. Cleveland, Mr. Andy N.
     Ferguson, Mr. Mithun Mansinghani, Mr. Zachary P. West, Attorney
11   General's Office, 313 N.E. 21st Street, Oklahoma City, OK 73105

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (PROCEEDINGS HAD MAY 5, 2020.)

2               THE COURT:  Good afternoon.  We're here in Civil

3     14-665, which is Glossip vs. Kevin Gross and others, for a

4     motion hearing.

5          As everyone is well aware, some counsel are appearing in

6     person and some counsel are appearing by telephone.  I will

7     first ask for appearances by counsel who are here in person and

8     then I will ask for appearances by counsel who are present by

9     telephone.

10              MR. LIEBERMAN:  Good afternoon, Your Honor.  Michael

11    Lieberman from the Capital Habeas Unit on behalf of plaintiffs.

12              MR. CLEVELAND:  Good afternoon, Your Honor.  This is

13    Bryan Cleveland on behalf of defendants.

14              THE COURT:  Okay.

15              MR. FERGUSON:  Good afternoon.  Andy Ferguson on

16    behalf of defendants.

17              THE COURT:  Okay.  Thank you.

18         And by telephone?

19              MR. COHEN:  Your Honor, this is Harry Cohen from

20    Crowell & Moring on behalf of plaintiffs.

21              MR. ROBLES:  Michael Robles, Crowell & Moring, on

22    behalf of plaintiffs.

23              MR. STRONSKI:  Jim Stronski, Crowell & Moring, on

24    behalf of plaintiffs, Your Honor.

25              MR. BAICH:  Dale Baich, Federal Public Defender,

 1  District of Arizona, on behalf of plaintiffs.

 2          MR. KURSMAN:  Al Kursman, Federal Public Defender,

 3  Eastern District of Pennsylvania, on behalf of Plaintiff

 4  Phillip Hancock.

 5          MS. GHEZZI:  Your Honor, Patti Ghezzi from the

 6  Western District Federal Public Defender's Office, on behalf of

 7  Plaintiffs.

 8          THE COURT:  Okay.

 9          MS. MORENO:  Jennifer Moreno, Public Defender's

10  Office, District of Arizona, Plaintiff Richard Glossip.

11          THE COURT:  Okay.  Is that all counsel in the case?

12          MR. MANSINGHANI:  No, Your Honor.  This is Mithun

13  Mansinghani with the Attorney Generals's Office on behalf of

14  Defendant.

15          MR. WEST:  And this is Zach West from the Attorney

16  General's Office on behalf of Defendants, as well.

17          THE COURT:  Okay.  Thank you.

18      We have, as you all are well aware, two motions set for

19  hearing.

20      The first is the motion -- plaintiffs' motion for

21  extension of time to file a second amended complaint.  That is

22  the motion at Docket Entry Number 284.

23      The parties have in their filings made it clear, and I

24  concur, that as far as they are concerned the motion is moot,

25  and, consequently, the motion at Docket Entry Number 284 is

1    stricken as moot.

2         We will obviously get to the matter of the filing of a

3    second amended complaint this afternoon.  And I assure all

4    concerned that I will be hearing what the parties have to say

5    about the appropriate timing for that.

6         That brings us to the plaintiffs' motion to enforce the

7    terms of the October 2015 order; that's at Docket Entry Number

8    303.  That's where the motion is.

9         The defendants have responded by a response at Docket

10   Entry Number 315 and the plaintiffs have replied by reply at

11   Docket Entry Number 316.

12        And certainly those filings have been very helpful to me

13   in sorting through the matter and in determining what remains

14   at issue and -- to review it just a bit, and then I'm going to

15   invite counsel to address one aspect of it -- to review it just

16   a bit, obviously, as everyone is aware, we're focusing on

17   Paragraph 2 of that October 16 of 2015 order, which put the

18   case on ice for a time -- turned out to be a substantial

19   time -- but put the case on ice for a time.

20        Paragraph 2 recites, in substance, that it would be in the

21   interest of judicial economy for the State not to seek an

22   execution date until plaintiffs have been provided certain

23   specified items.

24        Paragraph 2-A related to notice that investigations of

25   matters relating to execution procedures have been conducted.

1      And Paragraph B relates to notification as to the results

2  of investigations.

3      Paragraph C, which we'll focus on more than anything else,

4  I suspect, relates to providing notice and copies of amendments

5  to the June 30, 2015 execution protocol.

6      And Paragraph D relates to notice -- providing notice that

7  the DOC will be able to comply with the express terms of the

8  protocol.

9      As to Subparagraphs A and B, I do note from the response

10 at Docket Entry Number 316, pages 10 and 11 and note 4, that

11 plaintiffs have accepted the defendants' representation that

12 the investigation of execution procedures is complete.

13     And I also note, and I'll certainly mention in the same

14 breath, that plaintiffs, quite understandably, reserve the

15 right to seek relief if it should appear that the defendants'

16 representation on that score is inaccurate.

17     And it's also plain that the defendants have produced to

18 the plaintiffs a copy of the relevant grand jury report.

19     Obviously -- and this is not news to anyone -- once all

20 the briefing on both sides was done, it's clear that anything

21 that was in the grand jury report that was provided that

22 suggested that there was more to do or that this was only an

23 interim report really related -- resulted from the fact that

24 the statewide grand jury proceedings were ongoing relating to a

25 whole gamut of matters having nothing to do with this case, so

 1   the report -- apparently until the final report is rendered at

 2   the end of the existence of the statewide grand jury,

 3   everything is styled as being "interim."

 4        So, anyway, I had no trouble working through that and I

 5   do, as I say, note the plaintiffs' acceptance of the

 6   defendants' representation that the investigation of the

 7   execution procedures is complete, and certainly in terms of

 8   anything that I have been made aware of, that appears to be the

 9   case.

10        Now, that brings me to Subparagraph C and I do want to

11   hear from counsel on this.  But as to Paragraph C, in

12   substance -- and forgive any too brief a summary -- but, in

13   substance, plaintiffs complain that the amended protocol does

14   not disclose the training program for the DOC's execution team

15   and that there is no text other than reserved in Chart C of

16   Attachment D of the amended protocol.

17        And I'm going to invite plaintiffs to address this first.

18   I'm a little concerned about addressing anything relating to

19   the merits of the protocol in the context of deciding whether

20   Paragraph C has been complied with.

21        And that, of course, implicates the plaintiffs' contention

22   that the amended protocol is materially incomplete, which --

23   and, again, I'm going to give plaintiffs an opportunity to

24   address this -- but the question of whether the amended

25   protocol is, in plaintiffs' words, "materially incomplete"

1  seems to me to be a different issue than the question of

2  whether the defendants have provided a copy of the relevant

3  document to the plaintiffs.

4      So I'll invite plaintiffs to address that issue.  Again,

5  in case you want to push me a little different direction, my

6  concern is as to the advisability of litigating anything

7  relating to the merits of the protocol in the context of

8  deciding whether Paragraph C has been complied with, especially

9  when Paragraph C on its face would appear to require simply the

10  production of a document, regardless of whether plaintiffs are

11  satisfied with the content of that document.

12      So I'll be happy to hear from plaintiffs on that score and

13  then we'll take it one step at a time from there.

14          MR. COHEN:  Your Honor, thank you.  This is Harry

15  Cohen from Crowell & Moring.  I'll speak on behalf of the

16  plaintiffs on those issues.

17      And I also want to thank you very much for accommodating

18  those of us who were unable to travel to Oklahoma.  We would

19  obviously have preferred to be there in person, but do

20  appreciate being able to participate telephonically.

21      I think, Your Honor, your comments hit the nail on the

22  head from our perspective, and that is we are unable to address

23  the merits of the adequacy of the training protocol because

24  they haven't been provided.

25      This is a chicken-and-egg situation where we believe the

1  protocol is, indeed, materially incomplete, only because the

2  State admittedly has not completed the training protocols that

3  by the terms of the protocol itself should be part of the

4  protocol.

5      And, you know, as Your Honor astutely noted back in 2014

6  at a September 18th conference, the object here is to make sure

7  that the protocol minimizes the likelihood of either a serious

8  or constitutionally significant mishap.

9      And we believe -- the plaintiffs believe that, with the

10 exception of ensuring the use of appropriate drugs for

11 executions, there's nothing more central to achieving that

12 important goal than ensuring that the individuals who are given

13 the responsibility for this serious, somber and irreversible

14 process of executing a human being are properly trained.

15     As the Supreme Court made clear in Baze, thorough training

16 is, in fact, one of the important safeguards that ensures that

17 executions are carried out properly and without threatening an

18 inmate's protected constitutional rights.

19     And as I just mentioned, the requirement of a full and

20 complete proper training protocol is expressly stated in the --

21 in the document itself in OP-040301.  And not just the

22 requirement of having the training protocols, but the reason

23 for them to be part of the protocol, and that is to enable

24 staff to function in a safe, effective and professional manner

25 before, during and after an execution.

1    And to put this into context, it's no secret of anybody in
2  this hearing that inadequate training was a significant
3  contributing factor to the problems that plagued the Lockett
4  and the Warner executions, as well as the Glossip aborted
5  execution.  That's effectively been admitted by the State and
6  it was the conclusion reached by the grand jury that you just
7  mentioned, the Oklahoma Death Penalty Review Commission and the
8  Department of Public Safety.  And I won't go through the
9  details; that's all in the briefs that we submitted.  And you
10  don't have to take our word for it.

11    And I don't know if you happened to note this, but during
12  the State's press conference on February 13th, when they
13  announced the release of the protocol, the Interim Director of
14  Corrections, Scott Crow, emphasized the importance of training,
15  stating -- and this is the exact quote -- "The one thing that
16  we are really focused on is making sure that the individuals
17  that are involved in carrying it out have actually been
18  trained."

19    And he explained the training and checks and balances are
20  necessary to accountability.  And, again, another quote:
21  "...to make sure there are no mistakes."

22    And Attorney General Hunter made the same comments about
23  the importance of training in order to ensure that what has
24  happened in the past won't happen again.

25    And that, of course, makes perfect sense.  To make sure

 1   what happened in the past doesn't happen again, you have to

 2   make sure that the protocol contains adequate training process

 3   (unintelligible).  That's critical to the ability of the State

 4   to implement any execution.

 5        And it is that precise sentiment that goes to the heart

 6   not only of the present motion but the entire action.  And

 7   that, frankly, is what makes the current situation and the

 8   defendants' position in this litigation so troubling to the

 9   plaintiffs.

10        On the one hand, they concede the critical importance of

11   training.  That's -- that's undisputed.  They concede that the

12   reason that the prior executions were botched was significantly

13   caused by inadequate training, yet at the same time they

14   pretend the execution protocol can somehow be complete in the

15   absence of the training details and they haven't treated it as

16   a priority.

17        And I don't need to remind you or anybody else in this

18   hearing that it's been nearly six years since the execution of

19   Mr. Lockett and it's been four years since the grand jury

20   issued its report, yet here we are in 2020 and not only have

21   the defendants still not developed the required training

22   protocol, but they can't even give us an estimate for when they

23   will be completed.

24        Now, we find that remarkable and we find it troubling, in

25   particular, given the fact that inadequate training was a

1  significant cause of the prior mistakes.

2      Establishing the training protocols should have been the

3  very first thing the defendants turned their attention to in

4  going back to the language of the protocol.  It's why it's

5  written the way it is.

6      The training protocol is a required component of the

7  protocol and the reason that it's a required component of the

8  protocol, to ensure that executions are done in a safe and

9  humane manner.

10      But whatever the reasons for the State's failure to

11  complete the training protocol, they're, in effect, asking the

12  plaintiffs to suffer the consequences of their dilatory

13  conduct.  And this, I think, goes to the heart of your

14  question.

15      You know, basically their position is, well, we've given

16  you this document that says, in essence, the training protocols

17  will be done when we get to it and we'll deal with it then.  In

18  our opinion, that's not what the protocol requires and we think

19  that position is illogical, we think it's unfair, and it's also

20  profoundly inefficient.

21      And, again, it highlights the fact that the State cannot

22  possibly satisfy the other requirements that you alluded to of

23  your prior order, and that's Paragraph 2-D, which requires that

24  they provide notice that the Oklahoma Department of Corrections

25  will be able to comply with the express terms of the protocol.

 1        And we think it's clear, as a matter of simple logic, that

 2   the Department of Corrections have --

 3             THE COURT:  Excuse me.  Excuse me.  Let me interrupt

 4   just for a moment.

 5        I'm not going to entertain any argument relating to

 6   Subparagraph D because the only developed argument plaintiffs

 7   provided as to failure to comply with Subparagraph D is the

 8   argument they advanced for the first time beginning at page 3

 9   of their reply brief.  It is simply too late to argue about

10   compliance with Subparagraph D.

11        Mr. Cohen, you may continue.

12             MR. COHEN:  Okay.  Thank you, Your Honor.  I will

13   certainly go back and check that.  And I apologize if that's

14   the case.

15        But I think the point I was getting to is that, again,

16   putting this into the context of the disastrous circumstances

17   of both prior executions, in essence, "take our word for it" is

18   something the State has not earned the right to ask for and the

19   stakes are just too high anyway to proceed based on an

20   incomplete record that can change at any time.

21        And that's also why the State's position is self-evidently

22   unworkable from a practical perspective.  Without the yet-to-

23   be-established protocols and training, it's simply not possible

24   for the plaintiffs to understand and vet and challenge and

25   fully and fairly litigate the constitutionality of the entire

1  protocol.

2     What the defendants are essentially advocating is

3  piecemeal litigation:  Litigate certain aspects of the protocol

4  now and then wait until later to litigate issues related to

5  training once the State finally gets around to completing the

6  required protocols and regimen.  And we have no idea when

7  that's going to be.  It could be a month from now, it could be

8  after the close of fact discovery, it could be in the midst of

9  expert discovery, it could be the week before the trial.  We

10 don't know.  We're flying blind here.

11    And as Your Honor may recall, this exact same thing

12 happened in connection with the preliminary injunction hearing:

13 Training materials were not produced by the State until very

14 shortly before the hearing and then more materials were

15 produced after the hearing.  And that obviously was not timing

16 and that resulted in prejudice to the plaintiffs.

17    We just want to make sure the same thing doesn't happen

18 again.  And we think that context is why it's clear that the

19 protocol, as delivered to us, expressly stating that the

20 training protocols are missing, yet required, is why Paragraph

21 2-C has not been satisfied, it's why the Protocol OP-040301 is,

22 in fact, materially incomplete.

23    And we think what the order calls for is confirmation that

24 the protocol is actually complete and that indisputably hasn't

25 happened.  There's just no reason to litigate -- to proceed

1    before the protocol is complete.  And that flies in the face of

2    judicial economy, it invites inefficiency and prejudice.  And

3    that can't be what was contemplated by the process.

4         Executions were put on hold until such time as the State

5    was able to move forward with execution.  Without knowing how

6    the people who are doing the executions have been adequately

7    trained, that can't possibly happen and that's why the order

8    hasn't been satisfied.

9         And in our view, what's -- remains missing goes to the

10   very heart of ensuring -- and, again, hearkening back to your

11   prophetic words back in 2014, six years ago -- the protocol

12   must minimize the likelihood of either a serious or

13   constitutionally significant mishap.

14        We already know that serious and constitutionally

15   significant mishaps have happened because of inadequate

16   training.  And to suggest that training is something that it's

17   okay to get around to later and isn't required for the protocol

18   to be complete just doesn't fly.

19        We think the protocol is materially incomplete; that's why

20   we made our motion.  And we ask that Your Honor grant our

21   motion to enforce the terms of the Court's October 16, 2015

22   order.

23        And then our deadline, as you telegraphed earlier in terms

24   of our deadline to file our amended complaint, would then be,

25   either by agreement or your order, triggered by a number of

1   days after the State completes the protocol by providing all of

2   the training regimen and protocols.

3       Thank you.

4           THE COURT:  Thank you, Mr. Cohen.

5       I'll hear from the defendants.

6       And even though you're here in open court, for the benefit

7   of those who are present by telephone, please identify

8   yourself.

9           MR. CLEVELAND:  Will do, Your Honor.  This is Bryan

10  Cleveland on behalf of defendants.

11      This argument in the motion styled a "Motion to Enforce"

12  is really just seeking one of two things:  Either front-loading

13  discovery into before the case is proceeding in actual

14  discovery or second-guessing a state on the merits of whether

15  this protocol actually includes everything it should, namely

16  whether it's materially complete.

17      Now, when this case was still going on in 2015, the

18  protocol at issue had the exact language in it that plaintiffs

19  are complaining about now, namely about training protocols will

20  be developed.

21      Now, they had the right to ask about it then, and we're

22  not saying that no further discovery should happen.  They still

23  have the right to ask about it in discovery in this case.

24      The pause order was simply about putting the situation on

25  pause to restore it back to where it had been so that it could

1  continue in discovery, which is why it specified that we were

2  to provide notice and copy of the amendments to a particular

3  document.

4       Now, with the request from plaintiff here, what they're

5  talking about is something that's not changed, not amended at

6  all in this document, and, in fact, is not this document

7  itself.

8       Now, they get around this and they talk about other

9  training materials by mostly focusing on what the relevance

10 might be to the merits of the case.

11      Now, couple different angles on this.  First, they want to

12 articulate some new failure-to-train claim that's not really a

13 request here for some sort of precomplaint discovery, and if

14 they articulate that based on what they have, they can continue

15 asking for these materials.

16      Now, beyond that, though, it's also that we're not really

17 today talking about whether these training materials are

18 relevant or whether the protocol ought to have them in here

19 because this isn't a discovery dispute or a merits dispute, the

20 question is just simply whether we provided everything we

21 promised and what we handed over was a complete copy of the

22 protocol that we specified, including everything that we had

23 amended or changed in it, and in our view, that completely

24 satisfies everything that we agreed to and the case should

25 proceed to discovery where we could get into them asking for

1    copies of these and getting into the merits of whether the

2    protocol should have included these things, as is their

3    position.

4             THE COURT:  One thing that is quite likely that we'll

5    be addressing one way or another is whether the defendants,

6    recognizing the duty to supplement under 26(e)(1), intend to

7    supplement their previous document production relating to

8    training.

9             MR. CLEVELAND:  And, I mean, I'll double-check on

10   them, Your Honor.  I think all the training requests specified

11   certain dates which wouldn't include the newer ones, but if

12   there were ones that had asked for all of it, we'll go back and

13   review it and intend to meet our requirement under the rules.

14            THE COURT:  Well, 26(e)(1), the duty to supplement,

15   doesn't really -- is not really tied to either -- any

16   particular dates or events.  As a matter of fact, it leaves the

17   temporal aspect wide open.  It says in a timely manner.

18            MR. CLEVELAND:  Oh, yeah.  I didn't -- I'm not trying

19   dodge it, Your Honor, I was just trying to remember what the

20   request was and I think it had asked for the training documents

21   that were used in the Warner and Lockett executions, so I just

22   want to go back and review what it actually says.

23            THE COURT:  Okay.  Anything further?

24            MR. CLEVELAND:  No.

25            THE COURT:  Okay.  Very well.

1     Anything further from the plaintiff?

2          MR. COHEN:  Yeah, I don't want to -- I'm sorry, I

3     don't want to repeat myself.  I think that this is not a

4     discovery issue, it has more to do with what the purpose and

5     intent of the order was.

6          And the purpose and intent of the order was to make sure

7     that when this litigation began again and when the State

8     purported to be in a position to commence executions, it

9     absolutely necessarily included the ability to properly train.

10    That's what Scott Crow said, that's what the Attorney General

11    said, that's what Your Honor said back in 2014.

12         And it just simply invites profound inefficiency and a

13    waste of judicial economy to suggest that we have to wait for

14    one of the most critical aspects of the protocol before this --

15    at some point later in the litigation.  It just doesn't make

16    any sense and it can't possibly be what was intended by this

17    order.

18         THE COURT:  Thank you.

19         As I have mentioned, but I think it is appropriate so that

20    we're -- we all understand the status of the matter.

21         As I have mentioned, the essential complaint lodged as to

22    Subparagraph C, as I understand it from the papers, is that the

23    plaintiffs object to the fact that the amended protocol does

24    not disclose the training program for the DOC's execution team

25    and that there is no text other than reserved in Chart C of

1   Attachment D to the amended protocol.

2        As we heard briefly this afternoon and as the defendants

3   made clear in their response, the reference in the amended

4   protocol to a training protocol to be developed is unchanged

5   from the 2015 protocol.

6        The defendants also point out that the reserved

7   designation for Chart C is the same as it was in the 2015

8   protocol as it existed for several months before October --

9   before the October 2015 order was entered.

10       Consequently, the defendants argue that Subparagraph C

11  requires only that they provide a copy of a document,

12  specifically any amendment to the June 2015 protocol, and that

13  they have satisfied that requirement by providing that

14  document.

15       I agree that the defendants have complied with

16  Subparagraph C.  The only document required by that

17  subparagraph has been provided.

18       I conclude that it would be highly inadvisable to litigate

19  the substantive merits of the amended protocol, including the

20  existence of any constitutional requirement that the protocol

21  say more than it does say by way of determining whether

22  Subparagraph C has been complied with.

23       The question of whether the amended protocol is

24  "materially incomplete," as argued by plaintiffs is, in my

25  view, a different issue from the question of whether the

1   defendants have provided a copy of the relevant document to the

2   plaintiffs.  They have done so.

3        As I previously mentioned, it is too late for the

4   plaintiffs to argue any failure to comply with Subparagraph D

5   because the only developed argument plaintiffs have provided as

6   to Subparagraph D is the argument they advanced for the first

7   time beginning at page 3 of their reply brief.  So nothing will

8   be entertained as to Subparagraph D.

9        I do conclude that the defendants have not been shown to

10  have violated the terms of the October '15 order and the motion

11  to enforce that order is denied.

12       Now, that brings me to scheduling.  And let me frame it

13  just a bit.

14       As you all know from reading Baze, from reading the

15  Glossip opinion from the Supreme Court, which took a whole lot

16  of pages, and for that matter, from reading Bucklew, from

17  reading the Hill decision that came along a few years before

18  all of that, on one hand, there is certainly deep division on

19  the Supreme Court about the death penalty, but the Court is

20  also discernibly not as deeply divided in lamenting the

21  inordinate amount of time that death penalty litigation takes.

22       So I'm going to take my cue from the Supreme Court and I'm

23  going to be mindful that it is necessary to bring this case to

24  a conclusion without unnecessary delay.

25       The plaintiffs have had the amended protocol for about two

 1   and a half months.  I'm going to hear from -- give both sides

 2   an opportunity to address this, but let me give you the benefit

 3   of some preliminary thinking.  Because my next question is

 4   going to be how much time the plaintiffs reasonably need in

 5   order to file their second amended complaint.  But first of

 6   all, let me walk you through some of my reasoning as to where

 7   we stand right now.

 8        First of all, I'm aware of no law requiring the

 9   particulars of the execution team's training program to be set

10   forth in the execution protocol.  And plaintiffs have cited me

11   no such law, specifically that the Constitution requires the

12   training program to be embodied in the protocol.

13        Can plaintiffs cite me anything that says -- any case that

14   says the Constitution requires the training program to be set

15   forth in the protocol?

16            MR. COHEN:  Your Honor, this is Harry Cohen again.

17        I don't know the answer to that question off the top of my

18   head, but I would note that in the Baze decision, the Court did

19   refer to the training protocol as among the important

20   safeguards to ensure that executions were conducted in

21   accordance with the prisoner's rights under the Eighth

22   Amendment, so I think on that basis alone, there's certainly a

23   requirement that adequate training must be conducted, whether

24   it has to actually have been in that specific document or

25   elsewhere.  I just don't know the answer off the top of my

1    head.

2         I apologize not being able to answer your question.

3              THE COURT:  Well, and, again, I'm just -- Counsel, I

4    want to assure you I'm giving you my first take on it, and if

5    there's more to be said, I will certainly be happy to entertain

6    that, but it would seem to me to be advisable to give the

7    Department of Corrections the flexibility, for that matter, if

8    necessary, to continuously upgrade and refine its training

9    program with no litigation-related time limit, again, if that's

10   what it takes for the Department to be well-satisfied with its

11   training program, without having to formally adopt and publish

12   yet another amended protocol.

13        So that's one leg of the matter in terms of where I begin,

14   start from in terms of scheduling.

15        Secondly, the defendants have represented and we've

16   briefly discussed this afternoon the fact that the defendants

17   have produced training documents to the plaintiffs.

18        Now, the defendants make reference to the duty to

19   supplement under 26(e)(1).  The defendants are required under

20   that rule to supplement their previous document production "in

21   a timely manner if the party learns that in some material

22   respect the disclosure or response is incomplete or incorrect

23   and if the additional or corrective information has not

24   otherwise been made known to the other parties during the

25   discovery process or in writing."

1    I would also point out -- and I think from plaintiffs'

2  perspective, this, I think, perhaps is noteworthy and makes

3  plaintiffs' counsel's job in some ways perhaps a bit easier --

4  the second amended complaint does not have to be confined to

5  the four corners of the amended protocol.

6    The second amended complaint can certainly rely on any

7  facts which plaintiffs believe that they are in a position to

8  plead consistently with their professional responsibilities.

9    So where I am now from a scheduling standpoint is I am

10  inclined to set a date for supplementation of the defendants'

11  previous document production with respect to training or

12  perhaps a representation that no such documents exist, although

13  that seems unlikely, but I do not want to be understood to be

14  foreclosing ongoing development of the department's training

15  program.

16    So my next inquiry is of the defendants:  Is there any

17  reason that I should not set a date for supplementation of the

18  defendants' previous document production, specifically relating

19  to training?

20    Please work from the lectern.

21        MR. CLEVELAND:  Your Honor, my only hesitation is

22  that I don't have a date yet from the Department of Corrections

23  on when their training document will be complete.  I understand

24  it's in progress right now, but I don't have the final document

25  in hand yet.

```
 1              THE COURT:  Well, okay.

 2              MR. CLEVELAND:  That's my only hesitation.

 3              THE COURT:  Bear with me just a minute.

 4         The last time we were together, that was -- Lori, when was

 5    our scheduling conference?

 6              MR. COHEN:  March 12th, Your Honor.

 7              THE COURT:  March 12th, okay.

 8         On March 12th, the -- it had been 1,625 days since the

 9    Attorney General of the State of Oklahoma said let's put this

10    on hold so that we can get our act together.

11              MR. CLEVELAND:  Uh-huh.

12              THE COURT:  I am mindful of every one of those 1,625

13    days.  And so you're here telling me, well, we don't know when

14    we can supplement because we haven't developed this yet.  I

15    need to hear a little bit more.  And, again, I don't foreclose

16    ongoing refinement and upgrade of the DOC's training program,

17    but 1,625 days is a long time.

18              MR. CLEVELAND:  Understood, Your Honor.

19              THE COURT:  So I'm inclined -- and you can steer me

20    in a different direction if you want to, but I'm inclined to

21    give you a date for supplementation.  That is not the --

22    perhaps by some standards -- not exactly the same thing as a

23    deadline for your development of your training materials

24    because I don't want to foreclose ongoing development of your

25    training program, nor am I aware of any constitutional
```

 1   requirement that I do so.

 2       But if there is something more to produce or in the works

 3   to be produced, then I want it to be produced by way of

 4   supplementation, as required by Rule 26(e).

 5       So what more do you have for me on that score?

 6           MR. CLEVELAND:  I mean, if there is a date for

 7   supplementation, we'll go contact the Department of Corrections

 8   and let them know the date and do our best to get everything

 9   supplemented then.

10           THE COURT:  Okay.  Very well.

11       I'm going to give the plaintiffs an opportunity to

12   respond, but I am inclined to set a date for supplementation of

13   the defendants' production of documents with respect to their

14   training program and then have a deadline for the filing of a

15   second amended complaint follow that.

16       Do the plaintiffs have desire to be heard as to that

17   tentative plan on my part?

18           MR. COHEN:  No, Your Honor.  This is Harry Cohen

19   again.

20       In fact, you read our mind.  I was going to suggest that

21   exact approach and we think that makes a lot of sense.

22           THE COURT:  Okay.  Here we are on May 5th.  I'm going

23   to -- the minutes of this proceeding will state that the

24   defendants have until June 5th to produce -- to complete

25   supplemental production of documents with respect to their

```
 1    training program.
 2         As of June 5th, the plaintiffs will have had the amended
 3    protocol since sometime in February, I believe.  It's been two
 4    and a half months now.  As of June 5th, presumably you'll get
 5    whatever supplemental production there may be.
 6         I'm inclined to set a date, for instance, two weeks down
 7    the road from that, June 19th, for the filing of a second
 8    amended complaint.
 9         What say the plaintiffs about that?
10              MR. COHEN:  Your Honor, I would ask that, rather than
11    two weeks, that we get 30 days from that date.  I think that
12    there will be -- there's also a lot going on in terms of our
13    process of trying to work out a protocol with the AG and the
14    Department of Corrections to be able to communicate in a
15    meaningful way with our clients.  For obvious reasons, it's not
16    possible now to actually go to the prison to meet with them in
17    person.
18         We have had some discussions with the AG about
19    alternatives which they're willing to consider, but negotiating
20    that process and then implementing the process by conducting
21    those communications, you know, some perhaps by phone,
22    hopefully in person, will take some time.
23         So our -- we would respectfully request 30 days from the
24    June 5th date for our amended complaint.
25              THE COURT:  Well, one brief inquiry on that score,
```

1   Mr. Cohen:  Am I to understand that you want to consult with

2   your clients about the training program?

3         MR. COHEN:  No, not -- well, no, not specifically

4   necessarily about the training program, we want to communicate

5   with them generally about the case and specifically with

6   respect to issues that are plaintiff-specific, like the

7   obligation for us to plead alternatives and the basis for

8   as-applied challenges and that requires communications with the

9   client.

10        THE COURT:  Okay.  Well, to give me a little better

11   idea, then, of what's reasonable time-wise, aside from any

12   issues there may be about training, what's going to be the

13   general thrust of the second amended complaint, if anything,

14   other than training?

15        MR. COHEN:  Yeah, well, it will certainly be much

16   broader than training.  We have issues with the protocol that

17   has been announced by the State; we have issues with access to

18   counsel; we have issues with First Amendment rights; we have

19   issues with training; we have issues with qualifications of the

20   people who are participating in certain aspects of the

21   execution.

22     I mean, a lot of the issues are set forth in our prior

23   amended complaint and they will be updated as we've now

24   proceeded since back in 2015.

25     So there will be issues well beyond training, Your Honor.

```
1            THE COURT:  Let me -- and this may be unfair, but
2    very often that has not stopped me -- let me inquire of the
3    defendants.
4        Do the defendants anticipate responding to a second
5    amended complaint by answer under Rule 12(a) or by a motion
6    under Rule 12(b)?
7            MR. CLEVELAND:  Our intent is to answer it, Your
8    Honor.
9            THE COURT:  Okay.  Well, Mr. Cohen strikes a
10   responsive chord with me in terms of what's undoubtedly
11   difficulty in communicating with inmates under present
12   circumstances.  I'm sure they are isolated.  And for that
13   reason, Mr. Cleveland, I'm inclined to put the deadline for the
14   filing of a second amended complaint a month out from June 5th,
15   for the reason Mr. Cohen states.
16       Do the defendants have any issue with that?
17           MR. CLEVELAND:  I mean, one comment, Your Honor, is
18   my understanding with the Department of Corrections has been
19   accommodating in-person meetings between counsel and these
20   plaintiffs since March, so I was a little surprised to hear
21   opposing counsel saying that they haven't been able to do that
22   because that wasn't the consistent with my understanding.  I
23   thought they had had --
24           THE COURT:  Well, facilitating communication in
25   March --
```

```
 1              MR. CLEVELAND:  Yeah.

 2              THE COURT:  -- may not be the same thing as

 3    facilitating communication here we are in May.  Things -- the

 4    world has turned a few times since then.

 5              MR. CLEVELAND:  I meant, since all the coronavirus

 6    stuff has been implemented, my understanding was Department of

 7    Corrections has facilitated contact with clients during that

 8    setting --

 9              THE COURT:  Okay.  Thank you.

10       The second amended complaint will be due on July 6th.

11       And do the defendants -- and, of course, you're not bound

12    by this, but -- and the defendants have said they plan to

13    respond by answer, rather than by motion.  Do the defendants --

14    whichever it may be, do the defendants anticipate needing more

15    than the 21 days normally allotted by Rule 12 to respond?

16              MR. CLEVELAND:  No, Your Honor.

17              THE COURT:  Okay.  Very well.  You're going to have

18    those 21 days allotted by Rule 12 after the second amended

19    complaint is filed.

20       Counsel, that resolves the only matters before the Court

21    this afternoon.

22       The two pending motions have been denied and we have set

23    what I believe to be a workable schedule to get the case

24    moving.

25       I'm just going to leave you with one thought, and that is,
```

1    now that we have gotten the case moving, it is my intent to

2    keep the case moving and we'll -- in chambers, we'll certainly

3    do our job in a timely way.  I -- and I'm sure that most of the

4    lawyers on one side or the other of this case are new to each

5    other, but I urge you to cooperate in every way in what I

6    already sense is a civil and professional way to make my job

7    easier to keep the case moving and avoid any unnecessary

8    procedural glitches or arguments so that we can get the matter

9    down to the merits without unnecessary delay.

10        Anything further in this matter this afternoon from

11   plaintiff?

12        MR. COHEN:  Yes, Your Honor.  If I might, I just

13   wanted to -- and I appreciate the fact that the formal motion

14   to enforce the prior order has been denied.

15        I would like to address and perhaps by agreement get some

16   confirmation that the State will not seek execution dates until

17   after this case has been completed.  I think that makes sense.

18   I think it's fair.  I think it's reasonable.  And I just wanted

19   to throw it out there as --

20        THE COURT:  Well, I'm not even going to invite the

21   defendants to respond to that because I had the representation

22   last March from none other than the Attorney General of

23   Oklahoma that that would not happen.  And if we should have any

24   indication that that will happen, I will be, to put it mildly,

25   immediately available, so it's not necessary to address that.

1          MR. COHEN:  Thank you, Your Honor.

2          THE COURT:  Anything further this afternoon from the

3     defendants?

4          MR. CLEVELAND:  No, Your Honor.

5          THE COURT:  Very well.

6       Court will be in recess.

7       (COURT ADJOURNED.)

8               CERTIFICATE OF OFFICIAL REPORTER

9          I, Tracy Thompson, Federal Official Realtime Court

10    Reporter, in and for the United States District Court for the

11    Western District of Oklahoma, do hereby certify that pursuant

12    to Section 753, Title 28, United States Code that the foregoing

13    is a true and correct transcript of the stenographically

14    reported proceedings held in the above-entitled matter and that

15    the transcript page format is in conformance with the

16    regulations of the Judicial Conference of the United States.

17               Dated this 21st day of May 2020.

18

19               */S/ Tracy Thompson*
                 -------------------------------
20               Tracy Thompson, RDR, CRR
                 Federal Official Court Reporter

21

22

23

24

25