UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

RICHARD GLOSSIP, *et al.*,

            *Plaintiffs,*

v.

RANDY CHANDLER, *et al.*,

            *Defendants.*

No:    14-cv-665-F

**DEFENDANTS' PARTIAL MOTION TO DISMISS AND BRIEF IN SUPPORT**

Defendants seek dismissal of three of Plaintiffs' ten claims under Fed R. 12(b)(6) for failure to state a claim: Counts I, III, and VIII. This partial motion to dismiss is filed contemporaneously with an Answer so that discovery may proceed on the main claims at issue.

Defendants note and respect this court's prior rulings on dismissal of claims, Doc. 155, and only re-raise those issues in one count—Count I—where there is intervening legal precedent to call to this court's attention. As explained in detail below, Count III is essentially redundant of Count II but adds an errant legal theory, and Count VIII is a direct challenge to Supreme Court precedent that this court is obligated to deny. Defendants otherwise preserve their "failure to state a claim" defenses in the contemporaneously filed Answer.

Defendants also seek dismissal of the three Defendants that were named in prior complaints but are no longer named in the Third Amended Complaint.

## I. ARGUMENT

**A. This court should dismiss three claims in the Third Amended Complaint.**

Under Rule 12(b)(6), a complaint must state a claim for relief "that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If stating a valid claim is an "impossibility" given the circumstances, then the claim should be dismissed. *Id.* at 1178; *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (Rule 12(b)(6) dismissal required "where the complaint lacks a cognizable legal theory").

### 1. Count I should be dismissed.

Count I is facially deficient because it alleged a violation of the Fifth Amendment Due Process Clause, which only applies to the federal government, not the states. *See Pub. Utilities Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952); *Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997). Plaintiffs here are suing state actors, not federal ones. Fifth Amendment claims against state actors must be dismissed at the motion to dismiss stage because they are "frivolous." *Parnisi v. Colorado State Hosp.*, 992 F.2d 1223, 1993 WL 118860, at *1 (10th Cir. 1993) (unpublished table decision). Thus, this court should dismiss Count I.

On the merits, this claim also fails to state a claim. In *Whitaker v. Collier*, the Fifth Circuit recently held that prisoners do not have a liberty interest in information about an execution protocol and that due process claims on that basis "cannot survive a motion to dismiss." 862 F.3d 490, 500 (5th Cir. 2017). Plaintiffs' first claim is entirely a due process claim based on information about Oklahoma's execution protocol. *See* Doc. 325 ¶¶ 118-120. Accordingly,

Defendants ask this court to follow the Fifth Circuit's decision in *Whitaker* and dismiss Count I on the merits.

### 2. Count III should be dismissed.

Plaintiffs' deliberate indifference claim has no support in Eighth Amendment or Due Process law.[1] Deliberate indifference occurs when an external harm such as injury or illness threatens a prisoner, prison officials bear a responsibility to ameliorate that external harm, and those officials deliberately ignore or exacerbate the threat causing harm to the prisoner that amounts to excessive punishment or additional punishment without due process. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[T]he government and its officials are not free to let the state of nature take its course."); *West v. Atkins*, 487 U.S. 42, 58 (1988) (Scalia, J., concurring in part) ("[P]hysical harm … by deliberate indifference" may "violate[] the Fourteenth Amendment's protection against the deprivation of liberty without due process.").[2] Typical manifestations of deliberate indifference include an intentionally poor response by "prison doctors … to [a] prisoner's [medical] needs," "prison guards … intentionally denying or delaying access to medical care," or prison officials "intentionally interfering with [medical] treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The claim does not extend to affirmative actions taken as "part of the penalty that

---

[1] Fifth Amendment due process also necessarily does not support this claim because Defendants are state actors. *See supra* Part I.A.

[2] *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020) (The Tenth Circuit "appl[ies] an analysis identical to that applied in Eighth Amendment cases" when analyzing Fourteenth Amendment deliberate indifference claims for failure to provide care for medical needs (quoting *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019))).

criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (citations omitted).

Thus, the Third Circuit has held that the deliberate indifference standard "do[es] not govern Eighth Amendment method-of-execution challenges." *Jackson v. Danberg*, 594 F.3d 210, 223 n.16 (3d Cir. 2010). As the Third Circuit explained:

> the problem with applying [deliberate indifference] standards in method-of-execution cases is that, in cases where a lethal injection protocol is facially constitutional, there can never be a 'current' violation in the way there may be, for example, in cases where an inmate is suffering the harmful effects of second-hand smoke or finds himself at risk of physical harm at the hands of dangerous fellow inmates.

*Id.*

Midazolam is not being administered as medical treatment in response to Plaintiffs' existing medical needs. *Cf. West*, 487 U.S. at 58 (Scalia, J., concurring in part). Rather, midazolam is being administered as the first drug in a three-drug protocol to execute Plaintiffs' criminal penalty. Thus, Plaintiffs are again challenging not indifference, but the method of execution.

In fact, the deliberate indifference claim is a mere recasting of Plaintiffs' method of execution claim in Count 2. Under the test set forth in *Baze* and *Glossip*, a prisoner challenging a method of execution must show (1) that the state's proposed method of execution is very likely to result in or cause needless suffering; and (2) an alternative means of execution that is feasible, readily implemented and significantly reduces a substantial risk of severe pain. Packaged as deliberate indifference, Plaintiffs claim that the use of the three-drug protocol creates (1) "a substantial risk of serious harm to a prisoner," Doc. 325 ¶ 128, and the "unnecessary and wanton infliction of pain," *id.* ¶ 131; and (2) "Plaintiffs have alleged several

feasible and readily-implemented alternatives to the Execution Protocol that would substantially reduce the risk of substantial harm to Plaintiffs." *Id.* ¶ 132. Because this claim is entirely duplicative of Count II and lacks legal support as a deliberate indifference claim, it should be dismissed.

### 3. Count VIII should be dismissed.

In Count VIII, Plaintiffs added a new claim that their religious liberty rights are under attack. *See* Doc. 325 ¶¶ 155-178 (Count VIII); *see also id.* at ¶¶ 111-113. These claims are squarely foreclosed by recent U.S. Supreme Court precedent and therefore should be dismissed.

Oddly, Plaintiffs' religious liberty claims are not actually directed at or describing behavior by Defendants. Rather, Plaintiffs contend that *this Court* would infringe their sincerely held religious beliefs by following Supreme Court precedent and requiring them "to plead or prove an alternative method of execution" in order to succeed under the Eighth Amendment. *Id.* ¶ 111. But pleading a valid alternative method of execution is a specific requirement that the Constitution places on Plaintiffs—a reality the U.S. Supreme Court repeatedly made clear just last year in the *Bucklew v. Precythe* decision:

> [A] prisoner **must** show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason. *Glossip* left **no doubt** that this standard governs '**all Eighth Amendment method-of-execution claims**.' …
>
> Mr. Bucklew's argument [that he does not have to show an alternative method] fails for another independent reason: It is **inconsistent with the original and historical understanding of the Eighth Amendment** on which *Baze* and *Glossip* rest. …

5

> [T]he alternative-method requirement is **compelled by our understanding of the Constitution** …. **[A]nyone** bringing a method of execution claim alleging the infliction of unconstitutionally cruel pain **must** meet the *Baze-Glossip* test …"

*Bucklew v. Precythe*, 139 S. Ct. 1112, 1125-27, 1129 (2019) (citations omitted) (emphases added).

Plaintiffs concede the existence and origin of this requirement in their newest complaint, as they must. *See* Doc. 325 ¶ 165 ("*Bucklew* assigns that [alternative pleading] requirement to the United States Constitution."); *id.* ¶ 175 ("[T]he alternative pleading requirement of *Glossip* burdens their exercise of religion.").

This basic truth—and concession—renders Plaintiffs' religious exercise claims here untenable no matter how sincere or substantial Plaintiffs' underlying beliefs. In short, there can be no religious exemption from a specific constitutional requirement, unless the exemption is itself spelled out in the Constitution. Legally speaking, their claims present a true "impossibility." *See Schneider*, 493 F.3d at 1178. The "Eighth Amendment is the supreme law of the land," after all, and it "requires" "anyone bringing a method of execution claim" to put forth a "comparative assessment." *Bucklew*, 139 S. Ct. at 1128-29. Without comparators, simply stated, the "Eighth Amendment does not come into play." *Id.* at 1125. This is straightforward and basic constitutional law, and requires dismissal of Count VIII.

Petitioners cannot overcome Supreme Court interpretations of the Constitution by bringing religious liberty claims based on federal statutory law. *See* Doc. 325 ¶¶ 157-177 (relying on standard set forth in the Religious Freedom Restoration Act (RFRA) and the Religious Land Use and Institutionalized Persons Act (RLUIPA)). Federal statutes cannot trump or undermine the Constitution's requirements; *i.e.,* Congress cannot supersede the Eighth Amendment's mandates with regular legislation. *Marbury v. Madison*, 5 U.S. 137, 177

(1803) ("It is a proposition too plain to be contested, that the constitution controls any legislative act repugnant to it; or, that the legislature may alter the constitution by an ordinary act."). RFRA and RLUIPA certainly apply "to all federal law," Doc. 325 ¶ 159, but this only covers statutory, regulatory, and other such laws—not constitutional strictures. Thus, this Court need not delve into the RFRA/RLUIPA test. It is enough to know that the Eighth Amendment requires prisoners to plead alternative methods for "**all** … method-of-execution claims." *Bucklew*, 139 S. Ct. at 1125 (emphasis added).

Plaintiffs also mention other arguments about why the Supreme Court should reconsider its interpretation of the Eighth Amendment in light of other Constitutional provisions. Defendants note responses below, with the caveat that this court cannot revise the Supreme Court's interpretation of the Constitution anyway and still must dismiss this claim. *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) ("[I]t is this Court's prerogative alone to overrule one of its precedents." (quoting *United States v. Hatter*, 532 U.S. 557, 567 (2001))).

Plaintiffs briefly mention that their supposed "right" to not plead alternative methods of execution can also be found in the First and Ninth Amendments to the Constitution. *See* Doc. 325 ¶¶ 156, 178. But the First Amendment's Free Exercise Clause, as interpreted by the U.S. Supreme Court, cannot help them here. Under the well-known *Employment Division v. Smith* test, individuals are obligated to comply with a "valid and neutral law of general applicability," regardless of their religious beliefs. 494 U.S. 872, 879 (1990) (citation omitted). And the Eighth Amendment's alternative pleading requirement is indisputably valid, neutral, and generally applicable. In any event, even if the Constitution required something more akin to the RFRA standard for free exercise claims, Plaintiffs' arguments would still be meritless

because the more specific constitutional instructions—indicating that the Eighth Amendment "always" requires alternative pleading for "all" relevant claims—would prevail over a more general balancing test. *See RadLAX Gateway Hotel v. Amalgamated Bank*, 566 U.S. 639, 646 (2012) (citations omitted) (reciting the "old and familiar rule" that specific textual provisions typically control general provisions).[3] Just as the Fifth and Fourteenth Amendments' contemplation of the permissible deprivation of life with due process means that the Eighth Amendment cannot be interpreted to categorically bar such deprivation of life, *Gregg v. Georgia*, 428 U.S. 153, 177 (1976), so too the First Amendment cannot be interpreted to forbid the very pleading requirements demanded by the Eighth Amendment.

Plaintiffs' momentary reliance on the Ninth Amendment fares no better. As this very Court has observed in the past—in ruling that a prisoner failed to state a Ninth Amendment claim—"[t]he Tenth Circuit Court of Appeals has held that because other amendments, such as the Eighth Amendment, specifically address the mistreatment of prisoners, Ninth Amendment claims are indisputably meritless." *Banks v. Partyka*, No. 07CV0331-F, 2007 WL 2693180, at *3 (W.D. Okla. Sept. 11, 2007) (Friot, J., adopting report and recommendation) (citing *Parnisi v. Colo. State Hosp.*, 992 F.2d 1223 (10th Cir. 1993) (unpublished)); *see also Chrisco*

---

[3] Plaintiffs cite *Simmons v. United States*, Doc. 325 ¶ 156, but that that case would be distinguishable even in the absence of *Smith*'s test because the Court there emphasized that its holding was limited to its unique circumstances involving the Fourth and Fifth Amendments. *See* 390 U.S. 377, 394 (1968). Moreover, the *Simmons* language quoted by Plaintiffs has been labeled dicta, *see Bowman v. Racette*, 661 F. App'x 56, 60 (2d Cir. 2016) (unpublished summary order), and even called into question by the Supreme Court itself. *See McGautha v. California*, 402 U.S. 183, 212–13 (1971) ("[T]o the extent that [*Simmons*'] rationale was based on a 'tension' between constitutional rights and the policies behind them, the validity of that reasoning must now be regarded as open to question, and it certainly cannot be given the broad thrust which is attributed to it by Crampton. . . ."), *vacated on other grounds sub nom. Crampton v. Ohio*, 408 U.S. 941 (1972).

*v. Koprivnikar*, No. 16CV01553, 2017 WL 1344450, at *9 (D. Colo. Apr. 12, 2017) (collecting cases). Accordingly, Plaintiffs' Ninth Amendment claims should be dismissed.

In the end, in a roundabout way, Plaintiffs are simply asking this court to judge the correctness of the Supreme Court's decisions *Glossip* and *Bucklew* by bringing these religious exercise claims. Paragraph 174 of their newest complaint perhaps illustrates this best, as there Plaintiffs argue that the "least restrictive alternative" to the alternative pleading requirement is for Defendants "to follow the United States Constitution and not use methods of execution that violate the Eighth Amendment by causing a sure or very likely risk of severe pain and needless suffering." Doc. 325 ¶ 174. *Bucklew* could not have been more clear, however, in holding that the Eighth Amendment simply "does not come into play" unless and until prisoners/plaintiffs put forth valid alternative methods of execution. *Bucklew*, 139 S. Ct. at 1125. Plaintiffs are objecting to the Constitution itself—an "impossibility" if there ever was one—and their claim should be dismissed.

**B.    This court should dismiss the three prior defendants not named in the Third Amended Complaint.**

Three defendants were named in prior complaints that are no longer named in the Third Amended Complaint: Edward Evans, in his official capacity as Associate Director of Field Operations, David Parker, in his official capacity as Division Manager of East Institutions; and Greg Williams, in his official capacity as Division Manager of West Institutions. *Compare* Doc. 215 (Second Am. Compl.) ¶¶ 17-19, *with* Doc. 325 (Third Am. Compl.) ¶¶ 11-18.

Only state officials who enforce the laws at issue in a complaint are proper parties under 42 U.S.C. § 1983. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988).

If a state official does not enforce the law at issue, he is immune from suit because sovereign immunity protects state officials that have no role in enforcement of the relevant law. *See Ex parte Young*, 209 U.S. 123, 157 (1908) ("[I]t is plain that [a state] officer must have some connection with the enforcement of the act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.").

Three different rules require dismissal of improper parties. First, a party seeking relief must state a "plausible" claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). If the complaint does not allege adverse actions by certain defendants, it does not state a plausible claim against those defendants. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) ("[P]laintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their . . . rights."). Second, where the complaint states no claim at all against certain defendants, no case against them exists. *See Smith v. United States*, 561 F.3d 1090, 1097-99 (10th Cir. 2009). As a result, the Tenth Circuit has approved dismissing improper parties under both Rule 12(b)(1) and Rule 12(b)(6). *See id.* Third and finally, a court may dismiss improper parties as misjoined. *See* Fed. R. Civ. P. 21.

Here, Plaintiffs no longer name either those individuals or their positions as responsible for the claims at issue. The lack of any claims against those individuals or their positions indicates that they are no longer proper parties to this suit. Accordingly, this court should dismiss Edward Evans, David Parker, and Greg Williams as improper parties to this suit.

## II. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Counts I, III, and VIII of the Third Amended Complaint and dismiss Edward Evans, David Parker, and Greg Williams as improper parties to this suit.

Respectfully submitted,

s/ *Mithun Mansinghani*

BRYAN G. CLEVELAND, OBA 33860
RANDALL J. YATES, OBA 30304
ZACH WEST, OBA 30768
  *Assistant Solicitors General*
ANDY N. FERGUSON, OBA 33388
  *Staff Attorney*

MITHUN MANSINGHANI, OBA 32453
  *Solicitor General*
OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 522-4392
mithun.mansinghani@oag.ok.gov

*Counsel for Defendants*