## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICHARD GLOSSIP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | Case No. CIV-14-0665-F |
| | ) | |
| RANDY CHANDLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

This action challenges Oklahoma's execution protocol under the United States Constitution, the Oklahoma Constitution and other laws. The third amended complaint (hereafter "the complaint") alleges that plaintiffs are persons who have been sentenced to death by an Oklahoma court. Doc. no. 325, ¶ 2. Defendants are alleged to be state actors, sued in their official capacities only, who are charged with carrying out Oklahoma's death sentences. *Id.* at ¶¶ 2, 11-18.

Currently before the court is defendants' partial motion to dismiss three of the ten counts alleged in the complaint. Doc. no. 333. The challenged counts are counts I, III and VIII. Defendants also ask the court to dismiss three defendants who were named in prior versions of the complaint but who are not named in the third amended complaint. The motion is brought under Rule 12(b)(6), Fed. R. Civ. P. Plaintiffs filed a response brief, objecting to dismissal of the counts in question. Doc. no. 343. Plaintiffs do not object to the dismissal of the three previously-named defendants. Defendants filed a reply brief. Doc. no. 345.

The motion will be granted for the reasons stated below.

<u>Standards</u>

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007).  To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible.  *Id*.  The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.  <u>Ridge at Red Hawk</u>, 493 F.3d at 1177.

In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.  *Id*.  Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  <u>Ashcroft v. Iqbal</u>, 556 U.S.662, 664 (2009).  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id*.  The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility.  <u>Twombly</u>, 550 U.S. at 555; <u>Iqbal</u>, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  at 679.

<u>Count I</u>

Count I alleges a violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.  It alleges that defendants' failure to disclose sufficient information regarding Oklahoma's execution protocol prevents plaintiffs

from determining the legality of all aspects of the protocol, prohibits plaintiffs from consulting medical experts regarding aspects of the protocol, and prohibits plaintiffs from determining and seeking to remedy the ways in which the protocol presents an avoidable risk of unconstitutional pain and suffering during executions.  Doc. no. 325, ¶ 118.  Count I also alleges that the discretion the protocol gives to the Oklahoma Department of Corrections Director to change the implementation of death sentences denies plaintiffs sufficient notice and an opportunity to challenge the manner of their executions.  *Id*. at ¶ 119.  Count I alleges that in light of these alleged circumstances, executing plaintiffs pursuant to Oklahoma's protocol would violate the Due Process Clause of the Fifth Amendment by depriving them of their lives and liberty without sufficient notice and without an opportunity to be heard on the execution procedures to be used.  *Id*. at ¶ 120.

Defendants challenge count I on two grounds.  First, defendants argue the Due Process Clause of the Fifth Amendment does not apply to state actors.  Second, defendants argue that even if the court were to construe count I as a claim brought under the Due Process Clause of the Fourteenth Amendment (which applies to state actors), count I would fail on its merits.[1]

---

[1] In addition to count I, other counts also rely, in whole or in part, on the Due Process Clause of either the Fifth or the Fourteenth Amendment.  However, of these other counts, only count III is challenged by defendants' motion. For reference going forward, the other due process counts are as follows.

Count III is challenged and is addressed next in this order.  It alleges a deliberate indifference claim based in part on fifth amendment due process.  However, as noted several times in this order, the Due Process Clause of the Fifth Amendment does not apply to state actors.

Count IV references the Fifth Amendment as part of plaintiffs' claim that the protocol denies access to counsel and to the courts.  Doc. no. 325, ¶¶ 135, 141.  Presumably, count IV's reference to the Fifth Amendment is a reference to the Due Process Clause of the Fifth Amendment.  However, the Fifth Amendment's Due Process Clause does not apply to state actors.  (cont'd)

There is no question that, as written, count I fails because it is brought under the Due Process Clause of the Fifth Amendment, which applies to federal but not state actors.  *See*, Koessel v. Sublette County Sheriff's Dept., 717 F.3d 736, 748, n.2 (10th Cir. 2013) ("The Due Process Clause of the Fifth Amendment applies only to action by the federal government while the Due Process Clause of the Fourteen[th] Amendment applies to actions by state governments.  Here, Koessel alleges conduct only done by state authorities, and thus there can be no Fifth Amendment claim."). Plaintiffs concede this point and ask the court to either construe count I as brought under the Fourteenth Amendment or permit them to amend to fix their pleading error.  Given the court's earnest hope that unnecessary rounds of pleadings and motions can be avoided, it will treat plaintiffs' counsel more generously than it would be required to treat even the most unsophisticated pro se litigant.  The court will, accordingly, address the sufficiency of count I construed as a fourteenth amendment due process claim.

Construed as a fourteenth amendment due process claim, defendants challenge count I based on Whitaker v. Collier, 862 F.3d 490 (5th Cir. 2017). Whitaker affirmed the district court's dismissal of a fourteenth amendment due process challenge to Texas's execution protocol.  The Whitaker counts that dealt

---

Count VII alleges that plaintiffs' fourteenth amendment procedural due process rights are violated by the protocol because Oklahoma law does not provide an adequate post-deprivation remedy for the harm that will be caused by denial of the right to be executed using an ultrashort-acting barbiturate.  *Id*. at ¶154.

Count IX includes a fourteenth amendment substantive due process claim based on experimentation on captive human subjects.  *Id.* at ¶ 184.

Count X includes a fourteenth amendment due process claim which appears to duplicate the fourteenth amendment claim plaintiffs say they intended to allege in count I. In count X, plaintiffs allege that defendants' concealment of and refusal to provide information about the protocol deprives plaintiffs of their right to notice and an opportunity to be heard in violation of the Due Process Clause of the Fourteenth Amendment. *Id*. at ¶ 193.

with the inability to access information about the method of execution and the lack of a notice requirement in the execution protocol, were similar to the allegations in count I of this action.[2]  *Id*. at 500.  Whitaker held that "The lack of a cognizable liberty interest is fatal to the due process claim," citing Sepulvado v. Jindal, 729 F.3d 413, 420 (5th Cir. 2013).[3]  Whitaker at 500.  Whitaker argued there had been recent developments in the law, including "in the lethal injection landscape nationally," which required the court to reconsider its position taken in Sepulvado.  *Id*.  The court of appeals disagreed, and noted that Glossip v. Gross, 576 U.S. 863 (2015), (a decision which was the result of an earlier trip to the Supreme Court in this action, when a different protocol was in place in Oklahoma), did not address due process questions regarding execution protocols.  *Id*.

Plaintiffs argue that Whitaker is not precedential within this circuit.  True enough, but that fact does not keep this court from agreeing with it.

Plaintiffs also cite Ingraham v Wright, 430 U.S. 651 (1977), and Mullane v. Central Hanover Bank & Trust Co., 339 US. 306 (1950).  They cite Ingraham for the proposition that liberty interests are implicated when the government plans to

---

[2] The same counts also alleged a violation of plaintiffs' liberty interest under the Eighth Amendment.  The court rejected the eighth amendment claim, quoting Whitaker v. Livingston, 732 F.3d 465, 467 (5th Cir. 2013), which stated that "[W]e know of no case, in the context of executions, in which the Supreme Court has found a liberty interest to exist, based on the contours of the Eighth Amendment, that goes beyond what that amendment itself protects."  Whitaker, 862 F.3d at 500.

[3] In Sepulvado, the district court had determined that Sepulvado was likely to prevail on his claim that the Due Process Clause of the Fourteenth Amendment entitled him to prompt and detailed disclosure of Louisiana's most recent execution protocol.  The Fifth Circuit Court of Appeals reversed, stating that "no appellate court has recognized the due-process claim on which the district court *a quo* granted relief; we decline to be the first."  Sepulvado, 729 F.3d at 419.

inflict appreciable physical pain.[4]  They cite <u>Mullane</u> for the proposition that the fundamental requisite of due process is the opportunity to be heard, and that this requirement has little worth unless one is informed that the matter is pending.[5]  The general principles established by <u>Ingraham</u> and <u>Mullane</u> are duly noted.  But neither decision involves challenges to an execution protocol.

Plaintiffs also cite <u>Oken v. Sizer</u>, 321 F. Supp. 2d 658 (D. Md. 2004), a decision which *does* address due process rights in the context of challenges to an execution protocol.  In <u>Oken</u>, the district court found that due process required Oken to have an opportunity to receive notice about how his rights would be affected, as well as an opportunity to respond and be heard regarding changes to Maryland's execution protocol.  *Id*. at 665.  The district court granted Oken a stay of execution, ordering defendants to provide him with a complete copy of the state's amended execution protocol, and it set a briefing schedule.  *Id*.  at 668.  The district court's stay order was entered on June 14, 2004.  Two days later, on June 16, 2004, the Supreme Court vacated the stay without discussion.  <u>Sizer v. Oken</u>, 542 U.S. 916 (2004).  Given this history, <u>Oken v. Sizer</u> provides no support for plaintiffs' argument that count I states a viable due process claim under the Fourteenth

---

[4] <u>Ingraham</u> involved the due process rights of junior high school students who argued they had been subjected to disciplinary corporal punishment in violation of their constitutional rights.  The Court wrote that "[A]t least where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, we hold that Fourteenth Amendment liberty interests are implicated."  430 U.S. at 674.  In a discussion of the Eighth Amendment, the Court noted that "The prisoner and the schoolchild stand in wholly different circumstances, separated by the harsh facts of criminal conviction and incarceration."  *Id*. at 669.

[5] <u>Mullane</u> held that statutory notice by newspaper publication was an insufficient basis for depriving known persons, whose whereabouts were also known, of substantial property rights and was incompatible with the Fourteenth Amendment.  339 U.S. at 320.

Amendment.  *And see*, <u>Sepulvado</u>, 729 F.3d at 418 (noting the Supreme Court "swiftly and summarily" vacated the stay in <u>Oken</u>).

All of that said, the court is aware that it let a fourteenth amendment claim which was similar to count I survive at an earlier stage.  On December 12, 2014, the court denied a motion to dismiss a fourteenth amendment due process claim which was alleged in an earlier iteration of the complaint.  Doc. no. 155, pp. 5-8[6] (order of December 12, 2014).  At that time, the court faced an extremely compressed time-table. Plaintiffs Warner, Glossip, Grant and Cole were scheduled for execution on dates beginning on January 15, 2015 and ending on March 5, 2015.  Doc. no. 71.  It therefore made sense to permit the parties to address the legal and factual issues, with as much finality as the circumstances would permit, at a single hearing— namely, at the preliminary injunction hearing which was held in late December, 2014.[7]  No similar time constraints apply now.  Moreover, given the shotgun nature of the current version of the complaint (which includes ten counts, many of which cite more than one amendment or law in support), and given the Supreme Court's recent and unequivocal signals in execution protocol cases (see discussion of count III, below), it is prudent to go ahead and dismiss challenged claims that are not plausible as a matter of law.

In summary, count I lacks support in the law.  It fails under the Due Process Clause of the Fifth Amendment, which reaches only federal actors.  And it fails, construed as a claim brought under the Due Process Clause of the Fourteenth Amendment.  There are no reasons to postpone dismissal.  Count I will be dismissed.

---

[6] This order cites documents by their original (not ecf) page numbers.

[7] The preliminary injunction hearing was on December 17-19 and 22.  The court issued its order denying relief on December 22, 2014.  Doc. nos. 170, 172, 173.

<u>Count III</u>

Count III alleges that Oklahoma's execution protocol constitutes deliberate indifference to the serious medical needs of the plaintiffs, in violation of the Eighth and Fifth Amendments of the United States Constitution.  Defendants challenge count III in its entirety.  Plaintiffs defend count III with no mention of the Fifth Amendment, citing only the Eighth Amendment.[8]

The Supreme Court's recent decisions establish the eighth amendment standards which must be met by an inmate who challenges an execution protocol. <u>Barr v. Lee</u>, ___ U.S. ___, 2020 WL 3964985 (July 14, 2020), involved an eighth amendment challenge by federal death-row inmates to a federal, single-drug lethal injection protocol. The Court vacated the preliminary injunction so that plaintiffs' executions could proceed as planned.  It did so because plaintiffs had not made the showing required to justify last-minute intervention by a federal court, based on the standard set out in <u>Bucklew v. Precythe</u>, ___ U.S. ___, 139 S. Ct. 1112 (2019).  <u>Barr</u> at *2.  <u>Bucklew</u>, in turn, cites <u>Glossip v. Gross</u>, 576 U.S. 863 (2015), and <u>Baze v. Rees</u>, 553 U.S. 35 (2008), for the applicable standard.  <u>Bucklew</u>, 139 S. Ct. at 1125. <u>Bucklew</u> states that "where…the question in dispute is whether the State's chosen method of execution cruelly superadds pain to the death sentence, a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt [that alternative method] without legitimate penological reason."  *Id*.  As

---

[8] As previously noted, count III relies, in part, on the Due Process Clause of the Fifth Amendment. Doc. no. 325, ¶¶129 (referring to substantive due process), 133 (Fifth Amendment).  Defendants' brief points out that the Due Process Clause of the Fifth Amendment does not apply to state actors. Doc. no. 333, p.3, n.1.  Plaintiffs do not argue otherwise, nor do they ask for leave to amend count III to bring it under the Fourteenth Amendment.  Plaintiffs choose, instead, to defend count III under the Eighth Amendment.  In these circumstances, the court finds that plaintiffs have conceded dismissal of count III to the extent this count rests upon the Due Process Clause of either the Fifth or the Fourteenth Amendment.

observed in <u>Bucklew</u>, the Court's decisions in <u>Glossip</u> and <u>Baze</u> "left no doubt that this standard governs 'all Eighth Amendment method-of-execution claims.'" *Id.*, quoting <u>Glossip</u> at 867.

These decisions set the standard by which an eighth amendment challenge to a method of execution must be evaluated—a standard which says nothing about deliberate indifference. In addition, this court agrees with the following statement in <u>Jackson v Danberg</u>, 594 F.3d 210, 223 at n.16 (3d Cir. 2010).

> While <u>Baze</u> captured some of the language in <u>Helling</u>[9] and <u>Farmer</u>,[10] importantly, it did not import the 'deliberate indifference' language used in those cases. The fact that <u>Baze</u> took such pains to extract certain language from <u>Helling</u> and <u>Farmer</u> suggests that the other standards announced in those cases do not govern Eighth Amendment method-of-execution challenges. That distinction makes sense, as the Supreme Court's Eighth Amendment conditions-of-confinement cases and method-of-execution cases have separate lineages in the Court's jurisprudence.

Finally with respect to count III, the court notes that plaintiffs, in their defense of this deliberate indifference count, rely on a long list of alleged problems with Oklahoma's execution protocol.[11] In the view of this court, the Eighth Amendment

---

[9] <u>Helling v. McKinney</u>, 509 U.S. 25 (1993).

[10] <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

[11] As argued by the plaintiffs, alleged issues with the protocol include but are not limited to: issues with consciousness checks; issues with compounded drugs regarding standards of purity and potency, and the failure to explain how drugs intended for use have been or will be compounded; issues with training including omission of details that would provide for more consistent and effective training; issues with IV access and maintenance; issues with documentation and drug verification, such as the failure to require adequate documentation that the actual steps taken are correctly recorded, the failure to require that drug purchases be recorded in writing, and giving prisoners only ten days' notice of the drug selection; issues with transparency, oversight and review; and issues with the defendant's right to counsel throughout the procedure. Doc. no. 343, pp. 8-10.

does not permit the plaintiffs, nor does it require the court, to fly-speck a state's execution protocol to determine whether it covers everything it could conceivably cover.

Plaintiffs have conceded the portion of count III that depends upon the Fifth Amendment's Due Process Clause, and deliberate indifference in violation of the Eighth Amendment is not a plausible legal theory by which to challenge Oklahoma's execution protocol. Count III will be dismissed.

Count VIII

Count VIII is brought under the First and Ninth[12] Amendments to the United States Constitution, and also under certain federal statutes.[13] The gist of count VIII is that plaintiffs' religious beliefs against suicide, which are protected by the First Amendment, are impinged upon by the Court's requirement that plaintiffs plead (and ultimately prove) a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain, which the state has refused to adopt without a legitimate penological reason. This legal theory is foreclosed by the standards set forth in Glossip and Bucklew, and count VIII will therefore be dismissed.

Former Defendants Evans, Parker and Williams

Lastly, defendants ask the court to dismiss three persons who were formerly named as defendants in this action. The defendants in question are: Edward Evans in his official capacity as Associate Director of Field Operations, David Parker in

---

[12] The Ninth Amendment provides that "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

[13] The Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb-1 *et seq.*, and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §2000cc *et seq.*

10

his official capacity as Division Manager of East Institutions and as Commander of the Command Team,  and Greg Williams in his official capacity as Division Manager of West Institutions.[14]  These defendants are no longer named in the complaint, nor does the complaint include any allegations specific to them.  In these circumstances, the complaint necessarily fails to state a claim against these persons. In addition, plaintiffs confirm that Evans, Parker and Williams are no longer parties. Doc. no. 343, p. 13, n.4.  Plaintiffs raise no objections and propose no conditions (such as dismissal without prejudice) to the dismissal of these former defendants. With there being no objection, these defendants will be dismissed.

Conclusion

After careful consideration, defendants' motion to dismiss is **GRANTED**. Counts I, III and VIII are **DISMISSED** under Rule 12(b)(6).  Edward Evans, David Parker and Greg Williams, all of whom were previously named as defendants in their official capacities, are likewise **DISMISSED** under Rule 12(b)(6).  All dismissals are with prejudice, and without leave to amend.

IT IS SO ORDERED this 15th day of September, 2020.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

14-0665p077.docx

---

[14] *See*, second amended complaint, doc. no. 215, ¶¶ 17-19.