IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RICHARD GLOSSIP, et al.,  )
                          )
    Plaintiffs,            )
                          )
-vs-                       )   Case No. CIV-14-0665-F
                          )
RANDY CHANDLER, et al.,    )
                          )
    Defendants.            )

# ORDER

Before the court is the plaintiffs' motion to compel production of documents, doc. no. 361. The defendants have responded to the motion, doc. no. 370, and plaintiffs have replied, doc. no. 373.

The motion seeks an order compelling production of documents in two categories: (i) documents withheld on the basis of the deliberative process privilege, and (ii) documents responsive to Rule 34 Request No. 10, which generally seeks production of documents relating to defendants' decisions with respect to previous iterations (and revisions) of Oklahoma's lethal injection protocol. Those two prongs of the motion are addressed below.

I.
Deliberative Process Privilege

Defendants assert that twenty-four documents are exempt from production by application of the deliberative process privilege, a common law privilege.[1] Plaintiffs argue that this privilege may only be invoked by federal governmental agencies. They argue the privilege therefore not available to the defendants in this action, who

---

[1] In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997) ("Although this privilege is most commonly encountered in Freedom of Information ('FOIA') litigation, it originated as a common law privilege.").

are state officials named in their official capacities only. This is a threshold issue because if plaintiffs are correct and the privilege is not available to the defendants as a matter of law, then that is the end of the matter and the twenty-four documents must be produced.

For the reasons stated below, the court concludes the deliberative process privilege may be asserted by state officials such as the defendants in this action.

First, in federal actions, federal common law determines relevant privileges unless state law supplies the rule of decision. Rule 501, Fed. R. Evid. Federal law supplies the rule of decision in this case, so the court looks to federal common law to determine whether a particular privilege is available. Federal common law recognizes the existence of the deliberative process privilege. *See*, *e.g.*, <u>Dept. of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Association</u>, 532 U.S. 1, 8-9 (2001) (discussing the deliberative process privilege in a Freedom of Information Act case).[2]

Second, the rationale for the privilege applies equally to federal- and state-level decision-makers. The purpose of the privilege is to protect the deliberative and decision-making processes of government. <u>N.L.R.B. v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 150 (1975); *and see*, <u>Smith v. Rogers</u>, 2017 WL 2937957, **3-4 (W.D. Pa. July 10, 2017) (court saw no reason why state or local governments would not also be entitled to assert the privilege given the privilege's motivating rationale; collecting cases, at *4, n.4, that have allowed local and municipal governments to assert the privilege). As the Supreme Court observed in <u>Klamath</u>, 532 U.S. at 9, the object of the privilege is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the government.

---

[2] A FOIA exemption permits certain types of documents to be withheld if conditions are met, including the requirement that the document fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds the document. <u>Klamath</u>, 532 U.S. at 8.

Thus, the rationale for the privilege is one which would foster better decision-making at all levels of government.

Third, the Supreme Court's descriptions of the privilege do not suggest that the privilege is only available to the federal government. To the contrary, the Court describes the privilege as applying to "governmental" decisions and officials. *See*, *e.g.*, Klamath at 8-9, quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) ("deliberative process covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated"; the "privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery").

Fourth, while plaintiffs cite Fish v. Kobach, 2017 WL 1373882 (D. Kan. April 17, 2017), as a case within this circuit which holds that the privilege only protects pre-decisional deliberations of federal agencies, Fish is not precedential. Moreover, two of the three cases Fish cites for the proposition that only United States authorities may invoke the privilege do not necessarily support that proposition as those cases turn on statutory language within the FOIA. *See*, *id.* at *5, n.37. Furthermore, at least one district level decision within this circuit has addressed the privilege in the context of documents held back by a municipality, implicitly presuming that the city could invoke the privilege if other requirements were met, which the magistrate judge held he could only determine by reviewing the documents. *See,* Leadholm v. City of Commerce City, Colorado, 2017 WL 3839454 (D. Colo. September 1, 2017) (in a federal question case, federal law controls the issue of privilege; federal common law recognizes the deliberative process privilege; magistrate judge would review documents to determine whether they fell within the privilege).

For these and other reasons, the court concludes that the deliberative process privilege is potentially available to the defendants in this action. Accordingly, the

3

next step is to determine whether the twenty-four documents meet other requirements necessary for the privilege to operate.[3]

In re Sealed Case, 121 F.3d 729 (D. C. Cir. 1997), describes these requirements as follows.

> Two requirements are essential to the deliberative process privilege: <u>the material must be predecisional and it must be deliberative.</u> … The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.

121 F.3d at 737 (emphasis added; citations and quotations omitted).

If the documents meet the above requirements, the court must then determine whether the privilege is overcome by a sufficient showing of need on the part of the plaintiffs.

> The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need. This need determination is to be made flexibly on a case-by-case, ad hoc basis. Each time the deliberative process privilege is asserted the district court must undertake a fresh balancing of the competing interests, taking into account factors such as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees. For example, where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government

---

[3] The court also notes that, as defendants have pointed out, "there is no reason why state government—a government of general power that preexists the federal government—should have less privilege than the federal government—a government of limited enumerated powers that is constituted by the states." Doc. no. 370, at 5. This historically and constitutionally correct observation is, by itself, sufficient to undermine the plaintiffs' rather emphatic (and meritless) argument that the deliberative process privilege is the exclusive prerogative of agencies of the federal government. Doc. no. 361, at 3.

4

deliberations in this context does not serve the public's interest in honest, effective government.

*Id.* at 737-38 (emphasis added; citations, quotations and footnotes omitted).

Keeping these principles in mind, the court will review the twenty-four documents to determine whether the privilege is appropriately invoked. The court will require production of the discoverable portions of any of the documents which may be, wholly or in part, unprotected by the privilege. The court intends to undertake that review promptly. However, in the interest of avoiding unnecessary delay (and bearing in mind the requirements of the scheduling order entered on August 14, 2020), the court sees no reason to defer entry of this order.

## II.
## Request No. 10

The second prong of the motion seeks an order compelling discovery responsive to plaintiffs' document Request No. 10. That request seeks:

> All Documents and Communications Concerning any review, analysis, investigation, consideration, assessment, discussion, determination, or evaluation in connection with: (a) the decision to use sodium pentothal/thiopental between 1990 and 2010 as the first drug in Oklahoma's three-drug execution protocol; (b) the decision in 2010 to begin using pentobarbital in place of sodium pentothal/thiopental as the first drug in Oklahoma's three-drug execution protocol; (c) the decision in 2010 to include the option of midazolam as the first drug in Oklahoma's three-drug execution protocol; and (d) the decision in 2014 to amend the then-existing execution protocol to increase the dosage of the paralytic vecuronium bromide from 40 milligrams to 100 milligrams.

As can be seen, the first two subdivisions of Request No. 10 relate to the decision to use sodium pentothal and to the decision, in 2010 (or earlier), to begin using pentobarbital. The only justification given in plaintiffs' motion for these two

5

subdivisions of Request No. 10 is that documents responsive to those two subdivisions would be "germane to the feasibility and efficacy of those other execution drugs." Doc. no. 361, at 7. However, defendants dispute only the *availability* of those drugs, not their feasibility or efficacy. *See* doc. no. 370, at 10.

In reply, plaintiffs assert a new ground for discovery of documents responsive to these two subdivisions of Request No. 10. They assert that "the requested discovery is germane to whether the three-drug midazolam protocol creates a significant risk of increased punishment from the use of pentothal/thiopental and/or pentobarbital." Doc. no. 373, at 9. This new contention is asserted for the first time in a reply brief and is, for that reason, disregarded. *See*, Graves v. Colvin, 2013 WL 3992424 (W.D. Okla. Aug. 2, 2013) and cases there collected. However, on its own merits, this contention would be turned aside. It seeks discovery of documents relating to decisions made ten or more years ago, involving drugs the defendants do not presently intend to use to execute plaintiffs. The relevance of those documents, even in the somewhat broader discovery sense, is marginal at best. This implicates the court's discretion to evaluate the proportionality of the discovery sought–even if relevant–to "the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26 (b)(1), Fed.R.Civ.P. The court, undertaking that balancing, concludes quite readily that plaintiffs' belated argument for compelling discovery responsive to the first two subdivisions of Request No. 10 is unavailing.

The court also declines to compel discovery of additional documents encompassed by subdivision (c) of Request No. 10. Plaintiffs have already received very substantial discovery relating to midazolam and the decision to incorporate midazolam into the Oklahoma protocol. The court distinctly recalls its involvement

in those discovery matters at an earlier stage of this case, and notes that, at a more recent stage of this case, it required defendants to update that discovery. The discovery now at issue with respect to subdivision (c)–if there are in fact any additional documents to be had–would relate to decisions made more than ten years ago as to matters going essentially to the reasoning and factual basis for the decision to use midazolam. However, the relevant issue is whether, objectively, the effect of midazolam (taking into account the parties' contentions with respect to pharmacology and pharmacokinetics, among other things), when used as the first drug in the execution protocol, is to subject the prisoner to (i) a constitutionally impermissible level of risk of (ii) a constitutionally impermissible level of pain. Documents relating to decisions made more than ten years ago would hardly seem to have any particular bearing on this issue, especially given the fact that, in the last ten years, authorities in various states have accumulated a significant body of experience using midazolam as a lethal injection drug.

Essentially the same reasoning applies to subdivision (d) of Request No. 10. The pharmacological effect of vecuronium bromide is well known. That pharmacological effect is readily susceptible of proof, and there can be little doubt that evidence bearing directly on that issue has been produced and is, in any event, available to plaintiffs' counsel. Aside from that, it is also evident that plaintiffs' curiosity with respect to subsection (d) is predominantly focused on an assay of the subjective intent underlying the decision, six years ago, to increase the dosage of vecuronium bromide, rather than the objective issue of the effect of vecuronium bromide. Doc. no. 361, at 8. It is difficult to discern how documents relating to that decision-making process have any real bearing on the issues that will make a difference in this case.

Aside from the issues of relevance (in the Rule 26 sense) discussed above, the court returns, with respect to subdivisions (c) and (d) of Request No. 10, to a

proportionality analysis. The fact is that, over the six-year history of this case, plaintiffs have received very substantial discovery, including recent supplementation of discovery conducted several years ago. It is also worth mentioning that the focus of this case is very much on the "here and now," in terms of the dispositive issues as to whether the defendants' proposed method of execution poses a constitutionally impermissible risk of a constitutionally impermissible level of pain. Subjective thoughts from six or ten (or more) years ago, and facts as understood six or ten (or more) years ago, will have little or nothing–more likely nothing–to do with the outcome of this case. Taking into account the factors set forth in Rule 26(b), the court is well satisfied that further document discovery, as to matters as dated as those contemplated by the second two subdivisions of Request No. 10, is simply not justified.

### III.
### Ruling

Plaintiffs' motion to compel discovery, doc. no. 361, is **GRANTED IN PART AND DENIED IN PART**. It is granted to the extent that the court will undertake an *in camera* review of the documents withheld on the basis of the deliberative process privilege and will require production of any portions of those documents which are not protected by that privilege. The motion is denied in all other respects.

IT IS SO ORDERED this 7th day of December, 2020.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

14-0665p086.docx