# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICHARD GLOSSIP, *et al.*, | | |
| *Plaintiffs,* | No: | 14-cv-665-F |
| v. | | |
| RANDY CHANDLER, *et al.*, | | |
| *Defendants.* | | |

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiffs' supplemental discovery, while more responsive, ultimately does not meet their burden under *Glossip*'s second prong. Summary judgment remains warranted.

## I.   Summary judgment is still warranted under *Glossip*'s second prong.

Plaintiffs still preserved their previous responses denying that their purported alternatives are constitutional and denying that Plaintiffs won't challenge them if adopted. Plaintiffs must identify alternatives with "constitutionally permissible" degrees of pain. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1126 (2019); *see also Brooks v. Warden*, 810 F.3d 812, 822 (11th Cir. 2016). Otherwise, this case is not about seeking constitutional executions but about challenging the death penalty itself or delaying sentences through never-ending litigation. *See* Doc. 388, MSJ at 34-35; Doc. 397, MSJ Reply at 4-5. Yet Plaintiffs refuse to bind themselves to their purported alternatives, instead preserving all prior objections and responses, *see, e.g.,* Ex. 1, Supp. Resp. at 1-2, including discovery responses denying that they will forgo challenges to those alternatives if adopted, *see* Doc. 388-26 at 5, while citing ¶ 114 of their Complaint, which "reserve[s] the right following consultation with counsel to object to any proffered alternative," *see* Doc. 325, ¶ 114. Perhaps Plaintiffs in their response brief will finally claim their proffered alternatives are constitutional and commit to not challenging them in the future. But if they fail to do so, summary judgment against all Plaintiffs is warranted.

Even if Plaintiffs can make it past these threshold issues, their proposed alternatives still fail at *Glossip*'s second prong because they lack sufficient detail, are untried and untested, or would not significantly reduce a substantial risk of severe pain. *See* Doc. 388 at 35-39. And as explained in Part II below, the barbiturate alternatives in particular face issues of availability. Judgment is warranted on these grounds as well.

Finally, not all Plaintiffs have identified all four alternatives listed in the Complaint as ones they are pleading—only eleven Plaintiffs assert all four.[1] *See* Ex. 2. Thus, a denial of summary judgment on any one alternative at *Glossip*'s second prong does not entitle all Plaintiffs to a trial. For example, eight Plaintiffs have identified no alternative at all—summary judgment is warranted for all of these inmates.[2] Similarly, this Court should grant summary judgment to Defendants against any Plaintiffs whose selected alternatives are insufficient. Defendants have attached a chart of each Plaintiff's identified alternative(s) to aid the Court in determining where summary judgment is appropriate depending on its rulings on each alternative. Ex. 2.

## II.   Plaintiffs fail to show barbiturates are available to Defendants.

The supplemental responses also fail to identify viable legal sources of barbiturates.

To start, Plaintiffs supplemental responses to Interrogatory 16 only cite sources of *compounded* barbiturates, not *manufactured* barbiturates. Meanwhile, seven Plaintiffs identify only manufactured barbiturates as an alternative (Compl. ¶ 114(a)) while rejecting compounded ones (¶ 114(b)). Ex. 2.[3] Plaintiffs do not dispute the well-known fact that sodium thiopental is no longer manufactured and that the pentobarbital manufacturer blocks its use in executions. *See Glossip v. Gross*, 576 U.S. 863, 869-871 (2015). Thus, they have failed to show the

---

[1] Plaintiffs Cole, Cuesta-Rodriguez, Eizember, Fairchild, Goode, Hancock, Malone, Mitchell, Rojem, Ryder, and Sanchez.

[2] Plaintiffs Grant and Jones refused to identify any alternatives; Plaintiffs Coddington, John Grant, Harris, Postelle, and Simpson did not supplement; and pro se Plaintiff Lay has never asserted any alternative in his many filings. Plaintiff Hanson may also fall into this category depending on whether his first or second answer is his true one.

[3] Plaintiffs Andrew, Cannon, Hanson, Harmon, Johnson, Littlejohn, and Martinez

manufactured barbiturate alternative is available, and summary judgment is at least warranted for those Plaintiffs who would refuse compounded pentobarbital.

For the fifteen Plaintiffs who have asserted compounded alternatives, the supplement offers nothing beyond options that Defendants previously addressed. Doc. 388, MSJ at 35-36; Doc. 397, MSJ Reply at 5-6. Considering Plaintiffs' supplemental discovery responses, Defendants provide these additional arguments.

It is important first to distinguish the two steps involved in obtaining compounded drugs: There must be (1) a source of the powdered form of the drug to be used in compounding and (2) a compounding pharmacist willing to convert ("compound") the powder into an injectable solution. Thus, there is a distinction between the *manufacturing* of the powder and the *compounding* of that powder into an injectable form. So even if Defendants had a pharmacist willing to compound the powder into an injectable form, Defendants still would need access to the powder needed for compounding.

Plaintiffs point to statements of Defendants' expert Dr. Buffington saying that sources for pentobarbital exist and, if those sources were willing to supply Defendants, the pentobarbital could then be compounded. Ex. 1, Supp. Resp. at 4. But that is of little relevance because, as is well known, many potential sources of pentobarbital will not sell the item for use in executions. *See Glossip*, 576 U.S. at 869-871; *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1331 (11th Cir. 2020). Not surprisingly, Plaintiffs conveniently omit Dr. Buffington's testimony that he hasn't "found anybody that is interested in doing that service," and upon reaching out to potential sources, "no one [] actually is willing to do it." Ex. 3, Buffington Depo. Tr. 119:13-120:11.

3

Plaintiffs suggest Defendants synthesize their own drugs in a chemistry lab, Ex. 1, Sup. Resp. at 3-4, but still identify no labs that meet the extensive legal and technical requirements for the manufacture and sale of controlled substance pharmaceuticals, *see* Doc. 388, MSJ at 36. Plaintiffs point to the University of Oklahoma, but it is neither currently licensed by the state nor registered with the U.S. Food & Drug Administration for the manufacture and sale of controlled substances,[4] nor is there any evidence it has invested in meeting the technical requirements for a manufacturing license as a result. Thus, Plaintiffs' assertion that it has the general lab equipment for such manufacturing, Ex. 1, Supp. Resp. at 4, simply disregards the multiple reasons that the University cannot supply either drug. Perhaps undergraduates could produce viable drugs through an illicit operation at the University, but an illegal supply is not one that is reasonably available to Defendants.

Plaintiffs also point to other states that have used or plan to use pentobarbital, but they do not dispute that Defendants have contacted several, including Texas, Missouri, and Arizona. Doc. 397-1 at 111:8-112:4. None were forthcoming with information about their sources, *see id.*, which is not surprising given state confidentiality statutes or policies, and Plaintiffs offer no suggestion of how Defendants would overcome that barrier. Plaintiffs are also forgetting that sources willing to supply drugs once, or long ago, are not necessarily available now. The Texas "source" Plaintiffs mention was a compounding pharmacy that received negative publicity for its quality control and sterility issues. Doc. 392-12 at 5. Hardly a reasonable place to start. The article also mentions that Texas has a stockpile of pentobarbital

---

[4]     Both    databases    are    available    online.    *See* https://www.ok.gov/pharmacy/Online_Services__License_Lookup/License_Lookup/Facilities/; https://www.accessdata.fda.gov/scripts/cder/drls/default.cfm.

from a one-time purchase in November 2014 and gave some to the pharmacy to compound. *See id.* Even if Defendants eventually persuaded Texas officials to name their 2014 source, that source may not be able or willing to supply the drugs seven years later.

Similarly, Arizona has a compounding pharmacy willing to supply drugs, but that announcement does not necessarily mean the pharmacy can secure powder for compounding. Thus why Director Crow stated that he would monitor what happens in Arizona: to see if their pharmacy supplies the drug. *See* Doc. 388-19 at 183:18-184:20. Defendants can then ask (again) for the source if Arizona succeeds. *See* Doc. 388 at 20 ¶ 114. Even then, Arizona might still choose to keep its source confidential. Plaintiffs address none of these problems.

Plaintiffs lastly claim that Defendants should have contacted every one of over 1,000 pharmacies in Oklahoma (why not every pharmacy in the U.S.?) in search of barbiturates. Ex. 1, Supp. Resp. at 6. But as Mr. Bentley explained, in seeking a pharmacy, he strategically chose not to contact pharmacies that were "not independent"—chains like Wal-Mart or Walgreens—which he believed would have a policy against supplying drugs for executions. Doc. 388-20, Bentley Depo Tr. at 75:12-25, 84:7-24. Out of the approximately 400 pharmacies remaining, Mr. Bentley contacted ten percent of them. *Id.* Mr. Bentley's targeted contacting of 10% of all independent pharmacies in the State is more than sufficient to show unavailability under *Glossip*. Other courts have found *Glossip* satisfied with far less diligence. *See, e.g., McGehee v. Hutchinson*, 854 F.3d 488, 493 (8th Cir. 2017) (en banc). Plaintiffs' desire for more cold calls does not count as identifying a source and otherwise has no basis in law.

For all these reasons and the other reasons given in prior briefs, Docs. 388, 397, Defendants request summary judgment in their favor.

5

Respectfully submitted,

s/ *Mithun Mansinghani*

BRYAN G. CLEVELAND, OBA 33860

RANDALL J. YATES, OBA 30304

ZACH WEST, OBA 30768

    *Assistant Solicitors General*

CHARLES DICKSON, OBA 17941

    *Assistant Attorney General*

ANDY N. FERGUSON, OBA 33388

    *Staff Attorney*

MITHUN MANSINGHANI, OBA 32453

    *Solicitor General*

OFFICE OF ATTORNEY GENERAL

STATE OF OKLAHOMA

313 N.E. 21st Street

Oklahoma City, OK 73105

Phone:   (405) 522-4392

mithun.mansinghani@oag.ok.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on this 7th day of May 2021, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF system for filing and that a Notice of Electronic Filing will be transmitted to all registered participants. I further certify that a true and correct copy of the foregoing will be transmitted by first class mail, postage pre-paid to the following non-ECF registrant:

Oklahoma State Penitentiary
Wade Lay DOC# 516263
P.O. Box 97
McAlester, OK 74502

Respectfully submitted,

s/ *Mithun Mansinghani*

MITHUN MANSINGHANI, OBA 32453
   *Solicitor General*

7