IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RICHARD GLOSSIP, et al., )
)
    Plaintiffs, )
)
-vs- ) Case No. CIV-14-0665-F
)
RANDY CHANDLER, et al., )
)
    Defendants. )

## **ORDER**

The operative statement of the claim of Wade Lay in this action is the Third Amended Complaint, doc. no. 325, filed on July 7, 2020, which expressly includes Mr. Lay as a plaintiff. In paragraph 114 of the Third Amended Complaint, Mr. Lay (along with all of the other plaintiffs) pleads the existence of methods of execution, as alternatives to execution per Chart D of the February, 2020 execution protocol (500 milligrams of midazolam, followed by 100 milligrams of vecuronium bromide, followed by 240 milliequivalents of potassium chloride), as follows:

> 114. Subject to the foregoing, solely for purposes of this pleading, based on statutory authority and current and historical practices, and upon information and belief, counsel alleges on behalf of Plaintiffs (each of whom reserve the right following consultation with counsel to object to any proffered alternative), the following alternative methods of execution are feasible, available, readily implemented and would significantly reduce a substantial risk of severe pain. Defendants have refused, without a penological reason, to adopt any of these alternatives.
>
>     a.    Execution by a single dose of FDA-approved pentobarbital or sodium pentothal (thiopental) as provided by Charts A and B of the Execution Protocol, each of which is, upon information and belief, accessible to ODOC, including

implementing the remedial measures and safeguards detailed below and adding a pre-dose of an analgesic, anesthetic drug in a sufficiently large clinical dose. There are a wide variety of well-known, accessible, and easily administered pain-relieving medications used in anesthetic procedures. The opioid fentanyl is one drug that is accessible to ODOC and that would substantially reduce the risk that the prisoner would remain sensate to pain. The necessary remedial measures and safeguards are as follows:

    i. the selection of qualified, competent and vetted team members, whose qualifications are disclosed;

    ii. establishment of two patent, functioning peripheral IV lines and assurance (a) that no central line will be placed unless it is determined to be necessary following a vein assessment by a qualified medical professional, and (b) central lines will be set only by qualified and competent medical professionals; and

    iii. the administration of FDA-approved pentobarbital or thiopental in close proximity to the prisoner, rather than remotely. Eliminating the need for extension sets of IV tubing significantly would reduce the risks of leakage and pinching of the tubing. Proximate administration would also ensure adequate surveillance and monitoring of the IV, the catheter site and the prisoner. By eliminating the need for lengthy IV tubing, proximate administration would greatly reduce the variation and risk introduced by the increased contact, and subsequent resistance, between the drug and the walls of the tubing. Any concern about revealing the identity of personnel participating in the execution process could be satisfactorily addressed by using face and hair coverings or a privacy screen.

b. Execution by a single dose of compounded pentobarbital or sodium pentothal (thiopental) that complies with all state and federal compounding requirements, and has been tested for purity and potency, with records of testing, chain of custody and compounding formula disclosed to prisoners and their counsel, including a pre-dose of an analgesic, anesthetic drug in a sufficiently large clinical dose, and implementing the remedial measures and safeguards set forth in paragraph 114(a)(i)-(iii) above.

c. Execution by a single dose of 40 milligrams of FDA-approved midazolam and potassium chloride, including

implementing the remedial measures and safeguards set forth in paragraph 114(a)(i)-(iii) above and adding a pre-dose of a pain-relieving, anesthetic drug in a sufficiently large clinical dose. If the prisoner is deemed unconscious and insensate to pain and suffering, removing the paralytic will allow the prisoner to communicate any pain and suffering he/she experiences during administration of the potassium chloride.

      d. Execution by firing squad. Execution by firing squad is currently authorized by Oklahoma and the laws of two other states (Utah and Mississippi). Defendants have the means and ability to administer executions by firing squad. Execution by firing squad eliminates entirely the risk of pain and suffering inherent in executions using midazolam, a paralytic, and potassium chloride according to the procedures set forth in the Execution Protocol, including risks associated with establishing IV access and addressing a prisoner's unique physical, health and medical conditions. Execution by firing squad causes a faster and less painful death than execution by lethal injection. See *Arthur v. Dunn*, 137 S. Ct. 725, 733-34 (2017) (Sotomayor, J., dissenting) (citing reports and stating that a firing squad may cause nearly instantaneous death, be comparatively painless, and have a lower chance of a botched execution); see also *Bucklew*, 139 S. Ct. at 1136 (Kavanaugh, J., concurring) (addressing the availability of firing squad as an alternative). Execution by firing squad also "is significantly more reliable" than lethal injection. *Glossip v. Gross*, 135 S. Ct. 2726, 2796 (2015) (Sotomayor, J., dissenting). Recent studies have confirmed that execution by firing squad statistically is much less likely to result in "botched" executions than lethal injection. See Austin Sarat, *Gruesome Spectacles: Botched Executions and America's Death Penalty* (2014).

It is necessary for the court to ascertain which (if any) of the alternative methods pled by the plaintiffs are proffered by Mr. Lay as "known and available alternatives," Glossip v. Gross, 576 U.S. 863, 878 (2015) to execution per Chart D of the February, 2020 execution protocol, for purposes of carrying out the sentence of death previously imposed on Mr. Lay.

Accordingly:

1. **IT IS ORDERED** that the Warden of the Oklahoma State Penitentiary, or his designee, shall deliver this order, and an extra copy of the form attached hereto as Exhibit A, to Wade Lay, not later than July 23, 2021.

2. **IT IS FURTHER ORDERED** that the plaintiff, Wade Lay, shall, not later than July 30, 2021, complete, sign, date and return to the Warden, or his designee, the form attached hereto as Exhibit A.

3. **IT IS FURTHER ORDERED** that, not later than August 4, 2021, the Warden or his designee shall either (i) return the completed form to defendants' counsel or (ii) provide to defendants' counsel an affidavit (or declaration complying with 28 U.S.C. § 1746) to the effect that the form was delivered to Mr. Lay (specifying the date of delivery) and that Mr. Lay failed to complete the form by the date set forth in paragraph 2, above.

4. **IT IS FURTHER ORDERED** that not later than August 6, 2021, defendants' counsel shall file in this case the completed form or the affidavit, as provided in paragraph 3, above.

5. **IT IS FURTHER ORDERED** that failure by Wade Lay to timely complete and sign the form attached as Exhibit A shall be treated by the court as a refusal to proffer an alternative method of execution.[1]

IT IS SO ORDERED this 19th day of July, 2021.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

14-0665p109 Lay .docx

---

[1] As the Supreme Court noted in Bucklew v. Precythe, 139 S.Ct. 1112, at 1121 (2019), the Court of Appeals, in that case, had directed that "[a]t the earliest possible time, [the prisoner] must identify a feasible, readily implemented alternative procedure that will *significantly* reduce a substantial risk of severe pain and that the State refuses to adopt." Bucklew v. Lombardi, 783 F.3d 1120, 1128 (8th Cir. 2015) (underscore added; italics in original).