# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICHARD GLOSSIP, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-14-665-F |
| | ) | |
| RANDY CHANDLER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION TO AMEND, ALTER AND/OR VACATE JUDGMENT OR, IN THE ALTERNATIVE, FOR A STAY OF ENFORCEMENT OF JUDGMENT, AND BRIEF IN SUPPORT THEREOF

Harry P. Cohen (admitted *pro hac vice*)
Michael K. Robles (admitted *pro hac vice*)
James K. Stronski (admitted *pro hac vice*)
CROWELL & MORING LLP
590 Madison Avenue
New York, NY 10022

Emma V. Rolls, OBA # 18820
Office of the Federal Defender for the
Western District of Oklahoma
215 Dean A. McGee Ave., Suite 707
Oklahoma City, OK 73102

Jon M. Sands
Federal Public Defender District of Arizona
Dale A. Baich (OH Bar No. 0025070)
Jennifer M. Moreno (Bar No. CA 244967)
Michael W. Lieberman, OBA  #32694
850 West Adams Street, Suite 201
Phoenix, Arizona 85007

COUNSEL FOR PLAINTIFFS
OTHER THAN WADE LAY

Alex Kursman
Lynne Leonard
Shawn Nolan
Asst. Federal Defenders Capital Habeas Unit
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street
Philadelphia, PA 19106

COUNSEL FOR PHILLIP HANCOCK

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................ 4

    A.    Standard Of Review ............................................................................... 4

    B.    The Court Should Reconsider Its Grant Of Summary Judgment On
        Count IX And Reinstate Count IX To Correct Legal Errors ........................... 5

    C.    Reconsidering The Granting Of Summary Judgment On Count II Is
        Necessary To Correct Legal Errors And To Consider New Evidence ........... 10

        1.    The Court's Order Misinterprets The Supreme Court's
                Holdings In *Glossip*, *Baze*, And *Bucklew* ...................................... 10

        2.    New Evidence Demonstrates That Mr. Coddington Made A
                Mistake With His Election Form ................................................... 13

    D.    Entry Of Final Judgment Under Rule 54(b) Should Be Altered And
        Vacated As The Court's Finding That There Is No Just Reason To
        Delay Is Clearly Erroneous .................................................................. 14

    E.    If The Court Denies Plaintiffs' Rule 59(e) Motion, The Court Should
        Grant A Stay Of Enforcement of Judgment ............................................ 18

        1.    Plaintiffs Have Shown A Likelihood Of Success On The Merits ....... 18

        2.    The Remaining Factors, Likewise, Weigh In Favor Of Granting
                A Stay Of Enforcement Of Judgment ........................................... 19

CONCLUSION ........................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Baze v. Rees,*
535 U.S. 35 (2008) ..................................................................................................passim

*Bucklew v. Precythe,*
139 S.Ct. 1112 (2019) ........................................................................... 3, 10, 11, 12

*Curtiss–Wright Corp. v. General Elec. Co.,*
446 U.S. 1 (1980) ............................................................................................14, 15

*Exxon Shipping Co. v. Baker,*
554 U.S. 471 (2008) .................................................................................................4

*FTC v. Mainstream Mktg.  Servs., Inc.,*
345 F.3d 850 (10th Cir. 2003) .............................................................................4

*Gas–A–Car, Inc. v. Am. Petrofina, Inc.,*
484 F.2d 1102 (10th Cir.1973) ..........................................................................14

*Glossip v. Gross,*
576 U.S. 863 (2015) ...........................................................................................10, 12

*Great American Trading Corp. v. I.C.P. Cocoa, Inc.,*
629 F.2d 1282 (7th Cir.1980)............................................................................14

*Hilton v. Braunskill,*
481 U.S. 770 (1987) ...............................................................................................18

*In re Holladay,*
331 F.3d 1169 (11th Cir. 2003) ...........................................................................4

*In re Ohio Execution Protocol Litig.,*
994 F.Supp.2d 906 (S.D. Ohio 2014).............................................................. 5, 6

*In re Ohio Execution Protocol Litig.,*
No. 2:11-CV-1016, 2017 WL 2964901 (S.D. Ohio July 12, 2017)..............................5

*In re Ohio Execution Protocol Litig.,,*
No. 2:11-CV-1016, 2017 WL 2964901 (S.D. Ohio July 12, 2017)..............................5

*Livesay v. Shollenbarger,*
19 F.3d 1443, 1994 WL 56923 (10th Cir.1994) ........................................................14

*Nken v. Holder,*
   556 U.S. 418 (2009)....................................................................................18

*Okla. Turnpike Auth. v. Bruner,*
   259 F.3d 1236 (10th Cir. 2001) .................................................................15

*Rochin v. California,*
   342 U.S. 165 (1952)......................................................................................5

*Servants of Paraclete v. Does,*
   204 F.3d 1005 (10th Cir. 2000) ..................................................................4

*Warner v. Gross,*
   776 F.3d 721 (10th Cir. 2015) ................................................... 6, 7, 18, 19

*White v. N.H. Dep't of Emp't Sec.,*
   455 U.S. 445 (1982)......................................................................................4

**Other Authorities**

Wright & A. Miller, Federal Practice and Procedure § 2810.1 (2d ed.1995)..............................4

**Rules**

10th Cir. R. 8.1................................................................................................4

Fed. R. App. P. 8(a).......................................................................................18

Fed. R. Civ. P. 54(b).............................................................................passim

Fed. R. Civ. P. 59(e)................................................................................. 1, 4

Fed. R. Civ. P. 62.........................................................................................18

Plaintiffs, other than Wade Lay[1] (hereafter "Plaintiffs"), move pursuant to Fed. R. Civ. P. 59(e) to alter or amend the Court's August 11, 2021 Order (Doc. No. 449) granting summary judgment on Count IX.  The Order is reported as *Glossip v. Chandler*, (W.D. OK August 11, 2021) hereafter ("DCO").  Plaintiffs James Coddington, Donald Grant, John Grant, Julius Jones, and Gilbert Postelle further move pursuant to Fed. R. Civ. P. 59(e) to alter or amend the Court's August 11, 2021 Orders (Doc. Nos. 449-455) granting summary judgment on Count II and entering final judgment under Rule 54(b) as to these five Plaintiffs (the "Five Plaintiffs").  Should the Court deny the Rule 59(e) motion, the Five Plaintiffs move, in the alternative, for a stay of enforcement of judgment.

## **INTRODUCTION**

The Court's granting of summary judgment on Count IX should be reconsidered and the Order altered or amended accordingly.  Likewise, the Court's granting of summary judgment on Count II and partial, final judgment under Rule 54(b) as to the Five Plaintiffs should be reconsidered and the Order altered or amended accordingly.  First, the Court's granting of summary judgment on Counts IX and II rests on clear error—misapplying the controlling law—and there exists new evidence that was previously unavailable that the Court should consider with respect to its ruling.  Second, the Court's entry of final judgment as to the Five Plaintiffs under Rule 54(b) should also be reconsidered and vacated, as the Court's finding that there is no just reason to delay is clearly erroneous in light of the judicial

---

[1] Counsel has agreed to represent Wade Lay through his sister, Ms. Rhonda Kemp, who has filed a Petition for Appointment of Next Friend.  (Doc. No. 462).  If and when such application is granted, Counsel will file a motion for Mr. Lay to join this motion, including in his case evidence that he has been determined in the past to be incompetent.  (*Id.*).

administrative interests, the efficiency interests, and the overall equities that Rule 54(b) promotes.

If the Court declines to alter or amend the August 11, 2021 Orders granting summary judgment and entering final judgment as to the Five Plaintiffs, the Five Plaintiffs move in the alternative for a motion to stay enforcement of the partial, final judgments.

## **BACKGROUND**

Together with the twenty-six other plaintiffs in this litigation, the Five Plaintiffs asserted ten different counts challenging Oklahoma's execution protocol, including that constitutionally impermissible pain and suffering will result from the use of the three-drug lethal injection protocol (Count II), that use of the protocol constitutes impermissible human experimentation (Count IX), and that their sincerely-held religious beliefs are violated by the requirement that they propose a feasible alternative method of execution (Count VIII). (Doc. No. 325 at 51, 58, 63). The Five Plaintiffs declined to provide alternative methods of execution to be used in their executions on grounds of moral, ethical, and/or religious beliefs that prohibit them from being complicit in their own deaths in a way they believe would be akin to suicide or assisting suicide. (*See e.g.,* Doc. No. 425-18 at 75, 123; Doc No. 325 at 58-62).

On August 11, 2021, this Court issued an Order granting in part and denying in part Defendants' motion for summary judgment. *See* DCO. With respect to Count II, the Court granted summary judgment as to only six plaintiffs (the Five Plaintiffs and Mr. Lay, collectively the "Dismissed Plaintiffs") and denied summary judgment as to the other twenty-six, reasoning that the Dismissed Plaintiffs "declined to proffer an alternative for

2

carrying out their sentence of death" and this choice was "fatal to these plaintiffs' Eighth Amendment claims." (DCO at *9 (citing *Bucklew v. Precythe*, 139 S.Ct. 1112 (2019)). With respect to Counts VIII and IX, the Court granted Defendants' motion for summary judgment against all plaintiffs. (DCO at *1, 19; Doc No. 349).

Finding the judgment final as to the Dismissed Plaintiffs and no just reason for delay, the Court certified final judgments under Rule 54(b) "against the six plaintiffs who have not proffered an alternative method for carrying out their sentence of death." (DCO at *11). The Court reasoned that there is no just reason for delay because (1) these Dismissed Plaintiffs will arrive at the Court of Appeals in a different posture from those who selected an alternative; and (2) the State and victims of the crime have an interest in timely enforcement of sentences. (*Id.* at *10-11).

The Court also noted, as "a word to the wise," that "evidence as to the actual track record of midazolam as used in executions . . . may go far as to eliminate the speculation as to whether midazolam does or does not perform as intended when used as specified in the protocol." (*Id.* at *7, n.13). The Court further suggested that this evidence "may well [include] a track record under Chart D of the new Oklahoma protocol," given that the Dismissed Plaintiffs would presumably be executed sometime between the entry of their final judgments and the trial on Count II as to the other twenty-six plaintiffs in January or February of 2022. (*Id.*). In its scheduling order, the Court explicitly invited the parties to present evidence at trial from the presumptive executions of the Dismissed Plaintiffs:

As indicated in the order on summary judgment, filed this date, it is possible that, by the time the trial date arrives, Oklahoma will have had experience with one or more executions under Chart D.  In that event, the court will entertain motions to amend the final witness and exhibit lists.

(Doc. No. 456, n.2.).

## ARGUMENT

### A.    Standard Of Review

"Rule [59(e)] was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982) (internal quotation marks omitted). Accordingly, the Court may amend the judgment in its discretion where the Court sees a need to correct clear error or prevent manifest injustice, new evidence that was previously unavailable has come to light, or there has been an intervening change in the controlling law. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  While Rule 59(e) permits a court to alter or amend a judgment, it "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127–128 (2d ed.1995)).

When deciding whether to grant a stay of enforcement of judgment this Court considers four factors:  1) the likelihood of success on the merits on appeal; 2) the threat of irreparable harm if the stay is denied; 3) the harm to the opposing party if the stay is granted; and 4) the public interest.  *See* 10th Cir. R. 8.1; *FTC v. Mainstream Mktg.  Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003); *see also In re Holladay*, 331 F.3d 1169, 1176 (11th Cir. 2003).

4

**B.      The Court Should Reconsider Its Grant Of Summary Judgment On Count IX And Reinstate Count IX To Correct Legal Errors**

The Due Process Clause of the Fourteenth Amendment affords a substantive due process right to be free from human experimentation.  *In re Ohio Execution Protocol Litig.*, No. 2:11-CV-1016, 2017 WL 2964901 at *17 (S.D. Ohio July 12, 2017) (citing *Rochin v. California*, 342 U.S. 165 (1952) ("There is no doubt that the substantive branch of the Due Process Clause does impose limitation on bodily intrusions by government entities.").  That right extends to the lethal injection context.  *See id.*  As one court has explained, "[t]here is absolutely no question that Ohio's current protocol presents an experiment in lethal injection processes":

> The science involved, the new mix of drugs employed at doses based on theory but understandably lacking actual application in studies, and the unpredictable nature of human response make today's inquiry at best a contest of probabilities.  **To pretend otherwise, or that either of the experts or this Court truly knows what the outcome of that experiment will be would be disingenuous**.

*In re Ohio Execution Protocol Litig.*, 994 F.Supp.2d 906, 913 (S.D. Ohio 2014) (emphasis added); *see also In re Ohio Execution Protocol Litig.*, No. 2:11-CV-1016, 2017 WL 2964901 at *17 (S.D. Ohio July 12, 2017) ("Judge Frost's observation that the use of a new protocol for that process 'presents an experiment' and 'to pretend otherwise . . . would be disingenuous' is correct." (citing *In re: Ohio Execution Protocol Litig.*, 994 F. Supp. 2d 906, 913 (S.D. Ohio 2014)).

The Tenth Circuit, in upholding this Court's prior denial of a preliminary injunction on a human experimentation claim, suggested that such a claim is viable and "subject to the principles or mode of analysis outlined in [*Baze v. Rees*, 535 U.S. 35 (2008).]" *Warner v. Gross*,

776 F.3d 721, 736 (10th Cir. 2015).  That rationale is consistent with other courts that have considered the issue in the lethal injection context and concluded that the potential success of a prisoner's human experimentation claim based on a lethal injection protocol depends on the degree of risk posed by the protocol at issue.  *See In re Ohio Execution Protocol Litig.*, 994 F. Supp. 29 at 913 (S.D. Ohio 20]14) ("The . . . the applicable law looks at the degree of risk and the amount of pain involved.").

Because this Court has not yet determined the extent to which there is risk posed to Plaintiffs by the protocol (DCO at *2), summary judgment should not have been granted on Count IX.

This Court granted summary judgment on Count IX on grounds that "[t]he Fourteenth Amendment does not provide plaintiffs with a substantive due process right to be executed in a manner which has been tested on non-human animals."  (DCO at *19). Further, the Court found that "to the extent it is based on the Eighth Amendment," Count IX fails because the Tenth Circuit in *Warner* affirmed this Court's earlier ruling denying relief on an Eighth Amendment human experimentation claim.  (*Id.*).  But *Warner* was decided in a preliminary injunction context, where a plaintiff must show "he is likely to succeed on the merits" (776 F.3d at 728), and only after this Court had already found that Plaintiffs failed to show a likelihood of success on their claim, on the then-existing record, that the protocol created a demonstrated risk of severe pain in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  *Id.* at 729-731.

Here, at the summary judgment stage, Plaintiffs need not show a likelihood of success on the merits of their human experimentation claim.  Instead, Defendants bear the

6

burden of proving that they are entitled to judgment as a matter of law. (*See* DCO at *2). As evidenced by this Court's own findings and directives, Defendants cannot and did not do so.

*Warner* affirmed that a human experimentation claim is viable, and that to succeed on such a claim, a plaintiff must show that the potential execution creates a demonstrated risk of severe pain as required by the Supreme Court in *Baze* and its progeny. *Warner*, 776 F.3d at 736. This Court is still considering that risk:

> [B]ecause plaintiffs back up their attack on the protocol's safeguards with credible expert criticism, the court declines to rule, as a matter of law, that plaintiffs' case fails on the issue of whether, under the protocol taken as a whole, the injection of the second two drugs presents a constitutionally unacceptable risk of severe pain.

(DCO at *7). Because this Court is still considering that risk, Defendants cannot meet their burden that they are entitled to summary judgment as a matter of law. Indeed, if this Court finds after trial that Plaintiffs proved that Oklahoma's execution protocol creates a demonstrated risk of severe pain, as alleged in Count II, then Count IX would necessarily succeed as well.

This Court's own order illustrates the clear error in granting summary judgment on Count IX. In the Order, this Court implicitly invites Defendants to execute the Dismissed Plaintiffs and explicitly advises the parties to present evidence at trial from those executions "to eliminate speculation as to whether midazolam does or does not perform as intended when used as specified in the protocol." (DCO at *7, n.13; Doc. No. 456 at 2, n.2). The Court thereby not only acknowledges that the execution of the Dismissed Plaintiffs will constitute human experimentation, but the Court in fact invites the State to conduct that experimentation, in order to provide "evidence" to inform the Court's ultimate

7

determination of the risk posed by Oklahoma's lethal injection protocol.  But as explained above, because the risk posed by Oklahoma's lethal injection protocol remains at issue in this case, so too must Count IX.

As Dr. Joseph Fins, a leading expert on human experimentation, explained in his expert report (Doc. No. 425-14 ("Fins Report")), the executions under the protocol (including of the Dismissed Plaintiffs) would constitute unregulated human-subjects experimentation, and he also so testified in his deposition. (*See, e.g.*, Fins Depo., Feb. 11, 2021, at 39:3-8; Fins Report at 12-17).  This testimony is unrebutted.  Such executions constitute experimentation simply because the efficacy of the protocol for the purpose of preventing pain and suffering in violation of law is not established.  As Dr. Fins' unrebutted explanation demonstrates, the use of a drug or intervention is experimentation when there is a state of "genuine uncertainty within the expert medical community" regarding the comparative merits of preferred interventions.  (Fins Rep. at 7, ¶ 14).[2]

Applied here to the three-drug protocol, the Court has already found genuine issues of material fact as to whether the protocol would protect a prisoner from pain and suffering violative of the Eighth Amendment.  There is, therefore, "genuine uncertainty" on the protocol's efficacy based on the proffered expert opinions, thus necessitating trial. Moreover, the Court's statements that executions of the Dismissed Plaintiffs with the protocol would provide data on the question of the protocol's efficacy further confirms that

---

[2] To be clear, Plaintiffs contend that the record in this case will establish that the Oklahoma protocol, including its use of midazolam, is not adequate to protect prisoners from pain and suffering violative of the Eighth Amendment, and that trial will establish there is no credible, genuine uncertainty within the expert medical community on this point.

such executions would constitute experimentation, as, according to the Court, they would be used to test whether executions pursuant to the protocol could pass Constitutional muster.[3] Whether such experiments are actionable under Count IX then rests on the resolution of the question of the protocol's efficacy – an issue reserved for trial in early 2022.   These execution experiments should not proceed as a matter of law before trial on the issue of the protocol's efficacy – an essential issue to resolve the human experimentation claims. It would be self-evidently unfair and inappropriate to execute the Dismissed Plaintiffs before this critical issue is fully litigated and finally resolved.

Experimentation on condemned inmates, as members of a vulnerable class, also demands heightened legal protection as Dr. Fins explained.[4]  This heightened standard of protection also supports reinstatement of Count IX for trial.  Moreover, the dismissal of Count IX also was based on an apparent misunderstanding that Plaintiffs' human-experimentation claim was grounded in a "Fourteenth Amendment . . . substantive due process right to be executed in a manner which has been tested on non-human animals." DCO at *19.   Plaintiffs' human experimentation claim, however, is not that animal experimentation must precede human experimentations but more broadly that these executions ***are experiments on humans***.  At a minimum, Count IX should be reinstated for trial on the same ground that Count II is going to trial – the efficacy of the protocol to

---

[3] *See also* Fins Report at 6 ("Oklahoma admits there are no data to suggest the three-drug lethal injection protocol works in a manner that is intended by the protocol, which places this issue into a state of clinical equipoise with respect to the prevention of a substantial risk of severe pain and suffering[.]").

prevent prisoner pain and suffering that violates, among other things, the Eighth Amendment.

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its granting of summary judgment on Count IX and alter or amend its Order accordingly to reinstate Count IX for all Plaintiffs.

**C.      Reconsidering The Granting Of Summary Judgment On Count II Is Necessary To Correct Legal Errors And To Consider New Evidence**

**1.      The Court's Order Misinterprets The Supreme Court's Holdings In *Glossip*, *Baze*, And *Bucklew***

The Five Plaintiffs respectfully request that the Court reconsider its application of the Supreme Court's holdings in *Glossip, Baze,* and *Bucklew*. (DCO at *4-9). The Supreme Court did not hold in any of these decisions that a prisoner must proffer an available alternative "for use in *carrying out his death sentence*," as the Court claims in its Order. (*Id.* at *4 (emphasis in original)). Consequently, the Supreme Court has also never addressed whether forcing plaintiffs to select their own methods of execution violates their religious liberties. Such questions were never at issue in any of the three cases.

When properly understood and applied, the Supreme Court's holdings, in fact, demonstrate that granting summary judgment as to the Five Plaintiffs on Count II was clearly erroneous. In *Bucklew*, for example, the Supreme Court addressed whether an inmate who challenged a method of execution as it applied to his specific medical conditions was required to proffer an alternative method of execution in his complaint. The Supreme Court

---

[4] "Consistent with ethical and regulatory norms, condemned inmates constitute a particularly vulnerable class of human subjects; as such, studies that involve them require *heightened* ethical scrutiny and legal protection." (Fins Rep. at 6; *see also id.* at 28-29).

answered that question in the affirmative. *Id.* at 1117, 1121.  Here, each of the Five Plaintiffs signed on to the Third Amended Complaint, which—unlike in *Bucklew*—identified four alternative methods of execution.  (*See* Doc. No. 325, ¶ 114).  The Five Plaintiffs thus satisfied the legal standard set out in *Baze*, *Glossip*, and *Bucklew.*

As support for its interpretation of the Supreme Court's holdings and its requirement that prisoners proffer an alternative for use in carrying out their executions, the Court cites the Supreme Court's statement in *Bucklew* that "we see little likelihood that an inmate facing serious risk of pain will be unable to identify an available alternative—assuming, of course, that the inmate is more interested in avoiding unnecessary pain than in delaying his execution." (*Id.* at 7-8).  Critically, the Supreme Court, here, was addressing the burden of identifying an available alternative ***altogether*** and not remarking on whether the available alternative must be proffered for, or used for, a plaintiff's own execution.  *Bucklew*, 139 S.Ct. at 1128-1129.  As noted above, the Five Plaintiffs have not failed to "identify an available alternative" – they have identified four in their Complaint, and simply declined to endorse a specific one for their own executions.  As the Court did with Plaintiff George Hanson, who signed two versions of a response to Interrogatory No. 15 (in one declining to identify an alternative), it is appropriate here to provide the Five Plaintiffs with the benefit of the alternatives they identified in their Complaint—"the response[s] that do[] not result in summary judgment against [them]."  (*See* DCO at *9).

Further, the Supreme Court in *Bucklew* did not consider the clear religious liberty implications of requiring such prisoner's participation in his or her own execution. Interpreting the Supreme Court's statement in *Bucklew* as the Court does, would suggest that

the Supreme Court found that "an inmate facing a serious risk of pain" would have to set aside his or her firmly held ethical, moral, and religious beliefs and essentially substitute his or her judgment for that of the State and, thus, participate in his or her own execution. That morbid and bizarre outcome cannot be the case, and this Court's thus interpretation cannot be correct. While *Bucklew* addressed the identification of alternatives that may be compared, it did not take the further step that the inmate must participate in his execution by choosing its means. The manner of execution, within Constitutional constraints, is up to the State, not the Plaintiffs.

For the foregoing reasons, the Five Plaintiffs respectfully request that the Court reconsider its application of the Supreme Court's decisions in *Baze*, *Glossip*, and *Bucklew*. When that precedent is properly applied, the Five Plaintiffs have satisfied the two-prong test sufficient to establish at least genuine issues of material fact requiring trial as to each prong set out by the Supreme Court. It was, therefore, error for the Court to grant summary judgment as to Count II.

Should the Court decline to reconsider its ruling and instead insist upon what Plaintiffs consider to be a misinterpretation of Supreme Court precedent, four of the Five Plaintiffs (Messrs. Coddington, D. Grant, Jones, and Postelle) ask that the Court consider affidavits they have submitted concurrently herewith for the Court's consideration.[5] (*See* Exs. 1-4). These Plaintiffs are setting aside their ethical, moral and religious beliefs, because they did not know, and had no reason to believe, that exercising those rights would subject

---

[5] Although counsel does not now represent Mr Lay—but would through his sister if her pending Next Friend application is granted—counsel note that Mr. Lay has filed documents pro se with the Court opting for firing squad. (Doc. No. 457-2).

them to immediate execution. So that they have their day in court to litigate and resolve the protocol's infirmities, something the Court has already found cannot be addressed without a trial on the merits, they have chosen to respectfully submit new elections for the Court's consideration. These Plaintiffs respectfully request that the Court accept these new elections and reconsider its granting of summary judgment with respect to Count II.

### 2. New Evidence Demonstrates That Mr. Coddington Made A Mistake With His Election Form

Through Count VIII of the Third Amended Complaint, each of the Plaintiffs (including James Coddington) made a religious freedom claim asserting a violation of their sincerely held religious beliefs resulting from the necessity of proposing a feasible alternative method for their own execution. (Doc. No. 325 at 58). In response to Defendants' Interrogatory No. 15, certain of the plaintiffs chose, despite their religious freedom claim, to elect an alternative method of execution for use in carrying out their sentence. Other plaintiffs responded by declining to elect an alternative method for their own execution, some repeating their religious freedom claim.

With respect to Mr. James Coddington, the election form submitted in response to Interrogatory No. 15 indicated that he was declining to select an alternative method of execution for use in carrying out his sentence. (*See* Ex. 5, ¶ 5). This, however, was not Mr. Coddington's intent. As explained in detail in Mr. Coddington's affidavit with supporting attachments ("Att.")(filed concurrently herewith as Ex. 5), he intended to elect, and believed he had elected, the firing squad as an alternative method for his execution, as he informed counsel during a phone call. (*Id.*, ¶ 4 and Att. 1). When Mr. Coddington later received the election form, believing he had already selected firing squad, Mr. Coddington then declined

13

to select a different method. (*Id.*, ¶ 5). Mr. Coddington was confused and made a mistake that did not become apparent until after the Court's August 11th Order. (*Id.*, ¶¶ 7-8).

In view of the foregoing, Mr. Coddington respectfully requests that the Court reconsider its entry of summary judgment as to Count II and accept either Mr. Coddington's new election form (Ex. 1 (electing four alternative methods)), or at the least an election form that corrects his earlier mistake (*see* Ex. 5, Att. 2 (electing firing squad)). Similar to Plaintiff George Hanson, who mistakenly signed two versions of a response to Interrogatory No. 15 (in one declining to identify an alternative), it is appropriate here to not hold Mr. Coddington's mistake against him, but to instead provide him with the benefit of the alternative he had intended to select—"the response that does not result in summary judgment against him." (DCO at *9).

**D.   Entry Of Final Judgment Under Rule 54(b) Should Be Altered And Vacated As The Court's Finding That There Is No Just Reason To Delay Is Clearly Erroneous**

The Court's entry of final judgment as to the Five Plaintiffs under Rule 54(b) should also be reconsidered and vacated, as the Court's finding that there is no just reason to delay is clearly erroneous.

"Rule 54(b) entries are not to be made routinely." *Great American Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1286 (7th Cir.1980) (cited with approval in *Livesay v. Shollenbarger*, 19 F.3d 1443 (table), 1994 WL 56923, at *2 (10th Cir.1994)); *see also Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) ("sound judicial administration does not require that Rule 54(b) requests be granted routinely"). Indeed, "trial courts should be reluctant to enter Rule 54(b) orders since the purpose of this

14

rule is a limited one: to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships." *Gas–A–Car, Inc. v. Am. Petrofina, Inc.*, 484 F.2d 1102, 1105 (10th Cir.1973).  Importantly, Rule 54(b) "preserves the historic federal policy against piecemeal appeals, a policy that promotes judicial efficiency, expedites the ultimate termination of an action and relieves appellate courts of the need to repeatedly familiarize themselves with the facts of a case."  *Okla. Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1241-42 (10th Cir. 2001) (internal quotations and citations omitted).

Here, the Court's Order enters final judgment as to the Dismissed Plaintiffs under Rule 54(b), finding no just reason to delay, in part, because "there is clear cleavage between the basis upon which this case now ends (in this court) as to these six plaintiffs and the basis upon which the case will go to judgment as to the other twenty-six."  (DCO at *10).  However, the Court's finding was made solely in the context of Count II.  (*Id.*).  Through the Third Amended Complaint, the thirty-two plaintiffs (including the Five Plaintiffs) asserted ten different Counts all challenging Oklahoma's execution protocol.  (Doc. No. 325).  Even if the Dismissed Plaintiffs arrive at the Court of Appeals in a different posture with respect to Count II, they remain similarly postured to the other twenty-six Plaintiffs with respect to the remaining nine Counts.  The Court's Order does not address this fact or otherwise appear to consider it in its analysis.

When assessing whether there is no just reason for delay, district courts must consider judicial administrative interests and, when accounting for all of the Counts, those interests weigh in favor of not entering partial, final judgments.  *See Curtiss–Wright Corp.*, 446 U.S. at 8 (holding that "a district court must take into account judicial administrative

interests as well as the equities involved" and may "consider such factors as whether the claims under review were separable from the others remaining to be adjudicated whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals"). The nature of Count II is so similar to the other nine Counts that the final judgments under Rule 54(b) will create inefficient, piecemeal appeals, causing the appellate court to repeatedly familiarize itself with the same facts of the case and address the same issues in subsequent appeals. This is the exact opposite of the efficiency interests Rule 54(b) should promote.

Aside from all of the Counts being based upon the same set of facts—Oklahoma's execution protocol—there are common issues between Count II, as it was decided against the Dismissed Plaintiffs, and other Counts, as they were decided against all thirty-two plaintiffs. For example, as noted above, Count IX was decided against all Plaintiffs, but implicates the same issues being adjudicated with respect to Count II, such as whether the potential execution creates a demonstrated risk of severe pain. Maintaining the final judgments against the Five Plaintiffs would, thus, force them to appeal Count IX on an incomplete record, and result in subsequent, piecemeal appeals following trial.

Further, the Court granted summary judgment on Count II against the Dismissed Plaintiffs, because they declined to select an alternative method for carrying out their own death sentences, the majority of them explicitly stating that they could not do so for moral, ethical, and/or religious reasons. (*See* DCO at *4). This is substantially the same issue as presented in Count VIII where all thirty-two plaintiffs brought a religious freedom claim asserting a violation of their sincerely held religious beliefs resulting from the necessity of

proposing a feasible alternative method of execution.  (Doc. No. 325 at 58-62).  Similar to the Court's present ruling on Count II, the Court previously found that Count VIII was "foreclosed by the standards set forth in <u>Glossip</u> and <u>Bucklew</u>," and Count VIII was therefore dismissed ***as to all plaintiffs***.  (Doc. No. 349 at 10).  Given these similarities in facts and holdings, judicial efficiency favors the Counts being appealed together in a single appeal, which should follow the trial for the twenty-six plaintiffs at which point the appeal can proceed on a complete record.

Beyond the judicial administrative interest against the multiple overlapping appeals that the Rule 54(b) order here would necessitate, the "equities involved" additionally support allowing the appeal for all plaintiffs to proceed together.  The delay in any entry of any judgment against the Five Plaintiffs now should be no more than about six months. In the context of the time it took the State to resolve its grand jury and other investigations arising from the prior, botched attempt to execute Mr. Glossip, this short delay is appropriate in the interests of justice to allow the Five Plaintiffs to pursue Claims II and IX that are the subject of this motion as well as to have their appeal on the interrelated claims heard based on the full trial record.  Proceeding with a single appeal for all plaintiffs will preclude the possibility that any of the plaintiffs now subject to the Rule 54(b) motion is prematurely executed with a protocol that may still be found to inflict cruel and unusual punishment and violate the Eighth Amendment.

For the foregoing reasons, the Five Plaintiffs respectfully request that the Court reconsider its finding that there is no just reason for delay and vacate its entry of final judgment under Rule 54(b) with respect to the Five Plaintiffs.

17

**E.      If The Court Denies Plaintiffs' Rule 59(e) Motion, The Court Should Grant A Stay Of Enforcement of Judgment**

Should the Court deny the Rule 59(e) motion, the Five Plaintiffs move, in the alternative, for a stay of enforcement of the final judgment under Fed. R. Civ. P. 62(h) and Fed. R. App. P. 8(a).  Rule 62(h) empowers a court certifying a claim as a final judgment under Rule 54(b) to stay enforcement of that judgment, and such a stay is appropriate here.

Of the four factors the Court should consider in deciding whether to grant a stay— (1) the likelihood of success on the merits on appeal of the grant of summary judgment; (2) the irreparable harm if the stay is denied; (3) the harm to the opposing party if the stay is granted; and (4) the public interest—the first two factors are the most critical.  *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Hilton v. Braunskill*, 481 U.S. 770 (1987) (noting that under Fed. R. Civ. P. 62; Fed. R. App. P. 8(a) the factors regulating the issuance of a stay are generally the same).  Here, however, all four factors weigh in favor of stay and maintaining the status quo pending appeal.

**1.      Plaintiffs Have Shown A Likelihood Of Success On The Merits**

As discussed in detail above in Part B., the Court's Order granting summary judgment as to Count IX and Count II is based legal error.  Count IX rests on clear legal error, improperly relying upon the Tenth Circuit's decision in *Warner* (decided in the preliminary injunction context), as the basis for finding against Plaintiffs as to Count IX at the summary judgment stage.  The Court ignored the difference in legal standards, effectively (and improperly) shifting the burden to Plaintiffs to show a likelihood of success on the merits in order to survive summary judgment.  Under the proper standard, however,

Defendants failed to meet *their burden* of proving that they are entitled to judgment as a matter of law, as evidenced by this Court's own findings and directives.

The Court's findings and directives further support that Plaintiffs have a likelihood of success on the merits of the appeal that genuine issues of material fact exist to preclude summary judgment on Count IX.  Under *Warner*, a plaintiff must show that the potential execution creates a demonstrated risk of severe pain as required by the Supreme Court in *Baze* and its progeny.  *Warner*, 776 F.3d at 736.  This remains an open question that the Court is still considering and on which the Court has already found genuine issues of material fact based on "with credible expert criticism."  (DCO at *7).  Indeed, the Court's Order further demonstrates the merits of Plaintiffs' arguments by recognizing that the execution protocol constitutes an experiment that could provide data for the upcoming trial.

As detailed above in Part B, the Court's Order granting summary judgment as to Court II also rests on clear legal error in the interpretation of Supreme Court precedent and, if the Rule 59(e) motion with respect to Count II is denied, in view of the new facts of Mr. Coddington's error and the additional documents submitted from four of the Five Plaintiffs.

In view of the foregoing, Plaintiffs have shown a likelihood of success on the merits of any appeal of the grant of summary judgment on Counts IX and II.

### 2.    The Remaining Factors, Likewise, Weigh In Favor Of Granting A Stay Of Enforcement Of Judgment

Each of the remaining factors—threat of irreparable harm to plaintiffs, harm to the opposing party, and the public interest—weighs in favor of granting a stay of execution. The threat of irreparable harm if the stay is denied is obviously present in this case since execution would not only terminate the litigation as moot as to the Five Plaintiffs, but end

19

their lives as well by execution with a protocol that this Court may still find is not effective to protect prisoners from pain and suffering violative of the Eighth Amendment.   In contrast, if the stay is granted, there is no harm to Defendants, who cannot credibly complain that a time period of about six months is prejudicial, given that the Defendants took many years to conclude their investigations following the botched execution attempt of Mr. Glossip and issue a revised execution protocol.   Moreover, the Five Plaintiffs remain incarcerated on death row.   There is also no risk of harm to the public interest. On the contrary, the public interest is served by not executing the Five Plaintiffs before trial to avoid executing prisoners with a protocol that may be later found to subject them to pain and suffering that violates the Eighth Amendment.

## <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court: (i) amend its orders (and for the Five Plaintiffs the corresponding partial, final judgments) to reinstate Count IX for all Plaintiffs; and (ii) amend its judgment for the Five Plaintiffs to reinstate Count II, or alternatively, the Five Plaintiffs respectfully request reconsideration of the Rule 54(b) certification of partial, final judgment and an order vacating that certification and corresponding partial, final judgments.   Finally, and in the alternative to the extent any partial, final judgment remains after the Court decides these motions, Plaintiffs respectfully request that enforcement on any such judgment be stayed pending appeal.

Dated:  August 30, 2021                    Respectfully submitted,

                                           s/ Emma V. Rolls
                                           Emma V. Rolls, OBA # 18820
                                           Office of the Federal Defender for the Western
                                           District of Oklahoma
                                           215 Dean A. McGee Ave., Suite 707
                                           Oklahoma City, OK 73102
                                           Telephone: (405) 609-5975
                                           Emma_Rolls@fd.org

                                           Harry P. Cohen (admitted *pro hac vice*)
                                           Michael K. Robles (admitted *pro hac vice*)
                                           James K. Stronski (admitted *pro hac vice*)  CROWELL
                                           & MORING LLP
                                           590 Madison Avenue
                                           New York, NY 10022
                                           Telephone: (212) 223-4000
                                           hcohen@crowell.com

                                           Jon M. Sands
                                           Federal Public Defender District of Arizona
                                           Dale A. Baich (OH Bar No. 0025070)
                                           Jennifer M. Moreno (Bar No. CA 244967)
                                           Michael W. Lieberman, OBA #32694
                                           850 West Adams Street, Suite 201
                                           Phoenix, Arizona 85007
                                           Telephone: (602) 382-2816
                                           Facsimile: (602) 889-3960
                                           dale_baich@fd.org

                                           COUNSEL FOR PLAINTIFFS

                                           Alex Kursman
                                           Shawn Nolan
                                           Lynne Leonard
                                           Assistant Federal Defenders Capital Habeas Unit
                                           Federal Community Defender Office for the Eastern
                                           District of Pennsylvania
                                           601 Walnut Street
                                           Philadelphia, PA 19106
                                           Telephone: (215) 928-0520

                                           COUNSEL FOR PHILLIP HANCOCK

21

CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of August, 2021:

1.      I electronically transmitted that attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to all counsel of record who are registered participants of the Electronic Case Filing System.

2.      I served a hard copy of this document on the following party by First Class Mail via the U.S. Postal Service:

Wade Lay, DOC #516263
Oklahoma State Penitentiary
P.O. Box 97
McAlester, OK 74502
Pro Se Plaintiff


s/ Emma V. Rolls

22