## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

RICHARD GLOSSIP, et al.,      )
                                      )
      Plaintiffs,           )
                                      )
-vs-                               )     Case No. CIV-14-0665-F
                                      )
RANDY CHANDLER, et al.,     )
                                      )
      Defendants.       )

## <u>ORDER</u>

(on motions at doc. nos. 467, 457, 458, 459, 460, 463, 479)

Before the court is "Plaintiffs' Motion to Amend, Alter and/or Vacate Judgment or, in the Alternative, for a Stay of Enforcement of Judgment," filed on August 30, 2021.  Doc. no. 467.  Defendants have responded to the motion and the plaintiffs have filed a reply as well as a supplement to their reply.  The motion, filed by the thirty-one plaintiffs who are represented by counsel, is at issue.

Also before the court are pro se plaintiff Wade Lay's motions and other post-judgment filings.  Doc. nos. 457, 458, 459, 460, 463, 479.  At the court's direction, defendants responded to doc. nos. 457-460.  Doc. no. 480.  Lay filed reply briefs.  Doc. nos. 488, 489.  Lay's motions and other post-judgment filings are at issue.

As set out below, almost all of the relief requested by the movants is denied.  The exception is plaintiff Coddington, whose motion to amend, alter and/or vacate the judgment will be granted in part and denied in part.

## Part One:  Doc. No. 467

### I. Introduction

In doc. no. 467, all plaintiffs other than Lay seek reconsideration, under Rule 59, of the court's grant of summary judgment on Counts II and IX in the order entered on August 11, 2021 ("the August 11 Order," doc. no. 449).[1]  In addition, five of the six plaintiffs as to whom judgment was entered in the August 11 Order under Rule 54(b) seek reconsideration of that decision, failing which those five plaintiffs seek a stay of enforcement of the court's judgment.

Analytically, there are some differences among the plaintiffs–more so than when the court entered the August 11 Order and the resulting Rule 54(b) judgments. The present array of plaintiffs and their present contentions should be understood at the outset.  There are thirty-two plaintiffs in this case.  Of those plaintiffs:

- Twenty-six plaintiffs designated at least one alternative method of execution.  Their Count II claims remain for trial.
- Five plaintiffs who are represented by counsel (Coddington, D. Grant, J. Grant, Jones and Postelle, referred to by the parties, and now by the court, as Five Plaintiffs) declined to designate an alternative method of execution.
  - Of the Five Plaintiffs, one (Coddington) has asserted that he did not intentionally decline to designate an alternative method.
  - Of the Five Plaintiffs, three (D. Grant, Jones and Postelle) have filed post-judgment affidavits reversing their positions as to designation of an alternative method.
  - Of the Five Plaintiffs, one (J. Grant) has not reversed his position as to designation of an alternative method.
- One plaintiff (Lay) who is not represented by counsel has reversed his position as to designation of an alternative method.[2]

---

[1] The August 11 Order is reported at <u>Glossip v. Chandler</u>, ___ F.Supp.3d ___, 2021 WL 3561229 (W.D. Okla. August 11, 2021).

[2] See doc. no. 457-2, in which Mr. Lay proffers execution by firing squad as his alternative method.

The motion for relief from judgment filed by the Five Plaintiffs is addressed here, in Part One of this order.  Portions of Part One are also relevant to Lay, but Lay's motions and other post-judgment filings are primarily addressed in Part Two of this order.

## II.  Standard of Review Under Rule 59

Rule 59(e), Fed. R. Civ. P., gives a district court the chance to rectify its own mistakes in the period immediately following its decision.  Banister v. Davis, ___ U.S. ___, 140 S.Ct. 1698, 1703 (2020).  In keeping with that corrective function, federal courts generally have used Rule 59(e) only to reconsider matters properly encompassed in a decision on the merits.  *Id.*  In particular, courts will not address new arguments or evidence that the moving party could have raised before the decision issued.  *Id*.; *and see* Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 at n. 5 (2008) (Rule 59(e) permits a court to alter or amend a judgment, but the rule may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment).  Thus, Rule 59(e) relief is available in limited circumstances which include:  1) an intervening change in the controlling law, 2) new evidence submitted that was previously unavailable, and 3) a need to correct clear error or prevent manifest injustice.  Hayes Family Trust v. State Farm Fire & Casualty Co., 845 F.3d 997, 1004 (10th Cir. 2017).  When supplementing a Rule 59(e) motion with additional evidence, movant must show the evidence is newly discovered and, if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence.  Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir. 1992).

If the court denies relief under Rule 59(e), then movants ask the court, alternatively, to stay enforcement of its judgment.

Rule 8, Fed. R. App. P., provides that a motion to stay the judgment of the district court, pending appeal, must ordinarily be brought first in the district court. According to 10th Cir. R. 8.1, no application for a stay or an injunction pending appeal will be considered unless the applicant addresses the following factors which must be considered with respect to such a motion:  1) the likelihood of success on appeal, 2) the threat of irreparable harm if the stay or injunction is not granted, 3) the absence of harm to opposing parties if the stay or injunction is granted, and 4) any risk of harm to the public interest.  *See* F.T.C. v. Mainstream Marketing Services, Inc., 345 F.3d 850, 852 (10th Cir. 2003) (to obtain stay FTC was required to address four factors).  The first two factors are the most critical.  Nken v. Holder, 556 U.S. 418, 434 (2009).

### III.  Discussion

#### A.  Summary Judgment Was Appropriate on Count IX.

In doc. no. 467, all plaintiffs other than Lay (referred to in this Section A as "plaintiffs") move for relief from the court's grant of summary judgment in favor of the defendants on Count IX, the human experimentation count.  Despite the fact that plaintiffs presented only slightly more than one page of argument in response to defendants' motion for summary judgment on Count IX, they now present a host of arguments in an attempt to revive this count.

As is discussed below, Count IX still fails as a matter of law.  But before getting into the legal reasons for which summary judgment was appropriate as to Count IX, one factual matter is worth noting.  Count IX is bottomed on plaintiffs' contention that defendants "have failed to test the execution drugs" (midazolam, followed by a paralytic and potassium chloride) on non-human animals before using them on plaintiffs or, "more broadly that these executions are *experiments on humans*." Third Amended Complaint, doc. no. 325, at 63; Motion, at 9 (emphasis in original).  The suggestion that the use of midazolam makes execution under Chart D

an exercise in human experimentation is, at the outset, set back somewhat by the Supreme Court's observation, six years ago and *in this case*, that "numerous courts have concluded that the use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride." Glossip v. Gross, 576 U.S. 863, 881 (2015).

Plaintiffs' first argument in the motion now before the court pertains to the due process aspect of Count IX. (Count IX is brought under the Due Process Clause of the Fourteenth Amendment and under the Eighth Amendment.) Plaintiffs argue "The Due Process Clause of the Fourteenth Amendment affords a substantive due process right to be free from human experimentation." Motion at 5. Accordingly, plaintiffs contend the court should not have granted summary judgment on the due process portion of Count IX.

Plaintiffs cite three decisions, none of which help them. The two Ohio decisions indicate that Ohio's protocol is experimental in some sense of that term, but these decisions do not support plaintiffs' position that an experimental protocol is necessarily an unconstitutional one. *See* In re Ohio Execution Protocol Litigation, 2017 WL 2964901 (S.D. Ohio July 12, 2017);[3]   In re Ohio Execution Protocol Litigation, 994 F. Supp.2d 906, 913 (S.D. Ohio 2014).[4]   Plaintiffs also refer to

---

[3] The Eighth Cause of Action asserted a claim for bodily experimentation without consent in violation of the Due Process Clause. 2017 WL 2964901 at *14. The magistrate judge found that changing the protocol in the way Ohio had done did not violate substantive due process rights. *Id.* at *17. The Eighth Cause of Action was dismissed under Rule 12(b)(6). *Id.* at **17, 31.

[4] Judge Gregory L. Frost recognized that Ohio's protocol "presents an experiment in lethal injection processes." 994 F. Supp. 2d at 913. The new mix of drugs, employed at doses understandably lacking actual application studies, and the unpredictable nature of human response, made the inquiry one of probabilities. *Id.* The judge stated that "as odd as it sounds, this is not a problem until it is actually a problem" because "[t]he law teaches that Ohio is free to innovate and

Rochin v. California, 342 U.S. 165 (1952). Rochin is cited in the 2017 Ohio case for the proposition that: "There is no doubt that the substantive branch of the Due Process Clause does impose limitations on bodily intrusions by government entities." 2017 WL 2964901 at *17. That statement is correct as far as it goes, but Rochin has nothing to do with execution protocols.[5]

Plaintiffs are entitled to no relief with respect to the due process portion of Count IX.

Next, plaintiffs argue that Warner v. Gross, 776 F.3d 721 (10th Cir. 2015), the Tenth Circuit's decision entered at an earlier stage of this case, indicates this court erred when it granted judgment on Count IX. Plaintiffs state that Warner "suggested that such a claim is viable….", and that Warner "affirmed that a human experimentation claim is viable." Motion at 5, 7. This is a stretch. Warner upheld this court's denial of a preliminary injunction with respect to Count 7, an earlier version of the human experimentation claim alleged in Count IX. In doing so, Warner rejected plaintiffs' argument that an "evolving standards of decency" analysis applied to Count 7. The Court of Appeals rejected that standard in favor of the risk analysis of Baze v. Rees, 553 U.S. 35 (2008), as the standard applicable to the human experimentation claim. Warner, 776 F.3d at 736.

Furthermore, when Warner addressed Count 7, it noted that earlier in that decision it had considered and rejected a similar, if not identical, argument. *Id*. The prior discussion which Warner was referencing includes the following passage.

---

to evolve its procedures…." *Id*. Although Judge Frost was concerned about the degree of risk and the amount of pain involved, he held the risk "acceptable within the contours of the Constitution." *Id*.

[5] Rochin held that the petitioner's conviction was obtained by methods which offended the Due Process Clause. 342 U.S. at 174. Those methods included the forcible extraction of the contents of petitioner's stomach, by government agents, to remove what was there and obtain evidence. *Id*. at 172.

> Nothing in <u>Baze</u>, however, supports these arguments [plaintiffs' arguments about evolving standards of decency and their complaint that Florida was the only other state that had carried out executions using a three-drug protocol with midazolam as the first drug]. To be sure, <u>the protocol at issue in Baze enjoyed widespread use at the time of the Supreme Court's decision. But that fact was not critical to, nor was it made a part of, the Supreme Court's key holdings in Baze. Indeed, if that were a requirement, it would effectively prevent any state from revising its execution protocol</u>.

<u>Id</u>. at 733 (emphasis added).

Nothing in <u>Warner</u> suggests that Count IX is viable. The court rejects plaintiffs' argument that <u>Warner</u> supports plaintiffs' Count IX claim.

Next, plaintiffs argue that summary judgment on Count IX is premature because the risk analysis required by the Eighth Amendment under <u>Baze</u> has not yet been adjudicated for purposes of Count II. Plaintiffs contend that because the risk analysis applies to both counts, it was a mistake to grant summary judgment on Count IX while Count II remains in the case for most plaintiffs. Plaintiffs argue that "Count IX rises and falls with Count II, and thus the Court erred in entering summary judgment on Count IX before deciding the merits of Count II at trial in early 2022." Reply brief at 1.

Plaintiffs' argument that Counts IX and II rise and fall together is new. Plaintiffs advanced no argument at the summary judgment stage about a relationship between Counts IX and II, much less arguing that those counts are inseparably fated. This is the first ground for rejecting plaintiffs' prematurity argument.

Moreover, Counts II and IX are separable. As explained below, they are based on distinct allegations and theories of law.

Count IX alleges that Oklahoma's lethal injection protocol violates the Eighth and Fourteenth Amendments because the protocol constitutes human

experimentation to which the subjects have not consented.  *See* doc. no. 325, ¶ 184 ("Experimentation on human beings who have not provided consent violates an individual's substantive due process right to liberty and a prisoner's right to be free from cruel and unusual punishment and violates Plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution.").  This understanding of Count IX, as a count which rests its claim of unconstitutionality solely on the experimental (i.e. new or untested) nature of a protocol to which the subjects have not consented, is consistent with plaintiffs' defense of Count IX at the summary judgment stage.  At that stage, plaintiffs argued:  "In sum, there are genuine disputed material facts as to whether Defendants' execution method constitutes impermissible human experimentation <u>and thus</u> violates Plaintiffs' rights guaranteed by the Eighth and Fourteenth Amendments."  Doc. no. 425 at 54[6] (emphasis added). Accordingly, Count IX alleges a relatively narrow, stand-alone argument for unconstitutionality under the Eighth and Fourteenth Amendments:  the alleged fact that the protocol constitutes unconsented-to experimentation.

Count II, on the other hand, brings an Eighth Amendment challenge focused on the specifics of the three-drug protocol in question in this case.  Count II alleges that this protocol creates a substantial risk of inflicting grievous suffering and harm which is foreseeable and significant, but which can be avoided by using alternative methods.  *See* doc. no. 325, ¶¶ 123-126.

Plaintiffs' prematurity argument contends the court has not yet conducted the <u>Baze</u> analysis with respect to Count IX because the court has not adjudicated that issue for purposes of Count II.  This is incorrect.  The court *has* conducted the <u>Baze</u> analysis for purposes of Count IX and has found that count lacking, resulting in summary judgment on Count IX.  The situation is different with respect to Count II.

---

[6] Unless otherwise stated, this order cites documents by their original page numbers.

But the court is aware of no rationale which would require it to keep a fatally flawed count in this case just because a different count, which rests on different allegations, is subject to the same analysis and remains viable for most plaintiffs.

And make no mistake, Count IX is flawed as a matter of law. Courts, including the Supreme Court in Baze, indicate the law does not preclude a state from using new or innovative protocols. *See* Baze, 553 U.S. 35, 62 ("[O]ur approval of a particular method in the past has not precluded legislatures from taking the steps they deem appropriate, in light of new developments, to ensure humane capital punishment. There is no reason to suppose that today's decision will be any different."); Cooey v. Strickland, 589 F.3d 210, 229-30 (6th Cir. 2009) ("That the procedure has never before been used does not itself establish that the procedure is cruel and unusual. The Supreme Court has previously considered various modes of execution and has yet to find one violative of the Eighth Amendment," citing Baze.).

The untenability of Count IX is further revealed by the following passage in plaintiffs' reply brief.

> If the Court ultimately finds Oklahoma's lethal injection protocol unconstitutional based in part on evidence from executions of the Dismissed Plaintiffs, all of whom are nonconsenting human subjects, then the executions of the Dismissed Plaintiffs will have been "failed" experiments that necessarily violated the Dismissed Plaintiffs' Eighth Amendment rights. If the Court ultimately finds Oklahoma's lethal injection protocol constitutional based in part on evidence from executions of the Dismissed Plaintiffs, then the executions of the Dismissed Plaintiffs will have been "successful" experiments supporting the finding of constitutionality. Either way, the executions will have been experiments.

Reply brief at 1-2. Thus, plaintiffs contend that even if the court ultimately rejects the remaining plaintiffs' arguments at trial and finds the protocol constitutional for purposes of Count II, the protocol would be an experimental one, a characterization

which Count IX alleges is sufficient to render it unconstitutional.  That is not, and has never been, the law.

For all of these reasons, plaintiffs' prematurity argument is rejected.

Next, plaintiffs argue that when the court granted summary judgment on Count IX it should not have relied on <u>Warner</u> because <u>Warner</u> was decided at the preliminary injunction stage, when different standards applied.  This argument is rejected.  This court's summary judgment order set out the standards applicable to a summary judgment motion, and the court rigorously applied those standards. Neither the law nor the facts supported Count 7 at the preliminary injunction stage, evaluated under the standards applicable to preliminary injunction motions.  Count IX fails at the summary judgment stage, under the standards applicable through Rule 56, Fed. R. Civ. P.  In these circumstances it was not error for this court, in its order on summary judgment, to refer to <u>Warner</u> or to its reasons for finding that a similar human experimentation count had failed at an earlier stage.

Next, plaintiffs argue that the testimony of their expert witness for purposes of the experimentation claim, Dr. Joseph Fins, is unrebutted and precludes summary judgment on Count IX.  Plaintiffs state that Dr. Fins explains in his expert report that executions under the protocol would constitute unregulated human-subjects experimentation.  Motion at p. 8.  They say Dr. Fins' testimony demonstrates that the use of a drug or intervention is experimentation when there is a state of genuine uncertainty within the expert medical community regarding the comparative merits of preferred interventions.  *Id*.  Be that as it may, such testimony does not come close to meeting the standard for unconstitutionality set forth in <u>Baze</u>.  Plaintiffs' argument for reviving Count IX based on Dr. Fins' testimony is rejected.

Plaintiffs next argue that the court misunderstood their human experimentation claim as a claim limited to a contention that non-human animal testing must precede executions.  Plaintiffs argue that Count IX actually claims,

"more broadly[,] that these executions *are experiments on humans*." Motion at 9 (emphasis in original). At this point, the court is not sure whether, at the summary judgment stage, it was clear to the court that Count IX as a claim based solely on a lack of non-human animal testing. (A case can be made for either interpretation of Count IX.)[7] Regardless, at *this* stage, the court has reviewed Count IX with the presumption that when Count IX characterizes the protocol as experimental it refers to something broader than a protocol which has not been tested on non-human animals. Having done so, the court adheres quite readily to its conclusion that Count IX fails for lack of support in the law.

Next, plaintiffs argue that the court's order on summary judgment invited defendants to execute the six plaintiffs whose claims failed at the summary judgment stage (the Five Plaintiffs represented by counsel plus Wade Lay) and to then offer evidence at trial to inform the court's determination of the risk posed by Oklahoma's protocol. Plaintiffs contend that this proposed sequence of events shows that the court does not know how the executions will unfold, thereby establishing that the court is permitting human experimentation. This argument is rejected. First of all, the Constitution does not require precise fore-knowledge regarding exactly how an execution will unfold. Secondly, if executions do occur before trial, they will be a potential source of evidence, but they will have no impact on the correctness or incorrectness of the grant of summary judgment on Count IX.[8]

---

[7] Paragraph ¶ 181 of the Third Amended Complaint alleges that defendants have failed to test the drugs or procedures "on non-human animals." Paragraph 182 alleges that without the benefit of "animal-testing results," the use of the drugs and procedures "constitute high-risk experimentation with lethal drugs on human subjects." Paragraph 183 refers to "experiments without any scientifically sound expectation that these experiments will succeed in producing an execution that does not inflict severe pain…."

[8] If executions do take place before trial and if they generate evidence favorable to the plaintiffs, there is little doubt the remaining plaintiffs would be quick to offer that evidence.

Finally, the court notes plaintiffs' statement that the fact that Count 7 did not succeed in <u>Warner</u>, or that a human experimentation claim did not succeed in some other case, "does not mean that no human experimentation claim could ever succeed under any circumstances."  Reply brief at 3, n. 1.  The court agrees.  Neither the Court of Appeals in <u>Warner</u>, nor this court, have ruled that no human experimentation claim could ever succeed.  If a state were to propose an execution method such as injecting gasoline into a person's veins to see what would happen (a hypothetical raised in plaintiffs' brief in response to defendants' motion for summary judgment), a human experimentation claim along the lines of Count IX might be viable.  But that is not this case.  In the context of *this* case, Count IX fails as a matter of law.

After careful consideration of plaintiffs' Rule 59 arguments, the court finds no basis for altering, amending or vacating its grant of summary judgment on Count IX.[9]  Plaintiffs' Rule 59 motion will be denied with respect to Count IX.[10]

B.  <u>Summary Judgment Was Appropriate on Count II as to Those Plaintiffs Who Expressly Declined to Designate an Alternative Method of Execution.</u>

      1. Controlling authority requires the prisoner, in a method-of-execution challenge, to designate a feasible and readily implemented alternative method for carrying out his sentence.  Pleading a theoretically available method, while declining to designate that method for actual use and reserving the right to litigate its constitutionality, does not suffice.

---

[9] The court's grant of summary judgment on Count IX does not preclude the remaining plaintiffs from offering, at trial, evidence relevant to Count II which might have *also* been relevant to Count IX, so long as such offer is consistent with the court's ruling, set forth in this order, that a protocol's arguably new or untested nature is not something which, in and of itself, renders it unconstitutional. The relevance and admissibility of any such evidence can and will be determined at trial.

[10] Given that relief has been denied under Rule 59, plaintiffs ask the court, in the alternative, to stay enforcement of its ruling on Count IX.  That aspect of plaintiffs' motion is addressed in Part "D," where the court addresses plaintiffs' request for a stay of the court's rulings on both Counts IX and II.

Citing the relevant passage in the Third Amended Complaint, the Five Plaintiffs rely on their counsel to plead theoretically available alternative methods while, individually, they decline to designate an alternative method[11] and reserve the right to litigate any alternative method which might be attempted.[12] Motion at 11. In this scheme of things, entry of judgment in any given round of method-of-execution litigation does nothing more than tee up the next round.

Writing with increasingly pointed prose, the Supreme Court, in the <u>Baze</u>-<u>Glossip</u>-<u>Bucklew</u> series of decisions,[13] made it abundantly clear that the prisoner must designate a "feasible and readily implemented" alternative method for carrying out his sentence. <u>Bucklew</u> at 1125. In the Court's words, this must be "*the inmate's* proposal" for carrying out the sentence of death "relatively easily and reasonably quickly." *Id.* at 1129 (emphasis added). There is no other reason that Justice Gorsuch would have written, in <u>Bucklew</u>, that method-of-execution litigation must proceed on the assumption "of course, that the inmate is more interested in avoiding unnecessary pain than in delaying his execution." *Id.* There is no need to repeat here the court's discussion on p. 17 of the August 11 Order. The short of the matter, as discussed there, is that designation of an alternative is no mere formality; failure to do so is a "dispositive shortcoming." <u>Bucklew</u> at 1121.[14]

---

[11] Ignoring, for the moment, the post-judgment reversal of position by three of the five and Lay.

[12] *See* doc. no. 425 at 42. ("[W]hether the alternative might be considered constitutional when assessed against a proffered alternative to that alternative . . . is a question for another day and not at issue here.").

[13] <u>Baze v. Rees</u>, 553 U.S. 35 (2008); <u>Glossip v. Gross</u>, 576 U.S. 863 (2015); <u>Bucklew v. Precythe</u>, 139 S.Ct. 1112 (2019).

[14] The Five Plaintiffs' argument for a religious exemption was rejected a year ago, because it is "foreclosed by the standards set forth in <u>Glossip</u> and <u>Bucklew</u>." Doc. no. 349 at 10. The notion that the Supreme Court, in repeating the requirement to designate an alternative method in no less than three cases, was oblivious to a possible religious liberty argument, is wholly untenable.

2. The reversal of position by D. Grant, Jones, Lay and Postelle with respect to designation of an alternative method is unavailing.

In four sentences, with no citation of authority or developed argument, D. Grant, Jones and Postelle ask the court to "reconsider its granting of summary judgment with respect to Count II" because they have filed affidavits reversing their previous refusals to designate an alternative method.  Motion at 12-13.  As has been noted, pro se plaintiff Wade Lay has also reversed his position.  (Lay's motions and other post-judgment filings are addressed in more detail in Part Two of this order.)  The court concludes that reconsideration is unwarranted with respect to this set of plaintiffs.

First, this request for reconsideration is rejected because it is not supported by developed argument.  Wall v. Astrue, 561 F.3d 1048, 1065 (10th Cir. 2009).  *See also* Higgins v. New Balance Athletic Shoe, Inc. 194 F.3d 252, 260 (1st Cir. 1999) (district court is free to disregard arguments that are not adequately developed).

Secondly, whether this change of litigation strategy is viewed as a basis for vacation of the Rule 54(b) judgments, or as an argument for reconsideration of the underlying order granting summary judgment, it comes too late.  As defendants correctly argue, the Supreme Court has repeatedly told the plaintiffs they are obliged to designate an alternative method, and this court gave them several opportunities to do so.  Doc. no. 476 at 7.  Their reversal of position is not premised on a change in the law, or on newly-discovered evidence that was previously unavailable, or on a need to correct a clear error.  *See* Part II, above (Standard of Review).

As a garden-variety matter of reconsideration (as distinguished from relief from a judgment under Rule 59), the result is the same.  A motion for reconsideration is appropriate where the court has "misapprehended the facts, a party's position, or the controlling law."  Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  At the summary judgment stage, the facts as to Messrs. D. Grant, Jones, Lay

and Postelle were clear and their unequivocally-expressed positions declining to designate alternative methods were unmistakable. There was no misapprehension of the facts. The controlling law was not misapprehended and has not changed.

3. Plaintiff Coddington has demonstrated a meritorious basis for vacation of the Rule 54(b) judgment entered against him.

Plaintiff Coddington has plausibly asserted–with credible corroboration from an independent evidentiary source–that, at the time he signed the document indicating that he declined to designate an alternative method of execution, he thought he had already effectively communicated his choice of a firing squad. Doc. no. 467-5. The court credits his assertion that he "had already chosen firing squad" and that he "didn't want to pick anything else." *Id.* These assertions are backed by an email dated the day the plaintiffs' alternative method designations were due, as had been required by an order of the court. *See* doc. no. 401 (April 2, 2021 Order) and doc. no. 467-5 (May 3, 2021 email). In the court's view, this sequence of events gave rise to a "misapprehension" of the facts, a misapprehension which occurred for reasons not attributable to Coddington himself or to dilatory tactics of counsel. The Rule 54(b) judgment will be vacated as to Coddington.

C. Entry of Final Judgment Under Rule 54(b) Was Appropriate.

In their motion to amend or alter or vacate the court's judgment, five[15] of the six plaintiffs as to whom judgment was entered under Rule 54(b) (Lay being the sixth) argue that entry of final judgment under that rule was clearly erroneous. Motion at 14. They advance two main arguments. They argue, first, that the court's

---

[15] Again, the Five Plaintiffs who are represented by counsel and as to whom judgment was entered, are Coddington, D. Grant, J. Grant, Jones and Postelle. However, the Rule 54(b) judgment will be vacated as to Coddington, so this argument presents a live issue only as to the four other movants against whom judgment was entered plus Lay. Lay is not a movant for purposes of doc. no. 467. But he objects to having been included in the group of plaintiffs as whom the court entered a Rule 54(b) certification. Accordingly, the court's discussion of its Rule 54(b) certification applies to him.

finding of "clear cleavage" between the legal posture of the Five Plaintiffs plus Lay and the other twenty-six ignores the fact that all of the plaintiffs are in the same position as to the other nine counts.  Motion at 15.  Second, they argue that the equities militate against entry of final judgment.  *Id*. at 17.  The court disagrees.

Rule 54(b), Fed.R.Civ.P., by its own terms, authorizes entry of final judgment as to "one or more, but fewer than all, claims or parties," but only "if the court expressly determines that there is no just reason for delay."  The Five Plaintiffs emphasize that there are nine counts in addition to Count II and, essentially, that all of the plaintiffs are in the same boat as to those nine counts.  This, they argue, cuts against Rule 54(b) certification because "judicial administrative interests" weigh "in favor of not entering partial, final judgments."  Motion at 15.

If the authorities applying Rule 54(b) teach district courts anything, they teach that the court should take a practical approach to determining whether certification under that rule is appropriate.  *E.g.*, United Bank of Pueblo v. Hartford Acc. & Indem. Co., 529 F.2d 490, 492 (10th Cir. 1976).  A district court ought to have a very good reason for making a Rule 54(b) certification, lest (among other undesirable consequences) the reviewing court be saddled with piecemeal appeals.

A practical look at the claims asserted in this case tells us that, by far, the most consequential claim is the challenge to execution with midazolam under Chart D. As required by no less than three Supreme Court decisions, some of the plaintiffs designated alternative means of execution; others did not.  The other nine claims are boutique end-stage capital litigation claims that, virtually without exception, have gotten no traction in the federal courts in cases presenting facts resembling the operative facts of the case at bar.  They are based on matters such as failure to disclose sufficient information (Count I), deliberate indifference to plaintiffs' medical needs by carrying out execution under Chart D (Count III), denial of access to counsel during the execution (Counts IV and V), ex post facto and due process

violations because of substitution of midazolam (Counts VI and VII), religious freedom violation in the requirement to designate an alternative method (Count VIII), human experimentation (Count IX) and denial of access to governmental information (Count X).  Thus, a quick look at these nine claims, all of which have been resolved against the plaintiffs as a matter of law (and none of which will be the subject of any further litigation in this court prior to entry of final judgment as to the remaining plaintiffs), undermines the Five Plaintiffs' contention that "Count II is so similar to the other nine Counts that the final judgments under Rule 54(b) will create inefficient, piecemeal appeals . . . ."  Motion at 16.  Count II, the single remaining substantial claim, awaits trial for the twenty-seven plaintiffs (previously twenty-six, but with the addition of Coddington, this group now numbers twenty-seven) who have raised serious, triable issues as to the constitutionality of execution under Chart D.  Movants D. Grant, J. Grant, Jones and Postelle, as well as Lay, having chosen a course that runs directly afoul of Supreme Court precedent, have raised no such triable issues.  Having chosen that course, they have placed themselves in a radically different category than the other twenty-seven plaintiffs.

As for the equities, the Supreme Court has made it unmistakably clear, as was discussed in the August 11 Order at 21-22, that after decades of direct and collateral review of a capital conviction and sentence have run their course, the interest of the state and the victims in timely enforcement of a sentence must, at long last, be recognized.  Those like D. Grant, J. Grant, Jones and Postelle, as well as Lay, who have expressly declined to do that which the Supreme Court has said they must do, cannot plausibly claim the equitable high ground.

D.  <u>Stay of the Effectiveness of the Rule 54(b) Judgments Is Neither Required Nor Appropriate.</u>

The Five Plaintiffs (now four plaintiffs as a result of the court's grant of Rule 59 relief to Coddington)[16] argue that if the court denies the Rule 59 motion, enforcement of the judgment should be stayed.  Motion at 18.

It should be noted at the outset that it is not clear, as a practical matter, what the practical consequence of a stay of "enforcement" of the Rule 54(b) final judgments would be.  The judgments do not order or otherwise require anyone to do, or refrain from doing, anything.  They finalize the court's determinations, on the motions to dismiss and for summary judgment, that the plaintiffs' claims are without merit as a matter of law.  The court has not granted or denied stays of execution or other provisional relief in the present, post-<u>Glossip</u> phase of this case (and no such relief has been sought by the Five Plaintiffs).[17]  Third Amended Complaint, doc. no. 325 at 66-67.  But regardless of what result would ensue from granting a stay of "enforcement" of the Rule 54(b) final judgments, the court concludes a stay should be denied.

<u>Likelihood of success on the merits.</u>  As for likelihood of success on the merits, further elaboration on the August 11 Order, or on the discussion in Part One, sections III (A) and (B) of this order, is unnecessary.  These orders make clear this court's view that there is no likelihood of success on the merits.

<u>Irreparable harm.</u>  Plaintiffs' irreparable harm argument is premised in part on the assumption that a grant of a stay would amount to a stay of execution.  Motion at 19.  That is incorrect, as has been noted.  Plaintiffs' other main premise under the

---

[16] For the sake of simplicity, the four plaintiffs (D. Grant, J. Grant, Jones and Postelle) will be referred to simply as plaintiffs in this discussion.

[17] Lay has filed a motion for a stay of execution, addressed in Part Two.

heading of irreparable harm is that denial of a stay would expose plaintiffs to the possibility of execution "with a protocol that this Court may still find is not effective to protect prisoners from pain and suffering violative of the Eighth Amendment." Motion at 20.  That argument obviously collapses into an argument on the merits of these plaintiffs' Count II claims–claims which could be viable, if at all, only if these plaintiffs had designated alternative methods of execution.  It is difficult to equate self-inflicted harm (*viz.*, execution under Chart D while the rest of the plaintiffs litigate the constitutionality of execution under Chart D) with irreparable harm.

<u>Harm to the opposing party; the public interest.</u>  As plaintiffs correctly point out, these latter two factors governing consideration of a stay are secondary to the first two.  <u>Nken</u>, 556 U.S. at 434.  Nevertheless, as this court has noted several times, the Supreme Court has made it plain (*increasingly* plain–*see* <u>Bucklew</u>, at 1133-34) that once direct and collateral review of the underlying conviction and sentence have run their course, the interests of the state, the victims and the general public come to the fore.  In end-stage capital litigation, if there is not a substantial *merits-based* reason for the court to suspend the effectiveness of its judgment, there is, almost by definition, a substantial reason for the court to decline to do so.  That much was made clear by the Court of Appeals in this case, when that court, having concluded that "plaintiffs failed to establish a significant possibility of success on the merits," expressly declined to address the other three factors, declined to disturb this court's denial of a stay, and denied an emergency motion for a stay pending appeal.  <u>Warner</u>, 776 F.3d 721, 736.

## IV. <u>Conclusion:  Part One</u>

For the foregoing reasons, the motion (doc. no. 467) is **DENIED** except as to plaintiff James Coddington.  As to plaintiff Coddington, the motion is **GRANTED** in part and **DENIED** in part, as follows: The Rule 54(b) final judgment is

**VACATED** in all respects and the grant of summary judgment on Count II is **VACATED**.  To the extent that Coddington seeks relief from the grant of summary judgment with respect to Count IX, his motion is **DENIED**.   This leaves Coddington's Count II claim pending for trial (along with the Count II claims of the other plaintiffs as to whom a Rule 54(b) judgment was not entered).

### Part Two:  Lay's Motions and Other Post-Judgment Filings: Doc. Nos. 457, 458, 459, 460, 463, 479

#### I. Introduction

After the court entered summary judgment against plaintiff Wade Lay in its August 11 Order, Lay filed doc. nos. 457, 458, 459, 460, 463 and 479.[18]

In their response to doc. nos. 457-460, defendants object to any relief. However, they also state that if the court agrees with Lay's argument that he was improperly joined as a plaintiff in the Third Amended Complaint, it may be appropriate to dismiss Lay from this action, without prejudice, and to modify the court's judgment against Lay to reflect his dismissal.[19]  Doc. no. 480.  Lay filed reply briefs.  Doc. nos. 488, 489.  His reply briefs do not take the defendants up on what is basically an invitation to Lay to seek dismissal from this action.  Lay's reply briefs say nothing about a motion or a request or a wish to be dismissed from this action.  To the contrary, they express Lay's wish to participate in the trial.  Lacking a clear-cut motion from Lay asking to be dismissed from this action, it would be inappropriate to do so.

---

[18] This order describes some of the arguments made by Lay in his filings, but it makes no attempt to describe all of them.  Whether or not reviewed in this order, the court has considered all of Lay's arguments.

[19] The government brings this up because Lay's filings assert (as he has before) that he does not wish to bring the claims alleged in the Third Amended Complaint.  Lay continues to rely on another version of the complaint, which was brought solely by him, and which was stricken long ago.  *See* doc. no. 357 (order).

Moving on, of the filings by Lay, only doc. nos. 458 and 479 clearly indicate, by their titles, that they are intended as motions.  That said, Lay appears pro se and his pleadings are liberally construed.  Moreover, the issues discussed in Lay's post-judgment filings overlap.  In addition, the court must construe any motion which challenges the court's judgment, and which is filed within the appropriate time-period (twenty-eight days), as a motion brought under Rule 59(e).  *See* In re Hayes Family Trust, 845 F.3d at 1004 ("No matter how styled, a motion will be deemed a Rule 59(e) motion if it is served within the specified time period and seeks relief appropriate to Rule 59(e) by questioning the correctness of the underlying judgment"); Price v. Philpot, 420 F.3d 1158, 1167, n. 9 (10th Cir. 2005) (generally, a motion for reconsideration may be construed in one of two ways:  if filed within the time limits for a Rule 59(e) motion it may be treated as a motion to alter or amend the judgment under that rule; if filed after that period, it is treated as a motion for relief from judgment under Rule 60(b), Fed. R. Civ. P.)

For these reasons, the court has reviewed all of Lay's filings addressed in this order, no matter how labelled, to determine whether relief from the court's grant of summary judgment against Lay is warranted under Rule 59(e) or Rule 60(b), as applicable.  Other than doc. no. 479,[20] the filings listed above were made within twenty-eight days of the court's entry of summary judgment against Lay and are therefore considered under Rule 59(e).  Doc. no. 479 is considered under Rule 60(b).  Having conducted that review, the court finds, for the reasons set out below, that Lay is entitled to no relief.

---

[20] Lay signed doc. no. 479 on September 8, 2021, which is within the twenty-eight day period necessary for review under Rule 59(e), Fed. R. Civ. P.  However, there is nothing to indicate compliance with the prison mailbox rule.  Doc. no. 479 is therefore considered filed when it was received by the court, Price v. Philpot, 420 F.3d 1158, 1166-67 (10th Cir. 2005), which occurred on September 13, 2021.  Doc. no. 479-1 (envelope).

II. <u>Doc. No. 457</u>

Doc. no. 457 (docketed as a notice) is entitled:  "Plaintiff Wade Lay Acting Pro-Se Submits This Alternative to Execution as Initially Prompted by the Court in Doc. No. 444, Exhibit "A," with Understanding of its Legal Import (with Brief in Support)."

In his reply brief (doc. no. 488), Lay repeatedly argues that doc. no. 457 is not a motion for relief under Rule 59(e) but is, instead, an amendment of his original response to the court's order which asked him to identify an alternative means of execution.  Lay argues this amendment is permitted by Rule 15(a)(1)(A), Fed. R. Civ. P.  Rule 15, however, does not apply in this situation.  Accordingly, Lay is entitled to no relief under Rule 15.

Despite his protestations, the court, as a protection to Lay, goes on to consider whether doc. no. 457 presents a basis for relief under Rule 59(e).

In this filing, Lay argues he did not understand the meaning and consequences of his failure to identify an alternative execution method for purposes of defendants' summary judgment motion; that he was misled about the significance and import of that issue; and that although other plaintiffs were visited by counsel who discussed the election with them, Lay was kept in the dark.  As a part of this document, Lay submits a new election form in which he chooses: "Execution by firing squad as described in Plaintiffs' Third Amended Complaint paragraph 114(d)."  Doc. no. 457- 2.

For the same reasons which apply to D. Grant, J. Grant, Jones and Postelle, (*see* Part One, sections III(B)(1) and (2) of this order) Lay's new election form is not new evidence in any sense which would entitle him to relief under Rule 59.  Nor is relief necessary to prevent any clear error or manifest injustice with respect to Lay or for any other reason.  Lay previously had counsel in this action, which he terminated.  As he now appears pro se, he cannot complain that he was not privy to

legal advice given to the other plaintiffs.  As already covered in this order, the law makes clear that a plaintiff must identify a proposed alternative means of execution to bring an Eighth Amendment challenge to a state's method of execution. Moreover, the court basically put Lay on notice that this is the law.[21]  While Lay is correct that he is in a category of his own because he now pursues his claims pro se, he cannot use that status, and his resulting lack of access to legal advice, to obtain relief from the court's entry of summary judgment against him.  While Lay obviously lacked the depth of understanding on these issues that counsel might have provided to him, that is an inevitable disadvantage of a decision to proceed pro se, a decision Lay made long ago.

Nothing stated in doc. no. 457 entitles Lay to relief from the judgment entered against him.

### III.  <u>Doc. No. 458</u>

Doc. no. 458 is entitled "Plaintiff Wade Lay Acting Pro-Se Notice of Appeal with Motion to Vacate Judgment Towards Wade Lay (Doc. No. 4) (with Brief in Support)."  This document includes a notice of appeal as well as a motion addressed to this court, asking it to vacate the judgment it entered against Lay.  As previously stated, the motion is considered under Rule 59(e).

In this filing, Lay refers to his new election form.  He asks the court to accept his "amendment." He argues he had no knowledge or understanding of the significance of his original refusal to elect an alternative method of execution.  He complains that this court has manipulated the rules and laws against him.   He complains that the warden has deprived him of pertinent documents necessary to his litigation of this case.   He complains about his exclusion from a purported meeting

---

[21] *See* doc. no. 444 at 4, n.1 (citing legal authority for the proposition that the prisoner <u>must identify a feasible, readily implemental alternative procedure</u>; emphasis in original).

23

in which advice was given to the other plaintiffs by their attorneys.  He expresses his dissatisfaction with the fact that he is named as a plaintiff in the Third Amended Complaint where an Eighth Amendment argument is raised which he has long disavowed.  He complains about his inclusion as one of six plaintiffs (now five) as to whom the court has entered a Rule 54(b) certification.  He asserts that the certification and this court's rulings in its summary judgment order are a mistake. He complains that he was misguided by the federal public defender's office, and states that he was entrapped and given erroneous information about his election.  He complains that he has been unable to communicate with his family.  He complains that he was purposefully left in the dark about the issues related to his election form. He argues that the court lacks jurisdiction.  He argues the other plaintiffs knew the significance of their election, but he did not.  He complains that he is in a separate category from the other plaintiffs because he proceeds pro se.  He claims he is suffering abuse and deprivations at the hands of corrections officers.  In closing, Lay asks the Court of Appeals and this court to vacate and reconsider the judgment against him.

These issues, some of which have already been addressed, are rejected as a basis for relief under Rule 59(e).

As for Lay's displeasure at being joined with the other plaintiffs in the Third Amended Complaint, the court has made clear to Lay, many times, that the Third Amended Complaint defines the issues in this action for Lay along with all of the other plaintiffs named (as Lay is) in that pleading.  If, rather than proceed under the Third Amended Complaint and the Eighth Amendment argument made in Count II, Lay preferred to be dismissed from this action, he could have moved for dismissal, something he has not done.  Lay cannot wait for the court to determine a motion for summary judgment, then, once the court rules against him, seek relief from that judgment on the ground that he never wanted to allege an Eighth Amendment claim

in the first place.  Furthermore, the fact that Lay (with D. Grant, J. Grant, Jones and Postelle) has lost on the claim alleged in Count II of the Third Amended Complaint, leaves Lay no worse off than if he had not joined Count II.

Nothing in doc. no. 458 entitles Lay to relief from the judgment which has been entered against him.

### IV.  Doc. No. 459

Doc. no. 459 (docketed as a notice) is entitled "In re:  To Inform the Court of the Amended Response to Doc. No. 448 with Exhibit-A, i.e., the Court's Order Doc. No. 444-1 Concerning the Alternative to Execution Protocols."

The primary purpose of this document appears to be to inform the court that Lay has filed a new election as part of his purported amended response to the court's order to identify an alternative method of execution.  That order (doc. no. 444) noted that Lay is included in the Third Amended Complaint, which pleads the existence of alternative methods of execution. That order also tendered a form to Lay so that he could advise the court as to which alternative method of execution he prefers, as a known and available alternative method of execution.  For reasons already explained, Lay's proposed amended response, by which he asks the court to disregard his earlier refusal to elect an alternative means of execution and substitute an election of death by firing squad, entitles Lay to no relief under Rule 59(e).

Doc. no. 459 also raises other matters, already addressed.  This document refers to Lay being excluded from meetings between the other plaintiffs and their lawyers.  This document complains that Lay was deliberately given bad legal advice regarding the election by the federal public defender's office, which Lay says was different from advice given other plaintiffs.  Lay argues that his pro se status puts him in a class of his own.  He argues that he has been cut off from his family.  He argues that the court's statement that the operative statement of the claims is the Third Amended Complaint, entitles him to have been included in meetings with the

other plaintiffs.  He argues that the court should reverse its judgment as to him and include him in the trial of this action.

Nothing stated in doc. no. 459 entitles Lay to relief from the judgment which has been entered against him.

## V.  Doc. No. 460

Document no. 460 (docketed as a supplement to Lay's other papers) is entitled "Addendum to Plaintiff's Response to Doc. No. 444, With Exhibit-A, Response Filed at O.S.P. on August 05, 2021 at 2:15 P.M. Submitted to O.S.P. Legal Mail Rep Sherry Day  (See Attachment No. 1) and Doc. No. 447."

This document states Lay's concerns about interference with his filings or mail and attaches an addendum to his "amended" election form.  Defendants state that they have not interfered with any filings or mailings and that all of Lay's submissions have reached the court and have been filed of record.  The addendum attached to this filing focuses on political and historical arguments. Doc. no. 460-1. Lay argues that requiring an inmate to suggest a means of execution makes Lay complicit in the process and is wrong.  Lay made a similar argument in a filing which he submitted with his original refusal to identify an alternative method of execution. Doc. no. 448 at 11.  That argument was rejected at the summary judgment stage and is rejected again now.  *See* discussion of the Five Plaintiffs' request for a religious exemption, *supra* at n. 14.

Nothing in doc. no. 460 entitles Lay to relief from the judgment which has been entered against him.

## VI.  Doc. No. 463

This document (docketed as a supplement to Lay's other papers) is entitled "Notice of Appeal.  Plaintiff Wade Lay's Amended Response to Doc. No. 448–

Plaintiff's Response to Doc. No. 444, With Its Exhibit-A (Alternative to Execution Protocols)–With Notice of Appeal."[22]

Lay makes many arguments in this document, most of which have already been considered and rejected. He argues he was blindsided about the significance of the election form regarding his proposed alternative method of execution. He argues he was given bad advice regarding the election form. He takes issue with the court's statement that the operative version of the complaint is the Third Amended Complaint. He argues that if he is grouped with the other plaintiffs for purposes of the claims alleged in the Third Amended Complaint, he should have been provided with the same legal advice which was provided to them. He complains that the court did not permit him to respond, out of time, to defendants' motion for summary judgment. *See* doc. no. 399 (order). He complains that his lack of access to a phone and to his sister have kept him uninformed and show there is a conspiracy to deceive him and to cause his execution.[23]

Lay's "repeat" arguments are rejected. To the extent Lay makes new arguments in this filing, they likewise provide no basis for relief. Nothing in doc. no. 463 entitles Lay to relief from the judgment which has been entered against him.

## VII. Doc. No. 479

Doc. no. 479 is entitled "Plaintiff Wade Lay Motion for Stay of Execution and Injunctive Relief (Brief in Support)."

---

[22] Although doc. no. 463 was docketed as a supplement to Lay's other moving papers, it appears to be aimed, at least in part, at the Court of Appeals. Accordingly, the clerk is **DIRECTED** to docket this filing as both a supplement to Lay's moving papers filed in this court *and* as a notice of appeal.

[23] He also asks for an evidentiary hearing, here and in other documents. No sufficient basis for a hearing has been shown and that request is denied.

This document appears to be not so much a motion for relief from judgment as a request for a stay of execution. Nevertheless, in an abundance of caution, the court has considered it for both purposes.

Construed as a motion for relief from the judgment, this document, filed more than twenty-eight days after the court's entry of judgment against Lay, is evaluated under Rule 60(b) Fed. R. Civ. P.[24]  This document refers to a purported conspiracy among the courts and various officials. This document also presents what Lay contends is the truth regarding matters relevant to the issue of his competency. That said, this document emphatically states, with underlining, that it is not Lay's response to Ms. Kemp's petition to be appointed as his next friend. This document makes arguments related to Lay's contentions that he is not receiving proper medical treatment, and that his MP4 player and hot-pot were stolen and cannot be replaced. (Lay has raised matters like this before and has always been advised that such matters are outside the pleadings in this case.) None of the arguments made in doc. no. 479 entitle Lay to relief from the judgment under Rule 60(b).

This document fares no better considered as a motion for a stay of execution. The court has rejected Lay's arguments for relief from the judgment which has been entered against him. Accordingly, it is not clear what Lay would point to as an as-yet-unaddressed basis for a stay of execution. The court also notes that it denied a preliminary injunction in this case long ago, a ruling which was affirmed by the Court of Appeals and the Supreme Court. No basis for a stay of Lay's execution or for a hearing on this issue has been established.

---

[24] If Lay were to show that he complied with the prison mailbox rule so that Rule 59 applied to doc. no. 479, no relief would be granted under Rule 59. Thus, the result reached in this order would be the same under Rule 59 or Rule 60.

## VIII.  Conclusion:  Part Two

For the foregoing reasons, none of plaintiff Wade Lay's motions or other post-judgment filings (doc. nos. 457, 458, 459, 460, 463, 479) entitle him to relief from the judgment which has been entered against him or to any other relief.  These motions and post-judgment filings are therefore **DENIED**.

IT IS SO ORDERED this 12th day of October, 2021.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

14-0665p122  rev _.docx

29