## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

RICHARD GLOSSIP, *et al.*,           )
                                      )
     Plaintiffs,                      )
                                      )
        vs.                           )       Case No. CIV-14-665-F
                                      )
RANDY CHANDLER, *et al.*,            )
                                      )
     Defendants.                      )

## MOTION AND BRIEF IN SUPPORT
## FOR PRELIMINARY INJUNCTION ON BEHALF OF PLAINTIFFS
## DONALD GRANT, JOHN GRANT,
## JULIUS JONES, AND GILBERT POSTELLE

Harry P. Cohen (admitted *pro hac vice*)
Michael K. Robles (admitted *pro hac vice*)
James K. Stronski (admitted *pro hac vice*)
CROWELL & MORING LLP
590 Madison Avenue
New York, NY 10022

Emma V. Rolls, OBA # 18820
Office of the Federal Public Defender
215 Dean A. McGee Ave., Suite 707
Oklahoma City, OK 73102

Jon M. Sands
Federal Public Defender District of Arizona
Dale A. Baich (OH Bar No. 0025070)
Jennifer M. Moreno (Bar No. CA 244967)
Michael W. Lieberman, OBA #32694
850 West Adams Street, Suite 201
Phoenix, Arizona 85007

COUNSEL FOR D. GRANT, J. GRANT, JONES,
& POSTELLE

October 20, 2021

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................ 1

II.  BACKGROUND ................................................................................ 3

III. ARGUMENT ..................................................................................... 6

    A.   Legal Standard ......................................................................... 6

    B.   The Religious Objector Plaintiffs Meet The Merits Standards Applicable Here For Entry Of A Limited Status Quo Preliminary Injunction ................................................................................. 7

        1.   Count II – The Oklahoma Lethal Injection Protocol Violates The Eighth Amendment Prohibition On Cruel And Unusual Punishment, And *Baze* And Its Progeny Do Not Require Plaintiffs To Choose Their Own Method Of Execution ........................................................................ 8

        2.   Count VIII – Dismissing Religious Objector Plaintiffs Due To Their Objections – While Not Dismissing Plaintiffs Who Made No Such Objection – Violates Their Rights Under The Religious Liberty Statute And The Free Exercise Clause Of The First Amendment ...................................... 11

        3.   Count IX – Human Experimentation Claim Under Eighth Amendment Cannot Be Dismissed Without Resolving the Factual Disputes Under Count II, For Which Trial Is Necessary ............................................................................. 17

        4.   Counts VI and VII – The Retroactive Application Of The Statute Removing The Protection That Lethal Injection Be By Short-Acting Barbiturate – The Drug Upheld In *Baze* – Raises Ex Post Facto And Due Process Claims That Cannot Be Resolved Without Resolving The Factual Disputes Under Count II For Which Trial Is Necessary .................. 20

    C.   The Other Factors Warrant Preliminary Relief. .......................... 23

IV.  CONCLUSION ................................................................................ 24

i

# TABLE OF AUTHORITIES

**Cases**

*Alberty v. State,*
   140 P. 1025 (Okla. Crim. App. 1914) ........................................................22

*Attorney General of Oklahoma v. Tyson Foods, Inc.,*
   565 F.3d 769 (10th Cir. 2009) ..................................................................23

*Baze v. Rees,*
   535 U.S. 35 (2008) ..........................................................................17, 21

*Bucklew v. Precythe,*
   139 S.Ct. 1112 (2019) .................................................................9, 10, 14

*Cantwell v. Connecticut,*
   310 U.S. 296 (1940) ...........................................................................11, 12

*Church of the Lukumi Babalu Aye, Inc. v. Hialeah,*
   508 U.S. 520 (1993) ...............................................................................12

*Cooey v. Strickland* (*Biros*),
   589 F.3d 210 (6th Cir. 2009) .................................................................19

*Everson v. Bd. of Ed. of Ewing Twp.,*
   330 U.S. 1 (1947) ...................................................................................12

*Garner v. Jones,*
   529 U.S. 244 (2000) .........................................................................20, 22

*Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.,*
   966 F.2d 460 (9th Cir. 1992) .................................................................24

*Henderson v. Scott,*
   260 F.3d 1213 (10th Cir. 2001) .........................................................20, 22

*Hicks v. Oklahoma,*
   447 U.S. 343 (1980) ...............................................................................22

*Hobby Lobby Stores, Inc. v. Sebelius,*
   723 F.3d 1114 (10th Cir. 2013) ..............................................................23

*Holt v. Hobbs,*
   574 U.S. 352 (2015) ...............................................................................14

*In re Kemmler,*
   136 U.S. 436 (1890) .................................................................................8

*In re Ohio Execution Protocol Litig.,*
   840 F. Supp. 2d 1044 (S.D. Ohio 2012) .................................................23

*In re Ohio Execution Protocol Litig.,*
   994 F. Supp. 2d 906 (S.D. Ohio 2014) ........................................17, 18, 19

*In re Ohio Execution Protocol Litig.,*
   No. 2:11-CV-1016, 2017 WL 2964901 (S.D. Ohio July 12, 2017)...............17

*Kikumura v. Hurley,*
   242 F.3d 950 (10th Cir. 2001) ..................................................................6

*Larson v. Valente,*
   456 U.S. 228 (1982) ...............................................................................12

*Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*,
   138 S. Ct. 1719 (2018) ........................................................................ 12

*Matter of Fed. Bureau of Prisons' Execution Protocol Cases*,
   No. 05-CV-2337, 2021 WL 127602 (D.D.C. Jan. 13. 2021) ................ 21

*One Chi. Coin's Play Boy Marble Bd., No. 19771 v. State ex rel. Adams*,
   212 P.2d 129 (Okla. 1949) ................................................................. 22

*Rochin v. California*,
   342 U.S. 165 (1952) .......................................................................... 17

*RoDa Drilling Co. v. Siegal*,
   552 F.3d 1203 (10th Cir. 2009) ........................................................... 6

*Ross v. Oklahoma*,
   487 U.S. 81 (1988) ............................................................................ 22

*Vitek v. Jones*,
   445 U.S. 480 (1980) .......................................................................... 22

*Warner v. Gross*,
   776 F.3d 721 (10th Cir. 2015) ........................................................... 17

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................... 6

*Zorach v. Clauson*,
   343 U.S. 306 (1952) .......................................................................... 12

**Statutes**

22 Okla. Stat. Ann. § 1014(A) (1977) ...................................................... 21
42 U.S.C. § 2000bb-1 *et seq.* .................................................................. 15
42 U.S.C. § 2000bb-3(a) ........................................................................ 15
42 U.S.C. § 2000cc *et seq.* ..................................................................... 15
*Burwell v. Hobby Lobby Stores*,
   573 U.S. 682 (2014) .............................................................. 15, 16, 17
Okla. Stat. tit. 22 § 1014(A) (2011) ........................................................ 21

**Treatises**

R. Miller, *Miller's Anesthesia*,
   6th ed. 2005 ...................................................................................... 21

**Constitutional Provisions**

Okla. CONST. art. V, § 54 ....................................................................... 23
U.S. CONST. amend. I ....................................................................... 12, 13
U.S. CONST. art. I, § 10 ......................................................................... 20

## I.   INTRODUCTION

Plaintiffs John M. Grant, Donald A. Grant, Julius D. Jones, and Gilbert Ray Postelle (the "Religious Objector Plaintiffs") face execution dates, with Mr. John Grant facing execution in eight days on October 28, 2021. The Religious Objector Plaintiffs move for a Preliminary Injunction and temporary stay of execution pursuant to Federal Rule of Civil Procedure 65(a). The October 15th decision of the Court of Appeals and the State's refusal to honor its agreement to not hold executions before a plaintiff's case is complete (and thus appealable) necessitates this emergency plea for relief from this Court.

The Religious Objector Plaintiffs move on two grounds. First, they seek enforcement of the State's agreement, provided to this Court by the prior Attorney General, that the State would not proceed with executions until the case was complete in the District Court.  Given the Court of Appeals' dismissal of the Religious Objector Plaintiffs' appeal based on vacatur of the Rule 54(b) certifications, the Religious Objector Plaintiffs' case is not complete before this Court and they cannot appeal or seek review of this Court's orders. The State's agreement was made to avoid the rushed preliminary injunction scenario in which we now find ourselves.[1] Further, the agreement was made on the record and relied upon by Plaintiffs in the context of the

---

[1] This is an enforceable and valid agreement made by representations before this Court by the Attorney General of Oklahoma and acknowledged by this Court. (*See* Doc. No. 321, May 5, 2020 Motion Hearing, Tr. at 31:12-25; *Gibson v. Arnold*, 288 F.3d 1242, 1247 (10th Cir 2002) (oral agreement made to Court was enforceable notwithstanding any application of Oklahoma statute of frauds).

1

pre-trial schedule proposed by the parties to this Court and adopted as modified by the Court. This Court should issue a stay of the Religious Objector Plaintiffs' executions until there is at least a final judgment.

Second, and separate from the enforcement of the State's agreement, this Court may and should grant a preliminary injunction under these unusual procedural circumstances, in which this Court has dismissed the Religious Objector Plaintiffs claims in what is now a non-final, unappealable order. This Court's orders dismissing these claims address serious legal questions that are novel and/or on which an appellate court may readily disagree, and the limited status quo injunction sought here would allow the Religious Objector Plaintiffs to appeal the non-final order against them.

The Religious Objector Plaintiffs raise important legal issues on which they are likely to succeed. They also meet the relaxed standard applicable to this limited status quo injunction – questions on the merits so serious as to make them fair ground for litigation. These include whether the *Baze* standard requires a prisoner to choose his method of execution (in violation of religious and moral beliefs) as opposed to simply pleading a feasible and readily available alternative for comparison. The Religious Objector Plaintiffs also raise religious liberty and free exercise of religion claims not at issue in *Baze* or the subsequent authority relied upon by this Court.

The Religious Objector Plaintiffs' claims raise serious legal questions on the merits sufficient to support the limited status quo injunction sought here. These substantial legal questions concern not only the principal Eighth Amendment claim (Count II), but also the religious liberty/free exercise claim (Count VIII) and the human

2

experimentation claim under the Eighth Amendment (Count IX). Similarly, serious questions are raised on ex post facto and related Due Process claims (Counts VI and VII) arising from a retroactive application of the statute removing the requirement that lethal injection be by short-acting barbiturate – a drug in the method found not unconstitutional in *Baze*. As a matter of law, dismissed Counts IX, VI and VII also rise and fall with the Eighth Amendment claim (Count II) on which the Court has denied summary judgment and on which trial is set February 28, 2022.

## II.   BACKGROUND

This case has an extended procedural history well known to the Court. On March 12, 2020, this Court expressed concern, in view of the State's delay in developing its protocol, that the State might schedule executions that would necessitate a rushed preliminary injunction practice.  The Court requested a schedule be set based on input of the parties that would allow the parties to develop a full record. (Doc. 305). In this context, the then-Attorney General for Oklahoma represented to the Court that the State would not seek executions before case completion that would necessitate a similar rushed preliminary injunction practice on a partial record, as had taken place in this case several years earlier. On March 19, 2020, the Court reopened this case. (Doc. 307).

On May 5, 2020, this Court held a scheduling conference and set, among other things, a schedule for the amendment of the complaint and any response thereto. (Doc. 319). At this conference, counsel for Plaintiffs specifically sought, in view of the March representation of the Attorney General, that "the State will not seek execution dates until

after this case has been completed."[2] In response, the Court reminded the parties that it had the "representation last March from none other than the Attorney General of Oklahoma that that would not happen. And if we should have any indication that that will happen, I will be, to put it mildly, immediately available, so it's not necessary to address that."[3]

The Third Amended Complaint was filed on July 6, 2020. A scheduling conference was held August 10, 2020 and a scheduling order issued promptly thereafter. (Doc. 341). The Court ruled on a motion to dismiss, dismissing claims I, III and VIII from the Third Amended Complaint by order dated September 3, 2020. (Doc. 349).

Following substantial fact and expert discovery and the development of a far more extensive record than previously before the Court on the 2014 preliminary injunction motion, Defendants filed summary judgment motions that the Court ultimately granted in part and denied in part by order dated August 11, 2021. (Doc. 449). The Court found genuine issues of material fact on the Eighth Amendment claim (Count II). But based on the assertion of religious beliefs of certain Plaintiffs, who refused on religious and moral grounds to choose the method of their own execution, this Court distinguished these Plaintiffs from the others and dismissed their Eighth Amendment claims. (Doc. 449). The Court certified its decision with respect to these religious objectors under Rule 54(b) as a partial final judgment. (Docs. 450-55). Thereafter,

---

[2] May 5, 2020 Transcript of Motion Hearing Before the Honorable Stephen P. Friot, United States District Judge, at p. 31. (Doc. 321).
[3] May 5, 2020 Tr. at 31. (Doc. 321)

4

Plaintiffs filed a Rule 59(e) motion to amend the final judgment to, among other things, restore the Religious Objectors to the trial on Count II with the other plaintiffs. (Doc. 467).

On October 12, 2021, this Court granted in part and denied in part the Rule 59(e) motion, specifically denying the motion to amend to add the religious objectors back into the case for trial. As a final judgment, this order was appealed on October 13, 2021 and the Court of Appeals dismissed the appeal, along with the appeal filed by Wade Lay, on October 15, 2021, based on its finding that the Rule 54(b) certification was an abuse of discretion. As a result, John Grant, one of the Religious Objector Plaintiffs, now faces an execution next week and cannot seek review of this Court's orders because they are not now final.

Counsel for the Religious Objector Plaintiffs contacted counsel for Defendants on October 18 seeking confirmation that, in view of the dismissal by the Court of Appeals and non-final and non-reviewable nature of the case, the Defendants agree to abide by the agreement not to seek executions until case completion before this Court.  On October 19, Defendants' counsel advised that the "State does not intend to withdraw the execution dates . . ." and that "the statement of the former Attorney General was that he would not rush Judge Friot's adjudication of your clients' claims."

In view of the State's position, counsel for Mr. Grant sought an emergency conference, which was promptly held by the Court on October 20, 2021. This motion is filed on the same day as authorized by the Court.

## III.    ARGUMENT

### A.    Legal Standard

To be entitled to a preliminary injunction, generally, a party should demonstrate that (1) they will likely succeed on the merits of their claim(s); (2) without preliminary relief, they will likely suffer irreparable harm; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In balancing these four factors and in cases where what is sought is the minimum injunction required to maintain the status quo – that is, to stay the Religious Objector Plaintiffs' execution dates and enjoin their re-scheduling until after final judgment is entered – the Tenth Circuit has applied a relaxed standard other than likelihood of success. In such cases, as here, this relaxed standard applies, where the movant satisfies the other three requirements for a preliminary injunction and is not asking for an injunction that alters the *status quo. See generally Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). Specifically, the Court has stated that it will ordinarily be enough in such cases for the movant to raise questions regarding the merits that are so serious, substantial, difficult and doubtful as to make them a fair ground for litigation. *Id.* The serious and novel questions raised by the Religious Objector Plaintiffs meet either of the relevant merits standard for the stay sought here.

"[T]he primary goal of a preliminary injunction is to preserve the pre-trial status quo." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). As the Tenth Circuit has explained, three types of preliminary injunctions are "disfavored": one that alters the status quo by the forcing non-moving party to take affirmative action; one that

is mandatory; and one that gives the movant all the relief it would be entitled to if it prevailed during trial. *Id.* at 1208 n.3. Where the moving party is *not* seeking a disfavored injunction, the "modified likelihood-of-success-on-the-merits" test—the serious-questions test—is appropriate. *Id.* The showing required by the movant is less stringent when the injunction is not one of the disfavored types. The Religious Objector Plaintiffs seek a limited status quo stay that does not exhibit any of the characteristics of a disfavored preliminary injunction requiring the higher likelihood of success on the merits standard.

**B.    The Religious Objector Plaintiffs Meet The Merits Standards Applicable Here For Entry Of A Limited Status Quo Preliminary Injunction**

The status quo here requires an order preventing the premature execution of the Religious Objector Plaintiffs before final judgment is entered and their claims are subject to appeal. This Court may and should enter such a limited injunction for this purpose and may do so on the relaxed standard.

Based on the current record for the present amended Oklahoma lethal injection protocol, the Religious Objector Plaintiffs have satisfied the merits prong by at least raising serious questions that are legal in nature and novel claims that should be subject to appeal and review prior to the Religious Objector Plaintiffs' executions.[4] These important legal issues concern at a minimum the following dismissed claims:

---

[4] The Religious Objector Plaintiffs contend that they also satisfy the likelihood of success standard but this Court may issue a short stay now based on the lower "serious questions" standard.

Count II (Eighth Amendment), Count VIII (religious liberty and First Amendment free exercise of religion), Count IX (Eighth Amendment human experimentation), as well as Count VI (ex post facto) and Count VII (due process violation by retroactive statutory removal of requirement that lethal injection be by short acting barbiturate – the drug in the method found constitutionally acceptable in *Baze*.)

     **1.**     **Count II – The Oklahoma Lethal Injection Protocol Violates The Eighth Amendment Prohibition On Cruel And Unusual Punishment, And *Baze* And Its Progeny Do Not Require Plaintiffs To Choose Their Own Method Of Execution**

The Eighth Amendment forbids the Government, in carrying out a death sentence, from inflicting pain beyond that necessary to end the condemned prisoner's life. *In re Kemmler*, 136 U.S. 436, 447 (1890). "Punishments are cruel when they involve torture or a lingering death . . . something more than the mere extinguishment of life." *Id.*; *see also Baze v. Rees,* 553 U.S. 35, 50 (2008) (execution violates the Eighth Amendment if it presents a "substantial risk of serious harm").

Defendants intend to execute Plaintiffs in a manner that is cruel and/or unreliable and that will inflict excruciating pain on Plaintiffs. This Court has already determined that serious questions remain as to whether the execution procedure Defendants intend to use creates a substantial risk of inflicting grievous suffering and harm that is foreseeable and significant, but which is unnecessary and can be avoided.  (*See* Doc. 449). Indeed, the remaining Plaintiffs are proceeding to trial to resolve that very question. The Religious Objector Plaintiffs would similarly be proceeding to trial if not for the Court's dismissal of their claim based on a misinterpretation of Supreme Court precedent.

8

The Court addressed Count II in its August 11th Order on summary judgment, analyzing the parties' arguments in the context of a two-prong test: (1) whether "the state's method presents 'a substantial risk of severe pain'"; and (2) whether "the alternative method of execution the prisoner is obliged to propose [is] 'feasible and readily implemented,' and [is] one that 'the State has refused to adopt without a legitimate penological reason.'"  (Doc. 449 at 6-7).  With respect to the first prong, the Court declined to grant summary judgment against Plaintiffs, finding the Plaintiffs' attacks on the protocol's safeguards supported by "credible expert criticism."  (*Id.* at 14-15).  Regarding the second prong, the Court found that fact issues further precluded granting summary judgment as to each of the four alternatives identified in the Third Amended Complaint.   (*Id.* at 23-26).

Despite the foregoing findings, the Court did grant summary judgment as to the Religious Objector Plaintiffs, because they "declined to proffer an alternative for carrying out their sentence of death."  (*Id.* at 18-19).  The Religious Objector Plaintiffs each declined to proffer an alternative on moral, ethical, and/or religious grounds prohibiting them from being complicit in their own deaths in a way that they believe would be akin to suicide or assisting suicide. (*See e.g.*, Doc. 425-18 at 75, 123; Doc. 325 at 58-62). The Court found that this decision was "fatal to these plaintiffs' Eighth Amendment claims." (Doc. 449 at 19). As support, the Court cited the Supreme Court's decision in *Bucklew v. Precythe*, 139 S.Ct. 1112 (2019), that "*Glossip* expressly held that identifying an available alternative is 'a requirement of *all* Eight Amendment method-of-execution claims' alleging cruel pain" and "failure to identify an alternative [is] a dispositive

shortcoming." (ECF No. 449 at 16-17 (emphasis in original)).

The Supreme Court, however, did not hold in any of these decisions that a prisoner must proffer an available alternative "for use in *carrying out his death sentence*," as the Court claimed in its Order. (ECF No. 449 at 7-8 (emphasis in original)). Consequently, the Supreme Court has also never addressed whether requiring a plaintiff to select his own method of execution violates his religious liberties.

In *Bucklew*, the Supreme Court addressed its holdings in *Baze* and *Glossip*, and described the standard governing all Eighth Amendment method-of-execution claims, as follows:

> To establish that a State's chosen method cruelly "superadds" pain to the death sentence, a prisoner must show a feasible and readily implemented alternative method that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason.

*Bucklew*, 139 S.Ct. at 1117 (internal citations omitted)(emphasis in original).  Neither here nor anywhere else in *Bucklew* (or *Baze* or *Glossip*) does the Supreme Court decide or even consider whether this standard requires that the alternative method be identified specifically for use in the prisoner's **own execution**.  Such a question was never at issue in any of the three cases.

In *Bucklew*, the Supreme Court recognized that "distinguishing between constitutionally permissible and impermissible degrees of pain is a necessarily comparative exercise," and that Mr. Bucklew's failure to identify an alternative procedure all together was a "dispositive shortcoming" of his complaint. *Id.* at 1117, 1121. In the present case, there is no such "dispositive shortcoming," because counsel for

10

each of the Religious Objector Plaintiffs signed on to the Third Amended Complaint, which—unlike in *Bucklew*—identified four alternative methods of execution for the "necessarily comparative exercise" described by the Supreme Court. (*See* Doc. 325, ¶ 114). The Religious Objector Plaintiffs, thus, satisfied the legal standard set out in *Baze*, *Glossip*, and *Bucklew*, identifying an available alternative, but simply declining to endorse a specific option for their own executions.

This Court appears to be reading into *Bucklew* a requirement that simply is not there. The Religious Objector Plaintiffs are likely to succeed in overturning the Court's grant of summary judgment, as it rests upon a clear misinterpretation of Supreme Court precedent.

As the Court found that serious questions of fact precluded granting summary judgment as to each of the four alternative methods of execution (Doc. 449 at 23-26), the Religious Objector Plaintiffs have the same triable issues of fact as the remaining plaintiffs. Further, the Religious Objector Plaintiffs are likely to succeed on this claim and at a minimum meet the relaxed serious questions standard.

> **2. Count VIII – Dismissing Religious Objector Plaintiffs Due To Their Objections – While Not Dismissing Plaintiffs Who Made No Such Objection – Violates Their Rights Under The Religious Liberty Statute And The Free Exercise Clause Of The First Amendment**

The First Amendment of the United States Constitution commands that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. This command is similarly binding on the states. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). It is well settled that the Establishment Clause not only prohibits

11

governmental entities from passing laws that prefer one or more religions over others, but also those that demonstrate a hostility toward religion. *See Larson v. Valente*, 456 U.S. 228, 246 (1982); *Zorach v. Clauson*, 343 U.S. 306, 313-15 (1952); *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15 (1947) ("Neither a state nor the Federal Government . . . can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion."). A law or policy that is not neutral between religion and non-religion is inherently suspect. *See Larson*, 456 U.S. at 246. Such a law or policy may only be upheld if it passes strict scrutiny—in other words, if it is narrowly tailored to a compelling interest. *Id.* at 246-47.

The First Amendment also commands that "Congress shall make no law . . . prohibiting the free exercise of" religion. U.S. CONST. amend. I. Like the Establishment Clause, the Free Exercise Clause's command is binding on the states. *See Cantwell*, 310 U.S. at 303. The level of scrutiny to be applied when reviewing policies that hinder an individual's ability to freely exercise his religion depends on whether the law is neutral and generally applicable. As Justice Kennedy explained in *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993), "a law that is neutral and of general applicability need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* at 531. A law that does not satisfy both of these requirements "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.*; *see also Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1734 (2018) (Gorsuch, J., concurring).

The requirement that the Religious Objector Plaintiffs select an alternative method of execution demonstrates a hostility toward religion generally. The State of Oklahoma made clear its intention to proceed with the executions of the Religious Objector Plaintiffs unless those prisoners affirmatively and individually proposed how they should be executed. The Religious Objector Plaintiffs, however, could not make any such proposals without violating their own sincerely held religious beliefs. By forcing the Religious Objector Plaintiffs to either violate their sincerely held religious beliefs or face imminent execution, the alternative method requirement favors non-religious prisoners, or at least those whose religious beliefs do not require them to abstain from participating in orchestrating their own deaths.

The requirement is not neutral because it evinces a hostility toward religion and thereby favors non-religious plaintiffs over religious plaintiffs. The plaintiffs in this lawsuit who have religious objections to electing an alternative are being treated differently from those plaintiffs who do not, even though the religious objections have nothing to do with their claims. The Religious Objector Plaintiffs are similarly situated to all other plaintiffs in this lawsuit in every way except for their religious beliefs, and they are effectively being singled out for execution now because of those religious beliefs.

Because it is not neutral, the alternative method requirement is permissible only if it can survive strict scrutiny. At the outset, it is unclear what interest Defendants believe their discriminatory policy serves. To the extent the relevant interest is Oklahoma's interest in seeing criminal sentences and judgments finalized, that interest does not rise to the level of "compelling" for purposes of strict scrutiny. Moreover, imposing an

13

alternative method requirement on the Religious Objector Plaintiffs is not the least restrictive means of furthering any interest the government might have in carrying out executions. Requiring each of the Religious Objector Plaintiffs to choose the method by which he will be killed, and to assist Oklahoma by demonstrating that his chosen method is "feasible and readily implemented," *Bucklew*, 139 S. Ct. at 1125, is not the least restrictive means of furthering Oklahoma's interest in finalizing criminal sentences.[5] This is particularly so given this Court's finding that four distinct alternative methods proposed by other plaintiffs in this litigation are sufficiently "feasible" to have survived summary judgment. (*See* Doc. 449, 23-26).

Even if the Religious Objector Plaintiffs' were unlikely to successfully show that their religious objections to electing an alternative are *compelled* by their religions, they are nevertheless likely to succeed in showing that the alternative method requirement violates the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc *et seq.* The provisions of RLUIPA governing religious exercise by institutionalized persons "mirrors RFRA,"[6] such that RLUIPA "allows prisoners 'to seek religious accommodations pursuant to the same standard as set forth in RFRA.'" *Holt v. Hobbs*, 574 U.S. 352, 357-58 (2015). The religious liberty protections and provisions of the RFRA and RLUIPA apply to all federal law, and the implementation of that law, whether statutory or otherwise. *See* 42 U.S.C. § 2000bb-3(a).

---

[5] *Bucklew*, *Glossip*, and *Baze* say nothing about religious objections.
[6] "RFRA" refers to the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb-1 *et seq.*

"In RLUIPA, in an obvious effort to effect a complete separation from the First Amendment case law, Congress deleted reference to the First Amendment and defined the 'exercise of religion' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 696 (2014) (quoting 42 U.S.C. § 2000cc-5(7)(A)). Accordingly, even if the Court were to find that the alternative method requirement does not violate the Religious Objector Plaintiffs' rights pursuant to the Free Exercise Clause because refusal to participate in orchestrating their own deaths is not compelled by their respective religions, the Religious Objector Plaintiffs are nevertheless likely to succeed on their claim that the alternative method requirement violates RLUIPA.

The Religious Objector Plaintiffs have religious objections to suicide, and according to their religious beliefs, electing a method of execution is a decision that "facilitat[es]" suicide. *See Hobby Lobby*, 573 U.S. at 691. If the Religious Objector Plaintiffs do not comply with the alternative method requirement, then they will pay the "very heavy price" of their lives. *Id.* The Religious Objector Plaintiffs are very likely to succeed in establishing that this constitutes a substantial burden. *See id.* ("If these consequences do not amount to a substantial burden, it is hard to see what would.").

For the same reasons stated above with respect to the Religious Objector Plaintiffs' claims pursuant to the First Amendment, the alternative method requirement is not the least restrictive means of achieving any compelling governmental interest. Even assuming *arguendo* that there is some governmental interest in carrying out executions, the alternative method requirement does not further that interest. Instead of requiring

15

each of the Religious Objector Plaintiffs to elect an alternative method to be used in his own execution, there are other ways the State of Oklahoma could further any interest it might have in seeing criminal judgments finalized and sentences carried out. Indeed, this Court will soon receive evidence and testimony regarding several alternative methods of executions proposed by other plaintiffs to this litigation who do not have religious objections to making such proposals. The Religious Objector Plaintiffs, all of whom fully signed onto the operative complaint in this case, do not argue that they cannot or should not be subject to execution by these alternative methods proposed by their co-plaintiffs; instead, they argue only that they should not be required individually to elect any specific alternative for their own respective executions.

Because the Religious Objector Plaintiffs have religious objections to participating in or facilitating their own deaths, and because electing an alternative method of execution "has the effect of enabling or facilitating the commission of" their own deaths, *Hobby Lobby*, 573 U.S. at 724, requiring each of the Religious Objector Plaintiffs to identify and select an alternative method for his own execution constitutes an explicit and substantial burden on their religious exercise. Defendants have not identified any governmental interest justifying this substantial burden, let alone a compelling one—and even if there is a compelling governmental interest, the alternative method requirement is not the least restrictive means of furthering it. The Religious Objector Plaintiffs thus are likely to succeed on their claim that the alternative method requirement violates RLUIPA.

16

**3.     Count IX – Human Experimentation Claim Under Eighth Amendment Cannot Be Dismissed Without Resolving the Factual Disputes Under Count II, For Which Trial Is Necessary**

In Count IX of the Third Amended Complaint, Plaintiffs alleged that the use of the protocol constitutes impermissible human experimentation on captive human subjects. (Doc. 325 at 63). Based on the unique procedural posture of this case, the Religious Objector Plaintiffs are likely to succeed on this claim.

The Due Process Clause of the Fourteenth Amendment affords a substantive due process right to be free from human experimentation. *In re Ohio Execution Protocol Litig.*, No. 2:11-CV-1016, 2017 WL 2964901 at *17 (S.D. Ohio July 12, 2017) (citing *Rochin v. California*, 342 U.S. 165 (1952) ("There is no doubt that the substantive branch of the Due Process Clause does impose limitation on bodily intrusions by government entities.")). That right extends to the lethal injection context. *See id.* As one court has explained, "[t]here is absolutely no question that Ohio's current protocol presents an experiment in lethal injection processes" *In re Ohio Execution Protocol Litig.*, 994 F. Supp. 2d 906, 913 (S.D. Ohio 2014); *see also In re Ohio Execution Protocol Litig.*,˛No. 2:11-CV-1016, 2017 WL 2964901 at *17 (S.D. Ohio July 12, 2017) ("Judge Frost's observation that the use of a new protocol for that process 'presents an experiment' and 'to pretend otherwise . . . would be disingenuous' is correct." (citing *In re: Ohio Execution Protocol Litig.*,˛994 F. Supp. 2d at 913).

The Tenth Circuit has suggested that such a claim is viable and "subject to the principles or mode of analysis outlined in [*Baze v. Rees*, 535 U.S. 35 (2008)]." *Warner v. Gross*, 776 F.3d 721, 736 (10th Cir. 2015). That rationale is consistent with other courts

17

that have considered the issue in the lethal injection context and concluded that the potential success of a prisoner's human experimentation claim based on a lethal injection protocol depends on the degree of risk posed by the protocol at issue. *See, e.g.*, *In re Ohio Execution Protocol Litig.*, 994 F. Supp. 2d at 913 ("The evidence before this Court fails to present a substantial risk that McGuire will experience severe pain . . . the applicable law looks at the degree of risk and the amount of pain involved.").

This Court is still evaluating the risk posed by the protocol at issue. On August 11, 2021, this Court issued an Order granting in part and denying in part defendant's motion for summary judgment. (*See* Doc. 449). With respect to the Eighth Amendment Claim (Count II), the Court granted summary judgment as to only the plaintiffs who "declined to proffer an alternative for carrying out their sentence of death[.]" *Id*. at 19. With respect to Count IX, the Court granted defendant's motion for summary judgment against all plaintiffs, even though Count II remains unresolved.

The Court stated in its August 11 Order that it remains an open question "whether midazolam does or does not perform as intended when used as specified in the protocol[]" and invited the State of Oklahoma to execute the Religious Objector Plaintiffs before the trial on Count II to "eliminate speculation[.]" (Doc. 449 at 15-16, n.13); *see also id.* at 15 (explaining that "plaintiffs back up their attack on the protocol's safeguards with credible expert criticism," and therefore it remains an open question whether "the injection of the second two drugs presents a constitutionally unacceptable risk of severe pain"). To aid in its resolution of that question, the Court directed the parties to present evidence from the Religious Objector Plaintiffs' executions. *Id*. at 15-16 n.12 (explaining how the evidence

at trial "may well [include] a track record under . . . the new Oklahoma protocol," given that the Religious Objector Plaintiffs would presumably be executed before the trial on Count II. In its scheduling order, this Court explicitly invited the parties to present evidence at trial from the presumptive executions of the Religious Objector Plaintiffs. (Doc. 456 at n.2).

This is a novel situation in lethal injection litigation. Up until now, no court has ever invited any party to conduct lethal injection experimentation and present the results of that experimentation at a trial on the constitutionality of the lethal injection procedures. Even if the Court ultimately finds the protocol at issue in this case constitutional, executing the Religious Objector Plaintiffs any time prior to that finding necessarily constitutes human experimentation because the constitutionality of the protocol necessarily will remain uncertain up until that time. *See In re: Ohio Execution Protocol Litig.¸* 994 F. Supp. 2d at 913 ("an experiment in lethal injection processes" is acceptable only "until such experimentation sufficiently risks running afoul of the constitution protections afforded every citizen, regardless of his or her status, crime, or punishment") (citing *Cooey v. Strickland* (*Biros*), 589 F.3d 210, 229-30 (6th Cir. 2009)). Because the risk posed by Oklahoma's lethal injection protocol remains an open question, executing the Religious Objector Plaintiffs without first resolving that question—and, furthermore, analyzing evidence from their executions specifically to aid in the resolution of that question—constitutes human experimentation. The Religious Objector Plaintiffs are likely to succeed on the merits of this claim.

**4.**      **Counts VI and VII – The Retroactive Application Of The Statute Removing The Protection That Lethal Injection Be By Short-Acting Barbiturate – The Drug Upheld In *Baze* – Raises Ex Post Facto And Due Process Claims That Cannot Be Resolved Without Resolving The Factual Disputes Under Count II For Which Trial Is Necessary.**

The United States Constitution prohibits the States from passing any "*ex post facto law.*" U.S. CONST. art. I, § 10, ¶ 1. "Two critical elements must be present for a law to fall within the *ex post facto* prohibition: first, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it," *Henderson v. Scott*, 260 F.3d 1213, 1215 (10th Cir. 2001) (emphasis added) (internal quotations and citation omitted), by creating "a significant risk" of increased punishment, *Garner v. Jones*, 529 U.S. 244, 255 (2000).

Here, it is undisputed that at the time each Plaintiff (with the exception of Mica Martinez) was sentenced to death, Oklahoma law required that "[t]he punishment of death must be inflicted by continuous, intravenous administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent." 22 Okla. Stat. Ann. § 1014(A) (1977). In 2011, the Oklahoma statute was "amended" to replace the "ultrashort-acting barbiturate" requirement with broader authorization to execute prisoners with "a lethal quantity of a drug or drugs." Okla. Stat. tit. 22 § 1014(A) (2011); Doc. 388 at 41.  By relying on the amended statute to utilize the midazolam three-drug protocol, the law is being given retrospective effect by Defendants, and thus the first element is satisfied.

20

The second element is satisfied as well. Three ultrashort-acting barbiturates are used in anesthesia: thiopental, methohexital and thiamylal. Thiopental (sodium pentothal) is an ultrashort-acting barbiturate (R. Miller, *Miller's Anesthesia*, 6th ed. 2005 at 326-29), and is the only such drug authorized as a lethal agent by the Execution Protocol (Doc. 388-1 at Attachment D, Chart B). The Supreme Court has held that using sodium thiopental as part of a three-drug method of execution does not violate the Eighth Amendment's ban on cruel and unusual punishment. *Baze*, 553 U.S. at 63. That conclusion reflects the fact that, as explained by Plaintiffs' expert, Dr. Craig Stevens, an ultrashort-acting barbiturate "will produce a state of general anesthesia, noted by unawareness and non-responsiveness to painful stimuli," (Doc. 388-4 (Stevens Report) at ¶¶11, 99), thereby rendering the prisoner insensate to pain as required by the prior law.

The same is not true for midazolam. It is undisputed that midazolam is **not** an ultrashort-acting barbiturate. In fact, it is not a barbiturate at all, but rather is in the separate class of drugs called benzodiazepines. (Doc. 388-4 (Stevens Report) at ¶50). These are anti-anxiety drugs.  As such, as explained above, Plaintiffs' experts have opined that midazolam will not render a prisoner insensate to pain, and, as a result, the prisoner will experience the pain and suffering associated with the administration of the midazolam (suffocation and drowning), vecuronium bromide (same), and potassium chloride (chemical burning and cardiac arrest).

Defendants may argue that the statutory change does not violate the *ex post facto* provision because it merely "chang[ed] the mode of death." Doc. 388 at 42. But that argument misstates the applicable standard, and their reliance on *Matter of Fed. Bureau*

21

*of Prisons' Execution Protocol Cases*, No. 05-CV-2337, 2021 WL 127602 (D.D.C. Jan. 13. 2021), is misplaced. As noted above, the authority in this Circuit and the Supreme Court is clear that the applicable standard is whether the offender is "disadvantage[d]" by the law by creating "a significant risk" of increased punishment. *Henderson*, 260 F.3d at 1215; *Garner*, 529 U.S. at 255. A significantly more painful lethal execution method *ipso facto* "disadvantages" the offender and increases the punishment.

Executing Plaintiffs without using an ultrashort-acting barbiturate would also violate Plaintiffs' Due Process rights under the Oklahoma Constitution, which does not permit an amended or repealed statute to "affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute." Okla. CONST. art. V, § 54; *see also One Chi. Coin's Play Boy Marble Bd., No. 19771 v. State ex rel. Adams*, 212 P.2d 129, 133 (Okla. 1949).

Here, lethal injection by ultrashort-acting barbiturate, as specified in Plaintiffs' death warrants, is an "accrued right" and a "penalty incurred" before the 2011 amendment to the statute. Plaintiffs have a constitutional right to be executed by the statutory method in effect when they were sentenced, and duly reflected in their death warrants. *See Alberty v. State*, 140 P. 1025 (Okla. Crim. App. 1914). Plaintiffs are likely to succeed on these ex post facto and Due Process claims and at a minimum meet the relaxed serious questions for litigation standard.[7]

---

[7] Any argument that there is no due process violation fails for the same reasons. As discussed above, Oklahoma law protects Plaintiffs' life and liberty interests. These interests cannot be denied without offending the Due Process Clause of the United States

### C.     The Other Factors Warrant Preliminary Relief.

The Religious Objector Plaintiffs have shown that they will suffer irreparable

harm. If Defendants are permitted to carry out their executions before the Religious

Objector Plaintiffs' cases are completed in this Court and subject to review on appeal,

they will be executed while at the same time being foreclosed any appellate review of

the serious constitutional questions they have raised on this record. There is nothing

more final and irreversible than death. If the Religious Objector Plaintiffs are

unconstitutionally executed, the injury is irreparable.

The issuance of a preliminary injunction is also in the public interest. *Attorney*

*General of Oklahoma v. Tyson Foods, Inc.,* 565 F.3d 769, 788 (10th Cir. 2009). "[I]t is

always in the public interest to prevent the violation of a party's constitutional rights."

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013). Indeed,

"the public interest has never been and could never be served by rushing to judgment at

the expense of a condemned inmate's constitutional rights." *In re Ohio Execution*

*Protocol Litig.*, 840 F. Supp. 2d 1044, 1059 (S.D. Ohio 2012) (citation omitted).

The balance of equities tips in favor of the Religious Objector Plaintiffs. The

Plaintiffs promptly raised and litigated their claims once the new lethal injection

protocol was issued, and a schedule was set and relied upon by Plaintiffs with the

---

Constitution. *See Vitek v. Jones*, 445 U.S. 480, 488 (1980); *see also Hicks v. Oklahoma*,
447 U.S. 343, 346 (1980); *Ross v. Oklahoma*, 487 U.S. 81, 89 (1988). Allowing
Defendants to execute Plaintiffs using a method that state law did not permit when
Plaintiffs were sentenced and which would disadvantage Plaintiffs and create a
significant risk of increased punishment would, by definition, violate their due process
rights under the United States Constitution.

understanding that executions would not proceed until the case was complete and subject to review on appeal. Moreover, the Religious Objector Plaintiffs sought relief from this Court, including this motion, promptly after the Court of Appeals' October 15, 2021 decision and the October 19, 2021 confirmation by counsel for Defendants that the State would not agree to withdraw the execution dates.

Viewed in the context of the State's lengthy delay in developing its new protocol, the short stay sought here will have little adverse effect on the State's interest and will ensure that the State does not perform an unconstitutional execution. *See Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 966 F.2d 460, 462 (9th Cir. 1992) (Noonan, J. dissenting from grant of writ of mandate) ("The state will get its man in the end. In contrast, if persons are put to death in a manner that is determined to be cruel, they suffer injury that can never be undone, and the Constitution suffers an injury that can never be repaired."). Here, equity favors the issuance of the limited preliminary injunction that will prevent the Religious Objector Plaintiffs from being executed before final judgment is entered on their claims and before they can seek appellate review of their novel, substantial and serious claims.

## IV.   CONCLUSION

The Religious Objector Plaintiffs respectfully request that this Court enforce the agreement of the Attorney General on behalf of Defendants before this Court not to execute Plaintiffs until this case is complete before this Court.   Alternatively, the Religious Objector Plaintiffs respectfully ask that this Court enter a limited stay of the current execution dates or the resetting of dates until final judgment is entered by this Court.

Respectfully submitted this 20th day of October, 2021.

*s/ Emma V. Rolls*
Emma V. Rolls, OBA # 18820
Office of the Federal Public Defender
215 Dean A. McGee Ave., Suite 707
Oklahoma City, OK 73102
Telephone: (405) 609-5975
Emma_Rolls@fd.org

Harry P. Cohen (admitted *pro hac vice*)
Michael K. Robles (admitted *pro hac vice*)
James K. Stronski (admitted *pro hac vice*)
CROWELL & MORING LLP
590 Madison Avenue
New York, NY 10022
Telephone: (212) 223-4000
hcohen@crowell.com
mrobles@crowell.com
jstronski@crowell.com

Jon M. Sands
Federal Public Defender District of Arizona
Dale A. Baich (OH Bar No. 0025070)
Jennifer M. Moreno
Michael W. Lieberman
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
Telephone: (602) 382-2816
Facsimile: (602) 889-3960
dale_baich@fd.org
jennifer_moreno@fd.org
michael_lieberman@fd.org

COUNSEL FOR D. GRANT, J. GRANT,
JONES AND POSTELLE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of October, 2021:

1. I electronically transmitted that attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to all counsel of record who are registered participants of the Electronic Case Filing System.

2. I served a hard copy of this document on the following party by First Class Mail via the U.S. Postal Service:

   Wade Lay, DOC #516263
   Oklahoma State Penitentiary
   P.O. Box 97
   McAlester, OK 74502
   Pro Se Plaintiff

*s/ Emma V. Rolls*
Emma V. Rolls
