## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

RICHARD GLOSSIP, *et al.*,  )
                           )
    Plaintiffs,  )
                           )
    vs.  )    Case No. CIV-14-665-F
                           )
RANDY CHANDLER, *et al.*,  )
                           )
    Defendants.  )

## PLAINTIFFS' EMERGENCY MOTION TO PRESERVE
## EVIDENCE OF THE EXECUTION OF JOHN MARION GRANT

Harry P. Cohen (admitted *pro hac vice*)
Michael K. Robles (admitted *pro hac vice*)
James K. Stronski (admitted *pro hac vice*)
CROWELL & MORING LLP
590 Madison Avenue New York, NY
10022

Emma V. Rolls, OBA # 18820
Office of the Federal Defender for the
Western District of Oklahoma
215 Dean A. McGee Ave., Suite 707
Oklahoma City, OK 73102

Jon M. Sands
Federal Public Defender District of
Arizona
Dale A. Baich (OH Bar No. 025070)
Jennifer M. Moreno (Bar No. CA 244967)
Michael W. Lieberman, OBA #32694
850 West Adams Street, Suite 201
Phoenix, Arizona 85007

COUNSEL FOR PLAINTIFFS

Alex Kursman
Lynne Leonard
Shawn Nolan
Asst. Federal Defenders Capital Habeas
Unit Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street
Philadelphia, PA 19106

COUNSEL FOR PHILLIP HANCOCK

Plaintiffs respectfully request that this Court issue an order that will preserve evidence from the execution of John Marion Grant, if not stayed, directed to (i) preserving documents and things, (ii) providing an observer limited access to the execution and autopsy, and (iii) ordering the omission of the paralytic in any execution to preserve and permit any observations of the physical manifestations of pain and suffering during the execution. Such preserved evidence has the potential to provide limited information for consideration by the Court at trial.[1]

Specifically, Plaintiffs seek an order that Defendants, including the Oklahoma Department of Corrections ("ODOC") and anyone acting on their behalf in connection with the execution of John Marion Grant, and the Pittsburg County Medical Examiner and Coroner or any other Medical Examiner or Coroner, involved in the post-execution autopsy of John Marion Grant (collectively, the "State Entities) preserve evidence related to the execution of  John Marion Grant, who is scheduled to be executed on October 28, 2021. This evidence is relevant to Plaintiffs' claims, among others, that the Oklahoma execution protocol creates a substantial risk of serious harm in violation of the Eighth Amendment. This claim is the subject of the trial in this case scheduled to commence on

---

[1] Plaintiffs disagree with the Court's suggestion that Defendants execute prisoners before the Court tries this case and an appealable final judgment is entered; they have a pending preliminary injunction motion before the Court asking it to prevent Defendants from executing or scheduling executions for anyone before a final judgment is entered. (Doc. 506) Nevertheless, because the Court has suggested that it would consider evidence from any executions that might proceed before trial, Plaintiffs make this request to ensure that potentially relevant and helpful evidence is preserved and not lost.

February 28, 2021, and Plaintiffs seek preservation of all evidence from the execution of John Marion Grant that may be relevant to the claim and issues to be tried.

An order to preserve evidence for trial is authorized under the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 26(d)(1) acknowledges generally this Court's authority to enter orders concerning discovery "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, **or by court order**." (emphasis added).  Rule 35(a) further provides authority to order the physical or mental examinations of a party, including of a person who is in its custody or under its legal control. This Court has the authority to order autopsies under Rule 35 and derivatively to preserve evidence of any autopsy conducted. See, e.g., *Belkow v. Celotex Corp.*, No. 89 C 3049, 1989 WL 56976, at *2 (N.D. Ill. May 22, 1989) ("This court concurs with the analysis set forth in *In re Certain Asbestos Cases*, 112 F.R.D. 427, 432–433 (N.D. Tex. 1986), that upon proper showing Rule 35(a) permits the court to order an autopsy."); *McGehee v. Hutchinson*, No. 17-cv-179 (E.D. Ark. April 28, 2017).   Pursuant to this authority, Plaintiffs seek an order of this Court to preserve documents and things, to provide limited access relating to the execution and autopsy, and to omit the paralytic to identify and preserve evidence of any

2

physical manifestations of pain and suffering that might occur during Mr. Grant's execution.[2]

## I.     Order to Preserve Documents and Things

Plaintiffs request an order that Defendants preserve evidence from the execution of John Marion Grant, should it proceed, by the following methods:

1.     Preserve all IV tubing, syringes, needles and drug vials, including packaging, labeling and prescribing information included therein used in the execution, except for any portion of the IV tubing and entry apparatus that must travel with the body to the Medical Examiner because they remain connected to the body of the prisoner after execution.

2.     Photograph and document evidence related to pulmonary edema and the intravenous lines, including: lung weight; perform a thorough examination of and document any fluid present in the lungs, large or small airways, or mouth or nose; identify the IV site(s), note if the catheter was placed intravascularly, and note any extravasation of fluid around the IV; and note any signs of multiple IV attempts.

3.     Preserve tissues from the brain, liver, and muscle from a location other than from the leg or arm where the IV was set.[3]

---

[2]  Plaintiffs provided this motion to Defendants on October 22, 2021 in connection with meet and confer obligations to determine if any of this motion could be filed on consent. Defendants responded that there were portions of this motion they would oppose and portions they may consent to but that they would need to further consult with their client. Accordingly, this motion is not filed on consent.

[3]  A similar evidence-preservation order was issued after the 2-hour execution of Joseph Wood, III, in Arizona. Order, *Wood v. Ryan*, No. 2:14-cv-01447-NVW (D. Ariz.), July

4.      Conduct, within one hour of the execution, a blood draw from the following locations on the deceased:

      i.      Left and right femoral veins;

      ii.      Left and right subclavian veins;

      iii.      Left and right ventricles (heart)

5.      Preserve all documents[4] and other material related to the executions[5] and execution proceedings,[6] including but not limited to:

      a.      All handwritten documents relating to the executions and execution proceedings, whether contemporaneously produced, or produced before or after the executions.

      b.      All transcriptions of handwritten documents relating to the executions and execution proceedings, whether those

---

23, 2014 (ECF 29), attached as Ex. 1. There, the plaintiffs requested the order; the defendants did not oppose the order.

[4] By "document," Plaintiffs mean document as defined by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 34(a)(1)(A).

[5] By "execution," Plaintiffs mean from the time prisoners enter the execution chamber, until the time at which the body is released to the medical examiner and any pre-execution medical assessments of the prisoners.

[6] By "execution proceedings," Plaintiffs mean all matters surrounding the execution, whether those matters arose before or after the Oklahoma Court of Criminal Appeals set execution dates and extending through the execution itself, and through all matters taking place after the execution, including but not limited to debriefings, informal conferences, formal and informal meetings and conferences, and formal and informal investigations, until the point that the State of Oklahoma closes the matter.

transcriptions were contemporaneously produced, or were produced before or after the execution.

c.    All handwritten, typewritten, computer-generated logs, or audio and/or visual recordings related to the executions and execution proceedings, whether produced contemporaneously with, or produced at any time before or after, the execution.

d.    The qualification and training records related to personnel who participated in any capacity in training to conduct the execution and any training materials used or scenario or other curriculum used to train participants to conduct the execution and any tests or evaluations taken by training participants in connection with such training.

e.    Preserve all medical documents related to the executions and execution proceedings, whether the State Entities classified the documents as "medical" or otherwise. This list includes but is not limited to:

(i)    EKG strips;

(ii)    Printouts of any other monitors or other medical equipment used before, during, or after the executions;

(iii)    Prescriptions, medical orders, DEA forms or other documents relating to the acquisition of all drugs used,

5

or intended to be used, for whatever purpose, in the

executions, including documents sufficient to show the

expiration date of the drugs used, the recommended

storage conditions for the drugs used and the actual

storage conditions and time under such conditions for

such drugs;

(iv)   Prescriptions and medical orders for any other drugs

used by or administered to prisoners leading up to or

during the executions;

(v)   Notes or other material related to or documenting

medical concerns, emergencies, or any other anomalies

or unexpected occurrences;

(vi)   Notes or other material related to or documenting

responses to medical concerns, emergencies, or any

other anomalies or unexpected occurrences.

f.   Preserve all other documents or other material not identified

here, in whatever form those documents or materials exist,

related to the executions and execution proceedings.

## II.   Order Providing Limited Execution and Autopsy Access to Preserve Evidence

Plaintiffs request that the Court issue an order directing the Defendants (including

DOC) to permit a representative of Plaintiffs to view the preparation and establishment of

6

the intravenous lines and the drugs to be used in order to document any irregularities or complications. Additionally, Defendants and anyone acting on their behalf and involved in an autopsy of John Marion Grant should also be directed to permit Plaintiffs to provide a representative to observe such autopsy and to arrange for a private post-mortem examination, once the body is released from the Medical Examiner, and on the condition that Mr. John Marion Grant or his next-of-kin provide consent.

### III.    Order Omitting Paralytic from Execution to Preserve Evidence

Plaintiffs also ask the Court to issue an order directing Defendants and anyone acting on their behalf to refrain from administering any paralytic drug[7] during the execution of John Marion Grant; the removal of the paralytic would allow the Plaintiffs to identify and preserve evidence of suffering that would otherwise be hidden by the paralytic.

As Plaintiffs have described throughout this case, the paralytic causes its own suffering, and hides the suffering caused by the other drugs used in a midazolam-based three-drug execution protocol. First, paralytics do *not* render individuals unconscious or insensate, and should therefore not be administered without a pre-dose of an appropriate anesthetic; rather, they cause loss of skeletal muscle contraction, creating paralysis (*see*, *e.g.*, Stevens Report at 63). Thus, when a paralytic is administered to an individual who has not been rendered insensate by anesthesia, the individual is paralyzed and thus unable

---

[7] The prohibition includes not only vecuronium bromide, which is required by Chart D of the execution protocol, but also all other paralytics, whether or not they appear in the execution protocol.

to indicate awareness or manifest the physical impact on the body of the other drugs used in the execution process.  In effect, the paralytic obliterates the evidence that a sensate individual is sensate. The paralytic prevents the individual from making voluntary and involuntary reactionary movements, and consequently prevents observers from understanding that the individual is experiencing severe and excruciating pain.  In other words, the paralytic effectively eliminates critical evidence that is clearly and directly relevant to the issues to be tried in this case.

In the context of Oklahoma's execution protocol, in which the prisoner is first injected with the sedative midazolam, followed by the paralytic agent and then potassium chloride, the paralytic serves as a chemical curtain that obliterates evidence that the prisoner is suffering. Observers will not see evidence of the prisoner's terror as he suffocates; nor will they see evidence of his suffering the sensation of "liquid fire" caused by the injection of potassium chloride. *See, e.g.*, *Baze v. Rees*, 553 U.S. 35, 54 (2008) ("It is uncontested that, failing a proper dose of sodium thiopental [the anaesthetic at issue in the case] that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride.").

Accordingly, Plaintiffs seek an order that the paralytic be omitted because its use will mask evidence in the form of physical manifestations of pain and suffering that

would otherwise be observable.[8]

Dated:  October 23, 2021                    Respectfully submitted,


                                            s/ Emma V. Rolls
                                            Emma V. Rolls, OBA # 18820
                                            Office of the Federal Defender
                                            215 Dean A. McGee Ave., Suite 707
                                            Oklahoma City, OK 73102
                                            Telephone: (405) 609-5975
                                            Emma_Rolls@fd.org

                                            Harry P. Cohen (admitted *pro hac vice*)
                                            Michael K. Robles (admitted *pro hac vice*)
                                            James K. Stronski (admitted *pro hac vice*)
                                            CROWELL & MORING LLP
                                            590 Madison Avenue
                                            New York, NY 10022
                                            Telephone: (212) 223-4000
                                            hcohen@crowell.com
                                            mrobles@crowell.com
                                            jstronski@crowell.com

                                            Jon M. Sands
                                            Federal Public Defender District of Arizona
                                            Dale A. Baich (OH Bar No. 0025070)
                                            Jennifer M. Moreno (Bar No. CA 244967)
                                            Michael W. Lieberman, OBA #32694
                                            850 West Adams Street, Suite 201
                                            Phoenix, Arizona 85007
                                            Telephone: (602) 382-2816
                                            Facsimile: (602) 889-3960

---

[8]  At least one other court has recognized the masking effect of a paralytic.  *See* Order for Dismissal of Claims Six and Seven, *Wood v. Ryan*, No. 2:14-cv-01447-NVW (D. Ariz.), June 22, 2017 (ECF 187), attached as Ex. 2 at 2-3 (based on the parties' stipulated agreement, the court recognized that the "use [of] any lethal-injection protocol that uses a paralytic (including but not limited to vecuronium bromide, pancuronium bromide, and rocuronium bromide) . . . ." constituted a category of "prohibited conduct" that the defendants were not to engage in.

dale_baich@fd.org
jennifer_moreno@fd.org
michael_lieberman@fd.org

COUNSEL FOR PLAINTIFFS

Alex Kursman
Shawn Nolan
Lynne Leonard
Assistant Federal Defenders
Capital Habeas Unit
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 928-0520

COUNSEL FOR PHILLIP HANCOCK

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2021 I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to all counsel of record who are registered participants of the Electronic Case Filing System.

s/ Emma V. Rolls