UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICHARD GLOSSIP, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-14-665-F |
| | ) | |
| RANDY CHANDLER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

Before this Court is Plaintiffs' Emergency Motion to Preserve Evidence of the Execution of John Marion Grant (Doc. 525) wherein Plaintiffs request that this Court issue an order that will preserve evidence from the execution of John Marion Grant, if not stayed, directed to (i) preserving documents and things, (ii) providing an observer limited access to the execution and autopsy, and (iii) ordering the omission of the paralytic in any execution to preserve and permit any observations of the physical manifestations of pain and suffering during the execution. For good cause shown, the Court finds the Motion should be granted.

Therefore, this Court orders as follows:

**I.   Defendants Shall Preserve Documents and Things**

Defendants shall preserve evidence from the execution of any Plaintiff, should it proceed, by the following methods:

    1.    Preserve all IV tubing, syringes, needles and drug vials, including packaging, labeling and prescribing information included therein used in the execution, except for any

portion of the IV tubing and entry apparatus that must travel with the body to the Medical Examiner because they remain connected to the body of the prisoner after execution.

2. Photograph and document evidence related to pulmonary edema and the intravenous lines: including: lung weight; perform a thorough examination of and document any fluid present in the lungs, large or small airways, or mouth or nose; identify the IV site(s), note if the catheter was placed intravascularly, and note any extravasation of fluid around the IV; and note any signs of multiple IV attempts.

3. Preserve tissues from the brain, liver, and muscle from a location other than from the leg or arm where the IV was set.

4. Conduct, within 24 hours of the execution, a blood draw from the following locations on the deceased:

      i. Left and right femoral veins;

      ii. Left and right subclavian veins; and

      iii. Left and right ventricles (heart).

5. Preserve all documents[1] and other material related to the executions[2] and execution proceedings,[3] including but not limited to:

---

[1] "document," as defined by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 34(a)(1)(A).

[2] "execution," means from the time prisoners enter the execution chamber, until the time at which the body is released to the medical examiner and any pre-execution medical assessments of the prisoners.

[3] "execution proceedings," means all matters surrounding the execution, whether those matters arose before or after the Oklahoma Court of Criminal Appeals set execution dates and extending through the execution itself, and through all matters taking place after the execution, including but not limited to debriefings, informal conferences, formal and

      a.      All handwritten documents relating to the executions, whether contemporaneously produced, or produced before or after the executions.

      b.      All transcriptions of handwritten documents relating to the executions, whether those transcriptions were contemporaneously produced, or were produced before or after the execution.

      c.      All handwritten, typewritten, computer-generated logs, or audio and/or visual recordings respectingPlaintiffs' executions, whether produced contemporaneously with, or produced at any time before or after, the execution.

      d.      The qualification and training records related to personnel who participated in any capacity in training to conduct the execution and any training materials used or scenario or other curriculum used to train participants to conduct the execution and any tests or evaluations taken by training participants in connection with such training.

      e.      Preserve all medical documents respecting Plaintiffs' executions, whether the State Entities classified the documents as "medical" or otherwise. This list includes but is not limited to:

            (i)      EKG strips;

            (ii)     Printouts of any other monitors or other medical equipment used before, during, or after the executions;

            (iii)    Prescriptions, medical orders, DEA forms or other documents relating to the acquisition of all drugs used, or intended to be used, for whatever purpose, in the executions, including documents sufficient to show the expiration date of the drugs used, the recommended storage conditions for the drugs used and the actual storage conditions and time under such conditions for such drugs;

---

informal meetings and conferences, and formal and informal investigations, until the point that the State of Oklahoma closes the matter.

    (iv) Prescriptions and medical orders for any other drugs used by or administered to prisoners leading up to or during the executions;

    (v) Notes or other material related to or documenting medical concerns, emergencies, or any other anomalies or unexpected occurrences;

    (vi) Notes or other material related to or documenting responses to medical concerns, emergencies, or any other anomalies or unexpected occurrences.

  f. Preserve all other documents or other material not identified here, in whatever form those documents or materials exist, related to the executions and execution proceedings.

## II.  There Shall Be Limited Execution and Autopsy Access to Preserve Evidence

  1. Plaintiffs will be permitted to provide a single representative to observe the State Medical Examiner's autopsy of each executed Plaintiff provided that such representative observer does not interfere with the autopsy, follows the direction of the Medical Examiner staff, and agrees not to engage in any photography, videography, or audio recordings during the autopsy but may make and retain notes regarding the autopsy. Additionally, Plaintiffs will be permitted to arrange for a private post-mortem examination, once the body is released from the Medical Examiner, on the condition that the executed Plaintiff or his or her next-of-kin provide consent.

  2. Plaintiffs will be permitted to have a medically-trained witness attend the execution of any plaintiff in this case who may be executed before February 1, 2022 (including the execution of John M. Grant currently scheduled for October 28, 2021), in one of the five observation seats reserved for the prisoner's observers as long as the prisoner is not otherwise using all five seats. Admission of any such witness is subject to a criminal records check, and

notice of such witness will be provided to the Department of Corrections at least 24 hours in advance of the scheduled time for the execution.

      3.      In the event of an execution in which the prisoner is using all five seats reserved for the prisoner or the prisoner objects to seating such a medically-trained observer in one of such seats, Plaintiffs and Defendants shall meet and confer about Defendants providing a seat for a medically-trained witness designated by Plaintiff to observe the execution and to the extent they are unable to come to an agreement on this issue, Plaintiffs may raise any remaining issue relating to seating a medically-trained witness with the Court.

### III.  The Motion to Omit the Paralytic Is Denied

Plaintiffs' motion to omit the paralytic to preserve evidence is denied for reasons stated on the record at the October 26, 2021 motion hearing.

SO ORDERED this 27th day of October, 2021.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

14-0665p132.docx