FILED
United States Court of Appeals
Tenth Circuit

October 27, 2021

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

JULIUS D. JONES, et al.,

    Plaintiffs - Appellants,

and

JAMES A. CODDINGTON, et al.,

    Plaintiffs,

v.

SCOTT CROW, et al.

    Defendants - Appellees.

No. 21-6139
(D.C. No. 5:14-CV-00665-F)
(W.D. Okla.)

_____

**ORDER**
_____

Before **TYMKOVICH**, Chief Judge, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

    Plaintiffs-Appellants are Oklahoma prisoners sentenced to death, with scheduled execution dates. Along with 30 other Oklahoma death-row inmates, they filed a Third Amended Complaint (TAC) in this 42 U.S.C. § 1983 lawsuit challenging the constitutionality of Oklahoma's lethal injection protocol. A trial is pending on a single remaining claim asserted in the TAC, and the 27 plaintiffs remaining in the suit who are not part of this appeal are scheduled to participate in that trial. But the district court dismissed all of Appellants' claims in the TAC and denied their motion for a preliminary injunction. They have appealed the district court's denial of their motion for a

preliminary injunction and have moved this court for a stay of execution pending our resolution of this appeal. We have jurisdiction, *see* 28 U.S.C. § 1292(a)(1), and we grant the motion for a stay of execution in part.

In our decision resolving an earlier appeal in this litigation, we explained the standards applicable to both a preliminary injunction and a stay pending appeal:

> We review a district court's decision to deny a preliminary injunction under a deferential abuse of discretion standard. Under this standard, we examine the district court's legal determinations de novo, and its underlying factual findings for clear error. Thus, we will find an abuse of discretion if the district court denied the preliminary injunction on the basis of a clearly erroneous factual finding or an error of law.
>
> A preliminary injunction is an extraordinary and drastic remedy. A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.
>
> A motion for stay pending appeal is subject to the exact same standards. In other words, in ruling on such a request, this court makes the same inquiry as it would when reviewing a district court's grant or denial of a preliminary injunction.

*Warner v. Gross*, 776 F.3d 721, 727-28 (10th Cir. 2015) (citations, internal quotation marks, brackets, and footnote omitted).

We begin by addressing the likelihood of success on the merits, which the Supreme Court has identified as a "critical" factor in our inquiry. *Nken v. Holder*, 566 U.S. 418, 435 (2009). Although Appellants have asserted a likelihood of success on the merits of several of their claims, we need only consider the core claim in the TAC, for which a trial has been scheduled: Count II, which raises a direct Eighth Amendment challenge to Oklahoma's lethal injection protocol.

This claim requires a prisoner to meet two prongs. First, he must show that the State's chosen method of execution presents "a substantial risk of severe pain." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019). Second, he must show that the risk is substantial in comparison to other known and available alternatives. *See id.*

In its summary-judgment order, the district court declined to rule as a matter of law that plaintiffs' claim failed the first prong. It set that issue for trial. For example, the district court stated that "[t]here is a fact issue as to whether midazolam performs as well, for execution purposes, as defendants claim it does." *Glossip v. Chandler*, No. 5:14-cv-00665-F, CM doc. 449 at 10 (W.D. Okla. 2021). It also recognized "a fact issue as to whether midazolam will reliably render the prisoner insensate to pain . . . for the length of time necessary to avoid a constitutionally unacceptable risk that the prisoner will be subjected to a constitutionally unacceptable level of pain." *Id.* at 11. The district court further stated that "the prisoners squarely attack the warden's unfettered discretion to deviate from the protocol, as well as—among other things—the adequacy of the consciousness check specified in the protocol," which it said was "unmistakably a central consideration in the Supreme Court's lethal injection jurisprudence." *Id.* at 14.

Notwithstanding this ruling, in denying the motion for preliminary injunction, the district court found that Appellants had failed to demonstrate a likelihood of success on the merits concerning the first prong. Because the district court had already ruled that the first prong must be resolved at trial, Appellants are likely to succeed on their position that denial of an injunction on that basis was an abuse of discretion.

3

As for the second prong, Appellants have made a strong showing that they complied with it. The TAC identified four alternative methods that all plaintiffs, including Appellants, alleged, as required by the pertinent test, were "feasible, available, readily implemented and would significantly reduce a substantial risk of severe pain." *Id.*, CM doc. 325 at 47. None of the plaintiffs, including Appellants, have ever withdrawn that allegation or withdrawn these methods from consideration. But the defendants propounded an interrogatory asking each individual plaintiff to further identify which of these alternative methods he proffered for use in executing him. Although the plaintiffs objected to this interrogatory, the district court overruled the objection and required them to answer it. The plaintiffs who answered the interrogatory did so by filing a supplemental response that included a listing of the four alternative methods identified in the TAC, with a blank line next to each method where a plaintiff could put his initials. Appellants refused to specify an alternative in response to the interrogatory. The district court therefore granted summary judgment against them on Count II, but permitted the other plaintiffs, who had "checked a box" in supplemental responses to interrogatories that designated one or more alternative methods for their own execution, to proceed to trial on Count II.

The inquiry is complicated by a second factor. In designating the alternative methods in the TAC, and in their response to the defendants' motion for summary judgment, all the plaintiffs reserved the right to challenge the alternative methods they had specified at some future date. The district court cited this as an additional reason for denying a preliminary injunction to Appellants.

4

But all the plaintiffs, including those whom the district court permitted to go to trial on Claim II, made the same reservation of a future challenge, and the district court held that reservation against only Appellants.  As for the other plaintiffs, the court said in its summary-judgment order that it would ignore the very same reservations, stating that if it appeared at trial that any of the plaintiffs actually do reserve the right to challenge their proposed alternative execution methods, that would be fatal to their claim.  *See id.*, CM doc. 449 at 18.  In contrast, the district court cited the same reservations as fatal to Appellants, who made no more serious reservation of a future challenge than the other plaintiffs.  This disparate treatment was an abuse of discretion.

The only real difference between those plaintiffs who survived summary judgment to go to trial and these Appellants, who lost on summary judgment and now face imminent execution, was that the other plaintiffs complied with the district court's instruction to supplement their interrogatory responses by specifying an execution method or methods to be used to carry out their death sentences; the supplemental responses listed the same four alternative methods as choices that were identified by all plaintiffs in the TAC.  Appellants, citing religious scruples about assisting in what they viewed as "suicide," refused to answer the interrogatory by choosing one or more of the four alternative methods to be used in their particular case.  The problem with granting summary judgment on this basis is that we find nothing in the relevant case law that specifically requires a prisoner to designate a method of execution to be used in his case by "checking a box" when the prisoner has already identified in his complaint the very

5

same alternative methods given as choices on the form.[1]  Nor did Appellants' refusal to make such a designation by specifying each method they proffered for their execution in a supplemental interrogatory response somehow nullify or renounce the alternative methods they identified in the TAC.  Thus, Appellants have shown a likelihood of success concerning the second prong of their claim as well.  The district court abused its discretion in concluding to the contrary.

Appellants have also satisfied the other stay factors.  They risk being unable to present what may be a viable Eighth Amendment claim to the federal courts before they are executed using the method they have challenged.  Although Appellees cite the State's and the crime victims' interest in prompt execution, the delay in developing the new protocol, coupled with the relatively short time frame that will ensue until the district court has finished its trial, which is set to commence on February 28, 2022, weigh against Appellees' assertions of harm.  And the public interest favors a stay, so that all the plaintiffs with identical claims in this matter are treated equitably by the courts.

---

[1] The leading cases in this area are *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019); *Glossip v. Gross*, 576 U.S. 863, 877 (2015); and *Baze v. Rees*, 553 U.S. 35 (2008).

Appellants have requested a stay of execution pending the adjudication of this appeal. To accomplish that purpose and in aid of our jurisdiction, we partially grant the motion and stay the executions of John Grant, currently scheduled for October 28, 2021, and of Julius Jones, currently scheduled for November 18, 2021.

                                           Entered for the Court

                                           CHRISTOPHER M. WOLPERT, Clerk

**21-6139, *Grant v. El Habti, et al.***
Tymkovich, Chief Judge, dissenting

John Grant murdered Gay Carter, a food-service supervisor at the Connor Correction Center, on November 13, 1998. Donald Grant murdered Brenda McElyea and Suzette Smith on July 18, 2001, during a robbery. Julius Jones murdered Paul Howell on July 28, 1999, in front of Mr. Howell's sister and daughters during a carjacking. Gilbert Postelle chased down and murdered James Alderson and Amy Wright on May 30, 2005, after they witnessed his accomplice murder two other victims. And Wade Lay murdered Kenneth Anderson during a bank robbery on May 24, 2004. They have all had their sentences reviewed on appeal and exhausted their rights to habeas review. Oklahoma has spent the past six years developing a method of lethal injection that it hopes will satisfy the Eighth Amendment's prohibition against cruel and unusual punishment. Having done so, Oklahoma has set execution dates for the five prisoners in this case.

The condemned prisoners now seek a preliminary injunction to delay their executions. A preliminary injunction is an extraordinary and drastic remedy that should not be routinely granted. *See Warner v. Gross*, 776 F.3d 721, 729 (10th Cir. 2015). The same is true of a stay of execution, which requires the movant to show, among other things, that he is likely to succeed on the merits of his claim. *See id.* Unlike the majority, I would deny the emergency motion because Plaintiffs fail to demonstrate a likelihood of success on Count II, the Eighth Amendment challenge to Oklahoma's lethal injection protocol. I also conclude that none of the other claims in the motion for stay has merit.

To mount a successful challenge under the Eighth Amendment, the prisoners must establish (1) the State's method presents "a substantial risk of severe pain" and (2) the risk is substantial in comparison to other known and available alternatives. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125–26 (2019). Plaintiffs fail to demonstrate either. The district court heard testimony from witnesses on the issue of whether Oklahoma's three-drug protocol using midazolam presented a substantial risk of severe pain and ultimately ruled that the prisoners failed to carry their burden. The court did not commit clear error in its conclusion.

The district court also ruled that the prisoners failed to show a likelihood of success in demonstrating the risk of severe pain under Oklahoma's proposed method of execution is substantial in comparison to other known and available alternatives. The court cited Plaintiffs' failure to identify an alternative method of execution that could be used in their case. Although the prisoners in this appeal identified four alternative methods of execution in the TAC, they added the caveat that they reserved the right to object to these methods.[1] *Glossip v. Chandler*, No. 5:14-cv-00665-F, CM doc. 325 at 47.

Plaintiffs contend they are not required to endorse an alternative method of execution; rather, they argue they must merely identify alternative methods for a

---

[1] Admittedly, Appellants' counsel gradually abandoned the reservation stated in their written pleadings during the preliminary injunction hearing. But permitting Appellants to obtain a stay here, on their shifting form of compliance with the Supreme Court's requirements, risks rewarding Appellants for playing delay games with the court rather than serving the true function of their *Glossip* claim: to avoid unnecessary and superadded pain associated with an unconstitutional method of execution. *See Bucklew*, 139 S. Ct. at 1129; *Glossip v. Gross*, 576 U.S. 863, 879-80 (2015).

necessarily comparative exercise. I disagree. The alternative methods of execution are not theoretical measuring sticks, but rather practical alternatives the State may be required to implement. *See id.* at 1126 ("To decide whether the State has cruelly 'superadded' pain to the punishment of death isn't something that can be accomplished by examining the State's proposed method in a vacuum, but only by 'compar[ing]' that method with a *viable* alternative.") (emphasis added). The Supreme Court made clear in *Baze v. Rees*, 553 U.S. 35 (2008), that prisoners cannot successfully challenge a "method of execution merely by showing a slightly or marginally safer alternative." *Id.* at 51. And it warned against "transform[ing] courts into boards of inquiry charged with determining 'best practices' for executions, with each ruling supplanted by another round of litigation touting a new and improved methodology." *Id.*

Rather than attack the current method of execution with a hypothetical alternative, prisoners must proffer alternatives that are feasible, readily implemented, and that in fact significantly reduce a substantial risk of pain. *Id.* at 52. If plaintiffs meet these requirements and the State does not implement an alternative method without sufficient justification, the refusal to change methods can be viewed as cruel and unusual. *Id.* This consequence demonstrates that proffered alternatives serve an important, practical purpose.

Nothing in the Supreme Court cases expounding this area of law suggests that a prisoner may satisfy the second *Glossip* requirement by making such a conditional, hypothetical, or abstract designation. The requirement to specify alternatives is not designed merely to facilitate an abstract comparison between execution methods, but to

3

put an end to litigation by permitting the prisoner's execution to go forward using a constitutionally acceptable (but possibly imperfect) method. *See id.* at 51. To that end, the prisoner is required to designate an alternative method *that can be used in his case*. *See, e.g.*, *Bucklew*, 139 S. Ct. at 1115 (("[T]he inmate's proposal must be sufficiently detailed to permit a finding that the State court carry it out relatively easily and reasonably quickly."); *id.* at 1130 (the Eighth Amendment "does not compel a State to adopt untried and untested . . . methods of execution" (internal quotation marks omitted)). If plaintiffs are unwilling to accept the methods of execution they proffer, alternative-method-of-execution litigation will devolve courts into the boards of inquiry the Supreme Court warned against, and the alternatives will fail to serve the practical purpose the Eighth Amendment commands.

In sum, the prisoners seek to avoid the practical inquiry required by the Supreme Court in these cases, and in essence ask the courts to accept pleading games rather than examine carefully whether the State has satisfied the Constitution. The district court correctly applied Supreme Court precedent and did not abuse its discretion in denying a stay of execution.

For these reasons, Plaintiffs fail to demonstrate a likelihood of success in meeting the two *Glossip* requirements. I would similarly reject the other grounds upon which Plaintiffs seek relief because they did not demonstrate a likelihood of success. Consequently, I would reject the motion for stay of execution. I respectfully dissent.