**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**November 12, 2021**

_____

**Christopher M. Wolpert**
**Clerk of Court**

JULIUS D. JONES; DONALD
ANTHONY GRANT; GILBERT RAY
POSTELLE; WADE LAY,

     Plaintiffs - Appellants,

and

JAMES A. CODDINGTON; BENJAMIN
R. COLE; CARLOS CUESTA-
RODRIGUEZ; NICHOLAS
ALEXANDER DAVIS; RICHARD S.
FAIRCHILD; WENDELL A. GRISSOM;
MARLON D. HARMON; RAYMOND E.
JOHNSON; EMMANUEL A.
LITTLEJOHN; JAMES D. PAVATT;
KENDRICK A. SIMPSON; KEVIN R.
UNDERWOOD; BRENDA E. ANDREW;
RICHARD E. GLOSSIP; SHELTON D.
JACKSON; PHILLIP D. HANCOCK;
ALFRED B. MITCHELL; TREMANE
WOOD; RONSON KYLE BUSH; SCOTT
EIZEMBER; JOHN F HANSON; MICA
ALEXANDER MARTINEZ; RICKY RAY
MALONE; JIMMY DEAN HARRIS;
PATRICK MURPHY; CLARANCE
GOODE; ANTHONY SANCHEZ;
MICHAEL DEWAYNE SMITH; JAMES
RYDER; RICHARD ROJEM; JEMAINE
MONTEIL CANNON,

     Plaintiffs,

v.

SCOTT CROW; RANDY CHANDLER;
BETTY GESELL; JOSEPH GRIFFIN; F.
LYNN HAUETER; KATHRYN A.

No. 21-6139
(D.C. No. 5:14-CV-00665-F)
(W.D. Okla.)

LAFORTUNE; STEPHAN MOORE;
CALVIN PRINCE; T. HASTINGS
SIEGFRIED; DARYL WOODARD;
TOMMY SHARP; ABOUTANAA EL
HABTI; JUSTIN FARRIS; MICHAEL
CARPENTER; JUSTIN GIUDICE,

      Defendants - Appellees.

---

### ORDER AND JUDGMENT[*]

---

Before **TYMKOVICH**, Chief Judge, **MURPHY**, and **MORITZ**, Circuit Judges.

---

Appellants are Oklahoma prisoners sentenced to death, with scheduled

execution dates.[1]  Along with 30 other Oklahoma death-row inmates, they filed a

Third Amended Complaint (TAC) in this 42 U.S.C. § 1983 lawsuit challenging the

constitutionality of Oklahoma's lethal injection protocol.  The district court

dismissed all claims in the TAC except Count II, for which it scheduled a trial.  The

plaintiffs who remain in the suit and are not part of this appeal will participate in that

trial.  But the district court dismissed all of Appellants' claims, including Count II,

and denied their motion for a preliminary injunction by which they sought to prevent

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] John M. Grant was originally named as a Plaintiff-Appellant.  Due to his
execution on October 28, 2021, he is no longer a party to this appeal and has been
removed from the caption.

their executions until final judgment was entered in the underlying case.  Appellants

now appeal the denial of their motion for a preliminary injunction.[2]  Exercising

jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), we affirm the denial of injunctive

relief.

## BACKGROUND

*Oklahoma's Use of Midazolam*

In 2014, the State of Oklahoma approved the use of midazolam hydrochloride

(midazolam) to be used as the first drug in its three-drug lethal injection protocol.

Midazolam was included as a means of causing a prisoner to become unconscious

prior to the injection of the second and third drugs.  The first Oklahoma state prisoner

executed using midazolam as part of the protocol was Clayton Lockett.  His

---

[2] Upon appealing the denial of injunctive relief, Appellants asked this court for an emergency stay of execution, which a divided panel granted in part.  Shortly thereafter, the Supreme Court vacated the stay.  In granting the emergency stay motion at that very preliminary stage of the proceedings, the panel (like the parties) focused on the substantial likelihood that Appellants would succeed in establishing that the district court abused its discretion in its ruling that Appellants had not properly identified an alternate method of execution (referred to as *Glossip* prong two).  Regarding *Glossip* prong one, we concluded, based on the limited record and arguments available at the time, that "[b]ecause the district court had already ruled that the first prong must be resolved at trial, Appellants are likely to succeed on their position that denial of an injunction on that basis was an abuse of discretion."  Stay Order, at 4.  At this later stage in the proceedings, after full briefing and further development of the arguments and issues, particularly by Appellees, it is clear that Appellants must show a likelihood of success on both *Glossip* prongs one and two.  As stated in this decision, based on the evidence presented at the preliminary-injunction hearing, the district court did not abuse its discretion in finding Appellants did not meet their burden concerning *Glossip* prong one.  And because they did not meet their burden on that point, we do not definitively consider whether the district court erred in its decision on *Glossip* prong two.

execution, on April 29, 2014, proved "a procedural disaster." *Warner v. Gross*, 776 F.3d 721, 725 (10th Cir.), *aff'd*, *Glossip v. Gross*, 576 U.S. 863 (2015).

Following the Lockett execution, in September 2014, the State adopted a new execution protocol.  In the meantime, nearly two dozen Oklahoma death-row prisoners initiated this action under § 1983 asserting claims that included an Eighth Amendment challenge to the use of midazolam.  The district court denied their motion for a preliminary injunction.  We affirmed that denial, *see id.* at 736; and the Supreme Court affirmed our judgment, *Glossip*, 576 U.S. at 893.

Soon after the Supreme Court's decision in *Glossip*, the parties stipulated to an administrative closure of the case pending further investigation into Oklahoma's execution procedures.  Over four years later, in February 2020, the Oklahoma Department of Corrections (ODOC) released a revised execution protocol.  The Oklahoma Attorney General subsequently announced that under the revised protocol executions would be conducted using the same three drugs as before:  midazolam, vecuronium bromide, and potassium chloride.

*The Third Amended Complaint*

The plaintiffs in this suit, including Appellants, then filed the TAC, in which they asserted ten claims.  By an order dated September 15, 2020, the district court dismissed three of these claims (Counts I, III and VIII) with prejudice.[3]  In a later

---

[3] These claims are:  Count I:  Fifth Amendment Due Process claim based on asserted failure to disclose sufficient information about the development of the protocol and execution procedures.  Count III:  Eighth and Fifth Amendment claim asserting deliberate indifference to the plaintiffs' serious medical needs.  Count VIII:

order dated August 11, 2021, it granted summary judgment to the defendants on six additional claims:  Counts IV, V, VI, VII, IX, and X.[4]  A single claim remained:  Count II, which raises a direct Eighth Amendment challenge to Oklahoma's lethal injection protocol.

The plaintiffs acknowledged in the TAC that to establish an Eighth Amendment violation, as they attempted to do in Count II, the Supreme Court required them to "show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason."  R., Vol. I at 162 (quoting *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019)).  To meet this requirement, they identified four qualifying alternative execution methods.  *See id.* at 164-66.[5]  But they expressed two caveats concerning these alternatives.

---

religious freedom claim asserting that the requirement to specify an alternative method of execution violated the plaintiffs' sincerely held religious beliefs.

[4] These claims are:  Count IV:  First, Fifth, and Sixth Amendment claim asserting unconstitutional denial of access to counsel and the courts.  Count V:  claim under 18 U.S.C. § 3599 asserting the intentional deprivation of right to counsel.  Count VI:  *Ex Post Facto* claim under the United States and Oklahoma Constitutions, based on the substitution of midazolam as an execution drug.  Count VII:  Fourteenth Amendment Due Process claim based on the use of midazolam instead of a barbiturate.  Count IX:  Eighth and Fourteenth Amendment claim asserting plaintiffs will be subjected to unconstitutional human experimentation.  Count X:  First and Fourteenth Amendment claim asserting the denial of a right of access to government information.

[5] These alternative methods included (1) "[e]xecution by a single dose of FDA-approved pentobarbital or sodium pentothal (thiopental) . . . , each of which is, upon information and belief, accessible to ODOC, including implementing the remedial measures and safeguards detailed below and adding a pre-dose of an

First, they asserted they could not "be required to plead or prove an alternative method of execution because such a requirement is a substantial burden on their sincerely held religious beliefs, does not further a compelling governmental interest, and is not the least restrictive means for the government to accomplish its stated interest." *Id.* at 162.  The plaintiffs explained that requiring them to designate a method for their execution would be tantamount to assisting in their own suicide, which would violate their sincerely held religious beliefs.

Second, the plaintiffs qualified their assertion of the alternative methods they had designated, stating (1) they were made solely for the purposes of the TAC; (2) they were made upon information and belief; (3) they were alleged by counsel on behalf of the plaintiffs; and (4) each plaintiff reserved the right following consultation with counsel to object to any proffered alternative.  *See id.* at 164.  In their response to Appellees' motion for summary judgment, they reaffirmed this reservation of rights, stating that "the question of whether any proffered alternative in this case causes a 'constitutionally permissible' degree of pain as compared to some other method of execution—in other words, whether the alternative might be

---

analgesic, anesthetic drug in a sufficiently large clinical dose"; (2) "[e]xecution by a single dose of compounded pentobarbital or sodium pentothal (thiopental) that complies with all state and federal compounding requirements, and has been tested for purity and potency, . . . including a pre-dose of an analgesic, anesthetic drug in a sufficiently large clinical dose, and implementing [certain specified] remedial measures and safeguards"; (3) "[e]xecution by a single dose of 40 milligrams of FDA-approved midazolam and potassium chloride, including implementing [certain specified] remedial measures and safeguards and adding a pre-dose of a pain-relieving, anesthetic drug in a sufficiently large clinical dose"; and (4) "[e]xecution by firing squad."  R., Vol. I at 164-66.

considered constitutional when assessed against a proffered alternative to that alternative—is a question for another day, and not at issue here." *Id.*, Vol. IX at 965.

In view of these caveats, Appellees later propounded Interrogatory No. 15, which required each plaintiff to identify which of the alternatives pled in the TAC was pled on behalf *of that plaintiff. See id.*, Vol. VI at 344. The plaintiffs objected to this interrogatory, arguing among other things that it required them to be complicit in their own deaths, which was "akin to suicide or assisting suicide." *Id.* But the district court found that its consideration of the issues would be materially aided by obtaining plaintiffs' answers to Interrogatory No. 15, and it ordered them to answer it. *See id.*, Vol. IX at 641.

The plaintiffs then filed supplemental responses to Appellees' interrogatories. In their supplemental response to Interrogatory No. 15, most of the plaintiffs designated one or more of the alternative methods specified in the TAC. But Appellants declined to specify an alternative. *See id.* at 913; *see also id.*, Vol. XI at 375, 393-94; *and id.*, Vol. IX at 753, 810.

*The District Court's Summary-Judgment Decision*

Plaintiffs' Eighth Amendment claim requires a prisoner to meet both prongs of what is commonly known as the *Glossip* test. First, he must show that the State's chosen method of execution presents "a substantial risk of severe pain." *Bucklew*, 139 S. Ct. at 1125. Second, he must show that the risk is substantial in comparison to other known and available alternatives. *See id.*

In its summary-judgment decision the district court declined to rule as a matter of law that the plaintiffs' claim failed the test's first prong, and so it set that issue for trial. Turning to *Glossip*'s second prong, it permitted those plaintiffs who had designated one or more alternative methods "propose[d] for use *in his case*," R., Vol. XI at 393 (emphasis added), to survive summary judgment and proceed to trial, while granting summary judgment on Count II against those six plaintiffs, including Appellants, who had "declined to proffer an alternative for carrying out their sentence of death," *id.* at 394.

*Judgment and Post-Judgment Proceedings*

The grant of summary judgment against six of the plaintiffs meant that no claims remained concerning them. After further analysis, the district court granted final judgment against those plaintiffs under Fed. R. Civ. P. 54(b). They appealed from that judgment, but we dismissed their appeals for lack of jurisdiction.

In the meantime, five of the six plaintiffs, including Appellants, filed a Fed. R. Civ. P. 59(e) motion with the district court. Notwithstanding their prior assertion of a religious objection to doing so, four of the plaintiffs attached to their motion affidavits and checklists in a similar format to those used in the other plaintiffs' responses to Interrogatory No. 15. Each of those plaintiffs thus individually elected one or more alternative execution methods. *See* R., Vol. XI at 486-88 (James Coddington); 490-92 (Donald Grant); 494-96 (Julius Jones); 498-500 (Gilbert

Postelle); 502-06 (James Coddington).[6]  Wade Lay also filed a pro se request for reconsideration in which he elected the use of a firing squad as an alternative means of execution in his case.

The district court denied reconsideration, except as to James Coddington, whose Count II claim was permitted to proceed to trial.  It considered the belated designations plaintiffs had filed but denied reconsideration based on what it termed a "change of litigation strategy."  *Id.* at 1094.  For similar reasons, the district court rejected Mr. Lay's reconsideration motion.

*The Motion for Preliminary Injunction*

With their execution dates looming, Appellants filed the current motion for a preliminary injunction with the district court.  The district court held an evidentiary hearing and denied their motion.[7]  Plaintiffs appealed to this court.[8]  We granted a partial stay of execution, but the Supreme Court vacated that stay.  As a result, on October 28, 2021, the State of Oklahoma executed John M. Grant using the

---

[6] James Coddington filed two separate forms with different designations. Plaintiff John M. Grant did not make a designation.

[7] Appellees suggest the district court may have lacked jurisdiction to rule on the motion for preliminary injunction because we had not yet issued our mandate in appeal Nos. 21-6101 and 21-6129 when the district court acted.  But we dismissed those previous appeals for lack of jurisdiction.  Although "[i]ssuance of the mandate formally marks *the end of appellate jurisdiction*," *Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.)*, 195 F.3d 568, 571 (10th Cir. 1999) (emphasis added) (internal quotation marks omitted), we never acquired appellate jurisdiction over the prior appeals because they did not involve a final, appealable order.  Thus, we did not need to issue a mandate to return jurisdiction to the district court.

[8] Mr. Lay is now represented by counsel for Appellants.

three-drug protocol.[9]  Each of the remaining Appellants is scheduled to undergo

execution under the same Oklahoma protocol.

## DISCUSSION

*Standard of Review*

In an earlier decision in this litigation, we explained the standards applicable

to review of a preliminary injunction:

> We review a district court's decision to deny a preliminary injunction under
> a deferential abuse of discretion standard.  Under this standard, we examine
> the district court's legal determinations de novo, and its underlying factual
> findings for clear error.  Thus, we will find an abuse of discretion if the
> district court denied the preliminary injunction on the basis of a clearly
> erroneous factual finding or an error of law.

> A preliminary injunction is an extraordinary and drastic remedy.  A
> plaintiff seeking a preliminary injunction must establish that he is likely to
> succeed on the merits, that he is likely to suffer irreparable harm in the
> absence of preliminary relief, that the balance of equities tips in his favor,
> and that an injunction is in the public interest.

*Warner*, 776 F.3d at 727-28 (citations and internal quotation marks omitted).

---

[9] Appellants ask us to take judicial notice of certain facts concerning John M.
Grant's execution, including vomiting and purported convulsions that allegedly
occurred after he was administered midazolam.  A key source they cite for this fact is
a news article.  We decline to take judicial notice of the article.  Judicial notice of
news articles may be appropriate for proof that a fact is publicly known, but not for
the truth of the article's other assertions.  *See, e.g.*, *Est. of Lockett by & through
Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) (declining to take judicial
notice of a description of an execution in a news article).  To the extent they rely on
other evidence concerning the execution, such as a statement by the Director of
ODOC, we also decline to consider it.  That evidence was not before the district court
and is not part of our review of its findings.

*Likelihood of Success*

We begin by addressing the likelihood of success on the merits, which the Supreme Court has identified as a "critical" factor in our inquiry. *Nken v. Holder*, 566 U.S. 418, 434 (2009).

*Count II:  Eighth Amendment Claim*

The core claim in the TAC is Count II, which raises a direct Eighth Amendment challenge to Oklahoma's lethal injection protocol.  The district court concluded Appellants failed to show a likelihood of success on either prong of the *Glossip* test.  Because we conclude the district court did not abuse its discretion concerning the likelihood of success on *Glossip* prong one, we need not consider its ruling on *Glossip* prong two.

We first address whether Appellants' ability to show a likelihood of success concerning *Glossip* prong one was properly before the district court.  We conclude that it was.  Prior to the preliminary-injunction hearing, Appellees filed a motion in limine seeking to exclude evidence concerning the first prong of the *Glossip* test, arguing that such evidence was irrelevant because the district court had granted summary judgment based on the second prong.  At the preliminary-injunction hearing, the district rejected that argument and denied the motion in limine.  It made it clear at the outset of the hearing that "both prongs of the Glossip test are in play." R., Vol. XIII at 206.  The district court further concluded the parties had understood this, based on their witness and exhibit lists.  *See id.* at 207.

In response to the district court's order to designate witnesses and exhibits to be considered at the preliminary-injunction hearing, Appellants designated a single witness and nine exhibits. *See id.*, Vol. XI at 1155-56; 1249-51. Appellants' sole designated fact witness—and the only witness it called at the hearing—was Spencer Hahn, an assistant federal public defender. They also designated an expert report, but they did not introduce that report or argue its contents at the hearing.[10] For their part, Appellees called an expert witness, Joseph Antognini, M.D., a board-certified anesthesiologist. *See id.*, Vol. XIII at 340-42.

Although the parties had created a robust summary-judgment record concerning the risk of severe pain, Appellants did not ask the district court to rely on that record in making its determination. Instead, they asked the court at the hearing "to take a new look at [their] claims . . . in light of the evidence you'll hear today." *Id.* at 208. For their part, Appellees indicated without objection that Dr. Antognini would address Appellants' failure to prove their case under both prongs of the *Glossip* test. *See id.* at 219. The district court stated it would "give both sides the opportunity to make the fullest record that they care to make . . . within the confines of their witness and exhibit list." *Id.* at 227.

After hearing testimony from both Mr. Hahn and Dr. Antognini, the district court relied on what it characterized as Dr. Antognini's "unrebutted testimony" to conclude Appellants had failed to carry their burden on *Glossip* prong one. *Id.* at

---

[10] Appellants made a single, passing reference to the report during their cross-examination of Dr. Antognini, asking if he was aware that the expert who prepared the report disagreed with Dr. Antognini's opinion.

341. Analyzing the testimony at the hearing, it concluded Appellants had failed to establish that there was "a substantial likelihood that the use of midazolam . . . presents a substantial risk of severe pain that is sure or very likely to cause serious illness and needless suffering." *Id.* at 342.

Given the limited evidence Appellants presented in support of their motion on the issue of *Glossip* prong one, the district court did not abuse its discretion in concluding that they failed to meet their burden on that issue. To succeed on an Eighth Amendment claim, a prisoner must show the state has "crossed the line" by "cruelly superadd[ing] pain to the death sentence." *Bucklew*, 139 S. Ct. at 1124-25. And "[t]o establish that [a risk of exposure to future harm] violates the Eighth Amendment, . . . the conditions presenting the risk must be *sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers." *Warner*, 776 F.3d at 729 (internal quotation marks omitted). "Finally, the Supreme Court has stated that a stay of execution may not be granted on the basis of an Eighth Amendment challenge to a State's lethal injection protocol unless the condemned prisoner establishes that the . . . protocol creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternatives." *Id.* (brackets and internal quotation marks omitted).

Appellants further argue, however, that the district court should have gone beyond the evidence they presented in support of their motion by considering *sua sponte* its denial of summary judgment on the *Glossip* prong-one issue and the

evidence underlying that denial.  But they cite no authority requiring the district court to undertake such an inquiry solely on its own initiative, and we have found none.

Moreover, even if the district court had considered the summary-judgment evidence or its prior ruling, that would not necessarily equate to a showing of likelihood of success on the merits.  *See Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) ("The proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." (brackets and internal quotation marks omitted)).  Appellants have failed to persuade us that they met their burden to show a likelihood of success on the merits of the *Glossip* prong-one issue, and hence on Count II.[11]

*Counts VI and VII:  Ex Post Facto and Due Process Claims*

Count VI alleges that substituting midazolam for a short-acting barbiturate in Oklahoma's lethal injection protocol amounts to an *ex post facto* change in punishment in violation of the U.S. and Oklahoma Constitutions.  Count VII alleges that Appellants have a protected life and liberty interest in being executed with a short-acting barbiturate, as specified in the statute in effect when they were sentenced, and that Oklahoma's failure to use that drug will violate their Fourteenth Amendment due process rights.  But on appeal, Appellants argue that "executing [them] without using an ultrashort-acting barbiturate would . . . violate [their] due

---

[11] Chief Judge Tymkovich would also affirm the denial of a preliminary injunction on *Glossip* prong two.  In his view, the district court did not abuse its discretion in requiring Appellants to proffer an alternative method of execution in a timely manner.  Consequently, Chief Judge Tymkovich concludes Appellants failed to demonstrate they are likely to succeed on the second *Glossip* prong.

process rights under the *Oklahoma* Constitution," not the Fourteenth Amendment.
Aplt. Opening Br. at 34 (emphasis added); Aplt. Reply Br. at 25-26 (same).

The district court did not abuse its discretion in concluding that Appellants are
not likely to succeed on their *ex post facto* and related due process claims.  Relevant
here, the *ex post facto* clause of the United States Constitution forbids enactment of a
"law that *changes the punishment,* and inflicts a *greater punishment,* than the law
annexed to the crime, when committed." *Cal. Dep't of Corr. v. Morales*, 514 U.S.
499, 516 (1995) (internal quotation marks omitted).  It is well established that a
procedural change in execution protocol does not violate the *ex post facto* clause
because the penalty—death—remains the same.

The seminal case on this issue is *Malloy v. South Carolina*, 237 U.S. 180
(1915).  In *Malloy*, the Supreme Court found that a law that changed the execution
method from hanging to electrocution "did not change the penalty—death—for
murder, but only the mode of producing this [penalty] . . . . The punishment was not
increased . . . ." *Id.* at 185.  The Court reasoned that "[t]he constitutional inhibition
of *ex post facto* laws was [not] intended . . . to obstruct mere alteration in conditions
deemed necessary for the orderly infliction of humane punishment." *Id.* at 183.  The
Court later clarified, in a different context, that "[e]ven though it may work to the
disadvantage of a defendant, a procedural change is not *ex post facto*." *Dobbert v.
Florida*, 432 U.S. 282, 293 (1977).

Other courts have applied similar reasoning. *See, e.g.*, *Zink v. Lombardi*, 783
F.3d 1089, 1108 (8th Cir. 2015) (holding that prisoners failed to state an *ex post facto*

claim based on a change to the execution protocol because "only the mode of producing death has changed," not the punishment of death (internal quotation marks omitted)); *Poland v. Stewart*, 117 F.3d 1094, 1105 (9th Cir. 1997) (finding no violation of the *ex post facto* clause when Arizona switched the execution method to lethal injection and reasoning that the change "does not make the sentence more burdensome" because "the sentence was death, and that sentence remains in place"); *United States v. Chandler*, 996 F.2d 1073, 1096 (11th Cir. 1993) (finding that the *ex post facto* clause "does not prohibit a law that changes a statute's procedure, but does not affect matters of substance" or alter a death sentence); *United States v. Council*, No. 4:17-cr-00866-RBH, 2021 WL 4137537, at *6 (D.S.C. Sept. 10, 2021) (applying *Malloy* to reject prisoner's *ex post facto* challenge to the State's procedural switch to electrocution, which prisoner deemed to be "a significantly more inhumane method" of execution (internal quotation marks omitted)); *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145(TSC), 2021 WL 127602, at *3 (D.D.C. Jan. 13, 2021) (applying "precedent squarely addressing the question" to a preliminary-injunction motion and determining that an *ex post facto* claim was unlikely to succeed as a matter of law because "[t]he substitution of the drugs used in lethal injection does not alter [the prisoner's] sentence of death—it changes only the way his sentence will be implemented").

Appellants ask this court to consider only whether (1) the law is retrospective; and (2) the law disadvantages the offender by creating a significant risk of increased punishment.  Aplt. Opening Br. at 31 (citing *Henderson v. Scott*, 260 F.3d 1213, 1215

(10th Cir. 2001)).  In *Henderson*, this court considered whether an Oklahoma statute that increased the time between the denial of parole and reconsideration for parole constituted increased punishment and thus violated the *ex post facto* clause.  But *Malloy* and its progeny make clear that a change in execution protocol does not constitute increased punishment, so *Henderson* has no bearing on this case.  However, to the extent *Henderson* states that the *ex post facto* clause "was never intended to result in judicial micromanagement of . . . legislative adjustments" to sentences, it actually favors Appellees.  *Id.* at 1215 (internal quotation marks omitted).

The above reasoning applies equally to Appellants' *ex post facto* claim under the Oklahoma Constitution, which provides that "[t]he repeal of a statute shall not . . .  affect any accrued right, or penalty incurred."  Okla. Const. art. V, § 54.  When Appellants were sentenced to death, "[t]he punishment of death [had to be] inflicted by continuous, intravenous administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent."  Okla. Stat. Ann. tit. 22, § 1014(A) (1977).  But the law changed in 2011, and the legislature replaced the barbiturate requirement with broader authorization to execute prisoners with "a lethal quantity of a drug or drugs."  *Id.* (2011).  Under both versions of the law, the penalty incurred is death.  Therefore, the repeal of the earlier statute did not affect the penalty.

As for the related due process claim, "[a] due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally

cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).  Appellants do not advance any argument on appeal to support the allegation in the TAC that they have a protected liberty interest under the Fourteenth Amendment in being executed via a short-acting barbiturate.  Instead, as discussed above, they have shifted their theory to a due process claim under the Oklahoma Constitution, stating:  "Lethal injection by ultrashort-acting barbiturate, as specified in Plaintiffs' death warrants, is an 'accrued right' . . . ."  Aplt. Opening Br. at 34.  But they did not assert a due process claim under the Oklahoma Constitution in their TAC.

### Count VIII:  Religious Liberty Claim

Appellants argue that the requirement that they specify an alternative method to be used in their executions makes them complicit in their own "suicide," thus violating their sincerely held religious beliefs in violation of the First Amendment. Aplt. Opening Br. at 26.  They also assert this requirement violates the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), which allows prisoners to seek religious accommodations under the standard set forth in the Religious Freedom Restoration Act of 1993 (RFRA).

The district court did not abuse its discretion in concluding that Appellants are unlikely to succeed on the merits of this claim.  As pled in the TAC, this claim contests the requirement that the plaintiffs must plead an alternative method for their execution, R., Vol. I at 175-79—a requirement that originated in *Bucklew*.  But Appellants cite cases that stand for the proposition that the government cannot

18

"*pass[] laws* that prefer one or more religions over others" or "that demonstrate a hostility toward religion."  Aplt. Opening Br. at 23 (emphasis added).  Appellants also quote the First Amendment's command that "*Congress shall make no law* respecting an establishment of religion" or "prohibiting the free exercise" of religion.  *Id.* (emphasis added).  They then argue that the alternative-method pleading requirement must pass strict-scrutiny review because it is not neutral and of general applicability.

Appellants have not shown that the body of law upon which they rely applies here.  But even assuming it does, the requirement being challenged applies equally to all plaintiffs seeking relief under the Eighth Amendment.  *See Bucklew*, 139 S. Ct. at 1125 ("[W]here . . . the question in dispute is whether the State's chosen method of execution cruelly superadds pain to the death sentence, a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason.  *Glossip* left no doubt that this standard governs all Eighth Amendment method-of-execution claims." (citations and internal quotation marks omitted)).  This equal application defeats Appellants' argument that it is not a neutral requirement of general applicability, and they have not otherwise shown how strict scrutiny can apply here.  Further, there is simply no indication that the Supreme Court (or the district court, relying on its interpretation of Supreme Court authority) imposed the requirement of pleading an alternative execution method out of an anti-religious animus.

19

Nor are we persuaded by Appellants' argument that the pleading requirement substantially burdens their religious rights under RLUIPA because if they "do not comply with the alternative method requirement, then they will pay the very heavy price of their lives."  Aplt. Opening Br. at 26 (internal quotation marks omitted). Appellants have already been sentenced to death, have exhausted their state-court and habeas remedies, and are scheduled to be executed.  The purpose of this Section 1983 litigation is to decide whether the method used to execute them complies with the Constitution, *not* to prevent their executions altogether.  It is true that a successful appeal would delay their executions until after the scheduled trial in district court. And if the relief sought at that trial is granted, there may be further delay while the State adopts a different method of execution.  But Appellants are not paying for their religious beliefs with their lives; at most they are forfeiting a delay in execution of a sentence that (separate from questions about methods) is constitutional in their case.

Additionally, Appellants have not consistently separated their religious objections from *non*-religious moral or ethical ones.  In declining to answer the interrogatory and elsewhere in this litigation, they have lumped all three categories together.  *See, e.g.*, *id.* at 4, 7, 8, 9, 21; R., Vol. X at 603, 651 (interrogatory responses); *id.*, Vol. XI at 1137 (motion for preliminary injunction).  But if the objection was only on moral or ethical grounds (which may have been the case for at least some of Appellants, given their use of the conjunction "and/or" in their objections), they did not have a *religion*-based objection that would give rise to a First Amendment claim.

Finally, to the extent Appellants are challenging the way in which the district court applied the requirement from *Bucklew*, that allegation of error ties into Count II. The district court's order that Appellants should respond to Interrogatory No. 15 came after the filing of the TAC and is not part of Count VIII.

*Count IX: Human Experimentation Claim*

Count IX of the TAC asserts that Oklahoma's lethal injection protocol constitutes unconstitutional human experimentation—violating Appellants' Eighth Amendment right to be free from cruel and unusual punishment and their Fourteenth Amendment substantive due process right to liberty.

The district court did not abuse its discretion in concluding that Appellants are unlikely to succeed on the merits of this claim. They have not identified a single case holding that an execution method constitutes unconstitutional human experimentation, nor could we find any. Instead, they selectively quote from cases in which the United States District Court for the Southern District of Ohio called Ohio's revised two-drug execution protocol (which includes midazolam) "'an experiment in lethal injection processes.'" *See* Aplt. Opening Br. at 28 (quoting *In re Ohio Execution Protocol Litig.*, 994 F. Supp. 2d 906, 913 (S.D. Ohio 2014); *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, 2017 WL 2964901, at *17 (S.D. Ohio July 12, 2017), *aff'd*, 709 F. App'x 779 (6th Cir. 2017)). And they cite the opinion of their medical-ethics expert, Dr. Joseph Fins, that "Oklahoma has no 'clinical experience' using 500 mg of midazolam in executions." *Id.* at 29.

The Ohio cases do not support Appellants' position.  The court later backtracked on its use of the word "experiment," distinguishing the use of drugs for executions from impermissible medical experiments.  *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, 2017 WL 2964901, at *17.  The court also stated that "[n]ot every use of a new method of execution can properly be called an 'experiment' within the meaning of the prohibition on experimenting on non-consenting humans."  *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, 2018 WL 1173038, at *19 (S.D. Ohio Mar. 6, 2018).  States have the "free[dom] to innovate and to evolve [their] procedures for administering capital punishment," *In re Ohio Execution Protocol Litig.*, 994 F. Supp. 2d at 913.

Equally important, the court held that "changing the protocol in the way that Ohio has done does not amount to a violation of Plaintiff's substantive due process rights."  *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, 2017 WL 2964901, at *17; *see also In re Ohio Execution Protocol Litig.*, 994 F. Supp. 2d at 913 (finding that the evidence did not show "a substantial risk that [the inmate] will experience severe pain" and concluding that "the degree of risk that Ohio's protocol presents is acceptable within the contours of the Constitution").  The court thus made clear that even if a protocol *is* experimental, it is not necessarily unconstitutional.

Moreover, we have already affirmed the district court's ruling *in this case* that Appellants "failed to establish a significant possibility of success on the merits" of the equivalent claim in the original complaint.  *Warner*, 776 F.3d at 736 ("reject[ing] plaintiffs' various challenges to the district court's analysis" of the

22

human-experimentation claim).  In *Warner*, we reviewed the denial of a previous motion for a preliminary injunction relating to an earlier version of Oklahoma's lethal injection protocol.  One of the bases for the district court's ruling was that "execution with midazolam as part of a three-drug-protocol has been accomplished nationwide 12 times," so it "is not a new method, at least in the sense required . . . to regard its use as human experimentation."  *Id.* at 731 (brackets and internal quotation marks omitted).  That number has since grown.  *See* R., Vol. XI at 1211-12 ("[T]he parties agreed that states have used the 500 mg midazolam three-drug protocol over 36 times.").

Likewise, as the district court correctly noted, the human-experimentation claim is "set back somewhat by the Supreme Court's observation, six years ago and *in this case*, that 'numerous courts have concluded that the use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride.'"  *Id.* at 614 (quoting *Glossip v. Gross*, 576 U.S. 863, 881 (2015)).  The fact that many courts—including this court and the Supreme Court—have already upheld the use of midazolam weighs against characterizing it as experimental.

Finally, we are not persuaded by Appellants' contention that the district court's reference to their upcoming executions being part of the "track record" for the use of midazolam, *id.*, Vol. XI at 390-91 n.13, is "powerful evidence that Appellants' upcoming executions are, in fact, being conducted as human experimentation."  Aplt. Reply Br. at 22; *see also* Aplt. Opening Br. at 4 ("[T]he district court encouraged

23

Appellants' executions prior to the February 2022 trial, and suggested that [they] could be used as human guinea pigs whose executions would be test cases assessing the State's ability to conduct constitutional executions."). But this stray comment, which was unnecessary and ill-advised, was not an "invit[ation] . . . to conduct lethal injection experimentation and present the results of that experimentation at a trial on the constitutionality of the lethal injection procedures." Aplt. Opening Br. at 30. The district court had already explained that midazolam had been used in executions for years, and it was advising "the parties . . . to be prepared, at trial, to present evidence as to" the drug's "actual track record." *See* R., Vol. XI at 390 n.13.

Because Appellants are not likely to succeed on their Eighth Amendment human-experimentation claim, they also are not likely to succeed on the corresponding due process claim. The claims share the same underpinnings.

*Remaining Factors*

Because Appellants have failed to demonstrate that the district court abused its discretion in its rulings concerning the likelihood of success on their claims, we find it unnecessary to address the remaining requirements for a preliminary injunction.

## CONCLUSION

The district court did not abuse its discretion by concluding Appellants were unlikely to prevail on the merits of their claims.  We therefore affirm its order denying a preliminary injunction.[12]

Entered for the Court

Per Curiam

---

[12] In an abundance of caution, this order and judgment was circulated to all active judges of this court prior to issuance.  No judge requested a poll on the questions presented by Appellants.  Thus, no *en banc* consideration is warranted or available.

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

November 12, 2021


Mr. Dale A. Baich
Mr. Michael W. Lieberman
Ms. Jennifer M. Moreno
Office of the Federal Public Defender for the District of Arizona
850 West Adams Street, Suite 201
Phoenix, AZ 85007

Mr. Harry P. Cohen
Mr. Michael K. Robles
Mr. James Stronski
Crowell & Moring
590 Madison Avenue
New York, NY 10022

Mr. Gary Peterson
Two Leadership Square
211 North Robinson Avenue
Suite 450 South
Oklahoma City, OK 73102-0000

Ms. Emma Victoria Rolls
Federal Public Defender's Office
Capital Habeas Unit
215 Dean A. McGee Avenue, Suite 707
Oklahoma City, OK 73102

Mr. Adam Singer
Crowell & Moring
1001 Pennsylvania Avenue, NW
Washington, DC 20004

**RE:     21-6139, Grant, et al v. Crow, et al**
         Dist/Ag docket: 5:14-CV-00665-F


Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:     David B. Autry
        Bryan Cleveland
        Jennifer L. Crabb
        Charles Andrew Dickson III
        Andy N. Ferguson
        Mithun Mansinghani
        Zachary Paul West
        Randall John Yates

CMW/gh