## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

RICHARD GLOSSIP, *et al.*,          )
                                    )
            Plaintiffs,             )
                                    )
      vs.                           )      Case No. CIV-14-665-F
                                    )
RANDY CHANDLER, *et al.*,           )
                                    )
            Defendants.             )

## SUPPLEMENTAL MOTION FOR PRELIMINARY
## INJUNCTION ON BEHALF OF RELIGIOUS OBJECTOR
## PLAINTIFFS DONALD GRANT AND GILBERT POSTELLE

Harry P. Cohen (admitted *pro hac vice*)
Michael K. Robles (admitted *pro hac vice*)
James K. Stronski (admitted *pro hac vice*)
CROWELL & MORING LLP
590 Madison Avenue
New York, NY 10022

Emma V. Rolls, OBA # 18820
Office of the Federal Defender
for the Western District of Oklahoma
215 Dean A. McGee Ave., Suite 707
Oklahoma City, OK 73102

Jon M. Sands
Federal Public Defender District of Arizona
Dale A. Baich (OH Bar No. 0025070)
Jennifer M. Moreno (Bar No. CA 244967)
850 West Adams Street, Suite 201
Phoenix, Arizona 85007

COUNSEL FOR DONALD GRANT AND GILBERT POSTELLE

December 17, 2021

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................... 1

II. THE SUPPLEMENTAL EVIDENCE........................................................ 4

    A. Evidence of John Grant's Pain and Suffering....................................... 4

    B. Bigler Stouffer's Execution and Midazolam's Variability ................... 5

    C. Declaration of Dr. James Williams........................................................ 7

III. CONCLUSION ...................................................................................... 8

CERTIFICATE OF SERVICE ...................................................................... 9

## I.      INTRODUCTION

Religious Objector Plaintiffs Donald Grant[1] and Gilbert Postelle[2] supplement their pending motion for preliminary injunction, Doc. 551, docketed on November 18, 2021, with two declarations and this supplemental motion.

First, Dr. Michael Weinberger, a board-certified anesthesiologist and a board-certified pain medicine specialist, submits a declaration ("Weinberger December Dec.") to supplement his declaration previously submitted on November 18, 2021. *See* Att. 1, Weinberger December Dec., attached hereto. *See also* Doc. 551-3. This supplemental declaration explains that a limitation on the effectiveness of midazolam is that its sedative effect varies depending on genetic and other variability present among patients. That is, not only is midazolam not appropriate and not approved for use alone to induce and maintain anesthesia, but its effectiveness as a sedative is quite variable depending on the person. This variability is observed in the comparison of the John Grant and Bigler Stouffer executions in which the same drugs in the same amounts were administered under the same Protocol. The only apparent difference was the subjects and their genetic and individual differences. This variability evidences that midazolam does not reliably induce and maintain anesthesia, as it is used in the Protocol, as the sole drug intended to maintain anesthesia, even in the large dosages used.

Second, Dr. James Williams, an emergency medicine specialist who is board-certified by the American Board of Family Medicine and in Advanced Trauma Life

---

[1] Execution scheduled January 27, 2022.
[2] Execution scheduled February 17, 2022.

Support by the American College of Surgeons, submits a declaration ("Williams Dec."). *See* Att. 2, Williams Dec., attached hereto.  Dr. Williams has been medical director of numerous emergency departments and has more than 40,000 hours of emergency room and ICU experience, about 25% of which involved direct trauma care.  Dr. Williams has also served as a Police Medical Officer and as the SWAT Team Physician for a Sheriff's Department as set forth in his declaration and attached expert report.  *See* Att. 2, Williams Dec.  Dr. Williams will testify based on his medical experience and personal experience that an execution by firing squad will reliably cause a death that will be quick and virtually painless.  He also will testify that given the simplicity and tried-and-true experience with firing squads, the risk of a "botched" execution is substantially reduced as compared with the more complicated method of lethal injection.  Finally, he will testify that execution by firing squad is readily available and, as examples, he will use existing protocols from the State of Utah and the U.S. Army available for adoption.

At the January 10, 2021 preliminary injunction hearing, Religious Objector Plaintiffs Donald Grant and Gilbert Postelle will present the testimony of eye-witnesses Julie Gardner and Meghan LeFrancois; the expert testimony of Dr. Weinberger, an anesthesiologist and pain specialist; Dr. Cohen, a pathologist who examined John Grant's body; and Dr. Williams, an emergency medicine specialist with considerable experience with gunshot wounds.  This evidence will establish a likelihood of success on the merits that the Protocol and its sole reliance on midazolam to induce and maintain anesthesia subject prisoners to a substantial risk of severe pain and suffering. This substantial risk

here is further heightened by the cursory consciousness check done under this Protocol and noted in the John Grant execution.

This supplemental motion incorporates the motion filed in November and does not repeat the legal arguments and authority cited therein. *See* Doc. 551. Instead, it focuses on the supplemental evidence. This supplemental evidence, along with the evidence already of record, will nonetheless support a finding by this Court of a likelihood of success on prong one of the *Glossip-Baze* test. Prong two of that analysis also will be met by the proffered testimony and evidence that the firing squad involves a quick death and little to no pain. This evidence on the firing squad, which is authorized under Oklahoma law, is unrebutted in the record of this case to date. Moreover, the Tenth Circuit found this Court's prior ruling on the preliminary injunction was an abuse of discretion for not finding prong two met. The Tenth Circuit's subsequent affirmance of the preliminary injunction denial was based solely on prong one, and so, left undisturbed the finding that not finding prong two met would be an abuse of discretion.[3]

The preliminary injunction sought here at this time is one strictly limited in time to prevent executions proceeding on a schedule that puts them either about two or four weeks

---

[3] Defendants, on a rolling basis, have made a limited production of documents from the Stouffer and Grant executions, but critical documents and information, including from the Medical Examiner, remain outstanding. Subsequent productions, whether the result of a motion or an agreement reached by the parties, may result in additional arguments at the January 10, 2022 hearing and/or at the February 2022 trial.

before the trial in which this Court will determine whether the Protocol violates the Eighth Amendment.[4]

## II.   THE SUPPLEMENTAL EVIDENCE

### A.   Evidence of John Grant's Pain and Suffering

Julie Gardner, an investigator with the Capital Habeas Unit of the Office of the Federal Public Defender in Oklahoma City, the office which represented John Marion Grant, witnessed Mr. Grant's October 28, 2021 execution.  *See* Declaration of Julie Gardner ("Gardner Dec.") at ¶ 1, Doc. 551-1.  Meghan LeFrancois, an Assistant Federal Public Defender with the same office also witnessed the execution.  *See* Declaration of Meghan LeFrancois ("LeFrancois Dec.") at ¶ 1, Doc. 551-2. These declarations, submitted in support of the November motion, as explained therein, provide ample evidence of severe pain and suffering by John Grant.  *See* Doc. 551.

Dr. Weinberger and Dr. Cohen will testify on the subject of John Grant's execution based on these observations and on Dr. Cohen's examination of John Grant's body post mortem. This testimony will support the conclusion that the Protocol and its use of midazolam as a sole sedative to induce and maintain anesthesia, coupled with a cursory consciousness check, subjected John Grant to severe pain and suffering over an

---

[4] Notably, in view of this timing, to avoid unnecessary duplication of effort by the parties, and to preserve judicial resources, Plaintiffs suggested that the parties stipulate to consolidate the trial on the merits with the preliminary injunction hearing under Fed. R. Civ. P. 65(a)(2), as long as a short stay to allow such consolidation could be stipulated. Defendants declined this proposal.

extended period of time.  Those explanations and arguments about the harm John Grant faced during his execution are incorporated herein and not repeated.

**B.      Bigler Stouffer's Execution and Midazolam's Variability**

In contrast to John Grant's execution, the observations reported in the media report referenced in and attached to the Weinberger December Dec. demonstrate a well-known characteristic of midazolam – the variability of its sedative effect – which makes it inappropriate as the sole drug to induce and maintain anesthesia in the Protocol.  *See* Att. 1, Weinberger December Dec. at ¶ 6.  This limitation on the usefulness of midazolam is the subject of scientific studies and is understood to correlate to certain genetic differences, as well as more general health and physical differences, among patients.  *See* Att. 1, Weinberger December Dec. at ¶ 7.

What was observed in these two recent executions is consistent with this variability seen in midazolam's sedative effect. In the case of Bigler Stouffer, a man of 79 years, there were no observed movements reported in the cited media report to suggest stress, pain, and suffering.  In the case of John Grant, a younger man, he appeared to be subject to substantial stress, pain, and suffering for an extended period of the execution. *See* Att. 1, Weinberger December Dec. at ¶ 9.  In addition to the age differences, there may be unknown health, genetic, disease, and drug interference differences that would be understood to explain such observed variability of the effect of a dose of midazolam in these executions.  This observation of variability at this dose level is also an observation consistent with the well understood ceiling effect for midazolam and supports the

5

proposition that this ceiling, based on these observations, is well below the levels of drug used in the Protocol. *See* Att. 1, Weinberger December Dec. at ¶ 9.

This variability is illustrated by the Grant and Stouffer executions.  In Mr. Grant's execution, outward signs of pain and suffering were observed after the administration of midazolam, but before the administration of vecuronium bromide, the second drug in Oklahoma's execution protocol.  In contrast, during Mr. Stouffer's execution, there were no reported outward signs of suffering after the administration of midazolam.  Signs of distress, when a patient is not adequately anesthetized, normally occur with the introduction of a noxious stimuli.  In the context of the Oklahoma lethal injection protocol, the noxious stimuli are the administration of the vecuronium bromide and potassium chloride, the second and third drugs in the execution protocol.  Dr. Weinberger will testify that observing no outward signs of pain or suffering during Mr. Stouffer's execution is unsurprising because once the vecuronium bromide is administered, the prisoner cannot manifest signs of distress. *See* Att. 1, Weinberger December Dec. at ¶ 10.

Moreover, these differences in the sedative effect of midazolam on Mr. Stouffer and Mr. Grant can be explained only by differences in each prisoner and the different effect a 500 mg dose of midazolam has on each prisoner.  Notably, both executions apparently involved administration of the same drugs, in the same amounts, using the same method of pushing them, and presumably over the same or similar timeframe.  The executions were purportedly carried out using, and in compliance with, the same Protocol. The only apparent difference in these two executions was the subject of the execution.

Dr. Weinberger will testify about scientific papers that characterize the variance in the effect of midazolam in patients and that these differences have many explanations. These explanations or causes of variance include age, health status, the effect of drug interactions or disease, and substantial variability in the type of the five subunits (coded by up to 19 different genes) that, in turn, make up the key central nervous system receptor – the GABA(A) receptor – acted upon specifically by benzodiazepines like midazolam to achieve sedation. *See* Att. 1, Weinberger December Dec. at ¶ 11.

**C.    Declaration of Dr. James Williams**

Dr. James Williams is an emergency room physician with extensive professional experience with firearms and the treatment of gunshot victims. *See* Att. 2, Williams Dec. at ¶ 2. Dr. Williams will testify that an execution by firing squad results in a quick death and is virtually painless due to the quantity and location of nerves in the cardiac bundle area and the rapidity in which loss of consciousness and death results. These opinions are based on extensive trauma care and emergency medical experience, personal experience as a gunshot victim, a review of medical literature, a review of literature on military experience with gunshot wounds to the cardiac bundle, and a review of literature on firing squad executions targeting the cardiac bundle. *See* Att. 2, Williams Dec. at ¶ 3.

As compared to the experience of multiple "botched" executions under the Protocol relying on midazolam as a sole sedative to induce and maintain anesthesia, coupled with a cursory consciousness check, the firing squad is a simple, tested and true method to execute prisoners in a quick and virtually painless manner. As Dr. Williams will explain: (i) execution by firing squad will reliably produce a quick death and be virtually painless

7

if the conventional cardiac bundle target is used; (ii) execution by firing squad substantially reduces the likelihood of a botched execution because of its simplicity and because the means and the expertise it requires for implementation is widely available in the law enforcement and military community; and (iii) execution by firing squad is readily available, as it requires firearms and trained riflemen, who are widely available in law enforcement and the military, and an appropriate, well-established protocol. There are tried-and-true protocols to conduct executions by firing squad, including as examples, protocols of State of Utah and the U.S. Army. *See* Att. 2, Williams Dec. at ¶ 4.

## III.   CONCLUSION

Based on the initial papers filed in support of this motion in November, Doc. 551, the supplemental filings now in December, and the testimony and the evidence that will be introduced at the January 10, 2022 hearing, Movants respectfully request that this Court grant a limited and temporally short preliminary injunction to stay the two remaining Religious Objector Plaintiff executions until final judgment is entered as a result of the February 28, 2022 trial.

Respectfully submitted this 17th day of December, 2021.

*s/ Emma V. Rolls*
Emma V. Rolls, OBA # 18820
Office of the Federal Public Defender
215 Dean A. McGee Ave., Suite 707
Oklahoma City, OK 73102
Telephone: (405) 609-5975
Emma_Rolls@fd.org

Harry P. Cohen (admitted *pro hac vice*)
Michael K. Robles (admitted *pro hac vice*)
James K. Stronski (admitted *pro hac vice*)
CROWELL & MORING LLP
590 Madison Avenue
New York, NY 10022
Telephone: (212) 223-4000
hcohen@crowell.com
mrobles@crowell.com
jstronski@crowell.com

Jon M. Sands
Federal Public Defender District of Arizona
Dale A. Baich (OH Bar No. 0025070)
Jennifer M. Moreno (Bar No. CA 244967)
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
Telephone: (602) 382-2816
Facsimile: (602) 889-3960
dale_baich@fd.org
jennifer_moreno@fd.org

COUNSEL FOR DONALD GRANT
AND GILBERT POSTELLE

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of December, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to all counsel of record who are registered participants of the Electronic Case Filing System.

*s/ Emma V. Rolls*