### Declaration of Michael Weinberger

I, Michael Weinberger, M.D., declare under penalty of perjury the following to be true and accurate to the best of my information and belief:

1.     I have multiple board certifications by the American Board of Anesthesiology.  Specifically, I am board-certified in anesthesiology, board-certified in pain medicine and board-certified in hospice and palliative medicine by the American Board of Anesthesiology.   I am also board-certified by the American Board of Internal Medicine. I am currently an associate professor of anesthesiology at Columbia University Medical Center, where I also serve as division chief of pain medicine and director of the Pain Management Center, and I am the former program director for the pain medicine fellowship.  I have been on the faculty at Columbia University Medical Center since 2001.

2.     I submitted a declaration in this case that was signed on November 17, 2021, and submitted in this case on November 18, 2021 ("November Declaration."). This declaration supplements the November Declaration, to which I attached my Curriculum Vitae, expert report in this case, and the Oklahoma Department of Corrections 2020, Execution Protocol ("Protocol"). I attach to this declaration a December 9, 2021, article from the Oklahoman, a newspaper reporting on the December 8, 2021, execution of Bigler Stouffer (Exhibit A).

1

3.      The attached article makes a few statements relevant to opinions on which I intend to testify at the January 10, 2021, preliminary-injunction hearing. Specifically, it reports that "Oklahoma executed inmate Bigler Jobe 'Bud' Stouffer II Thursday without the issues that caused the last three lethal injections to be described as botched."  Moreover, it quoted a media witness, Sean Murphy of The Associated Press, as saying "No vomiting, no erratic movements or anything like that. Just, you could see his chest moving as he appeared to breathe. That's about it." It also reported that Mr. Stouffer was 79 years old and "the oldest inmate in Oklahoma history to be executed."

4.      In the November Declaration, I explained that I disagree with the opinions provided by Defendants' medical doctors that midazolam is suitable for the way it is used in the Protocol; I also disagree that there is any sound scientific basis for their opinions to that effect.  Moreover, I stated that midazolam is not used clinically for this purpose or anything similar to this purpose because it should not be used—and indeed, is not used—as a sole drug to induce and maintain anesthesia.   Hoffman-La Roche, Inc., the originally manufacturer of midazolam under the brand name Versed®, apparently never sought nor received an FDA approved indication for single therapy use of midazolam to induce and maintain anesthesia despite the obvious financial motivation presented by that market if it were approvable and suitable for such use.

**Attachment 1 - Weinberger December Dec.**

5.      Based on my opinions I have set forth in my expert report and in my deposition in this case, I opined in the November Declaration that the eyewitness reports of the execution of John Grant supported my conclusion that John Grant faced – after an apparently inadequate consciousness check and the use of midazolam as the sole drug used to induce and maintain anesthesia – a substantial risk of severe pain and suffering from the drugs used in the Protocol.

6.      The observations reported in the attached media report on the execution of a 79-year old prisoner, Bigler Stouffer, when compared to the observations that I referenced and relied upon in the November Declaration on the execution of John Grant, demonstrate a well-known characteristic of midazolam that makes it inappropriate as the sole drug to induce and maintain anesthesia in the Protocol. Midazolam used as a sole drug has substantial variability due to individual patient characteristics.  This is a problem in addition to and separate from the fact that midazolam has a ceiling effect.

7.      This limitation on the usefulness of midazolam is the subject of scientific studies and is understood to correlate to certain genetic differences, as well as more general health and physical differences among patients. These studies are referenced in the expert report attached to my November Declaration at pages 43 through 48.

**Attachment 1 - Weinberger December Dec.**

8.     What was observed in these two recent executions is consistent with the well-understood variability of effect midazolam can have. Notably, both executions apparently involved administration of the same drugs, in the same amounts, using the same method of pushing them and presumably over the same or a similar timeframe.  The executions were purportedly carried out using, and in compliance with, the same Protocol.  Moreover, I have been informed that there is no report of any change or variance in the Protocol in either of these two executions. In neither execution, for example, is there a report that the backup, second 500 mg dose of midazolam was administered.  I also have been informed that there is no report from either execution of a failure in a line or IV site or other problem that might explain any variance or change in the amount of drug actually administered.  The only difference of which I am aware in these two executions was the subject of the execution.

9.     In the case of Bigler Stouffer, a man of 79 years, there were no observed movements reported in the cited media report to suggest stress, pain and suffering. In case of the John Grant, a younger man, he appeared to be subject to substantial stress, pain and suffering, as discussed in my November Declaration.  In addition to the known age differences, there may be unknown health, genetic, disease and drug interference differences that would be understood to explain such observed variability of the effect of a dose of midazolam in these executions.  This

4

observation of variability at this level is also an observation consistent with the well understood ceiling effect for midazolam that I have discussed in my expert report and the opinion that this ceiling, based on these observations, is well below the levels of drug used in the Protocol.

10.    This variability is illustrated by the Grant and Stouffer executions.  In Mr. Grant's execution, outward signs of pain and suffering were observed after the administration of midazolam, but before the administration of vecuronium bromide, the second drug in Oklahoma's execution protocol.  In contrast, during Mr. Stouffer's execution, there were no reported outward signs of suffering after the administration of midazolam.  Signs of distress, when a patient is not adequately anesthetized, normally occur with the introduction of a noxious stimuli. In the context of the Oklahoma lethal injection protocol, the noxious stimuli are the administration of the vecuronium bromide and potassium chloride, the second and third drugs in the execution protocol.  That no signs of pain or suffering were observed during Mr. Stouffer's execution is unsurprising because once the vecuronium bromide is administered, the prisoner cannot manifest signs of distress.

11.    My expert report explains in detail the scientific work that has characterized the variance in the effect of midazolam in patients and that these differences have many explanations. These explanations or causes of variance

5

**Attachment 1 - Weinberger December Dec.**

include age, health status, the effect of drug interactions or disease, and substantial

variability in the type of the five subunits (coded by up to different 19 genes) that

in turn make up the key central nervous system receptor – the GABA(A) receptor –

acted upon specifically by benzodiazepines like midazolam to achieve sedation.

(*See* Expert Report Attached to November Declaration as Ex. B at pages 43-48).

12.     The observations of the executions of John Grant and Bigler Stouffer

are consistent with and support the following opinions as set forth in detail in my

expert report and my deposition in this case, specifically that:

    i.   midazolam cannot reliably be used alone to induce general anesthesia as required by this Protocol,

    ii.   midazolam is not approved and not used to maintain general anesthesia as required by this Protocol,

    iii.   midazolam has no analgesic, or pain-relieving properties,

    iv.   midazolam is associated with an observed ceiling effect, which is consistent with the mechanism of action of midazolam that suggests that midazolam's effects do not increase above a certain dose—a dose that is far below that called for in the Protocol; and

    v.   midazolam demonstrates wide dose response variability, which requires individualized dosing and the use of a multi-drug regimen to reliably induce and maintain anesthesia.  For all these reasons, midazolam is not sufficient alone to induce and maintain a patient in an insensate or anesthetic state in the presence of painful or noxious stimuli caused by the drugs in the Protocol.

**Attachment 1 - Weinberger December Dec.**

Michael Weinberger, M.D.

12/16/2021
Date

7

# THE OKLAHOMAN 🇺🇸

---

**NEWS**

# Bigler Stouffer executed in Oklahoma without problems of previous lethal injections

**Nolan Clay** and **Jessie Christopher Smith** Oklahoman
Published 10:18 a.m. CT Dec. 9, 2021 | **Updated 4:44 p.m. CT Dec. 9, 2021**

McALESTER — Oklahoma executed inmate Bigler Jobe "Bud" Stouffer II Thursday without the issues that caused the last three lethal injections to be described as botched.

The convicted murderer was pronounced dead at 10:16 a.m. at the Oklahoma State Penitentiary. It was the state's second execution in a month and a half after the practice was halted for more than six years.

"No vomiting, no erratic movements or anything like that. Just, you could see his chest moving as he appeared to breathe. That's about it," said one media witness, Sean Murphy of The Associated Press.

The execution process began at 10:01 a m., Corrections Department Director Scott Crow told reporters. Stouffer was declared unconscious at 10:06 a.m.

For his last words, Stouffer said, "My request is that my Father forgive them. Thank you," media witnesses reported.

In a policy change, Stouffer was allowed to have his personal spiritual advisor, Baptist minister Howard Potts, in the execution chamber with him.

Potts put a hand on Stouffer's foot and read from a Bible, witnesses said. Early in the process, the advisor said something that made Stouffer laugh.

At 79, Stouffer is the oldest inmate in Oklahoma history to be executed.

He is the second oldest inmate to be executed in the nation since the U.S. Supreme Court reinstated the death penalty in 1976.

Exhibit A
**Attachment 1 - Weinberger December Dec.**

He was put to death by lethal injection for the fatal shooting of Putnam City elementary school teacher Linda Reaves in 1985.

He maintained to the end he was wrongfully convicted.

Media witness Dylan Goforth said Stouffer talked in an interview Wednesday about being at peace and ready to go.

"He felt like if he couldn't prove his innocence while alive then his attorneys would prove it after he was gone," said Goforth, who works for The Frontier.

## Three executions scheduled in Oklahoma in 2022

Three more executions are set for next year.

As many as 26 more could be scheduled next year if death row inmates lose a legal challenge to the lethal injection process at a trial in Oklahoma City federal court. The trial is set to begin Feb. 28.

Stouffer filed his own legal challenge after his execution was set. He sought to have his execution delayed until after the trial but was turned down in court three times.

**More:** Governor Stitt denies clemency to death row inmate Bigler Jobe 'Bud' Stouffer II

The U.S. Supreme Court denied his last request for a stay about 8 a.m. Thursday.

His attorneys also had sought clemency for him. Gov. Kevin Stitt last week rejected a recommendation to commute his sentence to life in prison without the possibility of parole.

Stouffer spent more than three decades on death row because he was tried twice.

He was first convicted in 1985. He was granted a retrial in 2000 when a federal appeals court agreed his defense attorneys had been inept. He was convicted again in 2003 but did not exhaust his appeals of that conviction until 2017.

Prosecutors alleged he intended to kill both Reaves and her boyfriend, Doug Ivens, and staged the crime scene to look like a murder-suicide.

He planted the gun in Reaves' hand after shooting them both, prosecutors alleged.

Ivens was in the middle of a divorce, and Stouffer was dating his estranged wife.

**Exhibit A**
**Attachment 1 - Weinberger December Dec.**

Ivens survived the attack at his Oklahoma City home and identified Stouffer as the shooter. Prosecutors alleged the motive was a $2 million life insurance policy.

**More:** Vigils held ahead of Bigler Stouffer's scheduled execution

Stouffer also later told his girlfriend in a phone call that he was afraid she would go back to her husband and that he just went berserk, according to testimony.

Stouffer claimed Reaves already was dead when he arrived at the house. He suggested she was murdered because she was going to be a witness in an embezzlement case.

He said at his clemency hearing that Ivens lured him to the "crime scene" and he defended himself because Ivens had a gun. He said Ivens was shot during their struggle.

Jurors at the second trial heard testimony that Stouffer from death row hired hit men to kill Ivens and two others. He denied involvement, saying he was being set up again to keep him in prison.

## Family of Linda Reaves thanks Gov. Stitt, AG O'Connor

After the execution, the family of the murder victim thanked the governor and Attorney General John O'Connor for their willingness to carry justice through.

"Although long in coming, justice has prevailed," a cousin, Rodney C. Thomson, told reporters at the penitentiary.

The cousin recalled how Ivens before his death placed a Christmas tree every year on Reaves' grave.

Stouffer did not request a traditional "last meal." He was served a regular evening meal Wednesday that included a chicken patty, bread, fries, broccoli, mixed fruit and two cookies, the Corrections Department said.

His spiritual advisor told the Oklahoma Pardon and Parole Board in November that Stouffer turned his incarceration into a spiritual ministry and regularly shared his faith with other death row inmates.

## Previous Oklahoma executions led to protocol concerns

Oklahoma's last execution Oct. 28 led to renewed criticism of the lethal injection process after media witnesses reported inmate John Marion Grant convulsed and vomited on the

Exhibit A
**Attachment 1 - Weinberger December Dec.**

gurney.

The execution before that — in 2015 — has been described as botched because officials later determined the wrong drug had been administered to stop the heart. Also, witnesses said inmate Charles Frederick Warner complained before dying, "My body is on fire."

The 2014 execution of inmate Clayton Lockett went awry when an intravenous line failed.

Robert Patton, the Corrections Department director at the time, called a halt to the procedure after Lockett writhed on the gurney, moaned and clenched his teeth. Lockett died anyway 43 minutes after the lethal injection began.

Only about two dozen death penalty foes showed up Thursday morning outside the Oklahoma State Penitentiary for a vigil.

A change in execution times — from 4 p.m. to 10 a.m. —  resulted in some not being able to make the trip.

Almost two dozen gathered outside the governor's mansion for a vigil there Thursday morning. Gigi Normand, an activist with Death Penalty Action, criticized Stitt.

"How can he be pro-life and continue to kill? He can't say Oklahoma is the most pro-life state with the death penalty," she said.

In a statement released after the execution, the archbishop of Oklahoma City called on state leaders to begin a conversation "about how capital punishment aligns with our pro-life values."

"The dignity of human life must never be undermined even in the case of someone who has done great evil. The death penalty does little to heal the wounds of grief and loss, and only perpetuates the violence we are seeking to eradicate," the archbishop, Paul S. Coakley, said.

## Nation's oldest executed inmate in modern era was 83

Alabama executed an 83-year-old inmate in 2018 for a deadly pipe bombing.

Oklahoma has executed more than 190 men and three women since 1915. The oldest had been John Albert Boltz. He was 74 when he was put to death in 2006 for murdering his stepson.

*Staff writer JaNae Williams contributed to this report.*

**Exhibit A**
**Attachment 1 - Weinberger December Dec.**