FILED
United States Court of Appeals
Tenth Circuit

January 24, 2022

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

| | |
|---|---|
| DONALD ANTHONY GRANT; GILBERT RAY POSTELLE,<br><br>    Plaintiffs - Appellants,<br><br>and<br><br>JAMES A. CODDINGTON; BENJAMIN R. COLE; CARLOS CUESTA-RODRIGUEZ; RICHARD S. FAIRCHILD; JOHN M. GRANT; WENDELL A. GRISSOM; MARLON D. HARMON; RAYMOND E. JOHNSON; EMMANUEL A. LITTLEJOHN; JAMES D. PAVATT; KENDRICK A. SIMPSON; KEVIN R. UNDERWOOD; BRENDA E. ANDREW; RICHARD E. GLOSSIP; PHILLIP D. HANCOCK; ALFRED B. MITCHELL; TREMANE WOOD; WADE LAY; RONSON KYLE BUSH; SCOTT EIZEMBER; JOHN F. HANSON; MICA ALEXANDER MARTINEZ; RICKY RAY MALONE; CLARANCE GOODE; ANTHONY SANCHEZ; MICHAEL DEWAYNE SMITH; JAMES RYDER; RICHARD ROJEM; JEMAINE MONTEIL CANNON,<br><br>    Plaintiffs,<br><br>v.<br><br>SCOTT CROW; RANDY CHANDLER; BETTY GESELL; JOSEPH GRIFFIN; F. LYNN HAUETER; KATHRYN A. LAFORTUNE; STEPHAN MOORE; CALVIN PRINCE; T. HASTINGS SIEGFRIED; DARYL WOODARD; | No. 22-6012<br>(D.C. No. 5:14-CV-00665-F)<br>(W.D. Okla.) |

ABOUTANAA EL HABTI; JUSTIN FARRIS; MICHAEL CARPENTER; JUSTIN GIUDICE; JIM FARRIS,

    Defendants - Appellees.

───────────────────────────────

**ORDER**

───────────────────────────────

Before **TYMKOVICH**, Chief Judge, **MURPHY** and **MORITZ**, Circuit Judges.

───────────────────────────────

Appellants are Oklahoma prisoners sentenced to death, with scheduled execution dates. Along with other Oklahoma death-row inmates, they filed a Third Amended Complaint (TAC) in this 42 U.S.C. § 1983 lawsuit challenging the constitutionality of Oklahoma's lethal injection protocol. The district court dismissed all claims in the TAC except Count II, an Eighth Amendment challenge to the protocol, on which it scheduled a trial. The plaintiffs who remain in the suit will participate in that trial. But in Appellants' case, the district court dismissed all their claims, including Count II, and denied their motion for a preliminary injunction. Appellants have appealed the denial of their motion for a preliminary injunction and have moved this court for an emergency stay of execution pending our resolution of the appeal. We have jurisdiction, *see* 28 U.S.C. § 1292(a)(1), and we deny their motion.

We previously described the standards applicable to both a preliminary injunction and a stay pending appeal:

> We review a district court's decision to deny a preliminary injunction under a deferential abuse of discretion standard. Under this standard, we examine the district court's legal determinations de novo, and its underlying factual findings for clear error. Thus, we will find an abuse of discretion if the

2

> district court denied the preliminary injunction on the basis of a clearly erroneous factual finding or an error of law.
>
> A preliminary injunction is an extraordinary and drastic remedy. A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.
>
> A motion for stay pending appeal is subject to the exact same standards. In other words, in ruling on such a request, this court makes the same inquiry as it would when reviewing a district court's grant or denial of a preliminary injunction.

*Warner v. Gross*, 776 F.3d 721, 727-28 (10th Cir. 2015) (citations, internal quotation marks, brackets, and footnote omitted).

The district court held an evidentiary hearing and, applying the appropriate preliminary injunction standard, determined that Appellants had failed to show a likelihood of success on the merits. It therefore denied their motion.

Appellants' motion for a stay pending appeal, like their motion for a preliminary injunction, is predicated on their likelihood of success on Count II of their complaint. To obtain injunctive relief based on that claim they must "establish a likelihood that they can establish both that Oklahoma's lethal injection protocol creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternatives." *Glossip v. Gross*, 576 U.S. 863, 878 (2015). These two requirements are commonly referred to as *Glossip* prongs one and two.

The district court determined that Appellants had failed to establish a likelihood of success on the merits of *Glossip* prong one (demonstrated risk of severe pain). Because

Appellants have failed to show the district court abused its discretion in denying their motion for a preliminary injunction on that basis, we deny their motion for stay.

Appellants' central contention is that the use of midazolam as the first drug in the three-drug protocol will expose them to a constitutionally unacceptable risk of severe pain. This contention is predicated largely on their evidence concerning the recent execution of John Grant, in which midazolam was used as the first drug in the three-drug protocol. Based on this evidence, including the testimony of their expert witness Dr. Joseph Cohen, they claim "1) there is a substantial risk that the prisoner will remain sensate, despite any so-called consciousness check; 2) John Grant's gasping for breath, vomiting, and likely asphyxiation all evidenced severe pain and extreme suffering caused by suffocation and air hunger; and 3) the purported consciousness check was cursory, unreliable, and inadequate as implemented in the execution of John Grant." Mot. at 8-9. Appellants also claim the testimony of their expert, Dr. Michael Weinberger, demonstrates that (1) midazolam alone cannot reliably maintain a subject in an insensate state and block the perception of pain; (2) there is significant variability in response to midazolam, but the execution protocol does not consider an individual's "physiological, physical, or medical characteristics," *id.* at 12; and (3) midazolam has a ceiling effect.[1]

The district court considered and addressed each of these contentions. Based on the extensive evidence presented at the hearing, including the expert testimony of the

---

[1] "The 'ceiling effect' is the tendency of the incremental effect of a drug to decrease with increasing dosage." R., Vol. VII at 291.

State's experts Dr. Ervin Yen and Dr. Joseph Antognini, it reached the following conclusions:

> As both Dr. Yen and Dr. Cohen agreed, John Grant probably died of asphyxiation. This conclusion is supported by such factors as the petechial hemorrhages Dr. Cohen observed during his autopsy,[2] the drop in the oxygen saturation count observed after the midazolam was administered, and Grant's gasping and coughing during the execution. But for the reasons explained by Dr. Yen, the process of asphyxiation started *after* Grant lost consciousness.[3] Dr. Cohen's contrary conclusion, that it was "more likely than not that Grant experienced conscious pain and suffering," was less persuasive than Dr. Yen's, given that "Dr. Cohen did not observe the Grant execution, has no experience with midazolam, and did not review the declaration of Dr. Yen." R., Vol. VII at 285 (internal quotation marks omitted). The district court concluded that "Dr. Yen's well-supported conclusion, based on his decades of experience with midazolam and his personal observation of the Grant and Stouffer executions, is more persuasive." *Id.*

Turning to Dr. Weinberger's testimony, the district court noted major differences between his testimony and Dr. Yen's: that "very little of Dr. Weinberger's testimony

---

[2] Petechial hemorrhages are eyelid hemorrhages consistent with a death by asphyxia.

[3] Some of Appellants' witnesses testified they did not believe a consciousness check was performed on John Grant, or that it was at least unclear how much of a consciousness check was done. But the district court noted that according to the credible testimony of witness Justin Farris, the doctor conducted a consciousness check consisting of a sternum rub and the doctor raising Grant's eyelids. *See* R., Vol. VII at 283. Also, Dr. Yen observed the consciousness check performed on the other executed prisoner, Bigler Stouffer. *See id.* at 287.

5

about the effects of midazolam was based on his personal clinical experience, and even less on any recent clinical experience," and that "none of Dr. Weinberger's testimony was based on first-hand observation of the effects of midazolam when used for execution by lethal injection as specified in Chart D." *Id.* at 289.[4] Drs. Yen and Antognini agreed with Dr. Weinberger that individual response to midazolam is variable. But there was also evidence that variability occurs primarily in the lower dosage range. No evidence was presented concerning the degree of variability of midazolam when a massive dose of 500 milligrams is injected into the prisoner as part of the execution protocol.

The district court found the evidence of the ceiling effect was inconclusive. There was no evidence presented "suggesting that a ceiling effect with midazolam could set in at a level lower than the dosage required to render the prisoner insensate to pain." *Id.* at 291. Reviewing the evidence presented, the district court determined it was "well-satisfied that midazolam will reliably render a prisoner insensate to pain at a dosage well below a dosage at which a ceiling effect would be anything other than a theoretical possibility." *Id.* at 292.

Finally, the district court addressed the efficacy of midazolam as a means of rendering a prisoner insensate to pain. Although midazolam is not generally used in

---

[4] Appellants point to Dr. Weinberger's testimony about a possible increase of John Grant's heart rate after administration of the vecuronium bromide, which he claimed is often a sign of pain in an anesthetized patient. But Dr. Weinberger stated, "I can't tell you whether or not that increase in heart rate is indicating pain . . . but it could be." R., Vol. IX at 359. This equivocal testimony is insufficient to satisfy the requirements of *Glossip* prong one concerning severe pain, particularly given the other evidence presented at the hearing.

clinical practice as an induction agent where deep anesthesia is desired, that is not because midazolam is incapable of producing deep anesthesia; it is because high doses of midazolam take a long time to wear off. The district court concluded that "[m]idazolam is a reliable drug for use as intended in Chart D" and "may be relied upon to render the prisoner insensate quickly." *Id.* at 294.

Because the district court concluded Appellants failed to show a likelihood of success concerning *Glossip* prong one, it found it unnecessary to discuss *Glossip* prong two in detail or to resolve the other injunction factors. Appellants have failed to show the district court's factual findings were clearly erroneous, or that the district court committed legal error in reaching its conclusions. To the extent their motion presents any other factual or legal challenges to the district court's reasoning, they have failed to demonstrate an abuse of discretion. We therefore deny their motion for a stay pending appeal.

>                                Entered for the Court
>
>                                CHRISTOPHER M. WOLPERT, Clerk