UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICHARD GLOSSIP, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-14-665-F |
| | ) | |
| RANDY CHANDLER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS
TO PRODUCE IV TEAM LEADER FOR DEPOSITION**

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs move for an order compelling Defendants to produce the person filling the role of the "IV Team Leader" for deposition.[1]

## BACKGROUND

In accordance with the Court's pre-trial schedule, on August 24, 2020, the parties exchanged preliminary witness lists. Defendants identified three witnesses: Scott Crow, Justin Farris, and Kameron Harvanek. Plaintiffs noticed the depositions of those individuals, and served subpoenas and deposition notices for several other witnesses. By agreement of the parties, the depositions were scheduled for largely (though not entirely) consecutive dates between November 6, 2020 and November 18, 2020. During those

---

[1] Pursuant to Rule 37.1 of the Local Rules for the Western District of Oklahoma, the undersigned counsel certifies that counsel for moving Plaintiffs have diligently attempted to resolve these issues through a meet and confer with counsel for Defendants and have been unable to do so.

depositions, the moving Plaintiffs learned for the first time that certain important information that goes squarely to the parties' claims and defenses is available only through the testimony of the person filling the role of the "IV Team Leader."

On November 18, 2020, within the timeframe for fact discovery, Plaintiffs noticed the deposition of the IV Team Leader. Defendants objected, and refused to produce that individual for deposition. Defendants did not contest the relevance of the information sought, but asserted that the deposition notice was untimely, and that a deposition of the IV team leader: (a) would be invasive and burdensome; and (b) would violate Oklahoma's privacy statute, Title 22 § 1015(B).

On December 7, 2020, Plaintiffs filed a motion to compel Defendants to produce, *inter alia*, the IV Team Leader for a deposition. (Doc. 377). On December 18, 2020, the Court permitted a deposition on written questions of the anonymous IV Team Leader on the following issues:

1. Did he or she graduate from a U.S. accredited medical school?
2. What is the proposed methodology to be used to perform a consciousness check?
3. What are the criteria for determining whether any unanticipated difficulties during the execution will result in an interruption or delay of the execution procedure?

(Doc. 382). On January 6, 2021, Defendants served the Declaration of Pat Doe in response to Plaintiffs' written deposition questions. Ex. 1.

On January 11, 2022, counsel for Defendants informed counsel for Plaintiffs for the first time that the "current IV Team Leader (who served during the John Grant and Stouffer executions, and plans on serving for all foreseeable executions) is in fact not the same

2

individual as the person who signed the John [Pat] Doe declaration last January." Ex. 2. Plaintiffs then requested a deposition of the current IV Team Leader. Defendants responded by offering to provide a new declaration in which the genuine IV Team Leader would answer the questions previously answered by Pat Doe, and Plaintiffs reserved all rights to seek the oral deposition after receiving the new declaration. On January 19, 2022, Defendants served the January 17, 2022 Declaration of John Doe, who Plaintiffs understand is the current IV Team Leader. Ex. 3.

As explained below, the Declaration of John Doe fails to adequately respond to Plaintiffs' written deposition questions, and the Court should issue an order compelling Defendants to produce the IV Team Leader for an oral deposition, subject to appropriate safeguards to protect his or her identity.

## ARGUMENT

### A. The IV Team Leader Possesses Information Critical to Plaintiffs' Claims That Cannot Be Obtained By Other Means.

Central to Plaintiffs' claims that Oklahoma's Execution Protocol presents an unconstitutional risk of severe pain and suffering is the adequacy (or lack thereof) of the consciousness check to be performed after administration of the first drug (midazolam) of the three-drug protocol. It is undisputed that administration of the second and third drugs would subject a sensate prisoner to unconstitutional pain and suffering. Thus, it is of paramount importance to the constitutionality of the protocol that the consciousness check be able to reliably determine that the prisoner is unconscious, and thus insensate to pain, before the second and third drugs are administered. (*See* Doc. 449 at 14) ("The

consciousness check is unmistakably a central consideration in the Supreme Court's lethal injection jurisprudence.")  Here, the parties dispute whether the consciousness check to be performed under the Oklahoma protocol can adequately do so, and the Court has already found that a "question at trial will be whether the defendants' planned approach to ascertaining the prisoner's state of consciousness is at least minimally adequate to satisfy the Supreme Court's requirements with respect to risk mitigation[.]" (*Id*. at 15 n.12).  It is, thus, crucial that Plaintiffs be able to obtain discovery on the matter in advance of trial.

Despite diligent efforts and a prior motion to compel on this issue, Defendants have yet to provide the necessary discovery.  The only means available for Plaintiffs to discover information concerning the adequacy of the consciousness check is to now depose the anonymous IV Team Leader, because information concerning the consciousness check to be performed exists only in that individual's head.

> Section H.3 of Attachment D to the Execution Protocol provides:
>
> When approximately five (5) minutes has elapsed since commencing the administration of the first chemical, the IV Team leader, dressed in a manner to preserve their anonymity, shall enter into the room where the H Unit section and Inmate are located to physically confirm the Inmate is unconscious by using all necessary and medically-appropriate methods. The IV Team leader shall also confirm that the IV line remains affixed and functioning properly.

Ex. 4, Excerpt of Execution Protocol (Doc. 388-1) at Attachment D, § H.3.

The record in this case demonstrates that the only source of information concerning the "necessary and medically-appropriate methods" to be used during the consciousness check is the IV Team Leader.  Director Crow testified that he could not provide any information about the consciousness checks that will be performed on prisoners because

4

the IV Team Leader determines what "all necessary and medically appropriate methods" are during an execution. Ex. 5, Excerpts of 11/17/2020 Crow Dep. Tr. at, *e.g.*, 162:3-163:12; 175:24-176:20. According to the Director, the IV Team Leader makes a consciousness determination based on "his knowledge and experience to determine if the inmate is conscious or not." *Id.* at 162:3-9; 162:10-12 ("Q. So the -- the methods that are used are entirely in the discretion of the IV team leader?  A. Yes, sir."). The Director testified that he believes that once the IV Team Leader determines the inmate is unconscious, he has no discretion to do anything other than proceed with the execution. *Id.* at 165:10-17. Moreover, according to the Director, only if the IV Team Leader completely failed to implement any methodology at all would the Director disagree with the IV Team Leader's methodology for doing so. *See id.* at 162:3-163:18. In short, Director Crow's testimony demonstrates that information relevant to Plaintiffs' allegations, including that the Execution Protocol fails to contain sufficient safeguards to ensure an execution free from cruel and unusual punishment, is uniquely within the knowledge of the IV Team Leader.

Because the method(s) to be used during the consciousness check are discretionary and exist only in the mind of the IV Team Leader, Plaintiffs' ability to discover evidence concerning the adequacy of the consciousness check can only be obtained by examination of the IV Team Leader. In addition, the deposition testimony in this case demonstrates that the IV Team Leader is the only person who can testify concerning the selection of the appropriate placement of the IV lines in the inmate; the rate at which the execution drugs are pushed into the inmate; whether and under what circumstances an attempt to place a

central IV would be made; and the situations in which the execution should proceed or be stayed due to complications that may arise. *See, e.g.*, Ex. 6, Excerpts of 11/12/2020 Crow Dep. Tr., at 152:13-159:9; 162:15-170:24; 260:6-266:16; Ex. 5, Excerpts of 11/17/2020 Crow Dep. Tr. at 253:12-21.  The IV Team Leader also has the sole responsibility for training the Special Operations Team members and the H Unit Section Chief, who in turn have the responsibility of preparing and injecting the execution drugs, and determining if the IV catheter is working properly during the execution. *See, e.g.*, Ex. 5, Excerpts of 11/17/2020 Crow Dep. Tr. at 70:11-70:18; 71:17-73:11.

Given the critically important responsibilities assigned to the IV Team Leader, Plaintiffs should be entitled to explore (without revealing the person's identity) the nature of the person's qualifications and training to perform those responsibilities. What qualifies the IV Team Leader to conduct a consciousness check? How will that check be conducted? Why is that sufficient here in the context of the noxious stimuli understood to result from Oklahoma's three-drug protocol? What qualifies the IV Team Leader to evaluate the need and feasibility of placing a central IV line and what experience does that person have in doing so successfully? These and many other questions are ripe for discovery, and can be discovered without revealing the "identity" of the IV Team Leader.

Although the current IV Team Leader submitted responses to Plaintiffs' written deposition questions in the January 17, 2022 Declaration of John Doe, those answers are summary in nature and fail to provide much of the information requested. *See* Ex. 3. In fact, the IV Team Leader failed entirely to answer a number of Plaintiffs' written deposition questions that were answered by Pat Doe. *Compare* Ex. 3 (Declaration of John Doe) *with*

6

Ex. 1 (Declaration of Pat Doe).  In sum, the Declaration of John Doe is tantamount to a failure to answer or respond to Plaintiffs' written deposition questions.  *See* Fed. R. Civ. P. 37(a)(4) ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer, or respond.").  It is, therefore, appropriate for the Court to order a deposition by oral examination of the IV Team Leader, subject to appropriate safeguards to protect the IV Team Leader's identity. *See infra* Sec. C.

### B. The Record is Disputed As To What Method(s) Were Used to Perform the Consciousness Check During Oklahoma's Recent Executions.

In addition to disputes over the appropriateness of the discretionary method(s) the IV Team Leader intends to utilize to conduct a consciousness check, the record is disputed as to the method(s) actually employed by that individual in recent executions. According to representations made by Defendants' counsel, the individual who intends to serve as IV Team Leader for all foreseeable executions is the same individual who served in that role during the recent executions of John Grant and Bigler Stouffer (and presumably Donald Grant).  Ex. 2.  Naturally, evidence concerning the consciousness check method(s) used during these executions will be critical evidence at trial that will aid the Court's evaluation of the adequacy of the consciousness check under the Oklahoma Execution Protocol.[2]

---

[2] On August 11, 2021, the Court stated "[d]eadlines for final witness and exhibit lists have passed. As indicated in the order on summary judgment, filed this date, it is possible that, by the time the trial date arrives, Oklahoma will have had experience with one or more executions under Chart D. In that event, the court will entertain motions to amend the final witness and exhibit lists." (Doc. 456 at 2 n.2).

Unfortunately, the evidence in the record to date is disputed as to what consciousness check, if any, the IV Team Leader performed during these executions.

For example, different witnesses to the John Grant execution describe different actions taken by the person who is presumably the IV Team Leader during what was presumably intended to be the consciousness check on Mr. Grant. Witness Julie Gardner observed a man take hold of and turn Mr. Grant's face to center, wipe off foamy vomit around his mouth, remove Mr. Grant's glasses and wipe around his eyes. (11/17/21 Gardner Decl., Doc. 551-1, at ¶ 9). Meghan LeFrancois observed the man turn Mr. Grant's face toward the wall opposite her and finish cleaning him up. (11/17/21 LeFrancois Decl., Doc. 551-2, at ¶ 10). Ms. LeFrancois "believe[d] Mr. Grant vomited again" after the man left and "did not realize when the doctor was wiping him off this last time and turning his face that this was apparently the consciousness check." (*Id*. at ¶¶ 10-11) Dr. Yen, a witness for Defendants at the January 10, 2022 hearing, observed the same event and "assumed that all the man at the gurney was doing was wiping vomit from Grant[.]" (Doc. 587 at 7). On the other hand, however, Justin Farris testified that the man performed a consciousness check, consisting of "a sternum rub and the doctor raising Grant's eyelids." (*Id*.)

The testimony of the IV Team Leader will be critical to resolution of this factual dispute. Only that individual knows precisely what method(s) was utilized to perform a consciousness check during the executions of John Grant, Bigler Stouffer, and Donald Grant. And only that individual knows what, if any, additional method(s) will be utilized under the Oklahoma protocol going forward. This factual predicate can only come from

the IV Team Leader and is critical in this Court's analysis of the lawfulness of the protocol as it is implemented by Defendants.

      **C.    The IV Team Leader's Identity Can Be Protected During An Oral Deposition.**

Oklahoma's privacy statute provides that "[t]he identity of all persons who participate in or administer the execution process and persons who supply the drugs, medical supplies or medical equipment for the execution shall be confidential and shall not be subject to discovery in any civil or criminal proceedings." Okla. Stat. tit. 22, § 1015(B). Plaintiffs are not seeking the identity of the IV Team Leader. Rather, as noted above, Plaintiffs seek discovery of relevant information that is solely within the possession of the IV Team Leader.

Plaintiffs respectfully submit that the IV Team Leader's identity may be protected during an oral deposition, in accordance with § 1015(B). In method of execution litigation in other jurisdictions, plaintiffs have been able to elicit deposition and trial testimony from execution team members, notwithstanding comparable secrecy statutes. In each of these instances, the court entered a protective order or permitted the testimony to go forward under measures that would keep confidential the identities of the individuals testifying. For example, in Arkansas, the court heard "confidential, under seal testimony from a highly confidential witness" who testified about their role in performing consciousness checks as part of the Arkansas execution team. *McGehee v. Hutchinson*, 463 F. Supp. 3d 870, 893 (E.D. Ark. 2020). In Arizona, the judge ordered the State's medical team leader (a similar role as Oklahoma's IV Team Leader) to appear in court, with the courtroom sealed, and

9

the name of the witness redacted in the transcript. *West v. Brewer*, No. CV-11-1048, Tr. of Final Pretrial Conf., (D. Ariz. Nov. 15, 2011). In Ohio, the district court held a five-day hearing in which some members of the execution team testified in open court pursuant an "order of this Court and agreement of the parties, [that] all references to members of Ohio's execution teams are by generic identifiers established by the parties and employed to address anonymity and safety concerns."[3] *Cooey v. Strickland*, No. 2:04-CV-1156, 2009 WL 4842393, at *2 (S.D. Ohio Dec. 7, 2009). In a subsequent hearing in Ohio, "Team Member 10" was called as a live witness, positioned behind a screen, and testified directly to the Court. *In re Ohio Execution Protocol Litigation*, No. 11-1016, Excerpts from Tr. of Prelim. Inj., Dkt. No. 922 at 133-137 (S.D. Ohio Jan. 17, 2017).

Additionally, in Tennessee, attorneys for plaintiffs took the depositions of execution team members who perform similar tasks as Oklahoma's IV Team, pursuant to a protective order and under conditions that obscured their identities. *King v. Parker*, No. 3:18-CV-01234, Dkt. 108 (M.D. Tenn. July 20, 2020). In Georgia, plaintiffs sought to depose personnel involved in carrying out executions. In granting their motion, the court stated it was "confident the parties can negotiate a manner by which Plaintiff can depose the necessary individuals, including by allowing them to testify remotely, with voice changing equipment, and without their identities being revealed." *Martin v. Ward*, No. 1:18-CV-

---

[3] At the hearing, testimony by execution team members included in-court testimony, testimony by video conference, and testimony by deposition all under generic identifiers to protect their identity. *Cooey v. Strickland*, No. 2:04-CV-1156, 2009 WL 4842393, at *2 (S.D. Ohio Dec. 7, 2009).

4617-MLB, 2021 WL 1186749, at *9 (N.D. Ga. Mar. 30, 2021). In Arizona, the judge permitted the deposition testimony of the medical team, medical trainers, and the special operations team leader pursuant to a protective order that kept their identities confidential. *Dickens v. Napolitano,* No. 2:07-cv-01770, Dkt. 83 (D. Ariz. Sept. 8. 2008); *see also Moore v. Rees*, No. 06-CV-22, 2007 WL 1035013, at *15 (E.D. Ky. Mar. 30, 2007) ("Counsel for the parties can confer to reach agreement on one or more of a wide range of devices that may be employed to provide the information requested to [the plaintiff] without compromising the anonymity of execution team members."); *Ringo v. Lombardi*, No. 09-4-95-CV, 2010 WL 3310240, at *6 (W.D. Mo. Aug. 19, 2010) ("The parties have agreed to limited discovery, including anonymous depositions taken by telephone."); *Taylor v. Crawford*, 487 F.3d 1072, 1075 (8th Cir. 2007) (noting that the district court permitted a limited anonymous deposition of John Doe I, the physician in charge of mixing the chemicals and inserting the IVs for six executions).

Here, a deposition of the IV Team Leader can similarly be conducted in a manner that he will protect his or her identity. A deposition can be conducted either telephonically, or by Zoom or other remote means (with the deponent's video turned off), subject to the existing protective order and without the witness being identified by name. In either scenario, the deponent's voice could be obscured by a voice modulator or other voice disguising equipment. And Defendants' counsel would retain the right to direct the witness not to answer questions that they believe (consistent with the Court's prior orders) would lead to discovery of the identity of the IV Team Leader.

That said, the Court should make clear that any such objections strictly adhere to the Court's order prohibiting discovery "into the identities of the members of the execution team and into facts that are reasonably calculated to lead to the discovery the identities of these individuals." (Doc. 100, 11/13/2014 Hrg. Tr. at 71:8-11). In the depositions taken to date, Defendants have taken an unreasonably broad interpretation of the Court's order. For example, Defendants directed Director Crow not to answer questions about whether or not the medical doctor serving as the IV Team Leader is an anesthesiologist or even identify the doctor's medical specialty. Ex. 6, Excerpts of 11/12/2020 Crow Dep. Tr. at 133:17-137:4. That information could not possibly reveal the person's identity and, thus, the objection went far beyond the Court's order.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order compelling Defendants to produce the IV Team Leader for a deposition on a mutually convenient date and under circumstances that will protect his or her identity.

Respectfully submitted this 4th day of February, 2022.

                                          *s/ Emma V. Rolls*
                                          Emma V. Rolls, OBA # 18820
                                          Office of the Federal Public Defender
                                          215 Dean A. McGee Ave., Suite 707
                                          Oklahoma City, OK 73102
                                          Telephone: (405) 609-5975
                                          Emma_Rolls@fd.org

                                          Harry P. Cohen (admitted *pro hac vice*)
                                          Michael K. Robles (admitted *pro hac vice*)
                                          James K. Stronski (admitted *pro hac vice*)
                                          Kenton Walker (admitted *pro hac vice*)

CROWELL & MORING LLP
590 Madison Avenue
New York, NY 10022
Telephone: (212) 223-4000
hcohen@crowell.com
mrobles@crowell.com
jstronski@crowell.com
kentwalker@crowell.com

Jon M. Sands
Federal Public Defender District of Arizona
Dale A. Baich (OH Bar No. 0025070)
Jennifer M. Moreno (CA Bar No. 244967)
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
Telephone: (602) 382-2816
Facsimile: (602) 889-3960
dale_baich@fd.org
jennifer_moreno@fd.org

COUNSEL FOR PLAINTIFFS

Alex Kursman
Shawn Nolan
Assistant Federal Defenders Capital Habeas Unit
Federal Community Defender Office for the Eastern District of Pennsylvania
601 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 928-0520

COUNSEL FOR PHILLIP HANCOCK

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of February, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to all counsel of record who are registered participants of the Electronic Case Filing System.

<i>s/ Emma V. Rolls</i>