# Exhibit 1

| | |
|---|---|
| **From:** | Stronski, James <JStronski@crowell.com> |
| **Sent:** | Tuesday, October 26, 2021 1:39 PM |
| **To:** | Mithun Mansinghani |
| **Cc:** | Bryan Cleveland; Cohen, Harry; Robles, Michael; Emma Rolls; Kim Stout; Jennifer Moreno; Dale Baich; Michael Lieberman; Alex Kursman; Lynne Leonard |
| **Subject:** | [EXTERNAL] RE: Motion to Preserve |
| **Attachments:** | PlaintiffsRevDefProposalMotiontoPreserve.docx |

Mithun,

Thank you for providing this proposal. I attach a redline to show our response to frame the issues for our appearance at 3 pm. As you will see, your modifications to paragraphs 1-5 are acceptable. We have revisions to paragraph 6. We agree now not to ask for the witness to observe the setting of lines but reserve the right to revisit this with you and if needed the Court in the future. We would like the State to provide a seat for a medically trained person designated by Plaintiffs to observe executions. We will pursue the removal of the paralytic.

Let me know if you would like to discuss before 3 pm.

Regards,

Jim

~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~
**James K. Stronski**  |  **Crowell & Moring LLP**
Partner
590 Madison Avenue
New York, NY 10022-2524
Office: 212-895-4217  |  Fax: 212-223-4134

Privileged and Confidential
Attorney-Client Communication
Attorney Work Product

This message contains privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

===========================================================

**From:** Mithun Mansinghani <mithun.mansinghani@oag.ok.gov>
**Sent:** Tuesday, October 26, 2021 11:16 AM
**To:** Stronski, James <JStronski@crowell.com>; Emma Rolls <emma_rolls@fd.org>
**Cc:** Bryan Cleveland <bryan.cleveland@oag.ok.gov>
**Subject:** Motion to Preserve

External Email

Jim: In response to your motion to preserve and in line with the Court's direction, Defendants are willing to propose the following agreed compromise. With respect to the forthcoming executions of Plaintiffs and in cooperation with the State Medical Examiner's Office and other state entities, and on the understanding that Defendants' agreement to preserve the following is not an agreement that such things will be produced or disclosed, Defendants will agree to:

1. Preserve all IV tubing, syringes, needles and drug vials, including packaging, labeling and prescribing information included therein used in the execution, except for any portion of the IV tubing and entry apparatus that must travel with the body to the Medical Examiner because they remain connected to the body of the prisoner after execution.
2. Photograph and document evidence related to pulmonary edema and the intravenous lines, including: lung weight; perform a thorough examination of and document any fluid present in the lungs, large or small airways, or mouth or nose; identify the IV site(s), note if the catheter was placed intravascularly, and note any extravasation of fluid around the IV; and note any signs of multiple IV attempts.
3. Preserve tissues from the brain, liver, and muscle from a location other than from the leg or arm where the IV was set.
4. Conduct, within 24 hours of the execution, a blood draw from the following locations on the deceased: Left and right femoral veins; Left and right subclavian veins; an Left and right ventricles (heart).
5. Preserve all documents and other material with respect to Plaintiffs' executions, including but not limited to:
    a. All handwritten documents respecting Plaintiffs' executions, whether contemporaneously produced, or produced before or after the executions.
    b. All transcriptions of handwritten documents respecting Plaintiffs' executions, whether those transcriptions were contemporaneously produced, or were produced before or after the execution.
    c. All handwritten, typewritten, computer-generated logs, or audio and/or visual recordings respecting Plaintiffs' executions, whether produced contemporaneously with, or produced at any time before or after, the execution.
    d. The qualification and training records related to personnel who participated in any capacity in training to conduct the execution and any training materials used or scenario or other curriculum used to train participants to conduct the execution and any tests or evaluations taken by training participants in connection with such training.
    e. All medical documents respecting Plaintiffs' executions, whether the Defendants classified the documents as "medical" or otherwise. This list includes but is not limited to:
        (i)     EKG strips;
        (ii)    Printouts of any other monitors or other medical equipment used before, during, or after the executions;
        (iii)   Prescriptions, medical orders, DEA forms or other documents relating to the acquisition of all drugs used, or intended to be used, for whatever purpose, in the executions, including documents sufficient to show the expiration date of the drugs used, the recommended storage conditions for the drugs used and the actual storage conditions and time under such conditions for such drugs;
        (iv)    Prescriptions and medical orders for any other drugs used by or administered to Plaintiffs leading up to or during their executions;
        (v)     Notes or other material related to or documenting medical concerns, emergencies, or any other anomalies or unexpected occurrences during Plaintiffs' executions;
        (vi)    Notes or other material related to or documenting responses to medical concerns, emergencies, or any other anomalies or unexpected occurrences during Plaintiffs' executions.
    f. Preserve all other documents or other material not identified here, in whatever form those documents or materials exist, with respect to Plaintiffs' executions.
6. On the condition that Mr. John Marion Grant or his next-of-kin provide consent, Plaintiffs will be permitted to provide a single representative to observe the State Medical Examiner's autopsy of John Marion Grant provided that such observer does not interfere with the autopsy, follows the direction of Medical Examiner staff, and agrees not to engage in any photography, videography, or audio recordings during the autopsy. Additionally, Plaintiffs will be permitted to arrange for a private post-mortem examination, once the body is released from the Medical Examiner, on the condition that Mr. John Marion Grant or his next-of-kin provide consent.

Let me know if this proposal is amenable to Plaintiffs.

Thank you,

**Mithun Mansinghani**
*Solicitor General*

**Oklahoma Office of the Attorney General**
313 NE 21st Street, Oklahoma City, OK 73105
(405) 522-4392 | <Mithun.Mansinghani@oag.ok.gov>